**MARK THOMAS SOPHOCLES, LLC**
**MARK T. SOPHOCLES, ESQUIRE**
**21 INDUSTRIAL BLVD., SUITE 201**
**PAOLI, PA 19301**
**PA SUPREME COURT ID # 74998**
**610.651.0105**
**FAX 610.651.0106**
**MARK@MARKSOPHOCLES.COM**

**ATTORNEY FOR PLAINTIFFS**
**EVERETT STERN**
**TACTICAL RABBIT, INC.**


**JURY TRIAL DEMANDED**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### CIVIL LAW DIVISION

| | |
|---|---|
| **EVERETT STERN**<br>**243 Falcon Ridge Road**<br>**Saint Augustine, FL 80202**<br><br>**TACTICAL RABBIT, INC.**<br>**2929 Arch St, Ste 1700**<br>**Philadelphia, PA, 19104**<br><br>                        **Plaintiffs,**<br>**V.**<br>**WILLIAM RUZICH**<br>**314 Mockingbird Lane**<br>**Waterloo, Il 62258**<br><br>**LINDSAY MORAN**<br>**218 Taylor Avenue**<br>**Annapolis, MD 21401**<br><br>**KYESON UTLEY**<br>**3969 Prairie Creek**<br>**New Braunfels, TX, 78132**<br><br>**DAVID MARCHANT**<br>**176 Shady Hollow**<br>**Nederland, CO, 80466**<br><br>**KYC NEWS, INC. T/A/D/B/A**<br>**OFFSHOREALERT**<br>**113 SE 1st Avenue**<br>**Suite #173**<br>**Miami, FL 33131** | **CASE: 2024** |

| | |
|---|---|
| **ARIZONA BOARD OF REGENTS**<br>**2700 North Central Avenue**<br>**Suite 400**<br>**Phoenix, AZ 85004**<br><br>**ARIZONA STATE UNIVERSITY**<br>**1151 S Forest Avenue**<br>**Tempe, AZ 85281**<br><br>**ARACARI PROJECT**<br>**6801 Jefferson St. NE.**<br>**Suite 150**<br>**Albuquerque, NM 87109**<br><br>**SPYSCAPE ENTERTAINMENT**<br>**928 8th Avenue**<br>**New York, NY 10019**<br>                **Defendants.** | |

## CIVIL ACTION COMPLAINT

### I.    PARTIES

1.    Plaintiff, Everett Stern, an adult individual who resides in 243 Falcon Ridge Road, in Saint Augustine, Florida 80202 and is the principle, founder, equitable owner and operator of the business that is co-Plaintiff in this action.

2.    Plaintiff, Tactical Rabbit, Inc. is a Pennsylvania company with an office located at 2929 Arch St, Ste 1700 in Philadelphia, PA, 19104.

3.    Defendant, William Ruzich is an adult individual who resides at 314 Mockingbird Lane in Waterloo, Il 62258.

4.    Defendant, Lindsay Moran is an adult individual who resides at 218 Taylor Avenue Annapolis, MD 21401.

5.    Defendant, Kyeson Utley is an adult individual who resides at 3969 Prairie Creek, New Braunfels, TX, 78132

6.      Defendant, David Marchant is an adult individual who resides at 176 Shady Hollow, Nederland, CO, 80466.

7.      Defendant, KYC News, Inc., trading as and doing business as the business OFFSHOREALERT is the trade name for KYC News, Inc., a Florida based Corporation located at 113 SE 1st Avenue, Suite #173, Miami, FL 33131.

8.      Defendants ARIZONA BOARD OF REGENTS (ABOR) as the governing body who manages, supervises, controls, and operates the Arizona State University and is located at 2700 North Central Avenue, Suite 400, Phoenix, AZ 85004.

9.      Defendants, ARIZONA STATE UNIVERSITY, as a public state university located at 1151 South Forest Avenue, Tempe, AZ 85281.

10.     Defendants, THE ARACARI PROJECT located at 6801 Jefferson St. NE. Suite 150 in Albuquerque, NM 87109, and is the formation of former contractors for Defendants Lindsay Moran, Kyeson Utley, and William Ruzich.

11.     Defendants, SPYSCAPE ENTERTAINMENT, have a principal place of business located at 928 8th Avenue in New York, NY 10019.

## II.    **BACKGROUND**

12.     Plaintiff, Everett Stern is an adult individual, founded, created, and operated co-Plaintiff firm Tactical Rabbit, Inc. to perform national and international complex and sophisticated privately owned intelligence gathering services for clients.

