MARK THOMAS SOPHOCLES, LLC
MARK T. SOPHOCLES, ESQUIRE
21 INDUSTRIAL BLVD., SUITE 201
PAOLI, PA 19301
PA SUPREME COURT ID # 74998
610.651.0105
FAX 610.651.0106
MARK@MARKSOPHOCLES.COM

**ATTORNEY FOR PLAINTIFFS**
**EVERETT STERN**
**TACTICAL RABBIT, LLC**

**JURY TRIAL DEMANDED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL LAW DIVISION

| | |
|---|---|
| **EVERETT STERN**<br>**243 Falcon Ridge Road**<br>**Saint Augustine, FL 80202**<br><br>and<br><br>**TACTICAL RABBIT, INC**<br>**2929 Arch St, Ste 1700**<br>**Philadelphia, PA, 19104**<br><br>                  **Plaintiffs,**<br>**V.**<br><br>**WILLIAM RUZICH**<br>**314 Mockingbird Lane**<br>**Waterloo, Il 62258**<br><br>and<br><br>**LINDSAY MORAN**<br>**218 Taylor Avenue**<br>**Annapolis, MD 21401**<br><br>and<br><br>**KYESON UTLEY**<br>**3969 Prairie Creek**<br>**New Braunfels, TX, 78132**<br><br>and<br><br>**DAVID MARCHANT**<br>**176 Shady Hollow** | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**CASE: 2:24-cv-01222-WB** |

Nederland, CO, 80466

and

**KYC NEWS, INC. T/A/D/B/A**
**OFFSHOREALERT**
113 SE 1st Avenue
Suite #173
Miami, FL 33131

and

**ARIZONA STATE UNIVERSITY**
1200 E University Blvd
Tucson, AZ 85721

and

**ARACARI PROJECT**
6801 Jefferson St. NE.
Suite 150
Albuquerque, NM 87109

and

**SPYSCAPE ENTERTAINMENT**
928 8th Avenue
New York, NY 10019
                                    **Defendants.**

## PLAINTIFFS', EVERETT STERN AND TACTICAL RABBIT INC. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs Tactical Rabbit, Inc., and Everett Stern, (collectively, "Plaintiffs") respectfully move the Court for leave to file the attached Amended Complaint for clarifying and describing in more specific terms the averments, factual allegations and causes of action against Defendants ("Amended Complaint").

1.      Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

2.      Plaintiffs move to file the Amended Complaint within the time permitted by the Court such that allowing Plaintiffs to file the Amended Complaint would serve justice and promote judicial efficiency.

3.      Further, there is no substantial or undue prejudice, bad faith, undue delay, or futility to the Court or the litigants by virtue of this filing.

4.      Through the Amended Complaint, Plaintiffs seek to add specific and more detailed factual allegations that allow the Defendants to better understand the nature of these somewhat unique and complex factual allegations in juxtaposition with the causes of action.

5.      Plaintiffs believe that Defendants engaged in a systemic, coordinated effort working together practices that amount to a civil conspiracy, that violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law and to correct typographical errors as set forth in the proposed Amended Complaint.

6.      Plaintiffs remain focused on obtaining monetary relief in this matter, including restitution for Plaintiffs and the disgorgement of Defendants' ill-gotten gains.

7.      For all these reasons, and those stated in the attached memorandum in support, Plaintiffs respectfully request that the Court grant Plaintiffs leave to file the attached Amended Complaint. Also attached is a proposed order.

**WHEREFORE**, in consideration of the Motion for Leave to file this Amended Complaint, the Movants seek Order from this Court granting this Motion.

Respectfully submitted,

Mark T. Sophocles, Esquire

# EXHIBIT "A"

MARK THOMAS SOPHOCLES, LLC        ATTORNEY FOR PLAINTIFFS
MARK T. SOPHOCLES, ESQUIRE        EVERETT STERN
21 INDUSTRIAL BLVD., SUITE 201        TACTICAL RABBIT, LLC
PAOLI, PA 19301
PA SUPREME COURT ID # 74998
610.651.0105
FAX 610.651.0106
MARK@MARKSOPHOCLES.COM        JURY TRIAL DEMANDED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL LAW DIVISION

| | |
|---|---|
| **EVERETT STERN**<br>243 Falcon Ridge Road<br>Saint Augustine, FL 80202<br><br>**TACTICAL RABBIT, LLC**<br>2929 Arch St, Ste 1700<br>Philadelphia, PA, 19104<br><br>          **Plaintiffs,**<br>**V.**<br><br>**WILLIAM RUZICH**<br>314 Mockingbird Lane<br>Waterloo, Il 62258<br><br>**LINDSAY MORAN**<br>218 Taylor Avenue<br>Annapolis, MD 21401<br><br>**KYESON UTLEY**<br>3969 Prairie Creek<br>New Braunfels, TX, 78132<br><br>**DAVID MARCHANT**<br>176 Shady Hollow<br>Nederland, CO, 80466<br><br>**KYC NEWS, INC. T/A/D/B/A**<br>**OFFSHOREALERT**<br>113 SE 1st Avenue<br>Suite #173<br>Miami, FL 33131 | **CASE: 5:24-cv-01179-JLS** |

**ARIZONA BOARD OF REGENTS**
**2700 North Central Avenue**
**Suite 400**
**Phoenix, AZ 85004**

**ARIZONA STATE UNIVERSITY**
**1151 S Forest Avenue**
**Tempe, AZ 85281**

**ARACARI PROJECT**
**6801 Jefferson St. NE.**
**Suite 150**
**Albuquerque, NM 87109**

**SPYSCAPE ENTERTAINMENT**
**928 8th Avenue**
**New York, NY 10019**
                                    **Defendants.**

## CIVIL ACTION
## AMENDED COMPLAINT

**I.      PARTIES**

1.      Plaintiff, Everett Stern, an adult individual who resides in 243 Falcon Ridge Road, in Saint Augustine, Florida 80202 and is the principle, founder, equitable owner and operator of the business that is co-Plaintiff in this action.

2.      Plaintiff, Tactical Rabbit, LLC is a Pennsylvania limited liability company with an office located at 2929 Arch St, Ste 1700 in Philadelphia, PA, 19104.

