**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EVERETT STERN, *et ano.,*

      Plaintiffs,

vs.

WILLIAM RUZICH, *et al.,*

      Defendants.

Civil Action No. 2:24-cv-01222-WB

**DEFENDANTS DAVID MARCHANT AND KYC NEWS, INC. T/A/D/B/A OFFSHORE
ALERT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Dated: July 24, 2024
      Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600

*Attorneys for Defendants David Marchant
and KYC News, Inc. T/A/D/B/A Offshore Alert*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................... 3

III.   ARGUMENT ......................................................................................... 7

    A.   The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction ................................................ 7

       1.   The Court Lacks General Personal Jurisdiction over the Marchant Defendants ...................................................................................... 9

       2.   The Court Lacks Specific Personal Jurisdiction Over the Marchant Defendants ...................................................................................... 9

          i.    The Marchant Defendants' Have Not Purposefully Directed Their Activities Towards Pennsylvania ................................................. 11

          ii.   The Marchant Defendants' Ownership and Operation of the Offshore Alert Website Does Not Constitute Purposeful Availment ...... 11

          iii.  There is No Connection Between Plaintiffs' Claims and the Actions of the Marchant Defendants ......................................... 14

          iv.  The Exercise of Jurisdiction Over the Marchant Defendants Would be Unfair and Unjust ................................................................ 16

    B.   The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against the Marchant Defendants ........ 17

       1.   Legal Standards ............................................................................ 17

       2.   The Amended Complaint is an Impermissible "Shotgun Pleading" ................... 18

       3.   Plaintiffs Fail to State a Claim for Breach of Contract (Count I) ....................... 19

       4.   Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III) ...................................................... 20

       5.   Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X) ....................................................................... 21

       6.   Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V) .................... 22

       7.   Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI) ................... 23

       8.   Plaintiffs Fail to State a Claim for Negligence (Count VII) ............................. 24

       9.   Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII) ..................... 25

       10.  Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX) ........ 26

IV.   CONCLUSION .................................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed, LLC v. Advanced Surgical Servs., Inc.*,
   561 F.3d 199 (3d Cir. 2009) .................................................................................... 20

*Alternate Energy Corp. v. Redstone*,
   328 F. Supp. 2d 1379 (S.D. Fla. 2004) ................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 3, 8, 17

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007) ................................................................................... 17

*Bartol v. Barrowclough*,
   251 F. Supp. 3d 855 (E.D. Pa. 2017) ..................................................................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 3

*Berardi v. USAA Gen. Indem. Co.*,
   606 F. Supp .3d 158, 163 (E.D. Pa. 2022), *aff'd*, 2023 WL 4418219
   (3d Cir. July 10, 2023) ........................................................................................... 23

*Britax Child Safety, Inc. v. Nuna Int'l B.V.*,
   321 F. Supp. 3d 546 (E.D. Pa. 2018) .............................................................. 12, 13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................ 10

*ClubCom, Inc. v. Captive Media, Inc.*,
   No. 02:07-cv-1462, 2009 WL 249446 (W.D. Pa. Jan. 31, 2009)............................ 20

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................................. 9

*Dayhoff v. H.J. Heinz Co.*
   , 86 F.3d 1287 (3rd Cir. 1996) ................................................................................. 8

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
   566 F.3d 94 (3d Cir. 2009)....................................................................................... 8

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ........................................................................ 10

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ............................................................ 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ........................................................................ 10

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ........................................................................ 10

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ................................................ 10, 14, 15

*Hynson v. City of Chester Legal Dep't*,
    864 F.2d 1026 (3d Cir. 1988) .......................................................... 18

*Kelly v. Vertikal Press, Ltd.*
    CIVIL ACTION NO. 20-2315, 2020 WL 6395459 (E.D. Pa. Nov. 2,
    2020) .......................................................................................... 12, 13

*Koch v. Pechota*,
    No. 163637, 2017 WL 4316102 (D.N.J. Sept. 28, 2017) ................... 9

*Kovalev v. Lidl US, LLC*,
    647 F. Supp. 3d 319 (E.D. Pa. 2022) ................................................ 8

*Loduca v. WellPet LLC*,
    549 F. Supp. 3d 391 (E.D. Pa. 2021) .............................................. 25

*Lutz v. Rakuten, Inc.*,
    376 F. Supp. 3d 455 (E.D. Pa. 2019) .............................................. 13

*M3 USA Corp. v. Hart*,
    516 F. Supp. 476 (E.D. Pa. 2021) ............................................... 9, 21

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ............................................................ 8

*Mills v. Unknown Franchisee*,
    Civil Action No. 2:20-cv-566, 2021 WL 5358944 (W.D. Pa. Oct. 13,
    2021) ................................................................................................ 21

*NVR, Inc. v. Majestic Hills, LLC*,
    670 F. Supp. 3d 206 (W.D. Pa. 2023) ............................................. 24

*O'Connor v. Sandy Lane Hotel Co., Ltd.*
, 496 F.3d 312 (3d Cir. 2007) ........................................................................ 7, 8, 10

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001) ........................................................................ 16

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ...................................................................... 13

*Riad v. Porsche Cars N. Am., Inc.*,
657 F. Supp. 3d 695 (E.D. Pa. 2023) .......................................................... 7, 8

*Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*,
327 F. Supp. 3d 803 (E.D. Pa. 2018) .......................................................... 22

*Salvitti v. Lascelles*,
669 F. Supp. 3d 405 (E.D. Pa. 2023) .......................................................... 23

*Salyers v. A.J. Biosenski, Inc.*,
--- F. Supp. 3d ----, 2024 WL 17773368 (E.D. Pa. Apr. 24, 2024) .............. 22

*TorcUP, Inc. v. Aztec Bolting Servs., Inc.*,
386 F. Supp. 3d 520 (E.D. Pa. 2019) .......................................................... 16

