**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL LAW DIVISION**

EVERETT STERN, *et ano.,*

      Plaintiffs,

                      Civil Action No. 2:24-cv-01222-WB

vs.

WILLIAM RUZICH, *et al.,*

      Defendants.

## PLAINTIFFS' RESPONSE  AND MEMO OF LAW IN OPPOSITION DEFENDANT SPYSCAPE MOTION TO DISMISS

### I.    PRELIMINARY STATEMENT

The Complaint (ECF No. 1) ("Complaint") filed by Plaintiffs, Everett Stern ("Stern") and Tactical Rabbit, LLC (together, "Plaintiffs") against Defendant "Spyscape Entertainment" ("Spyscape" or "Movants") is a proper pleading that Movant's titled as an Amended Complaint but that is the Complaint (with the amended exhibit only) that have allegations directed at Spyscape who collaborated with Plaintiffs on business deals and tortiously interfering with Plaintiffs' "relationship" with Spyscape. Compl. ¶¶ 13-14, 26, 54, 142. The gravamen of Plaintiffs' case against Spyscape is that Plaintiffs invested time and resources in a "co-marketing event" and prospective "partnership" with Spyscape, neither of which materialized because unspecified "complaints" about Stern were made to Spyscape. Except that the Moving Defendants specifically took subcontractors of Plaintiffs, conspired with them and misused the information of Plaintiffs. The specific allegations against Movants are incorporated by reference as if fully set forth at length

herein concerning Plaintiffs' claimed malfeasant misbehavior, conspiracy to derail their business interests or the alleged tortious interference with Plaintiffs' business relationships. The entire time that the Movants and Plaintiffs worked together the Movants knew at all time that all of the responsive work performed by Plaintiffs and with Movants occurred ONLY (emphasis) in Pennsylvania and that any impact of the action taken by Spyscape occurred in Pennsylvania.

The Amended Complaint should be not dismissed for numerous reasons. First, Plaintiffs establish personal jurisdiction over Spyscape as set forth below. Plaintiffs acknowledge Spyscape is not incorporated in Pennsylvania and maintain no physical presence in Pennsylvania but at all times relevcant the actions of Movants had major impact on the Plaintiffs in Pennsylvania where the Plaintiff subcontractors and information were misappropriated by Movants.

Spyscape's overall contacts with Pennsylvania were regular and impactful, sufficiently substantial, continuous, and systematic so as to subject them to the general jurisdiction of a Pennsylvania court.

Second, specific jurisdiction may be exercised over Spyscape since Plaintiffs allege specific facts that establish a connection between Spyscape, Pennsylvania, and the claims at issue in this case. In particular, Spyscape's misconduct- ostensibly usurping the information and people who worked with and for Plaintiffs to garner ill-gotten people, information and pecuniary gains – all resulting in an abrupt highly damaging, conclusion of a prospective "partnership" with Spyscape.

In sum, Movants worked directly with Plaintiffs who at all time salient and relevant operated out of this federal judicial district in Southeastern Pennsylvania availing themselves to the lawful connection between this action and Pennsylvania, and far beyond the link that the U.S. Supreme Court has held that a plaintiff's link is alone insufficient to find personal jurisdiction.

Third, Plaintiffs expressly deny that the Amended Complaint is devoid of specific, distinct facts necessary to establish plausible claims against Spyscape for the relief Plaintiffs seek. Plaintiffs plead very specific allegations detailing the malfeasant actions of Spyscape in detailed manner sufficient to frame out actionable claims.

The Plaintiffs will revise the Complaint if the Court deems this step necessary but asserts that the allegations are plead properly such that Spyscape is fully aware and understands the claimed allegations actions and provide a basis for relief and allege facts to support the essential elements of the claims or delineate any allegations between the numerous defendants.

In sum, detailed allegations in Plaintiffs' Complaint read in their entirety meet the pleading standards established by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009), and the Complaint such that the Movants should be ordered to the Complaint.

