# EXHIBIT "C"

## CONSULTING AGREEMENT

**THIS AGREEMENT** (the "Agreement") between Synapse Intel, Inc. (the "Company") and Lindsay Moran (the "Consultant"), is entered into and made effective as of 06/21/2022.

**WHEREAS**, the Company desires to procure the services of the Consultant, and the Consultant desires to provide such services to the Company on the terms and conditions hereinafter set forth;

**NOW, THEREFORE**, as and for consideration for the mutual promises, covenants and agreements as set forth herein, and for other good and value consideration, receipt and sufficiency of which is hereby acknowledged, the Company and the Consultant (each a "Party") agree as follows:

1. **Engagement**. The Company hereby engages the Consultant, and the Consultant hereby accepts engagement, as a consultant for the Company, upon the terms and conditions set forth in this Agreement. The Consultant shall report to Everett Stern ("Stern") or his designee.

2. **Duties; Efforts**.

    (a)  Duties. The Consultant will perform the services as the chief operating officer for the Company (hereinafter, the "Services") and is responsible for the day-to-day operation of the Company. Services shall include, but not be limited to, engaging and managing the individual consultants of the Company to make certain that they are performing their assigned tasks consistent with the quality standards of the Company and in a timely manner and managing the client intake process including engagement of such clients. Consultant may also be tasked with training other consultants of the Company, managing certain aspects of the Company and creating manuals. Consultant will communicate with Stern regularly about progress the Consultant has made in performing the Services. Consultant will supply all tools, equipment, and supplies required to perform the Services, except if the Consultant's work must be performed on or with the Company's equipment, which determination shall be made in the sole discretion of the Company. The Consultant shall perform the services contemplated herein faithfully, diligently, to the best of the Consultant's ability and in the best interests of the Company, in a diligent, trustworthy, professional and efficient manner, and Consultant shall comply with the Company's policies and procedures in all material respects.

    (b)  Commitment. During the term of this Agreement, the Consultant shall devote all of Consultant's business time, attention and energies to the provide the Services.

    (c)  Duty of Loyalty. The Consultant owes a fiduciary duty to act loyally for the Company's benefit in all matters connected with this engagement. The Consultant

hereby acknowledges that Consultant owes this duty of loyalty to the Company and that the Consultant has the obligation throughout the term of this Agreement to act at all times in a manner consistent with the best interests of Company.

(d) <u>Policies and Procedures</u>.  During the term of this Agreement, the Consultant shall comply with the Company's rules, standards, policies and procedures and the Consultant will further comply with all applicable laws, regulations, by-laws, and rules of all governmental authorities and all regulatory authorities that apply to the operation of the Company.  The Consultant shall notify the Company promptly of any disciplinary action or inquiry with respect to any such laws, rules and regulations. Except as otherwise directed by Stern, the Company agrees that the Services need not be rendered at any specific location and may be rendered at any location selected by the Consultant.

3. **<u>Compensation; Benefits; Expenses; Taxes</u>**.

(a) <u>Compensation</u>.  In full consideration for Consultant's performance of Consultant's duties and responsibilities with the Company, the Company shall pay to Consultant the compensation set forth below (the "Compensation").

(i) Within sixty (30) days of the end of each month, the Company shall, subject to the approval of Stern, pay to Consultant a bonus equal to ten percent (10%) of the net revenue of the Company for the immediately previous fiscal year of the Company net of direct costs attributed to that revenue (the "Bonus").  The Bonus shall be payable in cash and shall only be payable so long as Consultant is still engaged by the Company and so long as Consultant is not also entitled to a payment under Section 3(a)(iii) below.

(ii) At any time after the date hereof, in the event that the Company sells all or substantially all of its equity or assets for cash, Consultant shall, within sixty (60) days of the closing of any such transaction receive a payment from the Company equal to ten percent (10%) of the gross sales proceeds actually received by the Company on the closing date of such transaction less all transaction costs and any debt of the Company.

