EVERETT STERN, et ano., Plaintiffs,

 vs. WILLIAM RUZICH, et al., Defendants.

 Civil Action No. 2:24-cv-01222

Filed by: Lindsay Moran, 218 Taylor Avenue, Annapolis, MD 21401

## DEFENDANT LINDSAY MORAN MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant Lindsay Moran ("Defendant/Moran"), hereby respectfully moves for an Order dismissing Plaintiffs Everett Stern and Tactical Rabbit, LLC's Amended Complaint (ECF No. 41)  as to all claims against Moran Defendant for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); failure to state a claim under Fed. R. Civ. P. 12(b)(6) (the "Motion"); failure to serve the Amended Complaint on Defendant; and introduction of false, unsubstantiated, and defamatory claims against Moran.

In support of her Motion, Moran Defendant submits this document and will make herself available at the Court's convenience to the extent that the Court wishes to preside over oral argument.

PRELIMINARY STATEMENT

Plaintiffs' amended complaint, like the two that preceded it, is - in short - a lengthy litany of paranoid delusional and unsubstantiated allegations against an imagined consortium of adversaries –  the Defendants.

It would be laughable if not for the fact that Defendant/Moran, at least, has wasted countless hours responding to these preposterous allegations by Plaintiff, a person with whom she had, at most, five telephone conversations in her life, and for whom she edited a single document (for which she did not receive compensation), and otherwise has had NO personal or professional relationship, aside from Plaintiff's ongoing stalking, threats, and harassment against Defendant/Moran. As has and will be made clear in subsequent

filings, Defendant/Moran has begun to fear for her personal safety, as Plaintiff persists in pursuing these spurious legal actions, quite obviously as an attempt to intimidate and harass Defendant/Moran, and it has recently come to Defendant/Moran's attention that Plaintiff possesses a firearm.

Of note, Plaintiff has a long history of false claims, spurious litigation, and harassment via abuse of the court/legal system. Plaintiff has harassed Defendant/Moran via phone and direct message since 2022, the subject of a counter-complaint against Plaintiff by Defendant/Moran; additional evidence of this harassment has been, and will be, filed separately.

Also of note, more than one individual has successfully litigated against Plaintiff for defamation and awarded damages. Plaintiff is also the defendant in more than one lawsuit for fraud, which as Defendant/Moran will make clear below, is one of the reasons she severed ties with Plaintiff after an *extremely brief* association over 2 months (maximum) in 2022. Plaintiff has a long history of filing frivolous lawsuits with fabricacted and outlandish accusations.

See below for Defendant/Moran statements refuting Plaintiff's Amended Complaint.

1) As part of his complaint, Plaintiff provides as evidence a contract Defendant/Moran signed with him in 2022. To be clear, Defendant/Moran was *never* an employee of Tactical Rabbit. She approached Plaintiff in April or May of 2022 and offered "for hire" consulting and editing services. Plaintiff's website at the time included endorsements from senior CIA officers. Defendant/Moran, a former CIA officer, assumed, based on these public endorsements, that Plaintiff was operating a legitimate business. Defendant/Moran has since learned that these "endorsements" from "senior level CIA officers" were fabricated. More than one of the CIA officers has told Moran that they want nothing to do with Plaintiff, who is regarded within the intelligence community - to the extent that his name is even known, which it is for the most part *not* – as a fraudster, imposter, and charlatan to be avoided at all costs.

Not knowing any of that at the time, Defendant/Moran agreed to perform work-for-hire by Plaintiff as a contractor and editor. Ultimately, the ONLY work Defendant/Moran ever performed for Plaintiff was to edit a single document. As Defendant/Moran has made clear in other filings, this document, a purported "intelligence report," written by Plaintiff, was troubling, if not illegal. It was a defamatory document with unsubstantiated claims against an MIT student, whom

Plaintiff was clearly stalking, and to whom Plaintiff attributed unsubstantiated, outlandish claims, such as the student was clearly a "Chinese spy."

Defendant/Moran was appalled by the document, replete with completely unsubstantiated, albeit gravely serious, accusations; it was as if a teenage boy with fantasies of being a spy had written an intelligence report. It was beyond entirely unprofessional and defamatory, if not illegal. This document in and of itself made it clear to Defendant/Moran that she should *not* engage in any business activities or perform any work on behalf of Plaintiff.

Defendant/Moran made Plaintiff aware of the problematic nature of his "intelligence report," and she provided edits and comments as to the many areas of concern. After editing this report, Defendant/Moran performed **NO** other work for Plaintiff. Plaintiff never compensated Defendant/Moran for her services; Defendant/Moran did not care because she just wanted to wash her hands of the experience and avoid ANY association with Plaintiff, whom she had started to suspect might be mentally imbalanced and potentially dangerous.

Defendant/Moran is an upstanding citizen, a former CIA officer who has a public profile, a mom, and a nonprofit professional, who enjoys a stellar public and professional reputation and has *never* in her life been the Plaintiff or Defendant in any litigation.

All this is to say that while Plaintiff repeatedly brandishes the contract Defendant/Moran signed with him, Defendant/Moran obviously *never* agreed nor is she obligated to agree to perform work that was *illegal or fraudulent*. To continue to perform services for Plaintiff/Tactical Rabbit, Defendant/Moran was aware that she would be involved in defamation, stalking, and fraud. (It is telling that Plaintiff is being sued by more than one "client" for fraud.)