13.     The Plaintiffs collectively operated these businesses in Philadelphia and suburban Pennsylvania at all salient and relevant times herein and spent thousands of dollars and hours building and investing in the success of the Tactical Rabbit, Inc. including but not limited to hiring professionals to help operate the business, spending thousands on I.T. and data control including

exceptional time and monetary commitments to help Spyscape grow and prosper in part from the financial and time commitments made by Plaintiffs for direct benefit of Spyscape who summarily disavowed Plaintiffs' contributions prior to severing the business relationship with Plaintiffs and Spyscape directly and proximately causing Plaintiffs to lose hundreds of thousands of dollars and loss of business opportunities.

14.     Everett Stern (who personally and through Tactical Rabbitt, Inc. dedicated hundreds of hours of time and thousands of dollars advancing the relationship between Plaintiffs and Spyscape, before Spycape terminated the relationship) is a public figure having run for United States Senate in the Commonwealth of Pennsylvania, and his background is best summarized in the forward to his book authored by retired CIA professional Bob Dougherty (*See attached as Exhibit "1"*).

15.     The juxtaposition of Stern with the events of January 6, 2021, and sequalae of events and circumstances surrounding his testimony before the Congressional January 6 Committee is captured by the January 21, 2022, article in The Guardian (*See Exhibit "2" Guardian article from 1/21/22*).

16.     These circumstances surrounding Stern's testimony before the Congressional January 6 Committee is captured by the February 4, 2022, article in The New York Times (*See Exhibit "3" The New York Times article from 2/04/22*).

17.     Newsweek Magazine published an article referencing Stern in an article published October 25, 2022 (*See Exhibit "4" as Newsweek Article October 25, 2022*).

18.     The Plaintiffs primarily ran the private intelligence gathering services business for private clients successfully from 2017 through and including 2022 using the Tactical Rabbit

corporate name and reputation to garner services contracts. Clients and contracts were undisturbed by Defendants until October 27, 2022.

19.    These service contracts were performed by Plaintiffs who earned fees and were paid in conjunction with the services that they fulfilled, consummated efficaciously Tactical Rabbit, Inc. earned gross revenues of $1,000,000 from 2017-2021.

20.    As part of effectively providing services to their clients, Tactical Rabbit, Inc. contracted with certain Defendants who were entrusted with data, materials and client specific information and paid as subcontractor to help perform intelligence gathering services by Plaintiffs.

21.    Plaintiffs hired Defendants Moran, Ruzich, Marchant and Utley to work with them in the business he started for private intelligence services called Tactical Rabbit, Inc., pursuant to contract agreements that memorialized the terms and conditions of their retention and scope of performing services as set forth in the attached contracts for each member of these "Contracting Defendants" as the following:

*Exhibit "5"* Contract between Tactical Rabbit, Inc., and Lindsey Moran.

*Exhibit "6"* Contract between Tactical Rabbit, Inc., and William Ruzich.

*Exhibit "7"* Tactical Rabbit, Inc. Intelligence Report, and David Marchant.

*Exhibit "8"* Contract between Tactical Rabbit, Inc., and Kyeson Utley.

22.    The Contracting Defendants, without permission interfered with the existing and prospective contractual relationships that Plaintiffs had with their customers by willfully misrepresenting Summary Offense of Disorderly Conduct that stem from a March 30, 2022, incident docketed at MJ-15203-0000096-2022.

23.    Defendants ARIZONA BOARD OF REGENTS (ABOR) as the governing body who runs and operates the Defendants ARIZONA STATE UNIVERSITY, as a public state

university participated in a unique internship program with Plaintiffs wherein Plaintiffs, afforded Arizona State University student William B. Ruzich the rare opportunity to intern with Plaintiffs in order to garner real world experience in this highly specialized field.

24.    Defendants ABOR and Arizona State University owed Plaintiffs a duty of care to ensure that any intern placed with Plaintiffs businesses would be honest, of high moral ethical character, and that they would not cause damages to Plaintiffs.

25.    Defendants ABOR and Arizona State University breached the duty of care owed to Plaintiffs by failing to ensure that the intern who was an actively registered student enrolled with the Arizona State University would act honestly and without selfish disregard for the rights of Plaintiffs who operated the businesses that Intern William Ruzich became interested in.

26.    As a direct and proximate cause of the negligent acts of ABOR and the Arizona State University as stated more fully throughout this Complaint, as if incorporated at length herein by reference including, but not limited to, failing to screen the intern, failing to train the intern, failing to manage or supervise interns placed through the ABOR and Arizona State University.