3.      Defendant, William Ruzich is an adult individual who resides at 314 Mockingbird Lane in Waterloo, Il 62258 who formerly worked with and for Plaintiffs.

4.      Defendant,  Lindsay Moran is an adult individual who resides at 218 Taylor Avenue Annapolis, MD 21401 who formerly worked with and for Plaintiffs.

5.    Defendant, Kyeson Utley is an adult individual who resides at 3969 Prairie Creek, New Braunfels, TX, 78132 who formerly worked with and for Plaintiffs.

6.    Defendant, David Marchant is an adult individual who resides at 176 Shady Hollow, Nederland, CO, 80466 who contracted with Plaintiffs for services and developed a business relationship with Plaintiffs and their employees (co-Defendants)

7.    Defendant, KYC News, Inc. trading as and doing business as the business OFFSHOREALERT is the trade name for KYC News, Inc., a Florida based Corporation located at 113 SE 1st Avenue, Suite #173, Miami, FL 33131.

8.    Defendants ARIZONA BOARD OF REGENTS (ABOR) as the governing body who manages, supervises, controls, and operates the Arizona State Univaserity and is located at 2700 North Central Avenue, Suite 400, Phoenix, AZ 85004.

9.    Defendants, ARIZONA STATE UNIVERSITY, as a public state university located at 1151 South Forest Avenue, Tempe, AZ 85281.

10.    Defendants, THE ARACARI PROJECT located at 6801 Jefferson St. NE. Suite 150 in Albuquerque, NM 87109, and is the formation of former contractors for Defendants Lindsay Moran, Kyeson Utley, and William Ruzich.

11.    Defendants, SPYSCAPE ENTERTAINMENT, have a principal place of business located at 928 8th Avenue in New York, NY 10019.

## II.    **BACKGROUND**

12.    Plaintiff, Everett Stern is an adult individual, founded, created, and operated co-Plaintiff firms Tactical Rabbit, LLC, and Intel, Inc. to perform national and international complex and sophisticated privately owned intelligence gathering services for clients handling complex,

information and intelliugence gathering and analysis for about a decade prior to the salient events set forth more specifically in this Amended Complaint.

13.     The Plaintiffs collectively operated these businesses in Philadelphia and suburban Pennsylvania at all salient and relevant times herein and spent thousands of dollars and hours building and investing in the success of the Tactical Rabbit, LLC including but not limited to hiring professionals to help operate the business, spending thousands on I.T. and data control including exceptional time and monetary commitments to help Spyscape grow and prosper in part from the finbancial and time commitments made by Plaintiffs for direct benefit of Spyscape who summarily disavowed Plaintiffs' contributions prior to severing the business relationship with Plaintiffs and Spyscape directly and proximately causing Plaintiffs to lose hundreds of thousands of dollars and loss of business opportunities.

14.     Everett Stern (who personally and through Tactical Rabbitt, LLC dedicated hundreds of hours of time and thousands of dollars advancing the relationship between Plaintiffs and Spyscape before Spycape terminated the relationship) is a public figure having run for United States Senate in the Commonwealth of Pennsylvania, and his background is best summarized in the forward to his book authored by retired CIA professional Bob Dougherty (See attached Exhibit "1").

15.     The juxtaposition of Stern with the events of January 6, 2021, and sequalae of events and circumstances surrounding his testimony before the Congressional January 6 Committee is captured by the January 21, 2022, article in The Guardian (See Exhibit "2" Guardian article from 1/21/22) established Stern in a public msanner thus making him a target and tool for the morass of political division in this Country.

16.     The circumstances surrounding Stern's testimony before the Congressional January 6 Committee is captured by the February 4, 2022, article in The New York Times (See Exhibit "3" The New York Times article from 2/04/22).

17.     Newsweek Magazine published an article referencing Stern in an article published October 25, 2022, attached hereto as Exhibit "4" (See Exhibit "4" Newsweek Article October 25, 2022).

18.     The Plaintiffs primarily ran the private intelligence gathering and analysis services business for private clients successfully from 2017 through and including 2022 using the Tactical Rabbit corporate name and reputation to garner and fulfill many lucrative services contracts that allowed the Plaintiffs to become financially successful as the client relationships and contracts were undisturbed by Defendants until on or about October 27, 2022.

19.     These service contracts were performed by Plaintiffs who earned fees and were paid in conjunction with the services that they fulfilled, consummated efficaciously Tactical Rabbit, LLC earning gross revenues of $1,000,000 from 2017-2021.

20.     As part of effectively providing services to their clients, Tactical Rabbit, LLC contracted with certain Defendants who were entrusted with data, materials and client specific information and paid as subcontractor to help perform intelligence gathering services by Plaintiffs.

21.     Plaintiffs hired Defendants Moran, Ruzich, Marchant and Utley to work with them in the business he started for private intelligence services called Tactical Rabbit, LLC and Intel, Inc., pursuant to contract agreements that memorialized the terms and conditions of their retention and scope of performing services as set forth in the attached contracts for each member of these "Contracting Defendants" as the following:

Exhibit "5" Contract between Tactical Rabbit, LLC, and William Ruzich

Exhibit "6" Contract between Tactical Rabbit, LLC, and Kyeson Utley

Exhibit "7" Contract between Tactical Rabbit, LLC  and

Exhibit "8" Contract between Lindsey Moran and Tactical Rabbit, LLC

22.    At an unknown point in time after leaving Tactical Rabbit in this manner, Ruzich also contacted one of Tactical Rabbit's clients that he had knowledge of and in some way convinced them to work with Aracari. This client was likely Morgan Huntley, as Aracari's material mentions a cryptocurrency fraud case exactly like Huntley's. This theft of trade secrets, clients, and contractors disrupted Tactical Rabbit for several months and caused significant loss of income. Another likely person is Douglas McAllister, He was a client of mine that Acarari Project stole, and there are text messages from Acarari Project from spoofed numbers, sent to me that mention Douglas Mcallister as proof.