*Udodi v. Stern*,
438 F. Supp. 3d 293 (E.D. Pa. 2020) .......................................................... 19

*Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*,
CV 23-1693, 2024 WL 1142872 (E.D. Pa. Mar. 15, 2024) .......................... 26

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997) ............................................................ 12

## Other Authorities

42 Pa. Const. Stat. § 5322(b) ...................................................................... 22

Fed. R. Civ. P. 5.2 ...................................................................................... 5

Fed. R. Civ. P. 8(a)(2) ............................................................................ 18, 19

Fed. R. Civ. P. 12(b)(2) ...................................................................... 2, 7, 8, 17

Fed. R. Civ. P. 12(b)(6) ...................................................................... 3, 7, 17

## I.    <u>PRELIMINARY STATEMENT</u>

The Amended Complaint (ECF No. 15) ("**Amended Complaint**")[1] filed by Plaintiffs Everett Stern and Tactical Rabbit, LLC (together, "**Plaintiffs**") against, among others, Defendants David Marchant ("**Marchant**") and KYC News, Inc. T/A/D/B/A Offshore Alert ("**Offshore Alert**" and collectively with Marchant, the "**Marchant Defendants**") constitutes a quintessential shotgun pleading of the type that has been rejected time and again by courts sitting in the Third Circuit. Instead of complying with the particularity requirements, the Amended Complaint is laden with falsities apparent on the face of the Amended Complaint (including through the false representation of a contractual relationship between Plaintiffs and the Marchant Defendants), as well as undifferentiated and borderline nonsensical allegations that afford the Marchant Defendants no meaningful insight into the ten counts raised against them, many of which are invalid under Pennsylvania law.

There are a total of three paragraphs of the Amended Complaint that have specific allegations directed at the Marchant Defendants. Amended Complaint at ¶¶ 28-30. The gravamen of these allegations appear to be that Plaintiffs subscribed to the Offshore Alert website, and after the Plaintiffs cancelled their subscription, Plaintiff ran "negative articles" pertaining to Mr. Stern's arrest and court cases. There are no allegations concerning the alleged contractual relationship between Plaintiffs and the Marchant Defendants, the alleged conspiracy to impact the Plaintiffs' business interests, or whether any of these actions occurred in Pennsylvania. On these threadbare allegations, Plaintiffs seek to haul the Marchant Defendants into this Court and assert ten claims on the back of impermissible group pleading allegations.

---

[1] At the outset, it must be noted that Plaintiffs have failed to file an operative copy of the Amended Complaint following this Court's Order granting Plaintiffs leave to file the Amended Complaint. (ECF No. 16).

The Amended Complaint should be dismissed for numerous reasons.  First, the Court need not reach the merits of the Plaintiffs' claims because the Plaintiffs have failed to establish personal jurisdiction over the Marchant Defendants.  As Plaintiffs acknowledge, the Marchant Defendants do not reside in Pennsylvania, are not incorporated in the Commonwealth and maintain no physical presence here. For these reasons, the Marchant Defendants' overall contacts with Pennsylvania are not sufficiently substantial, continuous, nor systematic so as to subject them to the general jurisdiction of a Pennsylvania court.

Second, the court also lacks specific personal jurisdiction over the Marchant Defendants. Plaintiffs allege zero specific facts that establish a connection between the Marchant Defendants, Pennsylvania and the claims at issue in this case.  While Offshore Alert operates a website that is accessible in Pennsylvania, it has not directly targeted the Commonwealth nor its residents in a manner distinct from its operations with respect to every other jurisdiction worldwide. Furthermore, the Marchant Defendants' alleged conduct (to the extent decipherable) – publishing an article about Stern that contains only a publicly-available docket sheet – is unmoored from the claims underlying the case, which appear to concern hacking and unfair competition allegations directed wholly at the other Defendants.

In sum, the Plaintiffs are the sole connection between this action and Pennsylvania.  The Supreme Court has repeatedly held that a plaintiff's link is alone insufficient to find personal jurisdiction. Dismissal under Fed. R. Civ. P. 12(b)(2) is thus necessary.

Third, even if the Court were to conclude that personal jurisdiction exists (which it does not), the Amended Complaint is substantively deficient for multiple reasons.  As a general matter, the Amended Complaint is devoid of specific, distinct facts necessary to establish the plausible claims to relief it seeks.  Indeed, within the entirety of the Amended Complaint, Plaintiffs raise

only a handful of specific allegations towards the Marchant Defendants, none of which are sufficient to assert an actionable claim. The remainder of the allegations constitute an impermissible group pleading that lumps the Marchant Defendants in with other completely unrelated actions and parties, including parties that have contracted with the Plaintiffs (inapplicable to the Marchant Defendants) and the alleged "hacking" of Plaintiffs (also inapplicable to the Marchant Defendants). The allegations directed at the Marchant Defendants do not provide a basis for relief. Rather, these allegations appear to fault them for posting an article online about Stern that is merely a recitation of the allegations made in a Commonwealth court.

Furthermore, Plaintiffs often merely recite the elements of various causes of action, without any accompanying plausible facts to support them. Several of these causes of action are not even cognizable causes of action under Pennsylvania law. All fail to allege facts to support the essential elements of the claims or delineate any allegations between the numerous Defendants.