The Complaint (ECF No. 1) ("Complaint") filed by Plaintiffs,

Everett Stern ("Stern") and Tactical Rabbit, LLC (together, "Plaintiffs") against Defendant "Spyscape Entertainment" (**"Spyscape"** or "Movants") is a proper pleading that Movant's titled as an Amended Complaint but that is the Complaint (with the amended exhibit only) that have allegations directed at Spyscape who collaborated with Plaintiffs on business deals and tortiously interfering with Plaintiffs' "relationship" with Spyscape. Am. Compl. ¶¶ 13-14, 26, 54, 142. The gravamen of Plaintiffs' case against Spyscape is that Plaintiffs invested time and resources in a "co-marketing event" and prospective "partnership" with Spyscape, neither of which materialized because unspecified "complaints" about Stern were made to Spyscape. Except that the Moving Defendants specifically took subcontractors of Plaintiffs, conspired with them and misused the information of Plaintiffs. The specific allegations against Movants are incorporated by reference

as if fully set forth at length herein concerning Plaintiffs' claimed malfeasant misbehavior, conspiracy to derail their business interests or the alleged tortious interference with Plaintiffs' business relationships.  The entire time that the Movants and Plaintiffs worked together the Movants knew at all time that all of the responsive work performed by Plaintiffs and with Movants occurred ONLY (emphasis) in Pennsylvania and that any impact of the action taken by Spyscape occurred in Pennsylvania.

The Amended Complaint should be not dismissed for numerous reasons.  <u>First</u>, Plaintiffs establish personal jurisdiction over Spyscape as set forth below.  Plaintiffs acknowledge,  Spyscape is not incorporated in Pennsylvania and maintain no physical presence in Pennsylvania but at all times relevcant the actions of Movants had major impact on the Plaintiffs in Pennsylvania where the Plaintiff subcontractors and information were misappropriated by Movants.

Spyscape's overall contacts with Pennsylvania were regular and impactful, sufficiently substantial, continuous, and systematic so as to subject them to the general jurisdiction of a Pennsylvania court.

<u>Second</u>, specific jurisdiction may be exercised over Spyscape since Plaintiffs allege specific facts that establish a connection between Spyscape, Pennsylvania, and the claims at issue in this case.  In particular, Spyscape's misconduct- ostensibly usurping the information and people who worked with and for Plaintiffs to garner ill-gotten people, information and pecuniary gains  – all resulting in an abrupt highly damaging, conclusion of a prospective "partnership" with Spyscape.

In sum, Movants worked directly with Plaintiffs who at all time salient and relevant operated out of this federal judicial district in Southeastern Pennsylvania availing themselves to the lawful connection between this action and Pennsylvania, and far beyond the link that the U.S. Supreme Court has held that a plaintiff's link is alone insufficient to find personal jurisdiction.

Third, Plaintiffs expressly deny that the Amended Complaint is devoid of specific, distinct facts necessary to establish plausible claims against Spyscape for the relief Plaintiffs seek. Plaintiffs plead very specific allegations detailing the malfeasant actions of Spyscape in detailed manner sufficient to frame out actionable claims.

The Plaintiffs will revise the Complaint if the Court deems this step necessary but asserts that the allegations are plead properly such that Spyscape is fully aware and understands the claimed allegations actions and provide a basis for relief and allege facts to support the essential elements of the claims or delineate any allegations between the numerous defendants.

In sum, detailed allegations in Plaintiffs' Amended Complaint read in their entirety meet the pleading standards established by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009), and the Amended Complaint such that the Movants should be ordered to Answer the Complaint.

## II.  **RELEVANT BACKGROUND**

### A. SPYSCAPE Operates Exclusively in New York

As the Complaint acknowledges, Plaintiffs agree that Spyscape maintains a principal place of business in New York City. Am. Compl. at ¶ 11; see also the Declaration of Marcelle Devine dated September 9, 2024, at ¶ 2 (the "Devine Decl."). Specifically, Spyscape operates a publicly accessible spy-themed museum, plus two immersive experiences (SPY HQ and SPYGAMES) in New York. Devine Decl. at ¶ 3. As part of that SPY HQ experience in New York, Spyscape provides visitors with access to a personalized "psychological profile." Id. at ¶ 3. Spyscape's business and operations are conducted from that same location in New York City. Id. at ¶¶ 3. Spyscape operates its website, "spyex.com," from New York. Id. ¶ 6. It receives and processes user requests via its website from New York. Id. And it likewise receives, processes, and