(b) <u>Benefits</u>.  As a Consultant, the Company is not providing any insurance, retirement, vacation or other types of benefits to Consultant under this Agreement or otherwise and neither Consultant nor any of its employees or agents or any of their respective beneficiaries shall have any right or claim against the Company for any vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or other employee benefits of any kind.

(c) <u>Expenses</u>.  The Company shall promptly pay to the Consultant the reasonable pre-approved expenses incurred by Consultant in the performance of the Services.  Consultant shall receive prior written approval for any expenses for which they expect reimbursement which approval shall be granted or withheld in the sole discretion of the Company.

(d) <u>Taxes and Withholdings</u>.  Consultant shall be responsible to pay any and all taxes and other amounts due in connection with the Compensation and the Company shall not withhold any taxes from the Compensation.

**4. Termination.**

(a) <u>At-Will Engagement</u>.  The Consultant acknowledges that the Consultant's engagement with the Company is at-will, which means that both the Consultant and the Company have the right to terminate the Consultant's engagement at any time, for any reason or no reason.  Neither this Agreement, nor any other document, confers any contractual right, either express or implied, to remain engaged by the Company for any fixed period of time, nor does it guarantee any fixed terms or conditions of engagement.

(b) <u>Notice of Termination; Termination Date</u>.  Any termination of the Consultant's engagement hereunder by the Company or by the Consultant (other than termination upon the Consultant's Death, which does not require further action by any Party), shall be effective on the Termination Date (as hereinafter defined), upon the giving of written Notice of Termination (as hereinafter defined) to the other Party.  For purposes of this Agreement, a "Notice of Termination" means a notice that states the Termination Date and identifies the provision or provisions of this Agreement relied upon as the basis for termination.  "Termination Date" means: (i) if the Consultant's engagement terminates by the Consultant's Death, the date of the Consultant's Death; (ii) if the Consultant's engagement terminates because of the Consultant's Disability, upon a determination of Disability; or (iii) if the Consultant's engagement terminates for any other reason, the date specified in the applicable Notice of Termination.

**5. Cooperation and Return of Property.**

(a) <u>Cooperation</u>.  Both during and after the Consultant's engagement, the Consultant shall cooperate with the Company, as reasonably requested by the Company in connection with any investigation, review or hearing of any federal, state, or local governmental authority as any such investigation, review or hearing relates to events or occurrences that happened while the Consultant was engaged by the Company.  The Consultant's reasonable cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for governmental inquiries, discovery or trial, acting as a witness on behalf of the Company and treating all communications with the Company's counsel as confidential.  The

Consultant acknowledges that in any proceeding covered by this Section, the Company expects the Consultant to provide only accurate and truthful information or testimony. The Company shall reimburse the Consultant for all reasonable and pre-approved out-of-pocket expenses incurred in fulfilling the Consultant's obligations under this Section.

(b)     Return of Company Property.    Upon termination of the Consultant's engagement hereunder for any reason, the Consultant shall deliver to the Company and return, and shall not retain, any originals and copies of any books, intellectual property, papers, contracts, documents and data or other writings, tapes or records of the Company, regardless of form or media, maintained by the Consultant or in the Consultant's possession.

6.     **Confidentiality; Non-Solicitation; Non-Competition.**

(a)     Acknowledgment.    The Consultant hereby acknowledges that it understands that the Company is in the business of providing private sector clients various services including, without limitation, intelligence, advocacy and consulting services and then using information obtained from those services to fill national security gaps, then pursue tier one targets and report to various United States government entities. The Consultant recognizes the highly competitive nature of the Company's business and that during their engagement Consultant will have access to and use information that is confidential to the Company and its principal officers, including Stern, and that such information is valuable to the Company and its principal officers.  The Consultant understands and warrants that the Consultant's obligation to protect the confidentiality of the Company's and its principal officer's interests survives the termination or expiration of this Agreement.  The Consultant further acknowledges that the Consultant is entering into this Agreement in connection with the Consultant's engagement by the Company and that the Consultant's compliance with this Section 6 is a material condition of the Company's offer of engagement to the Consultant and that any conduct by the Consultant contrary to the terms of Section 6 shall cause irreparable harm to the Company and its principal officers.