Since Defendant/Moran became aware – after a *very brief* association with Plaintiff – that he was potentially engaged in illegal conduct and fraudulent business practices, she merely refused to perform any more work for Plaintiff. Defendant/Moran catastrophically broke her neck in a biking accident on June 2, 2022, and she used this as a polite excuse to tell Plaintiff that could not perform any more work for him as she was incapacitated.

At the time, Plaintiff accepted this, and they parted ways amicably. In spite of Plaintiffs ridiculous claims in his amended complaint, the entirety of their

professional association was less than three months in 2022. Defendant/Moran *never* had access to any proprietary data, clients, or information related to Tactical Rabbit. The most she had was a now defunct Tactical Rabbit email address, which she probably used twice at most to correspond with Plaintiff.

It was later that - much to Defendant/Moran's continued annoyance and emotional distress – Plaintiff developed paranoid delusions that Defendant/Moran had been "sent by General Michael Flynn," with whom Defendant/Moran has zero association, to destroy Plaintiff's business, and Plaintiff began to harass Defendant/Moran in alarming earnest. Since that time, Plaintiff has stalked Defendant/Moran, publicly defamed her, sent a letter to the FBI making outlandish accusations against Defendant/Moran, and named her as one of many defendants in this spurious and ridiculous lawsuit that continues to disrespect the court and waste its time.

As will be noted in other filings, Plaintiff's ongoing harassment - independent of this spurious lawsuit – has caused Defendant/Moran significant emotional distress, and recently, some legitimate fear. An association of Plaintiff recently warned Defendant/Moran that Plaintiff routinely patrols his home and environs with a weapon, on the lookout for people "following him," of which - clearly - there are none. Defendant/Moran's fear for her own safety will be the subject of a separate filing.

2. Defendant Moran Refutation of Specific Allegations in Amended Complaint.

   a) In Para 10 of (ECF No. 41), Plaintiff claims the Aracari Project is the formation of Defendant/Moran and two other Defendants. That is not true. Defendant/Moran has performed work for hire for Aracari on two occasions, but she does not own the company, does not solicit clients on behalf of the company, and has no financial stake in the company.
   b) In Para 20, Plaintiff claims that Defendants were entrusted with data, materials, and client specific information and paid as subcontractor. This is entirely untrue of Defendant/Moran, who - as noted above - had a very brief association with Plaintiff, during which time she saw all of two documents, had no other access to any information, and severed ties with Plaintiff after beholding the egregious and potentially illegal nature of said document.
   c) In Para 23, Plaintiff seems to suggest that Defendant/Moran was involved in reporting Plaintiff to various clients for "wire fraud." Defendant/Moran has no knowledge of any of these clients, and was not aware that Plaintiff

was being investigated for wire fraud. This is, like the others, a completely fabricated accusation.

d) In Para 24, Plaintiff again falsely claims that Defendant/Moran "runs" the Aracari Project; she does not. He also makes some defamatory allusion to "illegal activity." To be clear, Defendant/Moran has never been involved in any illegal activity, and has no criminal record; she works full time as Director of Communication for Treatment Advocacy Center, a nonprofit dedicated to eliminating barriers to the treatment of severe mental illness, a noted irony in that Plaintiff has at least once been ordered by a PA court to seek a psychological evaluation after pleading guilty to disorderly conduct in an incident in which he impersonated law enforcement.

e) In Para 26, Plaintiff seems to suggest that Defendant/Moran is responsible for Plaintiff's "deplatforming" on the museum Spyscape's subsidiary SPYEX. Defendant/Moran is featured, among other intelligence professionals, on Spyscape's featured speakers platform. Defendant/Moran exercises no control over Spyscape, or who they decide to include on their platform.

Plaintiff's accusation that the Defendants colluded to deplatform him is a complete delusion. It is Defendant/Moran's assumption that Spyscape - once they realized that Plaintiff had no background in intelligence or law enforcement, is involved in myriad litigation, and publicly exhibits signs of instability, wisely opted to remove him from their platform since he was a liability and would obviously jeopardize the credibility of the platform.

In short, Plaintiff may wish to believe there was some grand conspiracy to take him down, but that is simply not the case. Spyscape obviously is within their right to feature only legitimate speakers, not charlatans, imposters, and fraudsters.

ARGUMENT IN SUMMARY:

A. The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction

B. The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against Defendant/Moran

 C. The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(5) Because Plaintiffs Failed to Serve Defendant/Moran.

The Amended Complaint (ECF No. 41) ("Amended Complaint") filed by Plaintiffs Everett Stern and Tactical Rabbit, LLC (together, "Plaintiffs") against, among others, Defendant Lindsay Moran ("Defendant/Moran") constitutes a textbook shotgun pleading of the type that has been rejected time and again by courts sitting in the Third Circuit.

Instead of complying with the particularity requirements, the Amended Complaint is laden with incomprehensible statements and sweeping falsities apparent on the face of the Amended Complaint as well as undifferentiated and nonsensical allegations that afford Defendant/Moran no worldly idea as to the counts raised  against her, many of which are invalid under Pennsylvania law.