27.    The afore stated negligent acts of these Defendants have directly and proximately caused damages to Plaintiffs in the form of hundreds of thousands of dollars of lost contracts and business relationships that were destroyed, misappropriated, taken for conversion purposes, and absconded as a direct and proximate consequence of the acts of these Defendants who patently failed to provide any oversight, supervision, or management of the intern.

28.    The Plaintiffs incurred actual damages in the form of lost contracts, lost prospective contracts and the misappropriation of Plaintiffs' highly valuable electronic data, customers, business operations, reports, and materials.

29.     The Plaintiffs have made every effort to mitigate their damages reasonably and fully under the circumstances but have lost millions of dollars, but for the acts, omissions, and failures of ABOR and Arizona State University.

30.     These Defendants were granted access to exceptionally sensitive data and proprietary information that Plaintiffs provided to them pursuant to the Moran, Ruzich, and Utley, agreements and the Intelligence Report on Marchant (*See Exhibits "5"-"8"*).

31.     The Arizona Board of Regents and Arizona State University failed to screen, oversee, manage, supervise, and do proper background research on interns who they placed in Plaintiffs' company and as a direct and proximate result of these acts/omissions directly and proximately caused damages to Plaintiffs.

32.     Similarly, the contracting Defendants acted dishonestly to denigrate the work of Plaintiffs in order to undermine the Plaintiffs business operations, to convert existing customers of Plaintiffs for their own, ill-gotten pecuniary gain.

33.     These contracting Defendants worked with Stern and Tactical Rabbit until they worked to perpetuate a cohesive, misinformation campaign against Stern, aimed at discrediting him in the eyes of his clients and customers based upon, and fully predicated upon misrepresenting Stern and Tactical Rabbit in a negative and pejorative manner to ostensibly black ball him in this niche industry.

34.     Under Pennsylvania Law, the common law tort of unfair competition encompasses misleading statements and the usurpation of competitor's products rights. The Pennsylvania Supreme Court has stated that to allow "false and misleading representations" in outreach to customers is to "countenance unfair competition," Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 415 Pa. 276, 284 (1964). See also Spring Steels, Inc. v. Molloy, 400 Pa. 354, 364 (1960)

describing unfair competition where "the defendants' action consisted of... fraud or deception in its dealings with third parties or consumers").

35.    The Court has also acted to safeguard exclusive product rights, finding that a competitor's efforts to "pirate" a media company's news products without authorization, involved violations of property rights and unfair competition. See Pottstown Daily News Pub. Co. v. Pottstown Broadcasting Co. 411 Pa. 383, 394 (1963) (observing that "the protection which the law affords to competition does not and should not countenance the usurpation of a competitor's investment and toil").

36.    The Contracting Defendants acted to interfere with both the existing contractual rights of Plaintiffs and to tortiously interfere with the prospective contractual rights of Plaintiffs via this systemic, focused disinformation campaign against Plaintiffs

37.    To state a claim for tortious interference with prospective contractual relations, a plaintiff must plead: (1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. *Glenn v. Point Park College*, 441 Pa. 474, 479-480 (1971).

38.    The actions of contracting defendants was aimed at ruining existing contractual relationships that Plaintiffs had both with their existing customers and between Plaintiffs and the contracting defendants who worked with Plaintiffs.

39.    More specifically, the prospective contractual relationship is "something less than a contractual right, something more than a mere hope." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 209 (1979). The standard is an objective one, namely, whether the evidence demonstrates a "reasonable probability" that a contract would have arisen absent the defendant's interference.

*Id.* at 209–210 (quoting *Glenn*, 441 Pa. at 480–481). The reasonableness of the Plaintiff's expectation generally involves questions of fact. *See KBT Corp v. Ceridian Corp.*, 966 F.Supp. 369, 376 (E.D. Pa. 1997). To show a prospective relationship, plaintiffs may identify specific customer relationships or a mechanism through which the plaintiff would ordinarily secure new contracts. *Id.*

40.    Contracting Defendants acted with direct information that was proprietary in nature to Plaintiffs against their interests by design and with intent to harm Plaintiffs.

41.    Pennsylvania state law allows for recovery of claims grounded in interfering with existing and prospective contractual relationships under the RESTATEMENT OF THE LAW – TORTS.

Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

   (a) perform a contract with another, or

   (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby. *REST TORTS § 766*

42.    One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

   (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

   (b) preventing the other from acquiring or continuing the prospective relation. *REST 2d TORTS § 766B.*

100001

43.    "purposeful action specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring." Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 212 (3d Cir. 2009).

44.    Pennsylvania courts have looked to § 766B of the Restatement (Second) of Torts when evaluating whether the defendant took purposeful action. See International Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1274 (Pa. Super Ct., 2012). The Restatement provides that a defendant's interference is deemed intentional when "the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766B cmt. d (1979).

45.    Plaintiffs trusted Defendants and entrusted said Defendants with specific information that they knew was highly valuable to Plaintiffs in terms of the customer/client names and information regarding   the specific services rendered that establish unequivocally that Defendants had no legal justification or privilege to tortiously interfere with the Plaintiffs service contracts with their customers and clients.

46.    The Defendants lacked any justification to take the existing customers and clients of Plaintiffs and interfere with their existing and prospective contractual rights.

47.    In Pennsylvania, the plaintiff must demonstrate a lack of privilege or justification as part of the prima facie case of tortious interference, and failure to do so results in dismissal of the claim. See Thompson Coal Co., 488 Pa. at 208 n.7.

48.    The Plaintiffs have lost actual damages of millions of dollars of service contracts that existed and that were prospective in nature as a direct and proximate cause of the malfeasant unlawful misconduct of the Defendants as set forth more fully but incorporated by reference as if fully set forth herein  throughout this Complaint.

III.    **JURISDICTION**

49.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). This Court has supplemental subject matter jurisdiction over the pendent Pennsylvania state law claims under 28 U.S.C. § 1367, because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of the same substantive common set of operative facts and factual allegations by and between for and against the Parties to this litigation who worked with, for and on behalf of the Plaintiffs business.

IV.    **VENUE**

50.    At all salient and relevant times referenced herein the Plaintiffs primarily operated their intelligence gathering services in the City and County of Philadelphia and in the Pennsylvania suburbs outside Philadelphia (specifically in Chester County Pennsylvania) which are all collectively located in the geographical region that establishes proper venue in the Eastern District of Pennsylvania. For these reasons, venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the dispute occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

**COUNT I**
**BREACH OF CONTRACT**
**(BY PLAINTIFFS, EVERETT STERN, TACTICAL RABBIT, INC. .,**
**AGAINST CONTRACTING DEFENDANTS, MORAN, UTLEY AND RUZICH)**

51.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 50 of this Complaint as though fully set forth here.

52.    Defendants agreed to be bound by the Agreement when Defendants agreed to work with Plaintiffs to perform specific services for Plaintiffs who in return provided monetary

remuneration to said Defendants for their services. These Defendants were entrusted with access to Plaintiffs highly specialized and unique business operations that successfully existed to provide extremely sensitive intelligence gathering services to clients nationally and internationally involving a plethora of complex issues.

53.    When Plaintiffs trusted Defendants with access to this highly confidential and proprietary set of information, this information was almost entirely stored electronically by Plaintiffs who used extraordinary measures to secure and lock down this electronic information from misappropriation. The electronic data and information that was owned by Plaintiffs who spent a career and hundreds of thousands of dollars of money, time, and resources to grow, develop, service, and curate over decades of time, based upon strong personal relationships.

54.    The electronic data and information owned by Plaintiffs but entrusted to Contracting Defendants by virtue of the existence of their specific contracts (Exhibits A-D) had independent value that once misappropriated, had instant financial value, and was instantly monetized after misappropriated by Defendants, who took Plaintiffs customers by engaging in a systemic, false disinformation campaign against Plaintiffs aimed at converting existing and prospective contractual rights of Plaintiffs.

55.    The Contracting Defendants wantonly breached the duties of good faith and fair dealing by usurping the customers and clients of Plaintiffs for their own ill-gotten pecuniary gains. The duties of good faith and fair dealing are the bedrocks of how courts in the Commonwealth of Pennsylvania interpret contracts. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. Restatement (Second) of Contracts § 205 (1985). In Pennsylvania, the law is clear that "[i]n the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according

to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the contract must be implied." *Daniel B. Van Campen Corp. v. Building & Construction Trades Council,* 195 A.2d 134, 136-137 (Pa. Super. Ct. 1963).