23.    Prior to starting Aracari, William Ruzich, Lindsay Moran, and Kyeson Utley were all employed as contractors with the private intelligence agency Tactical Rabbit. On October 27, 2022, Ruzich privately called several of Tactical Rabbit's contractors and interns, including India Towers, Ethan Epping, and Megan Edwards, falsely informing them that the company's CEO, Everett Stern, was under FBI investigation for wire fraud. Many of these contractors and interns would go on to join The Aracari Project, breaking contract with Tactical Rabbit with little to no communication in the process. Aracari Project members, falsely stated that Plaintiff, Everett Stern was under investigation by the FBI for wire fraud. Plaintiff was NEVER (Empasis added), under FBI investigation. The entire story was made up to harm Plaintiffs.

24.    The Aracari Project, and connections and potential illegal activity. The Aracari Project is a private intelligence company headed by William Ruzich, Lindsay Moran and formerly by Kyeson Utley, who left or was ousted from the company in March 2024.

25.    Aracari's website and promotional material advertise that they are willing to go and have gone "beyond legal solutions" and employ "black hat" or "blackhat" hackers, individuals who use technological skill to conduct highly illegal and harmful activity towards individuals and businesses alike. These illegal actions include but are not limited to ransomware, leaking of personal information, and DDOS attacks.

26.    Spyscape is a company that offers spy-themed entertainment services and parties, as well as a museum. Their subsidiary, SPYEX, books individuals involved in the intelligence community for educational purposes or speaking events. Everett Stern was offered a partnership with SPYEX that was mutually beneficial until he was removed from the platform over stated "complaints". This came only a few months after William Ruzich left Tactical Rabbit along with many of its contractors and interns. Lindsay Moran, also a former contractor with Tactical Rabbit, has been a partner with SPYEX for a significant amount of time and had communications with the same individuals who negotiated Stern's partnership.
The Aracari Project's website was not yet public at this point, but Moran, Ruzich and Utley were all in collaboration at that time. Lindsay Moran and The Aracari Project as a whole are responsible for the wrongful and unreasonable deplatforming of Everett Stern from SPYEX.

27    The Contracting Defendants, without the consent, knowledge or permission of Plaintiffs purposefully tried to scuttle and interfer with the existing and prospective contractual relationships that Plaintiffs had with their customers by willfully misrepresenting Summary Offense of Disorderly Conduct that stem from a March 30, 2022 incident docketed at MJ-15203-0000096-2022.

28.    The Plaintiffs contracted with Defendants David Merchant and Off-Shore during the salient time period of 2017-2021 when Merchnt and Off-Shore had access to sensitive information

used by Plaintiffs to successfully iperte their business until these Defendants (acting in concert with Contracting Defendants et al) made a concerted effort to eliminate Plaintiffs business whikle surreptitoouslty absconding their business operations directly and proximately causing Plaintiff's to shut down Tactical Rabbitt, LLC.

29.     The Aracari Project is intrinsically linked to the news outlet OffshoreAlert, run by David Marchant. Aracari has sponsored multiple events run by OffshoreAlert for an unknown amount of money, and in return has had William Ruzich featured as a speaker at said events.

30.     David Marchant has run negative articles on Tactical Rabbit's CEO, Everett Stern, only a short time after the founding of Aracari. Tactical Rabbit was a paying client of OffshoreAlert for a time, and the articles were released only after the business relationship was terminated and after William Ruzich founded Aracari. It can be inferred that David Marchant and OffshoreAlert are not only biased against Tactical Rabbit and Everett Stern, but are profiting from defaming them.

31.     Plaintiffs took all reasonable measures under the circumstances to mitigate their damages and losses from the damages and losses attributable to the collective misconduct of the various Defendants as set forth more fully herein.

32.     For instance,  Plaintiffs relied upon the Defendants ARIZONA BOARD OF REGENTS (ABOR) as the governing body who runs and operates the Defendants ARIZONA STATE UNIVERSITY, as a public state university participated in a unique internship program with Plaintiffs wherein Plaintiffs, afforded Arizona State University student William B. Ruzich the rare opportunity to intern with Plaintiffs in order to garner real world experience in this highly specialized field.

33.     Plaintiffs notified Defendants ABOR and Arizona State University of their malfeasance by email on or about November 7, 2022.

34.     Defendants ABOR and Arizona State University owed Plaintiffs a duty of care to ensure that any intern placed with Plaintiffs businesses would be honest, of high moral ethical character, and that they would not cause damages to Plaintiffs.

35.     Defendants ABOR and Arizona State University breached the duty of care owed to Plaintiffs by failing to ensure that the intern who was an actively registered student enrolled with the Arizona State University would act honestly and without selfish disregard for the rights of Plaintiffs who operated the businesses that Intern William Ruzich became interested in.

36.     As a direct and proximate cause of the negligent acts of ABOR and the Arizona State University as stated more fully throughout this Complaint, as if incorporated at length herein by reference including, but not limited to, failing to screen the intern, failing to train the intern, failing to manage or supervise interns placed through the ABOR and Arizona State University.

37.     The afore stated negligent acts of these Defendants have directly and proximately caused damages to Plaintiffs in the form of hundreds of thousands of dollars of lost contracts and business relationships that were destroyed, misappropriated, taken for conversion purposes, and absconded as a direct and proximate consequence of the acts of these Defendants who patently failed to provide any oversight, supervision, or management of the intern.

38.     The Plaintiffs incurred actual damages in the form of lost contracts, lost prospective contracts, the misappropriation of Plaintiffs' highly valuable electronic data, customers, business operations, reports, and materials in excess of $1,000,000.

39.    The Plaintiffs have made every effort to mitigate their damages reasonably and fully under the circumstances but have lost millions of dollars but for the acts, omissions, and failures of ABOR and Arizona State University.

40.    All of the Defendants were granted access to exceptionally sensitive data and proprietary information that Plaintiffs provided to them pursuant to their Agreements (See Exhibits "5"-"8").

41.    The Arizona Board of Regents and Arizona State University failed to screen, oversee, manage, supervise, and do proper background research on interns who they placed in Plaintiffs' company and as a direct and proximate result of these acts/omissions directly and proximately caused damages to Plaintiffs.