In sum, the vague, conclusory allegations in Plaintiffs' Amended Complaint utterly fail to meet the pleading standards established by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009), and the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 22, 2024, Plaintiffs filed their initial Complaint in this matter against the Marchant Defendants, among others (collectively, "**Defendants**"). ECF No. 1.[2] On July 3, 2024, the Court granted Plaintiffs' motion for leave to file the Amended Complaint (ECF No. 15 at pp. 5-41) (the "**Amended Complaint**"). ECF No. 16 (Order granting Plaintiffs' motion). Following

---

[2] The Complaint also named as defendants, *inter alia*, the Arizona Board of Regents and Arizona State University (together, the "**Arizona Defendants**"). *See* ECF No. 1 at p. 2. On July 1, 2024, the Court granted the Arizona Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 14. In the instant motion, the Marchant Defendants request dismissal on this ground and others.

the Court's Order, Plaintiffs have failed to file an operative copy of the Amended Complaint. The copy of the proposed Amended Complaint attached to Plaintiff's Motion to Leave does not attach any of the referenced exhibits. *See* ECF No. 15.[3]

Stern claims to be the "principle [*sic*], founder, equitable owner and operator of Tactical Rabbit." Amended Complaint ¶ 1. The Amended Complaint claims that Stern "founded, created, and operated co-Plaintiff … Tactical Rabbit … to perform national and international complex and sophisticated privately owned intelligence gathering services for clients handling complex, information and intelliugence [*sic*] gathering and analysis." *Id.* at ¶ 12.

As the Amended Complaint acknowledges, Marchant is a resident of Colorado and KYC News is a corporation incorporated and located in Florida. *See id.* at ¶¶ 6-7; *see also* the Declaration of David Marchant, dated July 24, 2024, at ¶¶ 3-4 (the "**Marchant Decl.**").

Marchant (through KYC News) is the proprietor and operator of OffshoreAlert.com ("**OA**"), an investigative journalism website that monitors publicly available filings in courts and regulatory agencies around the world, and then provides materials (often quoting court filings directly) via email to its subscribers. *Id.* at ¶ 4. OA sponsors multiple conferences around the world every year, although it has never held a conference in Pennsylvania. *Id.* at ¶ 16. Other than being accessible and selling subscriptions to persons located in Pennsylvania, OA does not sell products or otherwise target Pennsylvania residents separate and apart from subscribers located in other jurisdictions. *Id.* at ¶ 4-9.

OA has featured articles about Stern, consisting of information describing publicly accessible, non-confidential documents and often directly quoting the allegations in a particular

---

[3] The Amended Complaint references exhibits that are not attached thereto. *See, e.g., id.* ¶¶ 14-17, 21. Such exhibits are attached to Plaintiffs' Initial Complaint. *See* ECF Nos. 1-3 to 1-10. Without conceding their relevance or support for Plaintiffs' arguments with respect to these exhibits, the Marchant Defendants address the exhibits as if they are also attached to the Amended Complaint.

litigation involving Stern.  OA's articles detail, among other things, Stern's dueling lawsuits with Stop the Steal architect General Michael Flynn, multiple lawsuits against Stern by the Borgata Casino in New Jersey for unpaid debts, and an action against Stern for defamation brought by "Grenada's Ambassador Extraordinary and Plenipotentary to the Russian Federation."  *See* Marchant Decl. ¶ 10-13.

The Amended Complaint alleges that Plaintiffs "hired" Marchant to work for Tactical Rabbit, "pursuant to contract agreements that memorialized the terms and conditions of their retention and scope of performing services as set forth in the attached contracts for each member of these 'Contracting Defendants.'"  Amended Complaint at ¶ 21 (emphasis added).  The Amended Complaint purports to exhibit the relevant contracts for the "Contracting Defendants."  *Id.* Conspicuously absent from both the Amended Complaint the Complaint is any contract between either of the Marchant Defendants and either of the Plaintiffs.  *See generally id.* Instead, the exhibit purporting to be a contract between Plaintiffs and the Marchant Defendants is a self-prepared intelligence report on Marchant that contains personal identifiable information in violation of FRCP 5.2.

The Amended Complaint also alleges that Plaintiffs "contracted" with the Marchant Defendants between 2017-2021 when the Marchant Defendants "had access to sensitive information used by Plaintiffs," whereupon the Marchant Defendants allegedly "made a concerted effort to eliminate Plaintiffs['] business."  *Id.* ¶ 28.   This alleged "concerted effort" caused Plaintiffs to "shut down Tactical Rabbitt [*sic*]."  *Id.*  The Amended Complaint makes no further allegations on the nature of this "concerted effort."

The Amended Complaint also alleges a supposed "intrinsic link" between the Marchant Defendants, OA, and the "Aracari Project," a "private intelligence company" purportedly founded

by Defendant William Ruzich ("**Ruzich**"), among others.  *See* Amended Complaint ¶¶ 25-30.
According to the Amended Complaint, after Tactical Rabbit concluded its subscription with OA
and the "relationship" between OA and Ruzich began, Marchant ran "negative articles" about
Stern.  *Id.* ¶ 30.[4]  Ruzich has spoken at two OA conference held outside of the United States.  *See*
Marchant Decl. ¶ 14.  Finally, the Amended Complaint appears to allege that the Marchant
Defendants "interfered" with Plaintiffs' existing and contractual relationships by "willfully
mispresenting" an incident occurring in March 2022 in which Stern plead guilty to disorderly
conduct in the Court of Common Pleas of Chester County.  *See* Amended Complaint ¶ 27.  OA
posted the publicly available docket sheet for this matter, along with a general summary of the
information set forth in the docket sheet.  No commentary accompanied OA's post.[5]

The Amended Complaint brings the following Counts against the Marchant Defendants:

- Count I: breach of contract (in their purported, but non-existent capacity as "Contracting Defendants");

- Count II: intentional interference with prospective economic advantage and tortious interference of contract rights;

- Count III: negligent interference with prospective economic advantage;

- Count IV: unfair competition;

- Count V: trespass to chattels;

- Count VI: unjust enrichment;

- Count VII: negligence;

---

[4] The Amended Complaint claims that the "negative articles" defamed him.  *See id.*  However, the Amended Complaint <u>does not</u> allege a cause of action for defamation.  *See generally id.*
[5] *See* Commonwealth of Pennsylvania v. Everett Stern: Criminal Docket ('Disorderly Conduct'), available at: https://www.offshorealert.com/commonwealth-of-pennsylvania-v-everett-stern-criminal-docket-disorderly-conduct/ (last visited July 21, 2024).