00001

sources customer purchases of spy-related products from its New York location. Id. Spyscape's museum and corporate office in New York City constitute its sole presence in the United States. Id. ¶ 8. It has no physical location or presence anywhere else in the United States, including, as relevant here, in Pennsylvania. Id. Spyscape does not maintain

an office in Pennsylvania. Id. at ¶ 9. It has no employees here. Id. at ¶ 10. It maintains no bank accounts within the State. Id. And it holds no property nor maintains any other asset in Pennsylvania. Id. at ¶¶ 10-11.

However, Movants specifically availed themselves (continuously and regularly) to this jurisdiction by partnering with Plaintiffs whom they regularly corresponded and dealt with from Chester and Philadelphia Counties at all relevant and salient times extensively for months while Plaintiffs provided Movants with marketing and business development opportunities that Moving Defendants took and monetized to their sole and exclusive benefit wholly at the cost and to the detriment of Plaintiffs who lost time, money and resources as a direct and proximate result.

### **B. Spyscape's Limited Dealings with Plaintiff Stern**

Spyscape seemingly tries to mislead this court by interjecting irrelevant facts like that they operate a podcast network from New York and the United Kingdom. Id. at ¶ 12. In 2021, Stern appeared as a guest on an episode of a Spyscape podcast called "True Spies." Id. That podcast was conducted remotely and administered by the third-party interviewers and technicians located in the United Kingdom. Id.

Spyscape's website also lists dozens of profiles of individuals (many of whom are former intelligence officers) who may be available for speaking, training, or consulting engagements. Id. at ¶ 13. Consistent with Stern's podcast appearance, his profile was depicted from April 10, 2021 to March 20, 2023. Id. But no one ever requested his services, either through Spyscape's

website or through any other means connected to Spyscape. Id. But Movants benefitted extensively by Stern's contributions of information and moreover of qualified professionals that were previously associated with Plaintiffs until Movants ostensibly took these professionals and marketed using their skills and experience to bolster and augment the credibility of Movant's business.

## III.    ARGUMENT

### A. The Court Should Deny the Motion to Dismiss the ComplaintUnder Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction

#### 1.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant(s) when it lacks jurisdiction, unlike this case. Defendant and Plaintiffs maintained a business relationship together such that the long-arm statute validates the personal jurisdiction where Spyscape maintained regular and constant contact with Plaintiffs who at all times relevant worked in this District in Pennsylvania. The Defendants have availed themselves to jurisdiction in this District.

Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(e)). Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 700 (E.D. Pa. 2023) (quoting 42 Pa. Const. Stat. § 5322(b)). Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court takes the allegations of the complaint as true. *Riad*, 657 F. Supp. 3d at 700 (citing *Dayhoff v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3rd Cir. 1996)). These allegations clearly establish the requisite contacts and relationship to this District. Movants inaccurately tries to equate the actual contacts with legal conclusions by a plaintiff "are no more than conclusions and are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The burden to establish personal jurisdiction is on the Plaintiff who has established the regular contacts with the Defendants in this District. *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) meeting their burden. "[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Dayhoff*, 86 F.3d at 1302; *see also Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (noting that, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may <u>not</u> merely rely on the allegations in its complaint") (emphasis in original and citation omitted). The plaintiff must establish those contacts with "reasonable particularity." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). A comprehensive reading of the Complaintestablishes Plaintiff has satisfied their prima facie basis for imposing personal jurisdiction on Movants.