(b)     Confidentiality and Non-Disclosure.

(i)     The Consultant further recognizes and acknowledges that: (a) the Consultant's services to the Company will be special and unique and have immeasurable value to the Company; (b) the Company's various processes, information, records and specifications owned by the Company and/or used by the Company in connection with the operation of its business including, without limitation, the Company's business and product processes, methods, client lists, accounts and procedures financial information, solicitations and strategic plans, budgets and projections, customer identifying information, potential and intended customers, employers, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, files, records, documents, information, letters, notes, notebooks, and other

confidential information, provided orally, in writing, by drawings, or by any other media, collectively hereinafter constitutes the Company's "Confidential Information"; (c) the Company would not have engaged or continue to engage the Consultant but for the acknowledgements, recognition and covenants contained in this Agreement; and (d) the covenants contained herein are essential to protect the purpose, reputation and goodwill of the Company and are not in violation of public policy.

(ii) In consideration of the Consultant's engagement with the Company and the Compensation, the Consultant hereby covenants that Consultant will not use or disclose (for the Consultant's benefit or the benefit of third parties) the Company's Confidential Information, directly or indirectly, to any other person, entity or third party (except for purposes of performing the Consultant's duties for the benefit of and as authorized by Company), at all times during and following the termination Consultant's engagement by the Company for any reason, any such Confidential Information shall remain the exclusive property of the Company.

(iii) Confidential Information shall not include the following information: (a) information now and hereafter voluntarily disseminated by the Company to the public, or which otherwise becomes part of the public domain through lawful means; (b) information regarding the Company which the Consultant had knowledge before the joining the Company; and (c) information previously or subsequently and rightfully received from third parties and not subject to any obligation of confidentiality.

(c) <u>Non-Solicitation</u>. The Consultant agrees that, at all times during the Consultant's engagement by the Company and for a period of two (2) years following the effective date of the Consultant's separation from engagement with the Company for any reason, neither the Consultant nor any entity over which the Consultant exercises managerial control shall, directly or indirectly solicit for employment or go to work in any capacity with or for any person who is (i) a consultant or employee of the Company at any time during the term of the Agreement, or (ii) a former employee or consultant of the Company who left such employment or consultancy at any time during the one (1) year period prior to the conclusion of the Agreement.

(d) <u>Non-Competition</u>. During the term of this Agreement and for a period of at least one year after termination of the Agreement for any reason, the Contractor shall not establish or engage in another practice similar to or that directly competes with the Company within the United States. For purposes of this Agreement, a practice that is similar to or competes with the Company is defined as any entity that provides private intelligence services.

(e) <u>Opportunities</u>. The Consultant further covenants that Consultant will not directly or indirectly, on behalf of the Consultant or any other person or entity, misappropriate any Opportunity of the Company by using the Company's Confidential

Information or otherwise. For purposes of this Section, Opportunity shall be defined as any existing opportunities and prospective opportunities on which the Company or the Consultant, while engaged by the Company, has worked on at any time prior to the termination or expiration of the Consultant's engagement, for any reason.

(f) <u>Exceptions</u>. This Agreement contains provisions governing the use of Confidential Information. Notice is hereby given that nothing in this Agreement shall prohibit the Consultant from the disclosure of Confidential Information that: (i) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(g) <u>Public Securities</u>. Where any securities are listed on any recognized stock exchange, the Consultant acknowledges that some or all of the Confidential Information may be relevant to the price or the value of securities. The Consultant agrees to not take any actions which would breach the insider trading provisions or any other provisions of the Securities Act of 1933, the Securities Exchange Act of 1934 or other relevant securities laws in any jurisdiction.