Plaintiff alleges conspiracy to impact the Plaintiffs' business interests, while offering no evidence to support those allegations, nor any indication of whether these actions occurred in Pennsylvania. On such baseless, haphazard, and invented allegations, Plaintiffs seek to haul the Defendant into this Court and assert various incomprehensible claims along with impermissible group pleading allegations.

The Amended Complaint should be dismissed for numerous reasons:

First the Plaintiffs have failed to establish personal jurisdiction over the Defendant. Defendant/Moran does not reside in Pennsylvania, is not incorporated, maintains no physical presence in, and does not conduct business in the Commonwealth. Defendant/Moran's overall contacts with Pennsylvania are not sufficiently substantial, continuous, nor systematic so as to subject her to the general jurisdiction of a Pennsylvania court.

Second, the court lacks specific personal jurisdiction over Defendant/Moran. Plaintiffs allege no specific facts that establish a connection between Defendant/Moran, Pennsylvania, and the claims at issue in this case. Furthermore, Defendant/Moran's alleged conduct (to the extent it is even understandable, which it basically is not)– is unrelated to the claims underlying the case, which appear to concern hacking and unfair competition allegations, of which Defendant/Moran has no knowledge.

Defendant/Moran has never met Plaintiff in person nor accepted remuneration from Plaintiffs. To clarify, per contractual agreement in 2022, which Plaintiffs include in the amended complaint, Defendant/Moran edited a single document on behalf of Plaintiff in

2022; during the course of editing this document, Defendant/Moran became aware that Plaintiff was engaged in potential stalking and defaming the subject of Plaintiff's purported "intelligence report"- a Chinese student at MIT, whom Plaintiff baselessly claimed was an operative (spy) for the Chinese government, while offering no credible information to support that claim.

Defendant/Moran raised her concerns to Plaintiff that the document he had asked her to edit was problematic, if not defamatory, libelous, and unlawful. After editing this single document, for which Defendant/Moran received no remuneration from Plaintiff, Defendant/Moran did no other work for Plaintiff and severed contact with Plaintiff.

Defendant/Moran made the determination that Plaintiff was engaged in wanton "investigative" activities that were unprofessional at a minimum, and potentially unlawful. In 2022, Plaintiff also attempted to enlist Defendant/Moran to edit another document on his behalf. Defendant/Moran refused to edit this document for Plaintiff, since she had ascertained that to do so would be to engage in potentially illegal activity, at which point Plaintiff called Defendant/Moran and angrily berated her; Plaintiff later called and apologized for his behavior toward Defendant/Moran, but Defendant/Moran was already starting to suspect that Plaintiff was potentially dangerous – if not to her personal safety – to her professional reputation, via any public association. (Further details of Plaintiff's behavior and documented harassment since 2022 of Defendant/Moran are the topic of a separate motion.)

As to allegations of hacking or stealing Plaintiffs' proprietary and sensitive information, these are also preposterous. Defendant/Moran has never had access to any information related to Plaintiff's business, clients (potential or existing) or to Plaintiff's computer systems. Defendant/Moran is not a hacker nor would she have any idea, expertise, reason, or intent to infiltrate the inner workings of Plaintiffs' failing business endeavors.

Regardless, the Plaintiffs are the sole connection between this action and Pennsylvania. The Supreme Court has repeatedly held that a plaintiff's link is alone insufficient to find personal jurisdiction. Dismissal under Fed. R. Civ. P. 12(b)(2) is thus necessary.

Third, even if the Court were to conclude that personal jurisdiction exists (which it does not), the Amended Complaint is deficient for multiple reasons. The Amended Complaint is devoid of specific, distinct facts necessary to establish the plausible claims to relief it seeks. Within the entirety of the Amended Complaint, Plaintiffs unspecific allegations towards Defendant, none of which are sufficient to assert an actionable claim. The remainder of the allegations constitute an impermissible group pleading that lumps

Defendant/Moran in with other completely unrelated actions and parties. Furthermore, Plaintiffs merely recite the elements of various causes of action, without any accompanying plausible facts or evidence to support them. Several of these causes of action are not even recognizable causes of action under Pennsylvania law. All fail to allege facts to support the essential elements of the claims or delineate any allegations between the numerous Defendants.

In sum, the unspecific conclusory allegations in Plaintiffs' Amended Complaint fail entirely to meet the pleading standards established by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678–80 (2009), and the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice.

BACKGROUND

As noted above, Defendant/Moran - during the course of editing a single document for Plaintiff, the only work Defendant ever performed for Plaintiff, and for which Defendant was not compensated – became immediately concerned about the conduct of Plaintiff, which included stalking and making baseless claims against the subject of his "intelligence report." Defendant/Moran brought her concerns about the potentially libelous, defamatory "intelligence report" to the attention of Plaintiffs during a phone call. Plaintiff seemed unwilling to consider the opinion or expertise of Defendant/Moran.

Regardless, Defendant/Moran – a former CIA operations officer turned consultant and communications specialist, who enjoys an impeccable professional reputation – decided NOT to engage in any further editing or any consulting work on behalf of Plaintiffs, as it had become abundantly clear that Tactical Rabbit was not a serious or professional operation, at best, and was acting fraudulently/illegally, at worst.