56.     The covenant of good faith and fair dealing, although *implied* in every contract, is used *to interpret the contract* and generally does not give rise to a separate cause of action, either in tort or contract. Therefore, an implied duty of good faith will be read into the performance of every agreement so that the court may evaluate whether the terms of an agreement have been breached.  However, if the court determines there was a breach, the consequence will be breach of contract rather than an independent breach of a duty of good faith and fair dealing. While Pennsylvania law does not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim the Courts simply caste these claims as breach of contract claims. *McHale v. NuEnergy Group,* No. 01-4111, 2002 U.S. Dist. LEXIS 3307, at *23 (E.D.Pa. Feb. 27, 2002). For that reason, a claim based on breach of the covenant of good faith and fair dealing, when embedded within a complaint that also alleges breach of contract, will be regarded by the courts as nothing more than a carbon copy of the breach of contract claim.

57.     The facts of this case confirm that the Contracting Defendants, by acting with bad faith,in terms of taking the Plaintiffs customers/clients for their own businesses instead of acting honestly in good faith by fulfilling the contractual obligations terms and conditions.  The breach of the implicit duties of good faith and fair dealing are axiomatically established by the Contracting

Defendants wanton disregard for the existing and prospective contractual rights of Plaintiffs without justification or privilege instead solely to take the Plaintiffs clients and customers for their own businesses in the same unique intelligence gathering services business.  The Contracting Defendants used false information as the fake predicate to create disinformation about Plaintiffs to scuttle Plaintiffs contractual rights.

58.    Plaintiffs Tactical Rabbit has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement.

59.    Defendants have breached the Agreement by, among other things: Competing with Plaintiffs, misappropriating the proprietary information of the Plaintiffs, violating the solicitation and similar components of these Agreements as specifically set forth in Exhibits 5-8 collectively incorporated by reference at length herein.

60.    The Contracting Defendants acted with the purpose and direction of taking the contracts that Plaintiffs had without a legitimate business purpose contacting clients; and, by using materials in ways other than the furtherance of a relationship with Tactical Rabbit et al.

61.    As a direct and proximate consequence of the above stated facts and a result of Defendants' Breach of the Agreement, Defendants have caused damages to Tactical Rabbit in an amount to be proven at trial in excess of hundreds of thousands of dollars of misappropriated service fees, commissions and sums lost by Plaintiffs as a direct and proximate result of the breach in contract by the Contracting Defendants as stated more fully as if incorporated at length herein.

**WHEREFORE**, the Plaintiffs seek judgment in their favor against Contracting Defendants  in an amount in excess of $75,000 together with other compensation and award as granted by this Court.

**COUNT II**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**AND TORTIOUS INTERFERENCE OF CONTRACT RIGHTS**
**(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

62.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 61 of this Complaint as though fully set forth here.

63.     Plaintiffs had an expectancy in continuing and advantageous economic relationships with current and prospective customers of Tactical Rabbit's support services.

64.     These relationships contained the probability of future economic benefit in the form of profitable support service contracts and intelligence data licenses. Had Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Tactical Rabbit support customers would have initiated, renewed, or expanded support and services contracts and intelligence data with Tactical Rabbit rather than Defendants.

65.     Defendants were aware of these economic relationships and intended to interfere with and disrupt them by wrongfully:

• gaining unauthorized access to Plaintiffs' customers through Tactical Rabbit's password protected website in violation of the agreements governing such access;

• gaining unauthorized access to the Intelligence data and materials available on Plaintiffs computer systems in violation of the agreements governing such access;

• breaching the agreements governing access to, and use of, the website and the materials available through it;

• luring Plaintiffs current and prospective customers by making promotional and marketing statements regarding Defendants' ability to provide support services for Tactical Rabbit intelligence data that were only possible because of Defendants' improper access to, and

taking from, Tactical Rabbit's computer systems; and

> • using information learned through the improper access to, and taking from, Plaintiffs'

computer systems for their customers.

66.     Defendants' conduct was wrongful by a measure beyond the fact of the

interference itself. Defendants misused unauthorized access to Plaintiffs' customers available

through the business, and wrongfully used the property to advertise their services, and otherwise

obtain and retain Plaintiffs current and prospective clients.

67.     Defendants' conduct also constitutes trespass to chattels, breach of contract, and

unjust enrichment.

68.     As a result of Defendants' acts, the above-described relationships have been

actually disrupted, causing certain current and prospective support clients to contract with

Defendants instead of Plaintiffs for their intelligence data support and maintenance and, in some

cases, for their intelligence data.

69.     As a direct and proximate result of Defendants' actions, Plaintiff has

suffered economic harm, including, but not limited to, loss of profits from sales or licenses to

current and potential customers of Plaintiff support services and enterprise intelligence data

programs.