42.    Similarly, the contracting Defendants acted dishonestly to denigrate the work of Plaintiffs in order to undermine the Plaintiffs business operations, to convert existing customers of Plaintiffs for their own, ill-gotten pecuniary gain.

43.    These contracting Defendants worked with Stern and Tactical Rabbit until they worked to perpetuate a cohesive, misinformation campaign against Stern, aimed at discrediting him in the eyes of his clients and customers based upon, and fully predicated upon misrepresenting Stern and Tactical Rabbit in a negative and pejorative manner to ostensibly blackball him in this niche industry while Merchant and Off-Shore used their portal to act in concert with co-Defendants to effectuate the destruction and loss of Tactical Rabbit and Stern.

44.    All of the Defendants in this action had a contractual relationshiop with Plaintiffs at one time or another and sacrosanct to any valid contract is the duties of good faith and fair dealing implicit to every agreement.

45.    Defendants by acting together to eliminate or cancel Stern and Tactical Rabbit were essential and salient actors who by virtue of their status as trusted contractors to Plaintiff's helped perpetrate fraudulent misrepresentative factual allegations against Plaintiffs in order to provide sunstantial assistance and active contribution to taking Tactical Rabbit's customers, for Stern's demise as substantial contributors to the damages set forth herein.

46.    The Defendants acted with a common purpose and goal: to ostensibly "cancel" Stern, to take his customers and to eliminate his business predicated upon the falsely contrived misrepresentations about Stern and hius character all with the achieved goal of ruining Plaintiffs business operations.

47.    The Defendants had actual and constructive notice of their aiding and abetting of the fraudulent misconduct exhibitively actively and by willful omission of the truth in order to make financial gains by taking Plaintiff's customers, employees and business methods.

48.    Defendants are liable to Plaintiffs under section 876 of the Restatement (Second) of Torts (section 876), which provides:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

49.    The Defendants (except ABOR and ASU) worked together to effectivelty takedown Plaintiffs, to eliminate the Tactical Rabbit business, taking their customers, cancelling Stern and by design and with the purpose of stealing customers and harming competition.

50.     Under Pennsylvania Law, the common law tort of unfair competition encompasses misleading statements and the usurpation of competitor's products rights. The Pennsylvania Supreme Court has stated that to allow "false and misleading representations" in outreach to customers is to "countenance unfair competition," Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 415 Pa. 276, 284 (1964). See also Spring Steels, Inc. v. Molloy, 400 Pa. 354, 364 (1960) describing unfair competition where "the defendants' action consisted of… fraud or deception in its dealings with third parties or consumers").

51.     The Court has also acted to safeguard exclusive product rights, finding that a competitor's efforts to "pirate" a media company's news products without authorization, involved violations of property rights and unfair competition. See Pottstown Daily News Pub. Co. v. Pottstown Broadcasting Co, 411 Pa. 383, 394 (1963) (observing that "the protection which the law affords to competition does not and should not countenance the usurpation of a competitor's investment and toil").

52.     The Contracting Defendants acted in concert with each other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

53.     Defendants goals and purpose were to interfere with both the existing contractual rights of Plaintiffs and to tortiously interfere with the prospective contractual rights of Plaintiffs via this systemic, focused disinformation campaign against Plaintiffs to interfere with Plaintiffs' existing business relationships and to willfully try to ruin Plaintiffs' ability to garner new or prospective customers.

54.     In 2021-2022, Plaintiffs spent hundreds of hours and thousands of dollars trying to adopt a co-marketing event with and for Defendant Spyscape Entertainment by using Stern's resources for the purpose of jointly growing and developing branded marketing materials for business collaboration but surreptitiously was dismissed from this opportunity and business venture by the willful collective collaborative efforts of Defendants.

55.     To state a claim for tortious interference with prospective contractual relations, a plaintiff must plead: (1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. *Glenn v. Point Park College*, 441 Pa. 474, 479-480 (1971).

56.     The actions of contracting defendants was aimed at ruining existing contractual relationships that Plaintiffs had both with their existing customers and between Plaintiffs and the contracting defendants who worked with Plaintiffs.

57.     More specifically, the prospective contractual relationship is "something less than a contractual right, something more than a mere hope." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 209 (1979). The standard is an objective one, namely, whether the evidence demonstrates a "reasonable probability" that a contract would have arisen absent the defendant's interference. *Id.* at 209–210 (quoting *Glenn*, 441 Pa. at 480–481). The reasonableness of the Plaintiff's expectation generally involves questions of fact. *See KBT Corp v. Ceridian Corp.*, 966 F.Supp. 369, 376 (E.D. Pa. 1997). To show a prospective relationship, plaintiffs may identify specific customer relationships or a mechanism through which the plaintiff would ordinarily secure new contracts. *Id.*

58.    Contracting Defendants acted with direct information that was proprietary in nature to Plaintiffs against their interests by design and with intent to harm Plaintiffs.

59.    Pennsylvania state law allows for recovery of claims grounded in interfering with existing and prospective contractual relationships under the RESTATEMENT OF THE LAW – TORTS.

Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relation with another is liable to the other for the harm caused thereby. *REST TORTS § 766*

60.    One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation. *REST 2d TORTS § 766B.*

61.    The acts of Defendants  in concert was "purposeful action specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring." Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 212 (3d Cir. 2009).

62.    Pennsylvania courts have looked to § 766B of the Restatement (Second) of Torts when evaluating whether the defendant took purposeful action. See International Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1274 (Pa. Super Ct., 2012). The

Restatement provides that a defendant's interference is deemed intentional when "the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766B cmt. d (1979).

63.     Plaintiffs trusted Defendants and entrusted said Defendants with specific information that they knew was highly valuable to Plaintiffs in terms of the customer/client names and information regarding  the specific services rendered that establish unequivocally that Defendants had no legal justification or privilege to tortiously interfere with the Plaintiffs service contracts with their customers and clients.

64.     The Defendants lacked any justification  or privilege to justify taking the existing customers and clients of Plaintiffs and interfere with their existing and prospective contractual rights.

65.     In Pennsylvania, the plaintiff must demonstrate a lack of privilege or justification as part of the prima facie case of tortious interference, and failure to do so results in dismissal of the claim. See Thompson Coal Co., 488 Pa. at 208 n.7.