- Count VIII: civil conspiracy;

- Count IX: aiding and abetting fraud;

- Count X: violations of Pennsylvania's unfair trade practices and consumer practices law.

*See* Amended Complaint ¶¶ 69-150.

For the reasons set forth below, the Court does not have personal jurisdiction over the Marchant Defendants, necessitating dismissal under Fed. R. Civ. P. 12(b)(2).  Even if the Court had personal jurisdiction (it does not), the Amended Complaint utterly fails to state a single claim for relief against the Marchant Defendants, necessitating dismissal under Fed. R. Civ. P. 12(b)(6).

## III.  <u>ARGUMENT</u>

### A.    <u>The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction</u>

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant, as in this case here.

First, the Amended Complaint concedes that the Marchant Defendants do not reside or maintain a principal place of business of Pennsylvania.  *See* Amended Complaint ¶¶ 6-7.  Rather, Marchant resides in Colorado and Offshore Alert is incorporated and maintains a principal place of business in Florida.  *See id.*; *see also* Marchant Decl. ¶¶ 3-5.

Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits.  *See O'Connor v. Sandy Lane Hotel Co., Ltd.¸* 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(e)).  Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d

695, 700 (E.D. Pa. 2023) (quoting 42 Pa. Const. Stat. § 5322(b)).  Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The constitutional requirements for personal jurisdiction very depending on the type of jurisdiction asserted.  There are two types of personal jurisdiction: general and specific.  *See O'Connor*, 496 F.3d at 317 (citation omitted).

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court takes the allegations of the complaint as true.  *Riad*, 657 F. Supp. 3d at 700 (citing *Dayhoff v. H.J. Heinz Co.*¸ 86 F.3d 1287, 1302 (3rd Cir. 1996)).  However, legal conclusions by a plaintiff "are no more than conclusions and are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The burden to establish personal jurisdiction is on the plaintiff.  *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

"[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Dayhoff*, 86 F.3d at 1302; *see also Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (noting that, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely on the allegations in its complaint") (emphasis in original and citation omitted).  The plaintiff must establish those contacts with "reasonable particularity."  *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*¸ 960 F.2d 1217, 1223 (3d Cir. 1992).  Once the plaintiff makes a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that "some other considerations exist which would render the exercise of personal jurisdiction unreasonable." *Riad*, 657 F. Supp. 3d at 700.

Plaintiffs cannot show that the exercise of either of the two types of jurisdiction over the Marchant Defendants would comport with due process.  The Amended Complaint contains no allegations supporting personal jurisdiction over the Marchant Defendants.

### 1.    The Court Lacks General Personal Jurisdiction over the Marchant Defendants

The exercise of general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state.  *Id.*  To exercise general personal jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).   A corporation is "at home" in its place of incorporation and its principal place of business.  *Id.*   General jurisdiction is proper over an individual only where he or she is domiciled.  *See M3 USA Corp. v. Hart*, 516 F. Supp. 476, 490 (E.D. Pa. 2021).[6]

As Plaintiffs concede, Marchant is domiciled in Colorado and KYC News is incorporated and maintains a principal place of business in Florida.  Neither of the Marchant Defendants have consented to general personal jurisdiction in Pennsylvania.  Consequently, it is clear that the Marchant Defendants are not subject to general personal jurisdiction in this Court.  *See, e.g., M3 USA*, 516 F. Supp. at 490 (refusing to find general personal jurisdiction over a non-resident individual and corporation).

### 2.    The Court Lacks Specific Personal Jurisdiction Over the Marchant Defendants

This Court also lacks specific jurisdiction over the Marchant Defendants.  Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy,

---

[6] The Supreme Court has never held that an individual could be subject to general personal jurisdiction based on the "systematic and continuous contacts with the forum" test applicable to a corporate defendant.  *See, e.g., Koch v. Pechota*, No. 163637, 2017 WL 4316102, at *5 (D.N.J. Sept. 28, 2017).

principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*¸ 564 U.S. 915, 919 (2011) (internal quotation marks omitted). For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

Specific jurisdiction over non-residents involves a three-part test. "First, the defendant must have 'purposefully directed [its] activities at the forum.'" *O'Connor*, 496 F.3d at 316 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*¸ 357 U.S. 235, 253 (1958).[7] The contacts must be the "defendant's own choice and not random, isolated, or fortuitous." *Id.* (citation omitted).

"Second, the litigation must 'arise out of or relate to' at least one of those activities'" which were purposefully directed at the forum. *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Hepp v. Facebook*¸ 14 F.4th 204, 208 (3d Cir. 2021) (noting that there must be a "strong connection" between a defendant's actions and the alleged claim). This element prevents the Marchant Defendants from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475.

"And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*¸ 496 F.3d at 317 (citing *Burger King*¸ 471 U.S. at 476).

---

[7] *See also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (holding that court must determine whether defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there").

As set forth below, none of the required elements to confer personal jurisdiction are present, and thus the Court lacks personal jurisdiction over the Marchant Defendants.

### i.    The Marchant Defendants' Have Not Purposefully Directed Their Activities Towards Pennsylvania

First, the Amended Complaint is bereft of any allegations that the Marchant Defendants purposely directed their activities towards Pennsylvania.  As noted above, Marchant is a resident of Colorado and Offshore Alert is incorporated and maintains a principal place of business in Florida.  Offshore Alert has never held a conference or other event in Pennsylvania, and the events that appear to be referenced in the Amended Complaint that hosted Ruzich occurred in Thailand and the United Kingdom. Finally, the Amended Complaint's glib assertion that the Marchant Defendants contracted with Plaintiffs during 2017-2021, thereby gaining "access to sensitive information" (which is entirely unspecified) is unsupported by anything in the record other than this bare allegation.