### 2.    The Court Has General Personal Jurisdiction over Spyscape

Spyscape routinely and regularly has systemic contacts with the Pennsylvania parties like Plaintiffs who spent months working with Movants providing Defendants with regular input and business relationships and contacts to avail themselves with this District Court. The exercise of

general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state. *Id.* To exercise general personal jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is "at home" in its place of incorporation and its principal place of business. *Id.* Spyscape uses online modalities to market to Pennsylvania consumers and in this case to garner significant business assets by collaboration with Plaintiffs at all salient and relevant times in this District in Pennsylvania. Plaintiffs acknowledge that, Spyscape is incorporated in Delaware and maintains a principal and sole place of business in New York. *See* Devine Decl. at ¶¶ 2-4. Spyscape has not consented to general personal jurisdiction. Consequently, it is clear that Spyscape is not subject to general personal jurisdiction in this Court. *See, e.g., M3 USA Corp. v. Hart*, 516 F. Supp. 476, 490 (E.D. Pa. 2021) (refusing to find general personal jurisdiction over a non-resident corporation).

### 3. The Court Has Specific Personal Jurisdiction Over Spyscape

Whereas, the General Personal Jurisdiction in this District may be attenuated, there is clearly specific personal jurisdiction on Movants due to their continuous contacts in the Commonwealth of Pennsylvania and their affiliation with Plaintiffs derived therefrom. Specific Personal Jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). As it relates to the instant case, the Movants fully availed themselves to jurisdiction in this District by collaborating with and doing business with Plaintiffs such that they are subject to this Court. For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction." *Id.* The Defendants

purposefully availed themselves to this District by virtue of their collaboration with Plaintiffs, the benefit of garnering extensive business from the now ill-fated relationship with Plaintiffs that solely and as a direct, proximate cause of this relationship and the activities related from this forum

Specific jurisdiction over non-residents involves a three-part test. "First, the defendant must have 'purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 316 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).[1] The contacts must be the "defendant's own choice and not random, isolated, or fortuitous." *Id.* (citation omitted).

"Second, the litigation must 'arise out of or relate to' at least one of those activities'" which were purposefully directed at the forum. *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (noting there must be a "strong connection" between a defendant's actions and the alleged claim). This element prevents Spyscape from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475.

"And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citing *Burger King*, 471 U.S. at 476). The required elements to confer personal jurisdiction are present, and thus the Court has personal jurisdiction over Spyscape.

### i. Spyscape Has Purposefully Directed Its Activities Towards Pennsylvania

As is clearly deduced from the full reading of the Complaint, there are cogent allegations that Spyscape purposely directed its activities towards Pennsylvania. Spyscape's business relationship between Plaintiffs and Spyscape concerned growing business together and included but was not limited to a remote podcast conducted by interviewers in the United Kingdom and a brief appearance of Stern's profile on Spyscape's website, which are operated and maintained outside of Pennsylvania, but which were produced almost entirely from Pennsylvania. The Complaint's assertion that Plaintiffs "helped Spyscape grow and prosper" is a cogent supported allegation read in totality with the other averments in the Complaint. Movants regularly worked with Plaintiffs knowing that they were working from Chester and Philadelphia Counties in addition to the connection to Pennsylvania (where Stern's former residence in Pennsylvania) and purported operation of Tactical Rabbit. *See* Complaint ¶ 13 (noting in an allegation against Spyscape that "Plaintiffs operated these businesses in Philadelphia, Pennsylvania at all salient and relevant times").

Movants took actions in furtherance of their business collaboration when Plaintiffs were only in Pennsylvania and they availed themselves to jurisdiction. Indeed, the Plaintiffs worked with the Movants remotely such that, "plaintiffs cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Hadnagy v. Moss*, Civil Action No. 22-3060, 2023 WL 114689, at *5 (E.D. Pa. Jan. 5, 2023). It is the Defendants malfeasant misconduct that happened to the business operations of Plaintiffs Pennsylvania operations thus the Defendants misconduct actually occurred in Pennsylvania (quoting *Walden v. Fiore*, 571 U.S. 277, 290 n. 9 (2014)). Because the Defendants misconduct impacted the Plaintiffs here, the Plaintiffs are the NOT (emphasis added) the only link

to Pennsylvania, this personal jurisdiction may be exercised over Spyscape who directly targeted Stern and Tactical Rabbit usurping directly and indirectly the Plaintiffs information directly and proximately ruining their business.  Thus, a strong connection between the malfeasant actions of the Moving Defendants specifically targeting these Plaintiffs to then misappropriate and take business from Plaintiffs.