7. **<u>Intellectual Property</u>**.

(a) The Consultant agrees that all patentable inventions, discoveries, and trade secrets, whether or not patented, and whether or not reduced to practice, and all copyright interests that are or have been conceived or developed during the Consultant's engagement with the Company, either alone or jointly with others, if on the Company's time, using the Company's facilities, relating to the Company or its business shall be owned exclusively by the Company, and the Consultant hereby assigns to the Company all the Consultant's right, title, and interest in all such intellectual property. The Consultant agrees that the Company shall be the sole owner of all domestic and foreign patents, trademarks, trade names, service marks, domain names and other rights pertaining thereto related to such intellectual property, and further agrees to execute all documents that the Company reasonably determines to be necessary or convenient for use in applying for, prosecuting, perfecting, or enforcing patents or other intellectual property rights, including the execution of any assignments, patent applications, or other documents that the Company may reasonably request. This provision is intended to apply only to the extent permitted by applicable law.

(b) The Consultant agrees that all original works of authorship not otherwise within the scope of Section 7(a) of this Agreement that are conceived or developed during the Consultant's engagement with the Company, either alone or jointly with others, if on the Company time, using the Company's facilities, or relating to the Company its industry shall be owned exclusively by the Company and, if protectable by copyright, are "works made for hire." The Consultant agrees that the Company shall be the sole owner

of all rights pertaining thereto, and further agrees to execute all documents that the Company reasonably determines to be necessary or convenient for establishing in the Company's name the copyright to any such original works of authorship. This provision is intended to apply only to the extent permitted by applicable law.

(c) The obligations of this Section shall continue beyond the termination of the Consultant's engagement with the Company, whether the Inventions are patentable or not, if conceived or made by the Consultant during the Consultant's engagement, and shall be binding upon the Consultant's assigns, executors, administrators and other legal representatives.

**8.** **Assignment and Transfer**. This Agreement may not be assigned or transferred by the Consultant. This Agreement is binding upon the Parties and their respective successors and assigns. This Agreement shall inure to the benefit of the Parties, their respective successors and permitted assigns, and their heirs and legal representative(s) (in the case of the Consultant).

**9.** **Miscellaneous**.

(a) The Consultant hereby represents that Consultant is free to enter into this Agreement, and that Consultant's engagement by the Company does not violate the terms of any agreement between Consultant and any third party. The Consultant represents and warrants that neither the Consultant's engagement with the Company nor the Consultant's performance of the Consultant's obligations hereunder will conflict with or violate or otherwise are inconsistent with any other obligations, legal or otherwise, that the Consultant may have. The Consultant covenants, represents and warrants that Consultant shall perform Consultant's duties hereunder in a professional manner and not in conflict with or in violation of or otherwise inconsistent with, other obligations, legal or otherwise, that the Consultant may have and there are no restrictions on Consultant's ability to accept engagement with the Company. The Consultant hereby further represents and warrants that the Consultant and all of its employees and agents are U.S. citizens with no prior criminal history and that the resumes and/or other work history descriptions provided by the Consultant to the Company are true and complete. The Consultant is not in contact with any foreign intelligence service and will report any suspicious engagement or possible elicitation by foreign nationals in an effort to understand the inner workings of the Company or its officers and consultants. The Consultant hereby acknowledges that the Company is relying upon such representations and warranties in entering into its engagement with the Consultant.