Contrary to Plaintiffs' baseless claims in Amended Complaint, Defendant/Moran severed ties with Plaintiff, had no further business or conversations with Plaintiff, except on occasions when Plaintiff called to harass Defendant/Moran – making false claims that she was the subject of federal investigations instigated by senior CIA officials; this harassment and baseless threats have been and will be the subject of a separate complaint.

To be clear, Defendant/Moran had no knowledge of Plaintiffs' clientele or contracts; Defendant/Moran had/has no idea what happened to Plaintiff or his business, nor did she care. Finally, as the Amended Complaint acknowledges, Defendant/Moran is a resident of Maryland and has never conducted business in the Commonwealth of Pennsylvania.

Following the Plaintiffs' original complaint, Defendant/Moran has become aware via publicly accessible, non-confidential documents of an array of litigation involving Stern such as dueling lawsuits with General Michael Flynn (in which Flynn prevailed in the court); multiple lawsuits against Stern by the Borgata Casino in New Jersey for unpaid debts; and an action against Stern for defamation brought by Oleg Firer, "Grenada's Ambassador to the Russian Federation." Stern's motion to dismiss in the Fire defamation case in which Stern is named as the defendant, notably, was denied. In that case, evidence has been produced of Stern making blanket unsubstantiated public claims, such as "Oleg is a pawn for the SVR"; these are precisely the sorts of slanderous claims routinely made by Plaintiffs that compelled Defendant/Moran – after a brief two month limited association with Stern in 2022 – to severe contact.

Also of note, Stern also sued The Daily Local News in PA, after the media outlet reported on his guilty plea in a case whereby he impersonated a police officer and confronted two women in a parking garage.

Of note, Plaintiff has often sent direct messages to Defendant/Moran or called her on the phone, accusing her of being "sent by" General Michael Flynn to destroy Plaintiffs' business; Defendant/Moran does not know, and has never had any contact, with General Michael Flynn. Plaintiff's paranoid delusions surrounding Defendant/Moran are troubling to say the least.

 Finally, the Amended Complaint includes an exhibit that contains Defendant/Moran's personal identifiable information in violation of FRCP 5.2. The Amended Complaint alleges that Plaintiffs "contracted" with Defendants between 2017-2021 when the Defendants "had access to sensitive information used by Plaintiffs," whereupon Defendants allegedly "made a concerted effort to eliminate Plaintiffs['] business." This alleged "concerted effort" caused Plaintiffs to "shut down Tactical Rabbitt [sic]." The Amended Complaint makes no further allegations on the nature of this "concerted effort." To be clear, Defendant/Moran did not have any access to any sensitive information used by plaintiff, and the entirety of their association was during the course of less than three months in 2022. Plaintiff and Defendant/Moran have never met in person and the entirety of their association was Defendant/Moran's editing of a single document without remuneration.

The Amended Complaint brings the following Counts against Moran Defendant:

Count I: breach of contract (in their purported, but non-existent capacity as "Contracting Defendants");

Count II: intentional interference with prospective economic advantage and tortious interference of contract rights;

Count III: negligent interference with prospective economic advantage

Count IV: unfair competition;

Count V: trespass to chattels;

Count VI: unjust enrichment;

Count VII: negligence;

Count VIII: civil conspiracy;

Count IX: aiding and abetting fraud;

Count X: violations of Pennsylvania's unfair trade practices and consumer practices law.

For the reasons set forth below, the Court does not have personal jurisdiction over Defendant/Moran, necessitating dismissal under Fed. R. Civ. P. 12(b)(2). Even if the Court has personal jurisdiction (it does not), the Amended Complaint utterly fails to state a single claim for relief against Defendant/Moran, necessitating dismissal under Fed. R. Civ. P. 12(b)(6).

ARGUMENTS

 A. The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant, as in this case here. First, the Amended Complaint concedes that Defendant/Moran does not reside or maintain a principal place of business of Pennsylvania. Rather, Defendant/Moran resides in Maryland. Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits. See O'Connor v. Sandy Lane Hotel Co., Ltd.¸ 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(e)). Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under

the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." Riad v. Porsche Cars N. Am., Inc., 657 F. Supp. 3d 695, 700 (E.D. Pa. 2023) (quoting 42 Pa. Const. Stat. § 5322(b)). Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The constitutional requirements for personal jurisdiction vary depending on the type of jurisdiction asserted. There are two types of personal jurisdiction: general and specific. See O'Connor, 496 F.3d at 317 (citation omitted). In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court takes the allegations of the complaint as true. Riad, 657 F. Supp. 3d at 700 (citing Dayhoff v. H.J. Heinz Co.¸ 86 F.3d 1287, 1302 (3rd Cir. 1996)). However, legal conclusions by a plaintiff "are no more than conclusions and are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The burden to establish personal jurisdiction is on the plaintiff. See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009)  "[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." Dayhoff, 86 F.3d at 1302; see also Kovalev v. Lidl US, LLC, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (noting that, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely on the allegations in its complaint") (emphasis in original and citation omitted). The plaintiff must establish those contacts with "reasonable particularity."  Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino¸ 960 F.2d 1217, 1223 (3d Cir. 1992). Once the plaintiff makes a prima facie case in support of personal jurisdiction, the burden shifts to the defendant to establish that "some other considerations exist which would render the exercise of personal jurisdiction is unreasonable." Riad, 657 F. Supp. 3d at 700. Plaintiffs cannot show that the exercise of either of the two types of jurisdiction over Defendant/Moran would comport with due process. The Amended Complaint contains no allegations supporting personal jurisdiction over Defendant/Moran.