70.     Defendants' wrongful conduct was a substantial factor in causing this harm as

stated more fully in the additional averments in this Complaint incorporated at length fully

herein.

71.     Defendants' interference with Plaintiffs' prospective economic advantage

with its current and future customers, as described above, was willful, malicious, oppressive, and

in conscious disregard of Plaintiffs rights, and Plaintiffs are therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

**WHEREFORE**, the Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000 together with punitive and compensatory damages and other compensation and award as granted by this Court.

## COUNT III
## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

72.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 71 of this Complaint as though fully set forth here.

73.     Plaintiffs had an expectancy in continuing advantageous economic relationships with current and prospective customers of Plaintiff's support services and intelligence data. These relationships contained the high probability of future economic benefit given the historical renewals of business in the form of profitable support service contracts and intelligence.

74.     Had Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Plaintiffs support customers would have initiated, renewed, or expanded support contracts and enterprise intelligence data with Plaintiffs rather than surreptitiously by the acts and omissions of the Defendants as specified more fully by incorporating all of the averments in this Complaint fully herein.

75.     Defendants knew or should have known about the economic relationship, described above, and knew, or should have known that these relationships would be interfered with and disrupted if Defendants failed to act with reasonable care in their access of Customer Connection and use of Plaintiff's Intelligence data.

76.    Defendants    failed    to    act    with    reasonable    care.    Instead,    they:

• gained unauthorized access to Plaintiffs computer systems through Plaintiffs' password-protected    website    in    violation    of    the    agreements    governing    such    access;

• gained unauthorized access to the Intelligence data and Support Materials available on Plaintiffs' computer systems through Customer Connection, in violation of the agreements governing such access, including by using log in credentials of customers with no right or license to    the    Intelligence    data    and    Support    Materials    taken    by    Defendants;

• breached the agreements governing access to, and use of, the website and the    Intelligence    data    and    Support    Materials    available    through    it;

• lured Plaintiffs' current and prospective customers by making promotional and marketing statements regarding Defendants' ability to provide support services for Plaintiffs intelligence data that were only possible because of Defendants' improper access to, and taking from,    Tactical    Rabbit's    computer    systems;    and,

• used information learned through the improper access to, and taking from, Plaintiffs' computer    systems    to    take    customers.

77.    Defendants' conduct was wrongful by a measure beyond the fact of the interference itself. Defendants gained unauthorized access to Plaintiffs' computer systems through Plaintiffs' password-protected website, breached the agreements governing access to, and use of, and wrongfully used the property that they found there to advertise their services, and otherwise obtain    and    retain    Plaintiffs    current    and    prospective    clients.

78.    This    conduct,    as    alleged    above,    constitutes    violations    of    numerous    state and federal statutes and codes, including, but not limited to, violation of the Federal Computer

Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., 18 U.S.C. § 1343, 18 U.S.C. § 1962, 18 U.S.C. § 1029, and violation of the Stored Communications Act, 18 U.S.C. §§ 2701.

79.    Defendants actions directly and proximately caused damages and loss of business for Plaintiffs who have acted reasonably under the circumstances in mitigating their damages and losses.

80.    As a result of Defendants' acts, the above-described relationships have been actually disrupted, causing certain current and prospective clients to contract with Defendants, instead of Plaintiffs, for their intelligence data services and intelligence data.

81.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic harm, including, but not limited to, loss of profits from sales from current and potential customers        of        Plaintiffs        intelligence        data        programs.

82.    Defendants' wrongful conduct was a substantial factor in causing this harm and directly resulted in the Plaintiffs losing hundreds of thousands of dollars, losing the contracts, customers and profits associated with the business Tactical Rabbit, Inc.    .

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000.

### COUNT IV
### UNFAIR COMPETITION
### VIOLATIONS OF PENNSYLVANIA 73 P.S. §201
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

83.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 82 of this Complaint as though fully set forth here.

84.    Defendants have engaged in unlawful business acts or practices by committing acts including computer fraud, trespass, breach of contract, interference with business

relationships, and other illegal acts and practices as alleged above, all in an effort to gain unfair competitive advantage over Plaintiffs.

85.    These unlawful business acts or practices were committed pursuant to business activity related to providing business applications intelligence data and related support and            maintenance            for            that            intelligence            data.

86.    The acts and conduct by falsely claiming that Plaintiffs (specifically Everett Stern) lacked integrity or was allegedly  responsible for acting in a criminal matter of Defendants constitute fraudulent, unlawful, and unfair competition as defined by Pennsylvania Unfair Trade Practice            and            Consumer            Protection            Law.