66.     The Plaintiffs have lost actual damages of millions of dollars of service contracts that existed and that were prospective in nature as a direct and proximate cause of the malfeasant unlawful misconduct of the Defendants as set forth more fully but incorporated by reference as if fully set forth herein  throughout this Complaint.

## III.    **JURISDICTION**

67.     This Court has subject-matter jurisdiction over this action pursuant to  28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). This Court has supplemental subject matter jurisdiction over the pendent Pennsylvania state law claims under 28 U.S.C. § 1367, because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy

and derive from a common nucleus of the same substantive common set of operative facts and factual allegations by and between for and against the Parties to this litigation who worked with, for and on behalf of the Plaintiffs business.

## IV.    <u>VENUE</u>

68.    At all salient and relevant times referenced herein the Plaintiffs primarily operated their intelligence gathering services in the City and County of Philadelphia and in the Pennsylvania suburbs outside Philadelphia (specifically in Chester County Pennsylvania) which are all collectively located in the geographical region that establishes proper venue in the Eastern District of Pennsylvania. For these reasons, venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the dispute occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

**<u>COUNT I</u>**
**<u>BREACH OF CONTRACT</u>**
**<u>(BY PLAINTIFFS, EVERETT STERN, TACTICAL RABBIT, LLC.,</u>**
**<u>AGAINST CONTRACTING DEFENDANTS, MORAN, UTLEY AND RUZICH)</u>**

69.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 68 of this Amended Complaint as though fully set forth here.

70.    Defendants agreed to be bound by the Agreement when Defendants agreed to work with Plaintiffs to perform specific services for Plaintiffs who in return provided monetary remuneration to said Defendants for their services. These Defendants were entrusted with access to Plaintiffs highly specialized and unique business operations that successfully existed to provide extremely sensitive intelligence gathering services to clients nationally and internationally involving a plethora of complex issues.

71.     When Plaintiffs trusted Defendants with access to this highly confidential and proprietary set of information, this information was almost entirely stored electronically by Plaintiffs who used extraordinary measures to secure and lock down this electronic information from misappropriation.  The electronic data and information that was owned by Plaintiffs who spent a career and hundreds of thousands of dollars of money, time, and resources to grow, develop, service, and curate over decades of time, based upon strong personal relationships.

72.     The electronic data and information owned by Plaintiffs but entrusted to Contracting Defendants by virtue of the existence of their specific contracts (Exhibits A-D) had independent value that once misappropriated, had instant financial value, and was instantly monetized after misappropriated by Defendants, who took Plaintiffs customers by engaging in a systemic, false disinformation campaign against Plaintiffs aimed at converting existing and prospective contractual rights of Plaintiffs.

73.     The Contracting Defendants wantonly breached the duties of good faith and fair dealing by usurping the customers and clients of Plaintiffs for their own ill-gotten pecuniary gains. The duties of good faith and fair dealing are the bedrocks of how courts in the Commonwealth of Pennsylvania interpret contracts. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. Restatement (Second) of Contracts § 205 (1985).  In Pennsylvania, the law is clear that "[i]n the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the

contract must be implied." *Daniel B. Van Campen Corp. v. Building & Construction Trades Council*, 195 A.2d 134, 136-137 (Pa. Super. Ct. 1963).

74.    The covenant of good faith and fair dealing, although *implied* in every contract, is used *to interpret the contract* and generally does not give rise to a separate cause of action, either in tort or contract. Therefore, an implied duty of good faith will be read into the performance of every agreement so that the court may evaluate whether the terms of an agreement have been breached.  However, if the court determines there was a breach, the consequence will be breach of contract rather than an independent breach of a duty of good faith and fair dealing. While Pennsylvania law does not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim the Courts simply caste these claims as breach of contract claims. *McHale v. NuEnergy Group*, No. 01-4111, 2002 U.S. Dist. LEXIS 3307, at *23 (E.D.Pa. Feb. 27, 2002). For that reason, a claim based on breach of the covenant of good faith and fair dealing, when embedded within a complaint that also alleges breach of contract, will be regarded by the courts as nothing more than a carbon copy of the breach of contract claim.

75.    The facts of this case confirm that the Contracting Defendants by acting with bad faith in terms of taking the Plaintiffs customers/clients for their own businesses instead of acting honestly in good faith by fulfilling the contractual obligations terms and conditions.  The breach of the implicit duties of good faith and fair dealing are axiomatically established by the Contracting Defendants wanton disregard for the existing and prospective contractual rights of Plaintiffs without justification or privilege instead solely to take the Plaintiffs clients and customers for their own businesses in the same unique intelligence gathering services business.  The Contracting

Defendants used false information as the fake predicate to create disinformation about Plaintiffs to scuttle Plaintiffs contractual rights.

76.    Plaintiffs Tactical Rabbit has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement.

77.    Defendants have breached the Agreement by, among other things:

Competing with Plaintiffs, misappropriating the proprietary information of the Plaintiffs, violating the solicitation and similar components of these Agreements as specifically set forth in Exhibits 5-8 collectively incorporated by reference at length herein.

78.    The Contracting Defendants acted with the purpose and direction of taking the contracts that Plaintiffs had without a legitimate business purpose contacting clients; and, by using materials in ways other than the furtherance of a relationship with Tactical Rabbit et al.

79.    As a direct and proximate consequence of the above stated facts and a result of Defendants' Breach of the Agreement, Defendants have caused damages to Tactical Rabbit in an amount to be proven at trial in excess of hundreds of thousands of dollars of misappropriated service fees, commissions and sums lost by Plaintiffs as a direct and proximate result of the breach in contract by the Contracting Defendants as stated mnore fully as if incorporated at length herein.

**WHEREFORE**, the Plaintiffs seek judgment in their favor against Contracting Defendants  in an amount in excess of $75,000 together with other compensation and award as granted by this Court.

**COUNT II**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**AND TORTIOUS INTERFERENCE OF CONTRACT RIGHTS**
**(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

80.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 79 of this Complaint as though fully set forth here.