In fact, the only connections to Pennsylvania evident in the Amended Complaint is Stern's residence and operation of Tactical Rabbit, which is obviously irrelevant to whether the Marchant Defendants directed actions at Pennsylvania.  However, "plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Hadnagy*, 2023 WL 114689, at *5 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 n. 9 (2014)).  Here, the Plaintiffs are the only link to Pennsylvania, precluding the exercise of personal jurisdiction in the Commonwealth over the Marchant Defendants.

### ii.    The Marchant Defendants' Ownership and Operation of the Offshore Alert Website Does Not Constitute Purposeful Availment

Offshore Alert is accessible to Pennsylvania residents, and Stern purports to have been a subscriber of Offshore Alert at some point, presumably while a Pennsylvania resident.  However,

that a Pennsylvania resident can access the Offshore Alert website from within the Commonwealth is insufficient to confer personal jurisdiction over the Marchant Defendants.

As a general matter, a "website may form the basis for specific jurisdiction if [the] defendant takes action to maximize usage of [the] website in the forum, markets [the] website in the forum, puts forum-specific content in [the] website[,] or has [a] business plan that targets users within [a] forum." *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 556 (E.D. Pa. 2018) (citations omitted)

The Supreme Court has "yet to designate a test to determine purposeful availment, or personal jurisdiction generally, through the internet." *Hadnagy*, 2023 WL 114689 at *4 (citation omitted). The Third Circuit has adopted a "sliding scale test," which holds that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet" such that "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

Under this framework, "websites are placed on a spectrum ranging from passive websites, on which information is merely posted, to interactive websites, which facilitate commercial transactions between the defendant and forum resident." *Kelly v. Vertikal Press, Ltd.*¸ CIVIL ACTION NO. 20-2315, 2020 WL 6395459, at *2 (E.D. Pa. Nov. 2, 2020). Thus, when a website "merely make[s] information available on the Internet[,] the exercise of personal jurisdiction over such 'passive' defendants is improper." *Hadnagy*, 2023 WL 114689, at *5 (quoting *Spuglio v. Cabaret Lounge*, 344 Fed. App'x 724, 726 (3rd Cir. 2009)).[8] "Rather, there must be evidence that

---

[8] Any "capacity for interactivity" does not necessarily categorize a website as demonstrating purposeful availment, given that "there must be something more beyond the mere posting of a passive web site to indicate that the defendant

the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us*, 318 F.3d at 454.

The fact that Offshore Alert permits its website to be viewable to Pennsylvania residents is insufficient to confer specific personal jurisdiction. Plaintiffs allege no facts that the Marchant Defendants targeted Offshore directly at Pennsylvania. On the contrary, Offshore Alert is equally accessible around the world, and, indeed, the substantial majority of its subscriber base is located outside of Pennsylvania. Marchant Decl. at ¶ 9. Offshore Alert does not target Pennsylvania residents specifically via marketing campaigns or any other form of forum-specific contact, and invitations to conferences hosted by Offshore Alert are disseminated to all subscribers, irrespective of location. Marchant Decl. ¶ 8.

That Offshore Alert offers subscriptions with no discrimination to the location of the subscriber is likewise insufficient to evidence the specific targeting at Pennsylvania residents essential to confer personal jurisdiction. *See Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (even if a website had a "shop" button that allowed a user to enter into a contract, and thus became "highly interactive," personal jurisdiction is still lacking absent evidence that the website "specifically target[s] Pennsylvania citizens or derive[s] substantial revenue from Pennsylvania citizens"); *Britax*, 321 F. Supp. 3d at 557 (sale of products via website insufficient for personal jurisdiction absent targeting at Pennsylvania residents); *Kelly*, 2020 WL 6395459, at *3 (absent targeting of Pennsylvania residents, offering subscriptions insufficient to confer personal jurisdiction); *see also Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002) (standing

---

purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Toys "R" Us*, 318 F.3d at 453. To that end, "[t]he mere possibility that someone in Pennsylvania—as opposed to anywhere in the world – might contact the [d]efendant[s] via the website does not constitute a purposeful contact with the forum." *Kelly*, 2020 WL 6395459, at *2-3.

alone, offering subscriptions did not confer personal jurisdiction over website operator); *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (concluding that a website selling a "small number of subscriptions to Florida residents" was inadequate to find personal jurisdiction in Florida).

In sum, Plaintiffs cannot satisfy the first element of the test for personal jurisdiction.

### iii. There is No Connection Between Plaintiffs' Claims and the Actions of the Marchant Defendants

To establish personal jurisdiction, a plaintiff must also show a "strong connection" between the claims alleged and the defendants' actions. *See, e.g., Hepp*, 14 F.4th at 208.

The Amended Complaint utterly fails to provide any connection between Plaintiffs' claims and the Marchant Defendants, much less the robust connection necessary for a court to exercise personal jurisdiction.

Here, to the best of the Marchant Defendants' knowledge, the gravamen of most of Plaintiffs' claims in the Amended Complaint is that the other defendants "gained unauthorized access" and then "misappropriated" purportedly "highly confidential and proprietary setoff information" in order to "steal" Plaintiffs' existing customers and debilitate their access to new customers, supposedly giving rise to various and contract and tort-based claims. *See* Amended Complaint, *e.g.*, at ¶¶ 71-72, 83, 94, 108, 119, and 126. The purported resulting injury includes the Plaintiffs' "loss" of existing clients and prospective business relationships. *Id.* at, *e.g.*, ¶¶ 79, 87, 99, 108, and 136. However, even assuming *arguendo* that Plaintiffs have suffered an injury, the Marchant Defendants have not aimed <u>any conduct</u> at Pennsylvania, much less <u>tortious</u> conduct, which is required to find personal jurisdiction over the Marchant Defendants. *See, e.g., IMO Indus*, 155 F.3d at 265-66.