### ii. There is a Direct Connection Between Plaintiffs' Claims and Spyscape

Answering Plaintiffs, having established this direct connection between their claims against the Movants actions and claims to cogently establish that this Court has long-arm personal jurisdiction. To establish personal jurisdiction, a plaintiff must also show a "strong connection" between the claims alleged and the defendants' actions. *See, e.g., Hepp*, 14 F.4th at 208. The Amended Complaint, provides specific facts establishing this strong connection between Plaintiffs' claims and Spyscape, necessary for a court to exercise personal jurisdiction.

Spyscape acted as a conduit and powerful force against Plaintiffs significantly using their strong commercial presence to harm Plaintiffs after usurping their people and customers. Plaintiffs' claims in the Complaint is that the other defendants, including the "contracting defendants" (which expressly excludes Spyscape), pursuant to agreements to provide "specific services," "gained unauthorized access" and then "misappropriated" purportedly "highly confidential and proprietary setoff information" in order to "steal" Plaintiffs' existing customers and debilitate their access to new customers, supposedly giving rise to various contract and tort-based claims.  *See* Compl. at, *e.g.*, ¶¶ 21, 7-72, 83, 94, 108, 119, and 126.  The purported resulting injury includes the Plaintiffs' "loss" of existing clients and prospective business relationships. *Id.* at, *e.g.*, ¶¶ 79, 87, 99, 108, and 136.

The Plaintiffs have set forth cogent allegations confirming their suffered an injury and facts suggesting that that Spyscape aimed their malfeasant misconduct at Pennsylvania and specifically at the operations of Plaintiffs which is required to find personal jurisdiction over Spyscape. *See, e.g., IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

The Complaintmakes allegations how Spyscape misused their relationship with the Pennsylvania target Plaintiffs to improperly gained access, much less "unauthorized access," to any personal or proprietary information of Plaintiff in the Complaintinferring that Spyscape (or any of its personnel) contracted with Plaintiffs, such that Spyscape would have access to Plaintiffs' information under any circumstances and violated duties of good faith and fair dealings in their quasi-contractual relationship. Spyscape is specifically alleged to have acted improperly taking the Plaintiffs information, business, and resources from Plaintiffs and have damaged Plaintiffs' relationships between existing and/or prospective clients.

The Complaintis Stern's brief presence on one of Spyscape's website, which is maintained from New York (Devine Decl. ¶ 5) and but that was specifically targeted at Pennsylvania residents. In sum, Plaintiffs have shown a direct and strong connection between Spyscape's conduct and Plaintiffs' injuries, "strong connection" required to satisfy this factor. *See Hepp*, 14 F. 4th at 208.

### iii. The Exercise of Jurisdiction Over Spyscape Is Neither Unfair nor Unjust

Spyscape had sufficient contacts with Pennsylvania and that Plaintiffs' claims were tied to conduct in Pennsylvania, Plaintiffs can establish that this Court's exercise of jurisdiction is fair and just. The Movants targeting the Plaintiffs to usurp and take their business in Pennsylvania is a just and fair basis to impose jurisdiction. The Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective

relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing *Burger King,* 471 U.S. at 477). The Complaint offers cogent, specific allegations that Plaintiffs and Spyscape interacted ONLY with Plaintiffs in the Commonwealth of Pennsylvania (emphasis added). There is little to no unfairness to Spyscape fa having to litigate in a forum that is totally foreign to it since it is so geographically close. For these reasons, Plaintiffs satisfies the three required elements for this Court to take personal jurisdiction over Spyscape, and the Complaintshould not be dismissed with prejudice against Spyscape under Fed. R. Civ. P. 12(b)(2).

**B.    The Court Should Deny the Motion to Dismiss the Complaint Under Fed. R. Civ. P. 12(b)(6)**

### 1.    Legal Standard

Sufficiently plead factual allegations in the Complaint support the causes of action pled by Plaintiffs against Moving Defendants. Plaintiffs have adequately plead cogent causes of action and stated plausible legal claims against Spyscape. An action may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Plaintiffs' allegations are entitled to a presumption of truth at this stage, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Plaintiffs have adequately plead sufficient facts to establish requisite causes of action against Movants.