(b) The Parties agree that the Consultant is obligated under this Agreement to render personal services of a special, unique, unusual, extraordinary and intellectual character, thereby giving this Agreement special value, and that in the event of a breach or threatened breach of any covenant of the Consultant herein, including without limitation Consultant's continuing obligations pursuant to Section 6, the injury or

imminent injury to the value and the goodwill of the Company's business could not be reasonably or adequately compensated in damages in an action at law. Accordingly, the Consultant expressly acknowledges that the Company and its principal officers shall be entitled to specific performance (other than continued engagement), injunctive relief or any other equitable remedy against the Consultant (without the necessity of posting a bond), in the event of any breach or threatened breach of this Agreement by the Consultant. Without limiting the generality of the foregoing, if the Consultant breaches or threatens to breach the Agreement, such breach or threatened breach will entitle the Company to, among other things, an injunction prohibiting: (i) the Consultant from disclosing any Confidential Information to any third party; (ii) such third party from receiving from the Consultant or using any such Confidential Information; and (iii) the Consultant from soliciting consultants or employees of the Company or competing against the Company in violation of the Agreement.

(c) If any provision of this Agreement shall be held by a court of competent jurisdiction or arbitrator to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect. If any court or arbitrator shall find any provision in Section 6 of this Agreement to be unenforceable, such provision shall be tailored to the maximum scope that is enforceable.

(d) This Agreement shall be governed by, construed in accordance with and enforced under the laws of the Commonwealth of Pennsylvania without giving effect to any choice or conflict of law provision or rule that would cause the application of any jurisdiction other than Pennsylvania, provided that nothing herein shall preclude the seeking of injunctive relief in any other jurisdiction, where appropriate.

(e) The Parties shall cooperate in good faith to resolve any dispute that may arise under this Agreement or any other contract or agreement between the parties. If the Parties are unable to resolve a dispute in good faith, any such controversies shall be determined in Chester County, Pennsylvania in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, should the Company have to enforce the Non-Disclosure, Confidentiality, Non-Solicitation and Non-Competition provisions, the Company may do so in any court having proper jurisdiction.

(f) In the event of any action arising out of or related to this Agreement, the losing party in any action shall be responsible for the reasonable legal expenses incurred by the other Party in connection with such action.

(g) In consideration of the Agreement hereunder, the Consultant hereby agrees to defend, indemnify and hold harmless the Company and its directors, officers, employees, agents, affiliates, and contractors from and against any and all allegations, losses, claims, actions, suits, demands, damages, obligations, liabilities, settlements,

judgments, costs and expenses (including without limitation attorneys' fees and costs) arising out of or in connection with the Consultant's acts, omissions, negligence, fraud and/or other misconduct.

(h)   This Agreement contains the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes, cancels and annuls any prior or contemporaneous written or oral agreements, understandings, commitments and practices between them with respect to such subject matter, all of which are hereby terminated and annulled and shall be of no further force or effect.  This Agreement was negotiated at arms-length between the parties.

(i)   No provision of this Agreement may be amended unless such amendment is set forth in a signed writing which makes express reference to this Agreement as the subject of such amendment and which is signed by the Consultant and on behalf of the Company, by a duly authorized officer.  No waiver by any Party of any breach of any condition or provision contained in this Agreement shall be deemed a waiver of any similar or dissimilar condition or provision at the same or any prior or subsequent time. To be effective, any waiver must be set forth in writing signed by the waiving Party and must specifically refer to the condition or provision being waived.

(j)   The provisions of this Agreement that are intended to survive the termination of the Consultant's engagement with the Company shall survive such termination and expiration in accordance with their respective terms.

(k)   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same instrument.  Signatures delivered by pdf or facsimile shall be effective for all purposes.

(l)   The Consultant acknowledges that:  (i) the Consultant has consulted with or has had the opportunity to consult with an attorney of the Consultant's choosing concerning the Agreement and that the Consultant has been advised to do so by the Company; and (ii) that the Consultant has read and understands this Agreement and that the Consultant is fully aware of its legal effect, and that the Consultant has entered into this Agreement freely based on the Consultant's own judgment and not on any representations or promises other than those contained in this Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Consulting Agreement as of the date and year first written above.

**Lindsay Moran**

_/s/ Lindsay Moran_

**SYNAPSE INTEL, INC.**

By:_____
Name: Everett Stern
Title: CEO / Owner