1. The Court Lacks General Personal Jurisdiction over Defendant/Moran

 The exercise of general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state. Id. To exercise general personal jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction. See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). A

corporation is "at home" in its place of incorporation and its principal place of business. Id. General jurisdiction is proper over an individual only where he or she is domiciled. See M3 USA Corp. v. Hart, 516 F. Supp. 476, 490 (E.D. Pa. 2021).

Defendant/Moran is domiciled in Maryland. Defendant/Moran has not consented to general personal jurisdiction in Pennsylvania. Consequently, it is clear that Defendant/Moran is not subject to general personal jurisdiction in this Court.

2. The Court Lacks Specific Personal Jurisdiction Over Moran Defendant

This Court also lacks specific jurisdiction over Defendant/Moran. Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown¸ 564 U.S. 915, 919 (2011) (internal quotation marks omitted). For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction." Specific jurisdiction over non-residents involves a three-part test. "First, the defendant must have 'purposefully directed [its] activities at the forum.'" O'Connor, 496 F.3d at 316 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla¸ 357 U.S. 235, 253 (1958).7The contacts must be the "defendant's own choice and not random, isolated, or fortuitous." Id. (citation omitted). "Second, the litigation must 'arise out of or relate to' at least one of those activities' which were purposefully directed at the forum. O'Connor, 496 F.3d at 317 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)); see also Hepp v. Facebook¸ 14 F.4th 204, 208 (3d Cir. 2021) (noting that there must be a "strong connection" between a defendant's actions and the alleged claim). This element prevents Moran Defendant from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475. "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." O'Connor¸ 496 F.3d at 317 (citing Burger King¸ 471 U.S. at 476).

As set forth below, none of the required elements to confer personal jurisdiction are present, and thus the Court lacks personal jurisdiction over Defendant/Moran.

i. Defendant/Moran Has Not Purposefully Directed Their Activities Towards Pennsylvania

First, the Amended Complaint is bereft of any allegations that Defendant/Moran purposely directed their activities towards Pennsylvania. As noted above, Defendant/Moran is a resident of Maryland and has no business dealings in Pennsylvania. Finally, the Amended Complaint assertion that Defendant/Moran contracted with Plaintiffs during 2017-2021, thereby gaining "access to sensitive information" (which is entirely unspecified) is unsupported by anything in the record other than this false allegation. Defendant/Moran did not know Stern existed except for a brief association between April and June 2022, and the subsequent months during which Plaintiff has continued to harass Defendant via phone, and direct message, which has been and will be the subject of another complaint.

The only connection to Pennsylvania evident in the Amended Complaint is Stern's operation of Tactical Rabbit, obviously irrelevant to whether Defendant/Moran directed actions at Pennsylvania. However, "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." Hadnagy, 2023 WL 114689, at *5 (quoting Walden v. Fiore, 571 U.S. 277, 290 n. 9 (2014)). Here, the Plaintiffs are the only link to Pennsylvania, precluding the exercise of personal jurisdiction in the Commonwealth over Moran Defendant.

  ii. There is No Connection Between Plaintiffs' Claims and the Actions of Defendant/Morant

To establish personal jurisdiction, a plaintiff must also show a "strong connection" between the claims alleged and the defendants' actions. See, e.g., Hepp, 14 F.4th at 208. The Amended Complaint utterly fails to provide any connection between Plaintiffs' claims and Defendant/Moran, much less the robust connection necessary for a court to exercise personal jurisdiction.

To the best of Defendant/Moran's knowledge, the most serious of Plaintiffs' claims in the Amended Complaint is that the other defendants "gained unauthorized access" and then "misappropriated" purportedly "highly confidential and proprietary setoff information" in order to "steal" Plaintiffs' existing customers and debilitate their access to new customers, supposedly giving rise to various and contract and tort-based claims. The purported resulting injury includes the Plaintiffs' "loss" of existing clients and prospective business relationships. However, even assuming for the sake of argument that Plaintiffs have suffered an injury, Defendant/Moran has not aimed any contact at Pennsylvania, much less tortious conduct, which is required to find personal jurisdiction over Defendant/Moran.

The Amended Complaint makes no specific allegation that Defendant/Moran has gained access, much less "unauthorized access," to any personal or proprietary information of Plaintiffs. Defendant/Moran is not specifically alleged to have "stolen" anything from Plaintiffs. Plaintiff cannot show any connection between Defendant/Moran's conduct and Plaintiffs' injuries, let alone the "strong connection" required to satisfy this factor. See, e.g., Hepp, 14 F. 4th at 208. In sum, Plaintiffs cannot satisfy the second element of the test for personal jurisdiction.

iii. The Exercise of Jurisdiction Over Defendant/Moran Would be Unfair and Unjust

Even if the Court were to find that Plaintiffs alleged that Defendant/Moran had sufficient contacts with Pennsylvania (which they plainly do not), Plaintiffs cannot establish that this Court's exercise of jurisdiction is in any way fair or just. The Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." TorcUP, Inc. v. Aztec Bolting Servs., Inc., 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing Burger King, 471 U.S. at 477).