87.    Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of the law in Pennsylvania for competing unfairly against Plaintiffs under the following:

88.    The UTPCPL generally provides, in pertinent part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...are...unlawful." §73 P.S. 201-3. The UTPCPL permits any "person" to bring a private cause of action against another "person" for violation of the statute 73 P.S. §201-9.2(a). Further, the statute defines "person" as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entities." That term is employed to describe both the alleged victims and purported violators of the statute. 73 P.S. §201-2(2).

89.    Prohibiting unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, giving the Attorney General and District Attorneys certain powers and duties and providing penalties. The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1.  Short Title.--This act shall be known and may be cited as the "Unfair Trade Practices and Consumer Protection Law."

Section 2.  Definitions.--As used in this act.

(1)  "Documentary material" means the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription or other tangible document or recording, wherever situated.

(1.1)  "Internet service provider" means a person who furnishes a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and access to proprietary content, information, and other services as part of a package of services offered to consumers. ((1.1) added Nov. 29, 2006, P.L.1624, No.185)

(2)  "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities.

(3)  "Trade" and "commerce" mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

(4)  "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:

(i)  Passing off goods or services as those of another;

(ii)  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii)  Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(iv)  Using deceptive representations or designations of geographic origin in connection with goods or services;

(v)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(vi)  Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(vii)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(viii)  Disparaging the goods, services, or business of another by false or misleading representation of fact;

(ix)  Advertising goods or services with intent not to sell them as advertised;

(x)  Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xi)  Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(xv)  Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;

(xvi)  Making repairs, improvements, or replacements on tangible, real, or individual property, of a nature or quality inferior to or below the standard of that agreed to in writing;

(xvii)  Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively, and expressly stating:

(A)  the identity of the seller;

(B)  that the purpose of the call is to sell goods or services;

(C)  the nature of the goods or services; and

(xxi)  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

90.    Applying these statutory provisions with the case at bar, the Defendants unfairly competed with Plaintiffs by unfairly using false information in the form of disinformation campaigns directed at Plaintiffs for the purpose of directly harming the Plaintiffs by taking their customers and ruining the existing and prospective relationships of the Plaintiffs and their customers.

91.    The Defendants falsely claimed that Everett Stern, the principle behind the businesses Tactical Rabbit, Inc. was arrested for alleged criminal acts that were not true, were exaggerated and misrepresented to be worse and more egregious in order to cast Plaintiffs in an unfair negative light to damage their business relationships and contractual rights (both actual contracts and prospective contract rights) stemming from the March 30, 2022, Chester County matter described above.

92.    Defendants' conduct also constitutes trespass to chattels, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and unjust enrichment.

93.    Defendants have improperly and unlawfully taken commercial advantage of Plaintiff's confidential and proprietary information.

94.    In light of Defendants' conduct, it would be inequitable to allow Defendants to retain the benefit of the ill-gotten funds gleaned by unfairly competing with Plaintiffs, obtained

through the unauthorized and unlawful misuse of Tactical Rabbit's data, information, and property.

95.    Defendants' unfair business practices have unjustly minimized Tactical Rabbit's competitive advantage and have caused Tactical Rabbit to suffer damages by ostensibly needing to close their doors after being victimized by Defendants as stated more fully herein.

96.    As a result of such unfair competition, Tactical Rabbit has also suffered irreparable injury, and unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, whereby Tactical Rabbit has no adequate remedy at law.

97.    Defendants should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of The Pennsylvania Unfair Trade Practices Act  including, but not limited to, returning any revenue earned from the unlawful and unfair use of Tactical Rabbit's stolen property, and should be enjoined from further unlawful, unfair, and deceptive business practices.

**COUNT V**
**TRESPASS TO CHATTELS**
**(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

98.    Plaintiffs incorporates by reference the allegations of paragraphs 1 through 97 of    this    Complaint    as    though    fully    set    forth    here.

99.    At all times mentioned in this Complaint, Plaintiffs had legal title to and actual possession of its access-restricted internet-based computer system, on that support system, as described                                                                                          above.

100.    Defendants intentionally interfered with Plaintiffs use or possession of both and Plaintiffs related internal databases and systems, and the Intelligence data and Support Materials housed              for              licensed              access.                                .