81.     Plaintiffs had an expectancy in continuing and advantageous economic relationships with current and prospective customers of Tactical Rabbit's support services.

82.     These relationships contained the probability of future economic benefit in the form of profitable support service contracts and intelligence data licenses. Had Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Tactical Rabbit support customers would have initiated, renewed, or expanded support and services contracts and intelligence data with Tactical Rabbit rather than Defendants.

83.     Defendants were aware of these economic relationships and intended to interfere with and disrupt them by wrongfully:

• gaining unauthorized access to Plaintiffs' customers through Tactical Rabbit's password-protected website in violation of the agreements governing such access;

• gaining unauthorized access to the Intelligence data and materials available on Plaintiffs computer systems in violation of the agreements governing such access;

• breaching the agreements governing access to, and use of, the website and the materials available through it;

• luring Plaintiffs current and prospective customers by making promotional and marketing statements regarding Defendants' ability to provide support services for Tactical Rabbit intelligence data that were only possible because of Defendants' improper access to, and taking from, Tactical Rabbit's computer systems; and

• using information learned through the improper access to, and taking from, Plaintiffs' computer systems for their customers.

84.    Defendants' conduct was wrongful by a measure beyond the fact of the interference itself. Defendants misused unauthorized access to Plaintiffs' customers available through the business, and wrongfully used the property to advertise their services, and otherwise obtain and retain Plaintiffs current and prospective clients.

85.    Defendants' conduct also constitutes trespass to chattels, breach of contract, and unjust enrichment.

86.    As a result of Defendants' acts, the above-described relationships have been actually disrupted, causing certain current and prospective support clients to contract with Defendants instead of Plaintiffs for their intelligence data support and maintenance and, in some cases, for their intelligence data.

87.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic harm, including, but not limited to, loss of profits from sales or licenses to current and potential customers of Plaintiff support services and enterprise intelligence data programs.

88.    Defendants' wrongful conduct was a substantial factor in causing this harm as stated more fully in the additional averments in this Complaint incorporated at length fully herein.

89.    Defendants' interference with Plaintiffs' prospective economic advantage with its current and future customers, as described above, was willful, malicious, oppressive, and in conscious disregard of Plaintiffs rights, and Plaintiffs are therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

**WHEREFORE**, the Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000 together with punitive and compensatory damages and other compensation and award as granted by this Court.

## COUNT III

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

90.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 89 of this Complaint as though fully set forth here.

91.    Plaintiffs had an expectancy in continuing advantageous economic relationships with current and prospective customers of Plaintiff's support services and intelligence data. These relationships contained the high probability of future economic benefit given the historical renewals of business in the form of profitable support service contracts and intelligence.

92.    Had Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Plaintiffs support customers would have initiated, renewed, or expanded support contracts and enterprise intelligence data with Plaintiffs rather than surreptitiously by the acts and ommissions of the Defendants as specified more fully by incorporating all of the averments in this Complaint fully herein.

93.    Defendants knew or should have known about the economic relationship, described above, and knew, or should have known that these relationships would be interfered with and disrupted if Defendants failed to act with reasonable care in their access of Customer Connection and use of Plaintiff's Intelligence data.

94.    Defendants failed to act with reasonable care. Instead, they:

• gained unauthorized access to Plaintiffs computer systems through Plaintiffs' password-

protected website in violation of the agreements governing such access;

- gained unauthorized access to the Intelligence data and Support Materials available on Plaintiffs' computer systems through Customer Connection, in violation of the agreements governing such access, including by using log in credentials of customers with no right or license to the Intelligence data and Support Materials taken by Defendants;

- breached the agreements governing access to, and use of, the website and the Intelligence data and Support Materials available through it;

- lured Plaintiffs' current and prospective customers by making promotional and marketing statements regarding Defendants' ability to provide support services for Plaintiffs intelligence data that were only possible because of Defendants' improper access to, and taking from, Tactical Rabbit's computer systems; and,

- used information learned through the improper access to, and taking from, Plaintiffs' computer systems to take customers.

95.     Defendants' conduct was wrongful by a measure beyond the fact of the interference itself. Defendants gained unauthorized access to Plaintiffs' computer systems through Plaintiffs' password-protected website, breached the agreements governing access to, and use of, and wrongfully used the property that they found there to advertise their services, and otherwise obtain and retain Plaintiffs current and prospective clients.

96.     This conduct, as alleged above, constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., 18 U.S.C. § 1343, 18 U.S.C. § 1962, 18 U.S.C. § 1029, and violation of the Stored Communications Act, 18 U.S.C. §§ 2701.

97.     Defendants actions directly and proximately caused damages and loss of business for Plaintiffs who have acted reasodnably under the circumstances in mitigating their damages and losses.

98.     As a result of Defendants' acts, the above-described relationships have been actually disrupted, causing certain current and prospective clients to contract with Defendants, instead of Plaintiffs, for their intelligence data services and intelligence data.

99.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic harm, including, but not limited to, loss of profits from sales from current and potential customers         of         Plaintiffs         intelligence         data         programs.

100.    Defendants' wrongful conduct was a substantial factor in causing this harm and directly resulted in the Plaintiffs losing hundreds of thousands of dollars, losing the contracts, customerts and profits associated with the business Tactical Rabbit, LLC.

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000.

### COUNT IV
### UNFAIR COMPETITION
### VIOLATIONS OF PENNSYLVANIA 73 P.S. §201
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

101.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 100 of this Complaint as though fully set forth here.

102.    Defendants have engaged in unlawful business acts or practices by committing acts including computer fraud, trespass, breach of contract, interference with business relationships, and other illegal acts and practices as alleged above, all in an effort to gain unfair competitive advantage over Plaintiffs.

103.    These unlawful business acts or practices were committed pursuant to business activity related to providing business applications intelligence data and related support and maintenance for that intelligence data.

104.    The acts and conduct by falsely claiming that Plaintiffs (specifically Everett Stern) lacked integrity or was allegedly responsible for acting in a criminal matter of Defendants constitute fraudulent, unlawful, and unfair competition as defined by Pennsylvania Unfair Trade Practice and Consumer Protection Law.