14

The Amended Complaint makes no specific allegation that the Marchant Defendants have gained access, much less "unauthorized access," to any personal or proprietary information of Plaintiffs.  The Marchant Defendants are not specifically alleged to have "stolen" anything from Plaintiffs.  While Ruzich has spoken at an event hosted by Offshore Alert, this conference did not occur in Pennsylvania, and the Marchant Defendants did not specifically target Pennsylvania residents.  As such, Plaintiffs cannot show <u>any connection</u> between the Marchant Defendants' conduct and Plaintiffs' injuries, let alone the "strong connection" required to satisfy this factor. *See, e.g., Hepp*, 14 F. 4th at 208.

Furthermore, the "negative articles" about Plaintiffs that are allegedly on the Offshore Alert website likewise does not constitute conduct targeted at Pennsylvania.  This Court's decision in *Hadnagy* is particularly instructive.  There, defendants operated a "DEFCON" website targeted at the "hacker" community, which included a "Code of Conduct" proscribing harassment at its "hacking" conventions.  *See* 2023 WL 114689, at *1.  The defendants later posted a "Transparency Report" on its website itemizing plaintiff's violations of the "Code of Conduct."  *Id.* at *2.  In response, plaintiff brought intentional tort claims for, *inter alia*, intentional interference with contractual relationships, and the defendants moved to dismiss under Fed. R. 12(b)(2) and 12(b)(6).  *Id.* at *1-2.  This Court granted defendants' motion, concluding that the operation of the website did not confer personal jurisdiction.  *Id.* at *3-7.  This Court reasoned that it lacked personal jurisdiction over defendants based on the existence of the "DEF CON" website because, among other things, the "DEF CON" website could be accessed throughout the United States and abroad and did not maintain any customized features specifically targeted at Pennsylvania residents.  *See id.* at *5.[9]

---

[9] This Court also denied plaintiff's request for jurisdictional discovery.  *See id.* at *7-8.

The same conclusion is warranted here.  The articles on Offshore Alert about Stern, whether characterized as negative or not, are immaterial to the personal jurisdiction analysis because such articles are not directly targeted to Pennsylvania residents.  Plaintiffs provide no allegations that the articles on Offshore Alert's website concerning Stern were read extensively in Pennsylvania (relative to other forums) and Plaintiffs do not claim that the "intelligence gathering" community is uniquely connected to Pennsylvania.  *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (declining to find personal jurisdiction over non-resident defendant in part because there was no basis that Pennsylvania was the "focal point" of defendant's activity).  In sum, Plaintiffs cannot satisfy the second element of the test for personal jurisdiction.

### iv.    The Exercise of Jurisdiction Over the Marchant Defendants Would be Unfair and Unjust

Third, even if the Court were to find that Plaintiffs alleged that the Marchant Defendants had sufficient contacts with Pennsylvania (which they plainly do not), Plaintiffs cannot establish that this Court's exercise of jurisdiction is in any way fair or just.  The Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing *Burger King,* 471 U.S. at 477).

None of these factors are met when the Marchant Defendants. The Marchant Defendants have operated exclusively outside of Pennsylvania and did not engage in any forum-specific conduct in Pennsylvania.  The Amended Complaint is devoid of any specific allegation that the Marchant Defendants have ever interacted with Defendants, nonetheless interacted with them

within the Commonwealth.   As such, the Commonwealth has little, to no interest, in adjudicating the supposed dispute between the Plaintiffs and the Marchant Defendants.

For these reasons, the Amended Complaint should be dismissed with prejudice against the Marchant Defendants under Fed. R. Civ. P. 12(b)(2).

**B.     The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against the Marchant Defendants**

**1.     Legal Standards**

In addition to dismissal being warranted on personal jurisdiction grounds, Plaintiffs have utterly failed to state actions claims against the Marchant Defendants.  An action may be dismissed when it fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, a court must accept factual allegations as true, but it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Baraka v. McGreevey¸* 481 F.3d 187, 195 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.*  In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**2.      The Amended Complaint is an Impermissible "Shotgun Pleading"**

As a threshold issue, the Amended Complaint fails to comply with Federal Rule of Civil Procedure 8(a)(2) and should be dismissed at the outset.  Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief."   Complaints that violate this rule, such as the Amended Complaint, "are often disparagingly referred to as 'shotgun pleadings.'"  *Bartol v. Barrowclough,* 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted).  The Third Circuit has lamented "the all too common shotgun pleading approach" to complaints.  *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988).  The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted."  *Id.*

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Bartol*, 251 F. Supp. 3d at 859.

The Amended Complaint has all the hallmarks of a "shotgun pleading," as it merely recites elements of various causes of action without alleging even the most fundamental underlying facts. For one, virtually none of the Counts differentiate between which Defendant took which actions that supposedly form the basis for relief.  For example, in Count I (Breach of Contract), Plaintiffs lump the group of "Contracting Defendants" into a single, undifferentiated group, without providing any specificity as to which Defendants are subject to the boilerplate allegations.  In fact, within the ten Counts spanning more than twenty pages (*see* Amended Complaint at pp. 20-40), Plaintiffs only raise one allegation against the Marchant Defendants that could conceivably pertain

to their conduct.  *See id.* at ¶ 109 (referencing Stern's March 30, 2022 disorderly conduct incident).

As further examples, Count IX (Aiding and Abetting Fraud) includes two paragraphs of boilerplate

allegations against all Defendants (*id.* at ¶¶ 146-47), and Count X (violations of Pennsylvania's

statutory unfair trade practices law) includes no factual or legal allegations at all and is instead a

treatise citation to the law purportedly underlying the immediately preceding account.  *Id.* at ¶ 150.