## 2. The Complaint is Not an Impermissible "Shotgun Pleading"

Movants incorrectly claims that as a threshold issue, the Complaint fails to comply with Rule 8(a)(2) and should be dismissed at the outset. Instead, the Complaint properly sets forth causes of action pursuant to Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Complaints that violate this rule, such as the Amended Complaint, "are often disparagingly referred to as 'shotgun pleadings." *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted). The Third Circuit has lamented "the all-too-common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early-stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted." *Id.*

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol*, 251 F. Supp. 3d at 859.

The Complaint has unique factual averments but not "shotgun pleading," as it specifically offers cogent, detailed facts and not just a recitation elements of various causes of action while alleging even the most fundamental underlying facts.  Moving Defendants are not subject to the boilerplate allegations but instead the factual allegations concerning Spyscape, and other defendants, Plaintiffs actually blame other defendants for the alleged tortious conduct for which Spyscape is supposedly culpable.  *See* Compl. at ¶ 26.

The Complaint is intended to be read as a whole and in its entirety. Plaintiffs deny that within the nine counts spanning more than twenty pages (*see* Complaint at pp. 20-40) with detailed allegations contained within treatise citation to the law purportedly underlying the immediately preceding account.  *Id.* at ¶ 150.   For these reasons, the Complaintsufficiently satisfies Rule 8(a)(2).  The Complaintshould be not dismissed with prejudice against Spyscape.

### 3. Plaintiffs Complaint States a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)

Plaintiffs' Complaint offers adequate allegations with respect to Counts II and III, with sufficient facts to support both of these claims. Plaintiffs have adequately plead cause of actions against Movants in order to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

First, Plaintiffs do allege that it ever had a contractual relationship with Spyscape as a quasi-contract predicated upon their agreement to work together collaboratively. Second, the Complainthas specific allegations concerning their respective and prospective contractual relationship between Plaintiffs and any third-party i.e. the stable of intelligence professionals working for Tactical Rabbit along with allegations about unnamed clients of Plaintiffs. Compl., ¶¶ 84, 86. Furthermore, the supposed basis for the "interference" alleged in Count II is the "unauthorized access" to Plaintiffs' "intelligence data and materials," which is how and why Spyscape misappropriated this valuable data, having independent pecuniary value *Id.* ¶ 85.

Third, Count III is negligence against Movants who owed a duty of care to Plaintiffs but who (in the alternative) acted to negligently interference with contractual relations

The only exception to the rule is where a "special relationship exists between the parties." *Id.* The "special relationship" exception clearly does not apply here, as the handful of allegations in the Complaintprovide no basis for a special relationship between Plaintiffs and Spyscape. As such, Counts II and III should be not be dismissed.

### B. **The Court Should Deny the Motion to Dismiss the ComplaintUnder Fed. R. Civ. P. 12(b)(6)**

#### 1. **Legal Standard**

Sufficiently plead factual allegations in the Complaint support the causes of action pled by Plaintiffs against Moving Defendants. Plaintiffs have adequately plead cogent causes of action and stated plausible legal claims against Spyscape. An action may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Plaintiffs' allegations are entitled to a presumption of truth at this stage, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Plaintiffs have adequately plead sufficient facts to establish requisite causes of action against Movants.

### 2. The Complaint is Not an Impermissible "Shotgun Pleading"

Movants incorrectly claims that as a threshold issue, the Complaint fails to comply with Rule 8(a)(2) and should be dismissed at the outset. Instead, the Complaint properly sets forth causes of action pursuant to Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Complaints that violate this rule, such as the Amended Complaint, "are often disparagingly referred to as 'shotgun pleadings." *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted). The Third Circuit has lamented "the all-too-common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early-stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted." *Id.*

100001

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol*, 251 F. Supp. 3d at 859.

The Complaint has unique factual averments but not "shotgun pleading," as it specifically offers cogent, detailed facts and not just a recitation elements of various causes of action while alleging even the most fundamental underlying facts. Moving Defendants are not subject to the boilerplate allegations but instead the factual allegations concerning Spyscape, and other defendants, Plaintiffs actually blame other defendants for the alleged tortious conduct for which Spyscape is supposedly culpable. *See* Am. Compl. at ¶ 26.