None of these factors are met when Defendant/Moran has operated exclusively outside of Pennsylvania. The Amended Complaint is devoid of any specific allegation that Moran Defendant has ever interacted with Defendants, nonetheless interacted with them within the Commonwealth. As such, the Commonwealth has little, to no interest, in adjudicating the supposed dispute between the Plaintiffs and Moran Defendant. For these reasons, the Amended Complaint should be dismissed with prejudice against the Moran Defendants under Fed. R. Civ. P. 12(b)(2).

B. The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6)

Because it Fails to State any Claims Against Defendant/Moran

1. Legal Standards

In addition to dismissal being warranted on personal jurisdiction grounds, Plaintiffs have utterly failed to state actions claims against Defendant/Moran. An action may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, a court must accept factual allegations as true,

but it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Baraka v. McGreevey¸ 481 F.3d 187, 195 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

  2. The Amended Complaint is an Impermissible "Shotgun Pleading"

 The Amended Complaint fails to reach the threshold or comply with Federal Rule of Civil Procedure 8(a)(2) and should be dismissed at the outset. Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Complaints that violate this rule, such as the Amended Complaint, "are often disparagingly referred to as 'shotgun pleadings.'" Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). The Third Circuit has lamented "the all too common shotgun pleading approach" to complaints. Hynson v. City of Chester Legal Dep't, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted." Id. Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Bartol, 251 F. Supp. 3d at 859.

The Amended Complaint bears all the signs of a "shotgun pleading," as it merely recites elements of various causes of action without alleging even the most fundamental underlying facts. For one, virtually none of the Counts differentiate between which Defendant took which actions that supposedly form the basis for relief. For example, in Count I (Breach of Contract), Plaintiffs lump the group of "Contracting Defendants" into a single, undifferentiated group, without providing any specificity as to which Defendants

are subject to the boilerplate allegations. By way of example, Count IX (Aiding and Abetting Fraud) includes two paragraphs of boilerplate allegations against all Defendants (id. at ¶¶ 146-47), and Count X (violations of Pennsylvania's statutory unfair trade practices law) includes no factual or legal allegations at all and is instead a treatise citation to the law purportedly underlying the immediately preceding account. Id. at ¶

150. Finally, the Amended Complaint is replete with extraneous conclusions (often in the form of incomplete sentences), making it virtually impossible for Defendant/Moran to decipher what allegations are at issue.

For these reasons, the Amended Complaint is a quintessential shotgun pleading that does not satisfy Rule 8(a)(2). The Amended Complaint should be dismissed with prejudice.

 3. Plaintiffs Fail to State a Claim for Breach of Contract (Count I)

Under Pennsylvania law, breach of contract claims contain three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Udodi v. Stern, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020). Plaintiffs fail to allege even these basic elements. The Amended Complaint provides no specific information as the contractual agreements between Moran Defendant and Plaintiffs, such as which terms were breached, and by which defendant. As noted above, Moran Defendant severed contact with Defendant after assessing suspect at best, potentially unlawful, activities of Plaintiffs. Moran

Defendant is in no way contractually obligated to Plaintiffs in perpetuity.

Count I should be dismissed with prejudice.

 4. Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)

Plaintiffs' Amended Complaint makes largely the same conclusory allegations with respect to Counts II and III, yet does not set forth sufficient facts to support any of these causes of action. First., as a matter of law, Pennsylvania does not recognize a tort for 'intentional interference with prospective economic advantage.'" ClubCom, Inc. v. Captive Media, Inc., No. 02:07-cv-1462, 2009 WL249446, at *7 (W.D. Pa. Jan. 31, 2009). Consequently, this aspect of Count II is invalid on its face and must be dismissed.

Second, to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." Acumed, LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

For a variety of reasons, Count II must be dismissed. As noted above, the Amended Complaint contains no substantive allegations that Moran Defendant and Plaintiffs have an existing contractual relationship. The Amended Complaint does not contain specific allegations with any specificity concerning a prospective contractual relationship between Plaintiffs and any third-party. Instead, Count II contains only vague, generalized allegations about unnamed clients of Plaintiffs. This shotgun style pleading does not put Defendant/Moran on notice of the essential facts to establish a claim under these Counts.

Third, Count III is invalid on its face because "Pennsylvania law does not recognize the tort of negligent interference with contractual relations." Mills v. Unknown Franchisee, Civil Action No. 2:20-cv-566, 2021 WL 5358944, at *5 (W.D. Pa. Oct. 13, 2021) (citing Valley Forge Convention & Visitor's Bureau v. Visitor's Servs., Inc., 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998)).

The only exception to the rule is where a "special relationship exists between the parties." Id. The "special relationship" exception clearly does not apply here, as the handful of allegations in the Amended Complaint provide no basis for a special relationship between Plaintiffs and the Moran Defendants. For these reasons, Counts II and III should be dismissed with prejudice.

5. Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL

 (Count X)

 In Pennsylvania, a defendant is liable for unfair competition if "(1) he [or she] engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) his [or her] conduct causes harm to the plaintiff's

commercial relations." M3 USA, 516 F. Supp. 3d at 504 (citing Restatement (Third) of Unfair Competition § 1). In Pennsylvania, a claim for unfair competition is recognized "where there is evidence of, among other things ... tortious interference with contract … and unlawful use of confidential information." Id.

Applying these principles, Plaintiffs fail to state a claim for unfair competition. The Amended Complaint contains no allegation that Defendant/Moran engaged in any actions that would satisfy the first element. Rather, the "negative articles" alleged by Plaintiffs hardly constitutes marketing. Further, Defendant/Moran has never had access to the Plaintiffs' trade secrets,protectable intellectual property, or other confidential information.

Plaintiffs likewise cannot satisfy the second element of the unfair competition test. As discussed above, there are insufficient allegations that Moran Defendant tortiously interfered with any contract involving the Plaintiffs. There are also no allegations that Defendant/Moran unlawfully used any of Plaintiffs' confidential information.

Count X fails because it is supported by no allegations whatsoever. The Count is comprised entirely of: (i) a reincorporation of the prior boilerplate allegations; and (ii) a cut and paste of a Section 876 of the Restatement (Second) of Torts, which is referenced in the immediately preceding Count IX and concerns liability for aiding and abetting fraud. Id. It is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL.12

 For these reasons, Counts IV and X should be dismissed.

 6. Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V)

 "A trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another." Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth., 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018). Defendants do not state a claim for trespass to chattels under Pennsylvania law. The crux of this Count VI (to the extent it is intelligible) is that all Defendants "intentionally interfered with Plaintiffs['] use of … Plaintiffs['] related internal databases and systems the Intelligence data and Support Materials housed for licensed access." Amended Complaint at ¶ 118.

Emblematic of a shotgun pleading, the Amended Complaint does not furnish any specific allegations against Defendant/Moran, nor could it. See id. There are no allegations that Defendant/Moran ever maintained access to these "internal databases," nor any licensed

property of Plaintiffs. As such, Defendant/Moran per se could not have dispossessed Plaintiffs of this supposed chattel, much less with the required intentionality. For these reasons, Count V must be dismissed.

   7. Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI)

In Pennsylvania, unjust enrichment is an equitable remedy, defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." Berardi v. USAA Gen. Indem. Co., 606 F. Supp .3d 158, 163 (E.D. Pa. 2022), aff'd, 2023 WL 4418219 (3d Cir. July 10, 2023). "To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must establish that

 (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." Id. "An unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred."Salvitti v. Lascelles, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023). Defendants do not provide any allegations of a benefit conferred upon Moran Defendant, much less with the required specificity. Defendant/Moran. Yet again, the Amended Complaint fails to furnish any specific allegations tying Defendant/Moran to the supposed "unjustly received benefits in the form of stolen data and customers[.]" Id. at ¶ 126. As described ad nauseum herein, there is simply no allegation that the Plaintiffs have ever conferred any benefit on Moran Defendant, much less any "stolen data or customers." Moran Defendant thus necessarily could not have appreciated, accepted, nor retained such benefits. For these reasons, Count VI must be dismissed.

   8. Plaintiffs Fail to State a Claim for Negligence (Count VII)

 Under Pennsylvania law, to establish a claim for negligence, a plaintiff must show: "(1) duty; (2) breach; (3) causation; and (4) damages." NVR, Inc. v. Majestic Hills, LLC, 670 F. Supp. 3d 206, 227 n. 17 (W.D. Pa. 2023) (citations omitted). To determine the existence of a duty, the Court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution." Id.

Nowhere in the Amended Complaint is there any specific allegation tying Defendant/Moran to any "duty" to the Plaintiffs. Rather, the Amended Complaint appears to premise such a "duty" on the boilerplate assertion that all Defendants failed to "supervise, train, manage and oversee their employees, subcontractors and assigns who impacted Plaintiffs' business." Amended Complaint at ¶ 133. According to the Amended Complaint, the Defendants also failed to "use security to protect and preserve valuable data owned by Plaintiffs as proprietary data." Id. at ¶ 135. These allegations do not pertain at all to Moran Defendant, eliminating the possibility of a duty owed to Plaintiffs. There is no allegation that Defendant/Moran ever interacted directly with Plaintiffs, much less through their "employees, subcontractors, or assigns." Likewise, there is no allegation that Moran Defendant had access to any of the "proprietary" data of Plaintiffs,much less any data. For these reasons, Count VII must be dismissed.

9. Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII) Under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e. an intent to injure, is essential in proof of a conspiracy." Loduca v. WellPet LLC, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021). Plaintiffs cannot establish these elements and have thus not alleged a viable claim for civil conspiracy. The Amended Complaint only arguably alludes to Moran Defendant in a single group pleading allegation: that they acted in concert with the other Defendants by "artificially enhancing and embellishing the simple summary disorderly [sic] charge in [the] Chester County Court of Common Pleas." Amended Complaint at ¶ 139.