101.    Defendants' trespass and interference proximately caused damage to Plaintiffs,

including, but not limited to, damage to the functionality of Plaintiffs computer system and data, damage to Plaintiffs rights to dominion and control over its property, and damage to the confidential nature of the information on Plaintiffs website, customer base and extremely sensitive information.

102.    As a result, Defendants caused Plaintiffs property to greatly diminish in value and deprived Plaintiffs of the intended use of its computer systems.

103.    Plaintiffs are entitled to recover any and all damages it sustained as a result of such trespass, in an amount to be determined at trial.

104.    Defendants' trespass interfered with, and damaged, the integrity, and functionality of Plaintiffs business operations, computer system, and data.

105.    Defendants will continue to commit such acts and other competitors will be encouraged to sweep Plaintiffs website, potentially to the point of denying effective access to Tactical Rabbit's customers and preventing Plaintiffs from using its systems and data for their intended purpose.

106.    Defendants' trespass therefore threatens to cause irreparable harm to Plaintiffs, for which Plaintiffs remedy at law is not adequate to compensate it for the injuries inflicted and threatened.

**WHEREFORE**, Plaintiffs seek judgment against Defendants in an amount in excess of $75,000.

**COUNT VI**
**UNJUST ENRICHMENT/RESTITUTION**
**(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

107.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 106 of this Complaint as though fully set forth here.

108.    Defendants unjustly received benefits in the form of stolen data and customers at the expense of Plaintiffs through their wrongful conduct, including Defendants' breach of the agreements governing access to and use of Customer Connection, interference with Plaintiffs business relationships and other unfair business practices, as well as Defendants' trespass on, and computer fraud concerning the Intelligence data and proprietary which took substantial time and money for Plaintiffs to develop.

109.    Defendants continue to unjustly retain these benefits at the expense of Plaintiffs.

110.    It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

111.    Plaintiffs are accordingly entitled to full restitution of all amounts in which Defendants have been unjustly enriched at their expense.

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000.

### COUNT VII
### NEGLIGENCE
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

112.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 111 of this Complaint as though fully set forth here.

113.    Defendants owed Plaintiffs a duty of care to act reasonably in regard to their respective conduct and relationships with Plaintiffs.

114.    As set forth more specifically by reference herein, the Plaintiffs incorporate the averments of this Complaint as if set forth fully herein.

115.    Defendants breached duty of care owed to Plaintiffs when they acted unreasonably under the circumstances by failing to supervise, train, manage and oversee their employees,

subcontractors and assigns who impacted the Plaintiffs' business by virtue of their respective roles and positions in regard to and in relation to Plaintiffs business operations.

116.    The negligence of Defendants was the direct and proximate cause of losses and damages to Plaintiffs who as a direct and proximate result of their failure to use ordinary care on working with Plaintiffs, in performing various tasks for, with, on behalf and in conjunction with the  work of Plaintiffs by failing to supervise persons employed or working with or on behalf of Plaintiffs resulting in Plaintiffs losing their customers and hundreds of thousands of dollars in lost fees, commissions and profits.

117.    The Defendants failed to properly analyze data, failing to use security to protect and preserve valuable data owned by Plaintiffs as proprietary data that Defendants failed to handle safely and properly, failing to scrutinize intelligence data and reports regarding the acts of Everett Stern to ensure that said data was accurate and by acting in a reckless manner so as to create opportunity for misappropriation of this proprietary data directly and proximately causing the business Tactical Rabbit, Inc. to fail and for Everett Stern to lose hundreds of thousands of dollars in lost business as a consequence of these failures by Defendants.

118.    The negligence conduct of Defendants proximately and directly resulted in Plaintiffs suffering massive economic losses, the loss of existing and future business contracts and damage to Plaintiffs in the form of economic and non-economic damages like lost fees, lost profits, extreme anxiety, and hardship.

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000.

**Mark Thomas Sophocles, LLC**

By: _____

**Mark T. Sophocles, Esquire**
**Pa. Supreme Court Id# 74998**
**21 Industrial Blvd., Suite 201**
**Paoli, Pa 19301**
**Phn: 610.651.0105**
**Fax: 610.651.0106**

## VERIFICATION

Plaintiff, Everett Stern, hereby deposes and states, that the undersigned, in the within action, and as such is authorized to make this Verification on his own behalf; that Plaintiffs Civil Action Complaint, in accordance with the representations made by Plaintiffs and that the same are true and correct to the best of his knowledge, information and belief; and that this Verification is given pursuant to the penalties of 18 Pa C.S.A. section 4904 relating to unsworn falsification to authorities.

**EVERETT STERN**