105.    Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violation of the law in Pennsylvania for competing unfairly against Plaintiffs under the following:

106.    The UTPCPL generally provides, in pertinent part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...are...unlawful." §73 P.S. 201-3. The UTPCPL permits any "person" to bring a private cause of action against another "person" for violation of the statute 73 P.S. §201-9.2(a). Further, the statute defines "person" as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entities." That term is employed to describe both the alleged victims and purported violators of the statute. 73 P.S. §201-2(2).

107.    Prohibiting unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, giving the Attorney General and District Attorneys certain powers and duties and providing penalties. The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1.  Short Title.--This act shall be known and may be cited as the "Unfair Trade Practices and Consumer Protection Law."

Section 2.  Definitions.--As used in this act.

(1)  "Documentary material" means the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription or other tangible document or recording, wherever situated.

(1.1)  "Internet service provider" means a person who furnishes a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and access to proprietary content, information, and other services as part of a package of services offered to consumers. ((1.1) added Nov. 29, 2006, P.L.1624, No.185)

(2)  "Person" means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities.

(3)  "Trade" and "commerce" mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

(4)  "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:

(i)  Passing off goods or services as those of another;

(ii)  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii)  Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(iv)  Using deceptive representations or designations of geographic origin in connection with goods or services;

(v)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(vi)  Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(vii)  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(viii)  Disparaging the goods, services, or business of another by false or misleading representation of fact;

(ix)  Advertising goods or services with intent not to sell them as advertised;

(x)  Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xi)  Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(xv)  Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;

(xvi)  Making repairs, improvements, or replacements on tangible, real, or individual property, of a nature or quality inferior to or below the standard of that agreed to in writing;

(xvii)  Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively, and expressly stating:

(A)  the identity of the seller;

(B)  that the purpose of the call is to sell goods or services;

(C) the nature of the goods or services; and

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

108.    Applying these statutory provisions with the case at bar, the Defendants unfairly competed with Plaintiffs by unfairly using false information in the form of disinformation campaigns directed at Plaintiffs for the purpose of directly harming the Plaintiffs by taking their customers and ruining the existing and prospective relationships of the Plaintiffs and their customers.

109.    The Defendants falsely claimed that Everett Stern, the principle behind the businesses Tactical Rabbit, LLC was arrested for alleged criminal acts that were not true, were exaggerated and misrepresented to be worse and more egregious in order to cast Plaintiffs in an unfair negative light to damage their business relationships and contractual rights (both actual contracts and prospective contract rights) stemming from the March 30, 2022 Chester County matter described above.

110.    Defendants' conduct also constitutes trespass to chattels, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and unjust enrichment.

111.    Defendants have improperly and unlawfully taken commercial advantage of Plaintiff's confidential and proprietary information.

112.    In light of Defendants' conduct, it would be inequitable to allow Defendants to retain the benefit of the ill-gotten funds gleaned by unfairly competing with Plaintiffs, obtained through the unauthorized and unlawful misuse of Tactical Rabbit's data, information and property.

113.    Defendants' unfair business practices have unjustly minimized Tactical Rabbit's

competitive advantage and have caused Tactical Rabbit to suffer damages by ostensibly needing to close their doors after being victimized by Defendants as stated more fully herein.

114.    As a result of such unfair competition, Tactical Rabbit has also suffered irreparable injury, and unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury, whereby Tactical Rabbit has no adequate remedy at law.

115.    Defendants should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of The Pennsylvania Unfair Trade Practices Act  including, but not limited to, returning any revenue earned from the unlawful and unfair use of Tactical Rabbit's stolen property, and should be enjoined from further unlawful, unfair, and deceptive business practices.

**WHEREFORE,** Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000, for actual and consequential damages trebled and for attorney fees.

## COUNT V
## TRESPASS TO CHATTELS
## (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

116.    Plaintiffs incorporates by reference the allegations of paragraphs 1 through 115 of this Complaint as though fully set forth here.

117.    At all times mentioned in this Complaint, Plaintiffs had legal title to and actual possession of its access-restricted internet-based computer system, on that support system, as described above.

118.    Defendants intentionally interfered with Plaintiffs use or possession of both and Plaintiffs related internal databases and systems, and the Intelligence data and Support Materials housed for licensed access through .

119.    Defendants' trespass and interference proximately caused damage to Plaintiffs,

including, but not limited to, damage to the functionality of Plaintiffs computer system and data, damage to Plaintiffs rights to dominion and control over its property, and damage to the confidential nature of the information on Plaintiffs website, customer base and extremely sensitive information.

120.    As a result, Defendants caused Plaintiffs property to greatly diminish in value and deprived    Plaintiffs    of    the    intended    use    of    its    computer    systems.

121.    Plaintiffs are entitled to recover any and all damages it sustained as a result of such    trespass,    in    an    amount    to    be    determined    at    trial.

122.    Defendants' trespass interfered with, and damaged, the integrity and functionality of Plaintiffs business operations, computer system and data.

123.    Defendants will continue to commit such acts and other competitors will be encouraged to sweep Plaintiffs website, potentially to the point of denying effective access to Tactical Rabbit's customers and preventing Plaintiffs from using its systems and data for their intended purpose.

124.    Defendants' trespass therefore threatens to cause irreparable harm to Plaintiffs, for which Plaintiffs remedy at law is not adequate to compensate it for the injuries inflicted and threatened.

**WHEREFORE**, Plaintiffs seek judgment against Defendants in an amount in excess of $75,000.

## COUNT VI
## UNJUST ENRICHMENT/RESTITUTION
## (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

125.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 124 of this Amended Complaint as though fully set forth here.

T0000

126.    Defendants unjustly received benefits in the form of stolen data and customers at the expense of Plaintiffs through their wrongful conduct, including Defendants' breach of the agreements governing access to and use of Customer Connection, interference with Plaintiffs business relationships and other unfair business practices, as well as Defendants' trespass on, and computer fraud concerning the Intelligence data and proprietary which took substantial time and money for Plaintiffs to develop.

127.    Defendants continue to unjustly retain these benefits at the expense of Plaintiffs.

128.    It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

129.    Plaintiffs are accordingly entitled to full restitution of all amounts in which Defendants have been unjustly enriched at their expense.