Finally, the Amended Complaint is chock a block full of extraneous conclusions (often in the form

of incomplete sentences), making it virtually impossible for the Marchant Defendants to decipher

what allegations are at issue.

For these reasons, the Amended Complaint is a quintessential shotgun pleading that does

not satisfy Rule 8(a)(2).  The Amended Complaint should be dismissed with prejudice.

### 3.    Plaintiffs Fail to State a Claim for Breach of Contract (Count I)

Under Pennsylvania law, breach of contract claims contain three elements: "(1) the

existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract[,] and (3) resultant damages."  *Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020).

Plaintiffs fail to allege even these basic elements.  The Amended Complaint provides no

specific information as to the alleged contract between the Marchant Defendants and Plaintiffs,

such as the essential terms, duration, and which terms were breached, and by which defendant.

Instead, the Amended Complaint offers only a single, throwaway reference to an alleged contract.

*See* Amended Complaint ¶ 28.  Tellingly, the Amended Complaint describes the contractual basis

for the Contracting Defendants as "Exhibit A-D."  *Id.* ¶ 72.[10]  The Marchant Defendants are not a

party to any of the contracts delineated as "Exhibit A-D."  By its terms, the Amended Complaint

thus admits that the Plaintiffs and Marchant Defendants have no contractual relationship.

---

[10] As noted above, such exhibits are attached only to Plaintiffs' Original Complaint.  *See* ECF No. 1.

No contract could have been formed between the Marchant Defendants and Plaintiffs without a meeting of the minds. The Amended Complaint includes no factual allegation that could support a finding of a contractual agreement between Plaintiffs and the Marchant Defendants.[11] For these reasons, Count I should be dismissed with prejudice.

> **4.    Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)**

Plaintiffs' Amended Complaint makes largely the same conclusory allegations with respect to Counts II and III, yet does not set forth sufficient facts to support any of these causes of action.

First., as a matter of law, Pennsylvania does not recognize a tort for 'intentional interference with prospective economic advantage.'" *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 WL 249446, at *7 (W.D. Pa. Jan. 31, 2009). Consequently, this aspect of Count II is invalid on its face and must be dismissed.

Second, to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

---

[11] Because Plaintiffs fail to plead these basic facts underlying the breach of contract claim, the Marchant Defendants cannot meaningfully evaluate numerous legal defenses that could otherwise be asserted in a motion to dismiss for failure to state a claim. The Marchant Defendants reserve all rights.

For a variety of reasons, Count II must be dismissed. As noted above, the Amended Complaint contains no substantive allegations that the Marchant Defendants and Plaintiffs had an existing contractual relationship. The Amended Complaint does not contain specific allegations with any specificity concerning a prospective contractual relationship between Plaintiffs and any third-party. Instead, Count II is contains only vague, generalized allegations about unnamed clients of Plaintiffs. Amended Complaint ¶¶ 84 and 86. This shotgun style pleading does not put the Marchant Defendants on notice of the essential facts to establish a claim under these Counts.

Third, Count III is invalid on its face because "Pennsylvania law does not recognize the tort of negligent interference with contractual relations." *Mills v. Unknown Franchisee*, Civil Action No. 2:20-cv-566, 2021 WL 5358944, at *5 (W.D. Pa. Oct. 13, 2021) (citing *Valley Forge Convention & Visitor's Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998)). The only exception to the rule is where a "special relationship exists between the parties." *Id.* The "special relationship" exception clearly does not apply here, as the handful of allegations in the Amended Complaint provide no basis for a special relationship between Plaintiffs and the Marchant Defendants. For these reasons, Counts II and III should be dismissed with prejudice.

### 5. Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X)

In Pennsylvania, a defendant is liable for unfair competition if "(1) he [or she] engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) his [or her] conduct causes harm to the plaintiff's commercial relations." *M3 USA*, 516 F. Supp. 3d at 504 (citing Restatement (Third) of Unfair Competition § 1). In Pennsylvania, a claim for unfair competition is recognized "where there is evidence of, among other things ... tortious interference with contract … and unlawful use of confidential information." *Id.*

Applying these principles, Plaintiffs fail to state a claim for unfair competition.  The Amended Complaint contains no allegation that the Marchant Defendants engaged in any actions that would satisfy the first element.  Rather, the "negative articles" alleged by Plaintiffs hardly constitutes marketing.  Further, there are no allegations that the Marchant Defendants have ever maintained access to the Plaintiffs' trade secrets, protectable intellectual property, or other confidential information.

Plaintiffs likewise cannot satisfy the second element of the unfair competition test.  As discussed above, there are insufficient allegations that the Marchant Defendants tortiously interfered with any contract involving the Plaintiffs.  There are also no allegations that the Marchant Defendants unlawfully used any of Plaintiffs' confidential information.

Count X fails because it is supported by no allegations whatsoever.  *See* Amended Complaint ¶¶ 149-150.  The Count is comprised entirely of: (i) a reincorporation of the prior boilerplate allegations; and (ii) a cut and paste of a Section 876 of the Restatement (Second) of Torts, which is referenced in the immediately preceding Count IX and concerns liability for aiding and abetting fraud.  *Id.*  It is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL.[12]  For these reasons, Counts IV and X should be dismissed.

### 6.    Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V)

"A trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another."  *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018).

---

[12] UTPCPL is the abbreviation for Pennsylvania's version of the Unfair Trade Practices and Consumer Protection Law.  *See* 73 Pa. Const. Stat. § 201-1 *et seq.*; *see also Salyers v. A.J. Biosenski, Inc.*, --- F. Supp. 3d ----, 2024 WL 17773368, at *8 (E.D. Pa. Apr. 24, 2024) (summarizing elements required to prove a UTPCPL claim).