The Complaint is intended to be read as a whole and in its entirety. Plaintiffs deny that within the nine counts spanning more than twenty pages (*see* Complaint at pp. 20-40) with detailed allegations contained within treatise citation to the law purportedly underlying the immediately preceding account. *Id.* at ¶ 150. For these reasons, the Complaint sufficiently satisfies Rule 8(a)(2). The Complaint should be not dismissed with prejudice against Spyscape.

### 3. Plaintiffs Complaint States a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)

Plaintiffs' Complaint offers adequate allegations with respect to Counts II and III, with sufficient facts to support both of these claims. Plaintiffs have adequately plead cause of actions against Movants in order to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third

party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

First, Plaintiffs do allege that it ever had a contractual relationship with Spyscape as a quasi-contract predicated upon their agreement to work together collaboratively. Second, the Complain as specific allegations concerning their respective and prospective contractual relationship between Plaintiffs and any third-party i.e. the stable of intelligence professionals working for Tactical Rabbit along with allegations about unnamed clients of Plaintiffs. Compl., ¶¶ 84, 86. Furthermore, the supposed basis for the "interference" alleged in Count II is the "unauthorized access" to Plaintiffs' "intelligence data and materials," which is how and why Spyscape misappropriated this valuable data, having independent pecuniary value *Id.* ¶ 85.

Third, Count III is negligence against Movants who owed a duty of care to Plaintiffs but who (in the alternative) acted to negligently interference with contractual relations

The only exception to the rule is where a "special relationship exists between the parties." *Id.* The "special relationship" exception clearly does not apply here, as the handful of allegations in the Complaint provide no basis for a special relationship between Plaintiffs and Spyscape. As such, Counts II and III should be not be dismissed.

**B.**    **The Court Should Deny the Motion to Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6)**

### 1.    Legal Standard

Sufficiently plead factual allegations in the Amended Complaint support the causes of action pled by Plaintiffs against Mopving Defendants. Plaintiffs have adequately plead cogent causes of action and stated plausible legal claims against Spyscape. An action may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Plaintiffs' allegations are entitled to a presumption of truth at this stage, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Plaintiffs have adequately plead sufficient facts to establish requisite causes of action against Movants.

### 2. The Amended Complaint is Not an Impermissible "Shotgun Pleading"

Movants incorrectly claims that as a threshold issue, the Amended Complaint fails to comply with Rule 8(a)(2) and should be dismissed at the outset. Instead the Amended Complaint properly sets

forth causes of action pursuant to Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Complaints that violate this rule, such as the Complaint, "are often disparagingly referred to as 'shotgun pleadings.'" *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted). The Third Circuit has lamented "the all-too-common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early-stage frivolous claims and those that should be heard in state court, and (2) to provide the Defendant with sufficient notice of the claims asserted." Id.

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Bartol, 251 F. Supp. 3d at 859.

The Complaint has unique factual averments but not "shotgun pleading," as it specifically offers cogent, detailed facts and not just a recitation elements of various causes of action while alleging even the most fundamental underlying facts. Moving Defendants are not subject to the boilerplate allegations but instead the factual allegations concerning Spyscape, and other defendants, Plaintiffs actually blame other defendants for the alleged tortious conduct for which Spyscape is supposedly culpable. See Compl. at ¶ 26.

The Complaint is intended to be read as a whole and in its entirety. Plaintiffs deny that within the nine counts spanning more than twenty pages (see Complaint at pp. 20-40) with detailed allegations contained within treatise citation to the law purportedly underlying the immediately

preceding account. Id. at ¶ 150.    For these reasons, the Complaintsufficiently satisfies Rule 8(a)(2). The Complaintshould be not dismissed with prejudice against Spyscape.