This single allegation is not within the realm of the pleading required to state a claim for civil conspiracy. Most importantly, there is no specific allegation that Defendant/Moran has agreed to do any unlawful act or an otherwise lawful act by unlawful means. Defendant/Moran t is entirely unconnected from the allegations undergirding this claim.

Further, the Amended Complaint lacks any allegations whatsoever that Defendant/Moran acted with the required malice, or any malice whatsoever. For these reasons, Count VIII must be dismissed.

10. Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX)

Under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial

assistance or encouragement to the party committing the fraud." Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co., CV 23- 1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024).

Aside from stray references to the word "fraud," the Amended Complaint is devoid of any specific allegations as to the alleged fraud perpetrated on Plaintiffs, much less Moran

Defendant's knowledge and substantial assistance. All told, at best, the Amended Complaint simply recites the above-referenced elements without any single particularized allegation that could give rise to liability against Defendant/Moran. See Amended Complaint at ¶¶ 145

148. The claim must fail, and Count IX must be dismissed.

 C. The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(5)

Because Plaintiffs Failed to Serve Defendant/Moran.

Notwithstanding a certified letter referring to "default" and threatening that Moran defendant might have her "property seized and lose other important rights," which was sent to Defendant/Moran's place of employment by Plaintiffs' attorney, a letter which the concierge delivered to Defendant/Moran's colleague, and which was sent to Defendant/Moran via scan, Defendant/Moran called the court subsequent to receiving such letter and confirmed with the court that she had not been officially served in the amended complaint Plaintiffs' attorney subsequently sent Defendant/Moran an email, with the subject line "Stern Matter," which does not contain any of the relevant information, not even the case number, to qualify as a formal service.

For these reasons, the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(5) because Plaintiffs failed to effectuate proper service on Moran.

Additional Information:

While the Original and Amended Complaint is the first time Plaintiff has sued Defendant/Morant, Plaintiff has a long history of false claims and spurious litigation. Plaintiff has also harassed Defendant/Moran via phone and direct message since 2022; evidence of this harassment has been, and will be filed separately. In the original and Amended Complaint against Defendant/Moran, Stern includes a cadre of other defendants, including Arizona State University and SpyScape.

Defendant/Moran's association with Stern was very brief (less than three months in 2022) and Defendant/Moran has never met Plaintiff in person. Defendant/Moran became aware of Plaintiff when he had a company called Tactical Rabbit, billed as a private intelligence organization.

On the Tactical Rabbit website, Plaintiff claimed affiliation with some CIA heavy-hitters whom Defendant/Moran, a former CIA officer, did not know personally but knew of. Based on those bona fides, when Plaintiff solicited Defendant/Moran as a contractor to help him with "intelligence reports," Defendant/Moran was asked to edit the first and only "intel report" prepared by Plaintiff. This Tactical Rabbit "intel report" was the ONLY document from the company that Defendant/Moran was ever privy to. Upon beginning to review the document,

Defendant/Moran was immediately alarmed, actually horrified; the "intel report" was complete conjecture, fabrication, and potential libel against a Chinese student at MIT- whom Plaintiff claimed was a spy for China. Defendant/Moran quickly decided that she would not accept any contractual work from Tactical Rabbit, and she severed ties with Plaintiff (June 2022). Plaintiff then developed and confronted Defendant/Moran with a paranoid delusion that Defendant/Moran was an "agent" sent by General Michael Flynn (someone Moran Defendant has never met and has zero association with) to "destroy" Plaintiff's business.

Since 2022, Defendant/Moran has received harassing phone calls and Direct Messages from Plaintiff threatening that he (Everett Stern) and a retired senior level CIA officer had "reported" Defendant/Moran to the FBI, as part of a national security investigation.

While Defendant/Moran rightly ascertained that these very serious threats were fabricated, she eventually provided copies of these threatening DMs to the retired CIA officer in question, who immediately confirmed that Plaintiff's claims were fabricated and who denied any association with Stern (except for Stern approaching the senior CIA officer at public events in order to secure a photo together.)

 (Evidence of both the threatening DMs and the CIA officer's denial of association with Stern has been submitted separately in a sealed document.)

Also of interest to the court, in the original filing of the Amended complaint, Plaintiffs included several of the Defendants' home addresses and social security numbers (unredacted), and while the social security numbers were unredacted, and available to the public, Plaintiff tweeted to his thousands of followers on Twitter/X the case number and

the Defendants' names. It was only after Defendant/Moran petitioned the court and reported Plaintiffs' attorney to the PA disciplinary board that the exhibit containing unredacted social security numbers was sealed. This entire situation has caused Defendant/Moran undue anxiety, and Plaintiffs' public doxxing and false defamatory claims about Defendant/Moran will be the subject of a separate motion.

CONCLUSION

For all the foregoing reasons, Defendants Lindsay Moran respectfully request that the Court dismiss Plaintiffs' Amended Complaint against Defendant/Moran in its entirety and with prejudice, as any amendment would be futile.

Certificate of Service

I, Lindsay E. Moran, hereby certify that I have this 13 November 2024 caused to be served a true and current copy of the foregoing Motion to Dismiss, using the electronic filing system and served upon all parties registered for the electronic filing system.

_____

Lindsay Moran

linzmoran@gmail.com