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000.

### COUNT VII
### NEGLIGENCE
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

130.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 129 of this Amended Complaint as though fully set forth here.

131.    Defendants owed Plaintiffs a duty of care to act reasonably in regard to their respective conduct and relationships with Plaintiffs.

132.    As set forth more specifically by reference herein, the Plaintiffs incorporate the averments of this Complaint as if set forth fully herein.

133.    Defendants breached duty of care owed to Plaintiffs when they acted unreasonably under the circumstances by failing to supervise, train, manage and oversee their employees,

subcontractors and assigns who impacted the Plaintiffs' business by virtue of their respective roles and positions in regard to and in relation to Plaintiffs business operations.

134.    The negligence of Defendants was the direct and proximate cause of losses and damages to Plaintiffs who as a direct and proximate result of their failure to use ordinary care on working with Plaintiffs, in peforming various tasks for, with, on behalf and in conjunction with the  work of Plaintiffs by failing to supervise persons employed or working with or on behalf of Plaintiffs resulting in Plaintiffs losing their customers and hundreds of thousands of dollars in lost fees, commissions and profits.

135.    The Defendants failed to properly analyze data, failing to use security to protect and preserve valauable data owned by Plaintiffs as proprietary data that Defendants failed to handle safely and properly, failing to scrutinize intelligence data and reports regarding the acts of Everett Stern to ensure that said data was accurate and by acting in a reckless manner so as to create opportunity for misappropriation of this proprietary data directly and proximately causing the business Tactical Rabbit, LLC to fail and for Everett Stern to lose hundreds of thousands of dollars in lost business as a consequence of these failures by Defendants.

136.    The negligence conduct of Defendants proximately and directly resulted in Plaintiffs suffering massive economic losses, the loss of existing and future business contracts and damage to Plaintiffs in the form of economic and non-economic damages like lost fees, lost profits, extreme anxiety and hardship.

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000

**COUNT VIII**
**CIVIL CONSPIRACY**
**(BY PLAINTIFFS AGAINST DEFENDANTS EXCEPT ABOR/ASU)**

137.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 136 of this Amended Complaint as though fully set forth here.

138.    Plaintiffs can demonstrate that all of the Defendants with the express exception of the Arizona Board of Regents and ASU acted together with the common purpose of harming Plaintiffs, taking his business and ruining his prospective business relationships.

139.    These Defendants acted in varying degrees of manner in order to achieve the goal of earning pecuniary gains from Plaintiffs business by acting in concert to mispresent the personal integrity of Everett Stern by virtue of artificially enhancing and embellishing the simple summary disporderly conduct charge in Chester County Court of Common Pleas.

140.    The false guise and mispresentation of Stern and this incident became subterfuge for the truth and used a cuddle to eliminate Tactical Rabbit and Stern.

141.    The concerted, overt actions of these Defendants has been very successful for the conspirators who have raked-in hundreds of thousands of dollars in ill-gotten pecuniary gains from the ashes of Tactical Rabbit as a direct and proximate cause of their unified actions.

142.    For example, Stern was listed as a speaker on Spyscape Entertainment having spent hundreds of hours and thousands of dollars marketing and developing material for this successful business only to be surreptitiously supplanted from this site and its marketing prowess  by the overt acts of these Defendants who picked up the work, money and opportunities that Stern and Tactical Rabbit were unceremoniously divested from as a directr consequence of their overt acts.

143.    These Defendants maliciously acted overtly to take Plaintiffs' customers and to ruin Plaintiffs' ability to operate their business in this niche.

144.    The Defendants are liable to Plaintiffs for the following:

(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose,

(2) an overt act done in pursuance of the common purpose, and

(3) actual legal damage. *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008) (citation omitted).

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000 toegther with actual, consequential and punitive damages.

**COUNT IX**
**PLAINTIFFS v. DEFENDANTS**
**AIDING AND ABETTING FRAUD**

145.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 144 of this Amended Complaint as though fully set forth here.

146.    Defendants acted in concert by helping and assisting each other at specific instances and in various ways to offer substantial assistance to each other in encouraging divestment by customers of Plaintiffs away from their business.

147.    Defendants by acting in concert were more efficacious in effectuating misrepresentations about the integrity and character of Plaintiffs in order to help perpetrate the fraudulent mispresentation of them and thus to harm them.

Defendants are liable to Plaintiffs under section 876 of the Restatement (Second) of Torts (section 876), which provides:

148.    For harm resulting to a third person from the tortious conduct of another, one is subject to liability:

(a) doing a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.


**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000 toegther with actual and consequential damages.

**COUNT X**
**PLAINTIFFS v. DEFENDANTS**
**VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

149.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 148 of this Amended Complaint as though fully set forth here.

150.    Under Section 876 of the Restatement (Second) of Torts (section 876), which provides:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:

(a) does a tortious act in concert with the other or pursuant to a common

design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives

substantial assistance or encouragement to the other so to conduct

himself, or

(c) gives substantial assistance to the other in accomplishing a tortious

result and his own conduct, separately considered, constitutes a breach

of duty to the third person.

**WHEREFORE**, Plaintiffs seek judgment in their favor against Defendants in an amount in excess of $75,000 toegther with actual and consequential damages trebled, attorney fees and other relief.

**BY COUNSEL FOR PLAINTIFFS:**

**MARK THOMAS SOPHOCLES, LLC**

BY: _____

**MARK T. SOPHOCLES, ESQUIRE**
**PA. SUPREME COURT ID# 74998**
**21 INDUSTRIAL BLVD., SUITE 201**
**PAOLI, PA 19301**
**610.651.0105**
**FAX 610.651.0106**

## **VERIFICATION**

Plaintiff, Everett Stern, hereby deposes and states, that the undersigned, in the within action, and as such is authorized to make this Verification on his own behalf; that Plaintiffs Civil Action *Amended* Complaint, in accordance with the representations made by Plaintiffs and that the same are true and correct to the best of his knowledge, information and belief; and that this Verification is given pursuant to the penalties of 18 Pa C.S.A. section 4904 relating to unsworn falsification to authorities.


_____

**EVERETT STERN**