Defendants do not state a claim for trespass to chattels under Pennsylvania law.  The crux of this Count VI (to the extent it is intelligible) is that all Defendants "intentionally interfered with Plaintiffs['] use of … Plaintiffs['] related internal databases and systems the Intelligence data and Support Materials housed for licensed access."  Amended Complaint at ¶ 118.

Emblematic of a shotgun pleading, the Amended Complaint does not furnish any specific allegations against the Marchant Defendants, nor could it.  *See id.*  There are no allegations that the Marchant Defendants had ever maintained access to these "internal databases," nor any licensed property of Plaintiffs.  As such, the Marchant Defendants *per se* could not have dispossessed Plaintiffs of this supposed chattel, much less with the required intentionality.  For these reasons, Count V must be dismissed.

### 7.    Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI)

In Pennsylvania, unjust enrichment is an equitable remedy, defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp .3d 158, 163 (E.D. Pa. 2022), *aff'd*, 2023 WL 4418219 (3d Cir. July 10, 2023).

"To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must establish that (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Id.*  "An unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023).

Defendants do not provide any allegations of a benefit conferred upon the Marchant Defendants, much less with the required specificity.  Yet again, the Amended Complaint fails to furnish any specific allegations tying the Marchant Defendants to the supposed "unjustly received benefits in the form of stolen data and customers[.]"  *Id.* at ¶ 126.  As described *ad nauseum* herein, there is simply no allegation that the Plaintiffs have ever conferred any benefit on the Marchant Defendants, much less any "stolen data or customers."  The Marchant Defendants thus necessarily could not have appreciated, accepted, nor retained such benefits.  For these reasons, Count VI must be dismissed.

### 8.    Plaintiffs Fail to State a Claim for Negligence (Count VII)

Under Pennsylvania law, to establish a claim for negligence, a plaintiff must show: "(1) duty; (2) breach; (3) causation; and (4) damages."  *NVR, Inc. v. Majestic Hills, LLC*, 670 F. Supp. 3d 206, 227 n. 17 (W.D. Pa. 2023) (citations omitted).  To determine the existence of a duty, the Court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution."  *Id.*

Nowhere in the Amended Complaint is there any specific allegation tying the Marchant Defendants to any "duty" to the Plaintiffs.  Rather, the Amended Complaint appears to premise such a "duty" on the boilerplate assertion that all Defendants failed to "supervise, train, manage and oversee their employees, subcontractors and assigns who impacted Plaintiffs' business."  Amended Complaint at ¶ 133.  According to the Amended Complaint, the Defendants also failed to "use security to protect and preserve valuable data owned by Plaintiffs as proprietary data."  *Id.* at ¶ 135.  These allegations do not pertain at all to the Marchant Defendants, eliminating the possibility of a duty owed to Plaintiffs.  There is no allegation that the Marchant Defendants ever

interacted directly with Plaintiffs, much less through their "employees, subcontractors, or assigns." Likewise, there is no allegation that the Marchant Defendants had access to any of the "proprietary" data of Plaintiffs, much less any data. Rather, to the angst of Stern, the Marchant Defendants had access only to the publicly available docket sheet concerning his March 30, 2022 disorderly conduct arrest. For these reasons, Count VII must be dismissed.

### 9.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII)

Under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, *i.e.* an intent to injure, is essential in proof of a conspiracy." *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021).

Plaintiffs cannot establish these elements and have thus not alleged a viable claim for civil conspiracy. The Amended Complaint only arguably alludes to the Marchant Defendants in a single group pleading allegation: that they acted in concert with the other Defendants by "artificially enhancing and embellishing the simple summary disporderly [*sic*] charge in [the] Chester County Court of Common Pleas." Amended Complaint at ¶ 139.

This single allegation is not within the realm of the pleading required to state a claim for civil conspiracy. Most importantly, there is no specific allegation that the Marchant Defendants have agreed to do any unlawful act or an otherwise lawful act by unlawful means. The Marchant Defendants are entirely unconnected from the allegations undergirding this claim, including Stern's supposed remunerative speaker position at Skyscape Entertainment.

Further, the Amended Complaint lacks any allegations whatsoever that the Marchant Defendants acted with the required malice, or any malice whatsoever. For these reasons, Count VIII must be dismissed.

### 10.    Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX)

Under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*, CV 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024).

Aside from stray references to the word "fraud," the Amended Complaint is devoid of any specific allegations as to the alleged fraud perpetrated on Plaintiffs, much less the Marchant Defendants' knowledge and substantial assistance. All told, at best, the Amended Complaint simply recites the above-referenced elements without any single particularized allegation that could give rise to liability against the Marchant Defendants. *See* Amended Complaint at ¶¶ 145-148. The claim must fail, and Count IX must be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants David Marchant and KYC News, Inc. T/A/D/B/A Offshore Alert respectfully request that the Court dismiss Plaintiffs' Amended Complaint against the Marchant Defendants in its entirety and with prejudice, as any amendment would be futile.

Dated: July 24, 2024
      Philadelphia, Pennsylvania


                          HOLLAND & KNIGHT LLP

                          /s/ Benjamin R. Wilson
                          Benjamin R. Wilson, Esq. (Bar No. 327118)
                          1650 Market Street, Suite 3300
                          Philadelphia, Pennsylvania 19103
                          Phone: (215) 252-9600
                          Email: benjamin.wilson@hklaw.com

                          Richard A. Bixter Jr.,

26

*pro hac vice pending*
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Phone: (312) 422-9032
Email: richard.bixter@hklaw.com

*Attorneys for Defendants David Marchant*
*and KYC News, Inc. T/A/D/B/A Offshore Alert*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system and served upon all parties registered for the CM/ECF system in this case.

Dated: July 24, 2024
       Philadelphia, Pennsylvania

                                      /s/ Benjamin R. Wilson

28