### 3. Plaintiffs ComplaintStates a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)

Plaintiffs' Complaint offers adequate allegations with respect to Counts II and III, with sufficient facts to support both of these claims. Plaintiffs have adequately plead cause of actions against Movants in order to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." Acumed, LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

First, Plaintiffs do allege that it ever had a contractual relationship with Spyscape as a quasi-contract predicated upon their agreement to work together collaboratively.    Second, the Complainthas specific allegations concerning their respective and prospective contractual relationship between Plaintiffs and any third-party i.e. the stable of intelligence professionals working for Tactical Rabbit along with allegations about unnamed clients of Plaintiffs. Compl., ¶¶ 84, 86.    Furthermore, the supposed basis for the "interference" alleged in Count II is the "unauthorized access" to Plaintiffs' "intelligence data and materials," which is how and why Spyscape misappropriated this valuable data, having independent pecuniary value Id. ¶ 85.

Third, Count III is negligence against Movants who owed a duty of care to Plaintiffs but who (in the alternative) acted to negligently interference with contractual relations

The only exception to the rule is where a "special relationship exists between the parties." Id. The "special relationship" exception clearly does not apply here, as the handful of allegations in the Complaint provide no basis for a special relationship between Plaintiffs and Spyscape. As such, Counts II and III should be not be dismissed.

### 8. Plaintiffs State a Claim for Civil Conspiracy (Count VIII)

Under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e. an intent to injure, is essential in proof of a conspiracy." Loduca v. WellPet LLC, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021).

Plaintiffs can establish these elements and have thus HAVE alleged a viable claim for civil conspiracy. Complaint alludes to Spyscape in a single group pleading allegation: that, after listing "Stern as a speaker on Spyscape Entertainment," Spyscape acted "in concert" with the other defendants to "surreptitiously supplant [Plaintiffs] from this site and its marketing prowess by the over acts of these Defendants[.]" Id. at ¶ 142.

This specific allegation is that Spyscape agreed to do unlawful act or an otherwise lawful act by unlawful means—and did so with the intent to injure Plaintiffs. Spyscape does compete with Plaintiffs, such that it would have any interest or incentive to "pick up" Plaintiffs' work. For the same reason, Spyscape had every incentive to "divest" Plaintiffs of these supposed opportunities.

Further, the Complaint interferes without ambiguity that Spyscape acted with the required malice and acted in an essential element for a civil conspiracy claim. For these reasons, Count VIII must not be dismissed.

9. Plaintiffs State a Claim for Aiding and Abetting Fraud (Count IX)

Under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." Van Horn, Metz &amp; Co., Inc. v. JPMorgan Chase &amp; Co., CV 231693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024). Moving Defendants acted fraudulently by luring Plaintiffs into their business with the false guise of joint collaboration only to misuse their proprietary data and information and by taking the intelligence professionals who worked with Plaintiffs. Count IX must not be dismissed.

**C. The Court Should Not Dismiss the ComplaintUnder Fed. R. Civ. P. 12(b)(5) Because Plaintiffs Properly Serve Spyscape**

Dismissal is unwarranted on another independent basis because Plaintiffs allegedly failed to serve the Complainton Spyscape. The Moving Defendants were properly served with the Complaint and Amended Complaint. Counsel for Moving Defendants surreptitiously tried to resolve this matter prior to entering their appearance. The federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service must be satisfied. See Omni Capital Int'l Ltd. v. Rudolf Wolff &amp; Co. Ltd., 487 U.S. 97, 104 (1987); see also Lampe v. Xouth, Inc., 952 F.2d 697, 701 (3d Cir. 1991) (explaining that personal jurisdiction is acquired "over a defendant when the plaintiff serves the defendant with the complaint in a manner specified by Rule 4 of the Federal Rules of Civil Procedure"). A plaintiff must serve a defendant with, among other things, a "copy of the

complaint." Fed. R. Civ. P. 4(c)(1). Service of the pleading must be made within 90 days of filing. Fed. R. Civ. P. 4(m). The Movants Motion to Dismiss should be denied and Movants should be Ordered to Answer the Plaintiff's Amended Complaint.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion to Dismiss of Defendant Spyscape Entertainment or in the alternative to give Plaintiffs leave to amend the Complaintaccordingly.

Mark Thomas Sophocles, LLC

Respectfully submitted,

Mark T. Sophocles, Esquire