**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EVERETT STERN, *et ano.*, | |
| Plaintiffs, | Civil Action No. 2:24-cv-01222-WB |
| vs. | |
| WILLIAM RUZICH, *et al.,* | |
| Defendants. | |

<u>**DEFENDANT SPYSCAPE ENTERTAINMENT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**</u>

Dated: November 15, 2024
        Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600

*Attorneys for Defendant Spyscape
Entertainment*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.   RELEVANT BACKGROUND ......................................................................... 3

    A.    Spyscape Operates Exclusively in New York ........................................ 3

    B.    Spyscape's Limited Dealings with Plaintiff Stern ................................. 4

    C.    Plaintiffs' Baseless Claims against Spyscape ....................................... 5

III.   ARGUMENT .................................................................................................... 5

    A.    the Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction .............................................. 5

        1.    Legal Standards ........................................................................... 6

        2.    The Court Lacks General Personal Jurisdiction over Spyscape ................... 7

        3.    The Court Lacks Specific Personal Jurisdiction Over Spyscape ................. 7

            i.    Spyscape Has Not Purposefully Directed Its Activities Towards Pennsylvania .............................................................. 9

            ii.   There is No Connection Between Plaintiffs' Claims and Spyscape ......................................................................... 10

            iii.  The Exercise of Jurisdiction Over Spyscape Would be Unfair and Unjust .......................................................................... 11

    B.    The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against Spyscape .......................... 12

        1.    Legal Standards ......................................................................... 12

        2.    The Amended Complaint is an Impermissible "Shotgun Pleading" ........... 13

        3.    Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III) .................................... 14

        4.    Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X) ...................................................... 16

        5.    Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V) ........... 17

        6.    Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI) ........... 18

        7.    Plaintiffs Fail to State a Claim for Negligence (Count VII) ...................... 18

        8.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII) ............. 19

        9.    Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX) ......................................................................................... 20

IV.  CONCLUSION................................................................................................ 21

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Acumed, LLC v. Advanced Surgical Servs., Inc.*,
    561 F.3d 199 (3d Cir. 2009)....................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................3, 6, 12, 13

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007).....................................................................................12

*Bartol v. Barrowclough*,
    251 F. Supp. 3d 855 (E.D. Pa. 2017) .....................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................3

*Berardi v. USAA Gen. Indem. Co.*,
    606 F. Supp .3d 158, 163 (E.D. Pa. 2022) ..............................................................18

*Binary Semantics Ltd. v. Minitab, Inc.*,
    No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008) ..........................16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................................2, 8

*ClubCom, Inc. v. Captive Media, Inc.*,
    No. 02:07-cv-1462, 2009 WL 249446 (W.D. Pa. Jan. 31, 2009) ...........................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................................7

*Dayhoff v. H.J. Heinz Co.*,
    86 F.3d 1287 (3rd Cir. 1996) ...................................................................................7

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009)........................................................................................6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021).................................................................................................8

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)....................................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................................8

*Hadnagy v. Moss*,
   Civil Action No. 22-3060, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ...............................9, 10

*Hanson v. Denckla*,
   357 U.S. 235 (1958) .....................................................................................................................8

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ................................................................................................8, 10, 11

*Hynson v. City of Chester Legal Dep't*,
   864 F.2d 1026 (3d Cir. 1988) .....................................................................................................13

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) ........................................................................................................10

*Kovalev v. Lidl US, LLC*,
   647 F. Supp. 3d 319 (E.D. Pa. 2022) ............................................................................................7

*Loduca v. WellPet LLC*,
   549 F. Supp. 3d 391 (E.D. Pa. 2021) ..........................................................................................19

*Lutz v. Rakuten, Inc.*,
   376 F. Supp. 3d 455 (E.D. Pa. 2019) ............................................................................................9

*M3 USA Corp. v. Hart*,
   516 F. Supp. 476 (E.D. Pa. 2021) ...........................................................................................7, 16

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir. 1992) ........................................................................................................7

*Mills v. Unknown Franchisee*,
   Civil Action No. 2:20-cv-566, 2021 WL 5358944 (W.D. Pa. Oct. 13, 2021) ...................15, 16

*NVR, Inc. v. Majestic Hills, LLC*,
   670 F. Supp. 3d 206 (W.D. Pa. 2023) .........................................................................................19

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d Cir. 2007) ......................................................................................................6, 8

*Riad v. Porsche Cars N. Am., Inc.*,
   657 F. Supp. 3d 695 (E.D. Pa. 2023) .........................................................................................6, 7

*Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*,
   327 F. Supp. 3d 803 (E.D. Pa. 2018) ..........................................................................................17

*Salvitti v. Lascelles*,
   669 F. Supp. 3d 405 (E.D. Pa. 2023) ..........................................................................................18

*Salyers v. A.J. Biosenski, Inc.*,
    --- F. Supp. 3d ----, 2024 WL 1773368 (E.D. Pa. Apr. 24, 2024) ..........................................17

*TorcUP, Inc. v. Aztec Bolting Servs., Inc.*,
    386 F. Supp. 3d 520 (E.D. Pa. 2019) ....................................................................................11

*Valley Forge Convention & Visitor's Bureau v. Visitor's Servs., Inc.*,
    28 F. Supp. 2d 947 (E.D. Pa. 1998) ......................................................................................16

*Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*,
    CV 23-1693, 2024 WL 1142872 (E.D. Pa. Mar. 15, 2024)...................................................20

## Other Authorities

73 Pa. Const. Stat. § 201-1 *et seq.* ...................................................................................................17

Fed. R. Civ. P.
    8(a)(2) ...........................................................................................................................13, 14
    12(b)(2) ....................................................................................................................5, 6, 7, 12
    12(b)(6) ..................................................................................................................3, 5, 12, 13

Restatement (Second) of Torts Section 876...................................................................................17

## I.    PRELIMINARY STATEMENT

The Amended Complaint (ECF No. 41) ("**Amended Complaint**") filed by Plaintiffs Everett Stern ("**Stern**") and Tactical Rabbit, LLC (together, "**Plaintiffs**") against Defendant "Spyscape Entertainment" ("**Spyscape**") is an improper shotgun pleading routinely rejected by courts in the Third Circuit.  Instead of complying with the particularity requirements, the Amended Complaint is laden with undifferentiated, meandering allegations that afford Spyscape no insight into the nine counts raised against it, many of which are invalid under Pennsylvania law.[1]

There are a total of five paragraphs (out of 150) of the Amended Complaint that have allegations directed at Spyscape, one of which blames *other Defendants* for allegedly tortiously interfering with Plaintiffs' "relationship" with Spyscape.  Am. Compl. ¶¶ 13-14, 26, 54, 142.  The gravamen of Plaintiffs' case against Spyscape is that Plaintiffs purportedly invested time and resources in a "co-marketing event" and prospective "partnership" with Spyscape, neither of which materialized because unspecified "complaints" about Stern were made to Spyscape.  There are no allegations directed at Spyscape concerning Plaintiffs' claimed conspiracy to derail their business interests or the alleged tortious interference with Plaintiffs' business relationships, nor do Plaintiffs allege that any action taken by Spyscape occurred in Pennsylvania.  On this threadbare pleading of allegations, Plaintiffs nonetheless seek to haul Spyscape – a company that operates in the United States exclusively from New York and has no presence whatsoever in Pennsylvania – into this Court and assert nine claims using impermissible group pleading.

---

[1]    On July 3, 2024, the Court granted Plaintiffs leave to file an amended complaint.  ECF No. 16.  They failed to do so.  On September 9, 2024, Spyscape moved to dismiss the version of the amended complaint attached to the motion for leave.  ECF No. 24.  On October 29, 2024, the Court denied Spyscape and other defendants' motions to dismiss as procedurally improper and ordered Plaintiffs to file an amended complaint.  ECF No. 40 at 2-3.  Plaintiffs timely filed the operative Amended Complaint on November 2, 2024.  ECF No. 41.

The Amended Complaint should be dismissed for numerous reasons.  First, Plaintiffs have not, nor can they establish personal jurisdiction over Spyscape.  As Plaintiffs acknowledge, Spyscape is not incorporated in Pennsylvania, and it maintains a principal place of business outside of Pennsylvania.  *See* Am Compl. ¶ 11.  Rather, Spyscape's sole operational presence in the United States is its museum in New York.  For these reasons, Spyscape's overall contacts with Pennsylvania are not sufficiently substantial, continuous, or systematic so as to subject it to the general jurisdiction of a Pennsylvania court.

Second, no specific jurisdiction may be exercised over Spyscape.  Plaintiffs allege zero specific facts that establish a connection between Spyscape, Pennsylvania, and the claims at issue in this case.  In particular, Spyscape's alleged conduct (to the extent decipherable) – the abrupt conclusion of a prospective "partnership" with Spyscape – is unmoored from the claims underlying the case, which appear to concern breach of independent contractor agreements and unfair competition allegations directed entirely at certain other defendants.

In sum, Plaintiffs are the sole connection between this action and Pennsylvania, and the Supreme Court has held that a plaintiff's link is alone insufficient to find personal jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Third, even if the Court were to exercise personal jurisdiction over Spyscape, the Amended Complaint still must be dismissed for multiple reasons.  To start, the Amended Complaint is devoid of specific, distinct facts necessary to establish plausible claims against Spyscape for the relief Plaintiffs seek.  Plaintiffs plead only a handful of specific allegations mentioning Spyscape, none

of which are sufficient to assert an actionable claim. The remainder of the allegations constitute impermissible group pleading that lumps Spyscape in with other completely unrelated actions and parties, including parties that allegedly have contracted with the Plaintiffs (inapplicable to Spyscape), the alleged publication of false articles on a website run entirely by other defendants (whose motion to dismiss was recently granted by this Court), and the alleged "hacking" of Plaintiffs through unauthorized access to their website and the associated purportedly confidential materials (also inapplicable to Spyscape). The allegations directed at Spyscape do not provide a basis for relief. Rather, these allegations appear to fault Spyscape for declining to co-market or partner with Plaintiffs when it was under no contractual or other obligation to do so.

Furthermore, Plaintiffs often merely recite the elements of various causes of action, without any accompanying plausible facts to support them. Several of these causes of action are not even cognizable causes of action under Pennsylvania law. All fail to allege facts to support the essential elements of the claims or delineate any allegations between the numerous defendants.

In sum, the vague, conclusory allegations in Plaintiffs' Amended Complaint utterly fail to meet the pleading standards established by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009), and the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice.

## II.   RELEVANT BACKGROUND

### A.   SPYSCAPE Operates Exclusively in New York

As the Amended Complaint acknowledges, Spyscape maintains a principal place of business in New York City. Am. Compl. at ¶ 11; *see also* Declaration of Marcelle Devine dated November 14, 2024, at ¶ 2 (the "**Devine Decl.**"). Specifically, Spyscape operates a publicly accessible spy-themed museum, plus two immersive experiences (SPY HQ and SPYGAMES) in

3

New York.  Devine Decl. at ¶ 3.[2]   As part of that SPY HQ experience in New York, Spyscape

provides visitors with access to a personalized "psychological profile."  *Id.* at ¶ 3.  Spyscape's

business and operations are conducted from that same location in New York City.  *Id.* at ¶¶ 3.[3]

Spyscape operates its website, "spyex.com," from New York.  *Id.* ¶ 6.  It receives and

processes user requests via its website from New York.  *Id.*  And it likewise receives, processes,

and sources customer purchases of spy-related products from its New York location.  *Id.*

Spyscape's museum and corporate office in New York City constitute its sole presence in

the United States.  *Id.* ¶ 8.  It has no physical location or presence anywhere else in the United

States, including, as relevant here, in Pennsylvania.  *Id.*

Spyscape does not maintain an office in Pennsylvania.  *Id.* at ¶ 9.  It has no employees here.

*Id.* at ¶ 10.  It maintains no bank accounts within the State.  *Id.*  And it holds no property nor

maintains any other asset in Pennsylvania.  *Id.* at ¶¶ 10-11.

**B.**     **Spyscape's Limited Dealings with Plaintiff Stern**

Spyscape operates a podcast network from New York and the United Kingdom.  *Id.* at ¶

12.  In 2021, Stern appeared as a guest on an episode of a Spyscape podcast called "True Spies."

*Id.*  That podcast was conducted remotely and administered by the third-party interviewers and

technicians located in the United Kingdom.  *Id.*

Spyscape's website also lists dozens of profiles of individuals (many of whom are former

intelligence officers) who may be available for speaking, training, or consulting engagements.  *Id.*

at ¶ 13.  Consistent with Stern's podcast appearance, his profile was depicted from April 10, 2021

---

[2]     Contrary to the Amended Complaint (*see* ¶ 26), Spyscape does not have a subsidiary named
"SPYEX."  *Id.*

[3]     The Spyscape brand and related intellectual property is owned by a separate, United
Kingdom-based entity named Spyscape Ltd.  *Id.* at ¶ 4.

to March 20, 2023. *Id.* But no one ever requested his services, either through Spyscape's website or through any other means connected to Spyscape. *Id.*

### C. Plaintiffs' Baseless Claims against Spyscape

Notwithstanding the absence of a nexus to Pennsylvania and *de minimis* dealings with Plaintiffs, Plaintiffs nonetheless attempt to hale Spyscape into this forum using a series of baseless allegations and nonactionable claims. In their amended pleading, Plaintiffs claim that they supposedly were "offered a partnership with SPYEX" (Am. Compl. ¶ 26) and they expended resources in "trying to adopt a co-marketing event" with Spyscape (*id.* ¶ 54), neither of which progressed or materialized because *other* defendants supposedly caused sourced the relationship and caused Stern to be "deplatform[ed]" (*id.* at ¶ 26) from Spyscape.

From these unfounded claims, Plaintiffs lump Spyscape into their scattered nine causes of action: tortious interference with prospective economic advantage and tortious interference of contract rights (Count II); negligent interference with prospective economic advantage (Count III); unfair competition (Count IV); trespass to chattels (Count V); unjust enrichment (Count VI); negligence (Count VII); civil conspiracy (VIII); aiding and abetting fraud (Count IX); and violations of Pennsylvania's unfair trade practices and consumer practices law (Count X). *See generally* Am. Compl. ¶¶ 80-150. None state a viable claim against Spyscape.

For all of the foregoing reasons and those briefed below, the Amended Complaint must be dismissed on several independent bases: (i) the Court does not have personal jurisdiction over Spyscape, necessitating dismissal under Fed. R. Civ. P. 12(b)(2); and (ii) the Amended Complaint fails to state a single claim for relief against Spyscape, necessitating dismissal under Fed. R. Civ. P. 12(b)(6).

### III. <u>ARGUMENT</u>

### A. <u>The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P.</u>

## 12(b)(2) For Lack of Personal Jurisdiction

### 1.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant, as in this case here.

Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits.  *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(e)).  Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 700 (E.D. Pa. 2023) (quoting 42 Pa. Const. Stat. § 5322(b)).  Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The constitutional requirements for personal jurisdiction vary depending on the type of jurisdiction asserted.  There are two types of personal jurisdiction: general and specific.  *See O'Connor*, 496 F.3d at 317 (citation omitted).

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court takes the allegations of the complaint as true. *Riad*, 657 F. Supp. 3d at 700 (citing *Dayhoff v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3rd Cir. 1996)).  However, legal conclusions by a plaintiff "are no more than conclusions and are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The burden to establish personal jurisdiction is on the plaintiff.  *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

"[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through

6

affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Dayhoff*, 86 F.3d at 1302; *see also Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (noting that, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may <u>not</u> merely rely on the allegations in its complaint") (emphasis in original and citation omitted).  The plaintiff must establish those contacts with "reasonable particularity."  *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  Once the plaintiff makes a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that "some other considerations exist which would render the exercise of personal jurisdiction unreasonable." *Riad*, 657 F. Supp. 3d at 700.

Plaintiffs cannot show that the exercise of either of the two types of jurisdiction over Spyscape would comport with due process.

### 2.    The Court Lacks General Personal Jurisdiction over Spyscape

The exercise of general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state.  *Id.*  To exercise general personal jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).   A corporation is "at home" in its place of incorporation and its principal place of business.  *Id.*

As Plaintiffs concede, Spyscape is incorporated in Delaware and maintains a principal and sole place of business in New York.  *See* Devine Decl. at ¶¶ 2-4.  Spyscape has not consented to general personal jurisdiction.  Consequently, it is clear that Spyscape is not subject to general personal jurisdiction in this Court.  *See, e.g., M3 USA Corp. v. Hart*, 516 F. Supp. 476, 490 (E.D. Pa. 2021) (refusing to find general personal jurisdiction over a non-resident corporation).

### 3.    The Court Lacks Specific Personal Jurisdiction Over Spyscape

Specific jurisdiction "depends on an affiliation between the forum and the underlying

controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

Specific jurisdiction over non-residents involves a three-part test. "First, the defendant must have 'purposefully directed [its] activities at the forum.'" *O'Connor*, 496 F.3d at 316 (quoting *Burger King*, 471 U.S. at 472). In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).[4] The contacts must be the "defendant's own choice and not random, isolated, or fortuitous." *Id.* (citation omitted).

"Second, the litigation must 'arise out of or relate to' at least one of those activities'" which were purposefully directed at the forum. *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (noting there must be a "strong connection" between a defendant's actions and the alleged claim). This element prevents Spyscape from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475.

"And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citing *Burger King*, 471 U.S. at 476).

As set forth below, none of the required elements to confer personal jurisdiction are

---

[4]    *See also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (holding that court must determine whether defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there").

present, and thus the Court lacks personal jurisdiction over Spyscape.

> **i.      Spyscape Has Not Purposefully Directed Its Activities Towards Pennsylvania**

First, the Amended Complaint is bereft of any allegations that Spyscape purposely directed its activities towards Pennsylvania.  As noted above, Spyscape is incorporated in Delaware and solely does business in the United States in New York.  Devine Decl.  ¶ 2. Spyscape operates its business, including its museum, websites and multimedia, exclusively in New York. *Id.* ¶¶ 3-6.[5] Furthermore, the alleged (though inchoate and unsubstantiated) business relationship between Plaintiffs and Spyscape concerns a remote podcast conducted by interviewers in the United Kingdom and a brief appearance of Stern's profile on Spyscape's website, which are operated and maintained outside of Pennsylvania.  Devine Decl. ¶¶ 5, 12-14.  Finally, the Amended Complaint's glib assertion that Plaintiffs "helped Spyscape grow and prosper" (an assertion that is unexplained) is unsupported by anything in the record other than this bare, boilerplate allegation.

In fact, the only connection to Pennsylvania is Stern's residence in Pennsylvania and purported operation of Tactical Rabbit from there, which is irrelevant to whether Spyscape directed actions at Pennsylvania.  *See* Amended Complaint ¶ 13 (noting in an allegation against Spyscape that "Plaintiffs operated these businesses in Philadelphia, Pennsylvania at all salient and relevant

---

[5]      While Spyscape's websites are accessible to users in Pennsylvania, as they are in numerous other jurisdictions around the world, Devine Decl.  ¶¶ 5-6, the products and services offered on the website are not targeted specifically at Pennsylvania and do not differ based on the user's location. *See id.*  It is black letter law that undifferentiated access is insufficient to confer specific personal jurisdiction, and Plaintiffs allege no facts that Spyscape directly and uniquely targeted users in the Commonwealth. *See Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (personal jurisdiction is lacking over website operator absent evidence that the website "specifically target[s] Pennsylvania citizens or derive[s] substantial revenue from Pennsylvania citizens"); *Hadnagy*, 2023 WL 114689, at *5 (quoting *Spuglio v. Cabaret Lounge*, 344 Fed. App'x 724, 726 (3rd Cir. 2009) (when a website "merely make[s] information available on the Internet[,] the exercise of personal jurisdiction over such 'passive' defendants is improper")).

times").  Indeed, "plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Hadnagy v. Moss*, Civil Action No. 22-3060, 2023 WL 114689, at *5 (E.D. Pa. Jan. 5, 2023) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 n. 9 (2014)).  Because Plaintiffs are the only link to Pennsylvania, no personal jurisdiction may be exercised over Spyscape.

### ii. There is No Connection Between Plaintiffs' Claims and Spyscape

To establish personal jurisdiction, a plaintiff must also show a "strong connection" between the claims alleged and the defendants' actions.  *See, e.g., Hepp*, 14 F.4th at 208. The Amended Complaint, however, utterly fails to provide any connection between Plaintiffs' claims and Spyscape, much less the robust connection necessary for a court to exercise personal jurisdiction.

Here, to the best of Spyscape's knowledge, the gravamen of most of Plaintiffs' claims in the Amended Complaint is that the other defendants, including the "contracting defendants" (which expressly excludes Spyscape), pursuant to agreements to provide "specific services," "gained unauthorized access" and then "misappropriated" purportedly "highly confidential and proprietary setoff information" in order to "steal" Plaintiffs' existing customers and debilitate their access to new customers, supposedly giving rise to various contract and tort-based claims.  *See* Am. Compl. at, *e.g.*, ¶¶ 21, 7-72, 83, 94, 108, 119, and 126.  The purported resulting injury includes the Plaintiffs' "loss" of existing clients and prospective business relationships.  *Id.* at, *e.g.*, ¶¶ 79, 87, 99, 108, and 136.  However, even assuming *arguendo* that Plaintiffs suffered an injury, there are no facts suggesting that that Spyscape aimed *any conduct* at Pennsylvania, much less *tortious* conduct, which is required to find personal jurisdiction over Spyscape.  *See, e.g., IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

The Amended Complaint makes no specific allegation that Spyscape gained access, much

less "unauthorized access," to any personal or proprietary information of Plaintiffs. Unlike other defendants, the Amended Complaint makes no specific allegation that Spyscape (or any of its personnel) contracted with Plaintiffs, such that Spyscape would have access to Plaintiffs' information under any circumstances. Spyscape is not specifically alleged to have "stolen" anything from Plaintiffs. Spyscape is not specifically alleged to have damaged Plaintiffs' relationships between existing and/or prospective clients. All the Amended Complaint feebly invokes is Stern's brief presence on one of Spyscape's website, which is maintained from outside of Pennsylvania (Devine Decl. ¶ 5) and not specifically targeted at Pennsylvania residents. In sum, Plaintiffs cannot show <u>any connection</u> between Spyscape's conduct and Plaintiffs' injuries, let alone the "strong connection" required to satisfy this factor. *See Hepp*, 14 F. 4th at 208.

Plaintiffs cannot satisfy the second element of the test for personal jurisdiction.

### iii. The Exercise of Jurisdiction Over Spyscape Would be Unfair and Unjust

Even if the Court were to find that Plaintiffs alleged that Spyscape had sufficient contacts with Pennsylvania (which it plainly does not) and that Plaintiffs' claims were tied to conduct in Pennsylvania (unmoored from reality), Plaintiffs cannot establish that this Court's exercise of jurisdiction is in any way fair or just.

The Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing *Burger King,* 471 U.S. at 477).

These factors are not met with respect to Spyscape, a Delaware headquartered company

with a museum and personnel in New York that operates exclusively outside of Pennsylvania and did not engage in any forum-specific conduct in Pennsylvania. The Amended Complaint is devoid of any specific allegation that Plaintiffs and Spyscape interacted within the Commonwealth. Further, Spyscape faces a burden having to litigate in a forum that is totally foreign to it. As such, the Commonwealth has no interest in adjudicating the supposed dispute between Plaintiffs and Spyscape, which does not concern any of its "fundamental" social policies because it involves a dispute in which a defendant has minimal at best connections to Pennsylvania.

For these reasons, Plaintiffs cannot satisfy any of the three required elements for this Court to take personal jurisdiction over Spyscape, and the Amended Complaint should be dismissed with prejudice against Spyscape under Fed. R. Civ. P. 12(b)(2).

**B.**    **The Court Should Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against Spyscape**

        **1.**    **Legal Standards**

In addition to lacking a jurisdictional predicate to keep Spyscape in the case, Plaintiffs further fail to state any plausible legal claims against Spyscape.

An action may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Plaintiffs' allegations are entitled to a presumption of truth at this stage, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

### 2.    The Amended Complaint is an Impermissible "Shotgun Pleading"

As a threshold issue, the Amended Complaint fails to comply with Rule 8(a)(2) and should be dismissed at the outset. Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Complaints that violate this rule, such as the Amended Complaint, "are often disparagingly referred to as 'shotgun pleadings.'" *Bartol v. Barrowclough,* 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted). The Third Circuit has lamented "the all-too-common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early-stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted." *Id.*

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol*, 251 F. Supp. 3d at 859.

The Amended Complaint has all the hallmarks of a "shotgun pleading," as it merely recites elements of various causes of action without alleging even the most fundamental underlying facts. For one, virtually none of the Counts differentiate between which defendant took which actions

that supposedly form the basis for relief.  For example, in Count I (Breach of Contract), which does not name Spyscape, but is nevertheless illustrative, Plaintiffs lump the group of "Contracting Defendants" into a single, undifferentiated group, without providing any specificity as to which Defendants are subject to the boilerplate allegations.   Similarly, in one of the factual allegations supposedly concerning Spyscape, Plaintiffs actually blame other defendants for the alleged tortious conduct for which Spyscape is supposedly culpable.  *See* Am. Compl. at ¶ 26.

In fact, within the nine counts spanning more than twenty pages (*see* Am. Compl. at pp. 19-40), *Plaintiffs only raise one allegation against Spyscape that could conceivably pertain to its conduct*.  *See id.* at ¶ 142 (alluding in passing to a reference on Spyscape's website to Stern).  As further examples, Count IX (Aiding and Abetting Fraud) includes two paragraphs of boilerplate allegations against all Defendants (*id.* at ¶¶ 146-47), and Count X (violations of Pennsylvania's statutory unfair trade practices law) includes no factual or legal allegations at all and is instead a treatise citation to the law purportedly underlying the immediately preceding account.  *Id.* at ¶ 150. Finally, the Amended Complaint is replete with extraneous, unsupported conclusions (often in the form of incomplete sentences), making it virtually impossible for Spyscape to decipher what allegations are at issue.

For these reasons, the Amended Complaint is a quintessential shotgun pleading that does not satisfy Rule 8(a)(2) and should be dismissed with prejudice against Spyscape.

### 3. Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)

Plaintiffs' Amended Complaint offers only vague, conclusory allegations with respect to Counts II and III, which does not set forth sufficient facts to support either of these claims.

First., as a matter of law, Pennsylvania does not recognize a tort for "intentional interference with prospective economic advantage."  *ClubCom, Inc. v. Captive Media, Inc.*, No.

02:07-cv-1462, 2009 WL 249446, at *7 (W.D. Pa. Jan. 31, 2009).  Consequently, this aspect of Count II is invalid on its face and must be dismissed.

Second, to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

For a variety of reasons, Count II must be dismissed.  First, Plaintiffs do not allege that it ever had a contractual relationship with Spyscape, nor could it.  Second, the Amended Complaint does not contain specific allegations with any specificity concerning a prospective contractual relationship between Plaintiffs and any third-party.  Instead, Count II is contains only vague, generalized allegations about unnamed clients of Plaintiffs.  Am. Compl., ¶¶ 84, 86.  Furthermore, the supposed basis for the "interference" alleged in Count II is the "unauthorized access" to Plaintiffs' "intelligence data and materials," which does not concern Spyscape in the slightest.  *Id.* ¶ 85.  This style pleading does not put Spyscape on notice of the essential facts to establish a claim.

Third, Count III is invalid on its face because "Pennsylvania law does not recognize the tort of negligent interference with contractual relations."  *Mills v. Unknown Franchisee*, Civil Action No. 2:20-cv-566, 2021 WL 5358944, at *5 (W.D. Pa. Oct. 13, 2021) (citing *Valley Forge Convention & Visitor's Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998));

*see also Binary Semantics Ltd. v. Minitab, Inc.*, No. 4:07-CV-1750, 2008 WL 763575, at *7 (M.D. Pa. Mar. 20, 2008) (same).  The only exception to the rule is where a "special relationship exists between the parties." *Mills*, 2021 WL 5358944, at *5.   "A 'special relationship' is one involving confidentiality, the repose of special trust or fiduciary responsibilities." *Valley Forge*, 28 F. Supp. 2d at 952 (citation omitted)

The "special relationship" exception clearly does not apply here, as the handful of allegations in the Amended Complaint provide no basis for any relationship involving confidence, trust, or fiduciary obligations between Plaintiffs and Spyscape.  As such, Counts II and III should be dismissed with prejudice.

### 4.    Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X)

In Pennsylvania, a defendant is liable for unfair competition if "(1) he [or she] engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) his [or her] conduct causes harm to the plaintiff's commercial relations." *M3 USA*, 516 F. Supp. 3d at 504 (citing Restatement (Third) of Unfair Competition § 1).  In Pennsylvania, a claim for unfair competition is recognized "where there is evidence of, among other things ... tortious interference with contract … and unlawful use of confidential information." *Id.*

Applying these principles, Plaintiffs fail to state a claim for unfair competition.  The Amended Complaint contains no allegation that Spyscape engaged in any actions that would satisfy the first element.  Indeed, there are no allegations that Spyscape has ever maintained access to the Plaintiffs' trade secrets, protectable intellectual property, or other confidential information. This is unsurprising, as Spyscape never had access to such information.

Plaintiffs likewise cannot satisfy the second element of the unfair competition test.  As

discussed above, there are insufficient allegations that Spyscape tortiously interfered with any (unspecified) contract involving Plaintiffs or that Spyscape otherwise damaged Plaintiffs' "commercial relations." There are also no allegations that Spyscape unlawfully used any of Plaintiffs' confidential information, nor could there be.

Count X fails because it is supported by no allegations whatsoever. *See* Am. Compl. ¶¶ 149-150. The Count is comprised entirely of: (i) a reincorporation of the prior boilerplate allegations; and (ii) a cut and paste of a Section 876 of the Restatement (Second) of Torts, which is referenced in the immediately preceding Count IX and concerns liability for aiding and abetting fraud. *Id.* It is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL.[6] For these reasons, Counts IV and X should be dismissed.

### 5.    Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V)

"A trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another." *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018).

Defendants do not state a claim for trespass to chattels under Pennsylvania law. The crux of this Count V (to the extent it is intelligible) is that all Defendants "intentionally interfered with Plaintiffs' use of … Plaintiffs' related internal databases and systems the intelligence data and Support Materials housed for licensed access." Amended Complaint at ¶ 118.

Emblematic of a shotgun pleading, the Amended Complaint does not furnish any specific allegations against Spyscape, nor could it. *See id.* There are no allegations that Spyscape had ever maintained access to these "internal databases," nor any licensed property of Plaintiffs. As such,

---

[6]    UTPCPL is the abbreviation for Pennsylvania's version of the Unfair Trade Practices and Consumer Protection Law. *See* 73 Pa. Const. Stat. § 201-1 *et seq.*; *see also Salyers v. A.J. Biosenski, Inc.*, --- F. Supp. 3d ----, 2024 WL 1773368, at *8 (E.D. Pa. Apr. 24, 2024) (summarizing elements required to prove a UTPCPL claim).

Spyscape *per se* could not have dispossessed, used, or intermeddled Plaintiffs of this supposed chattel, much less with the required intentionality.  For these reasons, Count V must be dismissed.

### 6.    Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI)

In Pennsylvania, unjust enrichment is an equitable remedy, defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp .3d 158, 163 (E.D. Pa. 2022), *aff'd*, 2023 WL 4418219 (3d Cir. July 10, 2023).

"To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must establish that (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Id.*  "An unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023).

Yet again, the Amended Complaint fails to furnish any specific allegations tying Spyscape to the supposed "unjustly received benefits in the form of stolen data and customers[.]" *Id.* at ¶ 126.  As described herein, there is simply no allegation that the Plaintiffs have ever conferred any benefit on Spyscape, much less any "stolen data or customers."  In truth, an appearance on a popular podcast and briefly holding a spot on Spyscape's website actually *benefits Plaintiffs* by increasing exposure and potential remuneration.  Spyscape thus necessarily could not have appreciated, accepted, nor retained such benefits.  For these reasons, Count VI must be dismissed.

### 7.    Plaintiffs Fail to State a Claim for Negligence (Count VII)

To establish a claim for negligence, a plaintiff must show: "(1) duty; (2) breach; (3)

causation; and (4) damages." *NVR, Inc. v. Majestic Hills, LLC*, 670 F. Supp. 3d 206, 227 n. 17 (W.D. Pa. 2023).   To determine the existence of a duty, the Court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution." *Id.*

Nowhere in the Amended Complaint is there any specific allegation tying Spyscape to any "duty" to the Plaintiffs.  Rather, the Amended Complaint appears to premise such a "duty" on the boilerplate assertion that all defendants failed to "supervise, train, manage and oversee their employees, subcontractors and assigns who impacted Plaintiffs' business."  Am. Compl. at ¶ 133. According to the Amended Complaint, the defendants also failed to "use security to protect and preserve valuable data owned by Plaintiffs as proprietary data."  *Id.* at ¶ 135.  These allegations, on their face, have nothing to do with Spyscape, eliminating the possibility of a duty of "ordinary care" owed to Plaintiffs.  There is no allegation tying actions of specific Spyscape's "employees, subcontractors, or assigns" to adverse impacts to Plaintiffs' business.  Likewise, there is no allegation that Spyscape had access to any of the "proprietary" data of Plaintiffs, much less any data.  Spyscape therefore could not have "failed to handle [the data] safety and properly."  *Id.*  For these reasons, Count VII must be dismissed.

### 8.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII)

Under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, *i.e.* an intent to injure, is essential in proof of a conspiracy."  *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021).

Plaintiffs cannot establish these elements and have thus not alleged a viable claim for civil conspiracy.  Tellingly, the Amended Complaint only arguably alludes to Spyscape in a single

19

group pleading allegation: that, after listing "Stern as a speaker on Spyscape Entertainment," Spyscape acted "in concert" with the other defendants to "surreptitiously supplant [Plaintiffs] from this site and its marketing prowess by the over acts of these Defendants[.]" *Id.* at ¶ 142.

This single allegation is not within the realm of the pleading required to state a claim for civil conspiracy. Most importantly, there is no specific allegation that Spyscape agreed to do any unlawful act or an otherwise lawful act by unlawful means—and did so with the intent to injure Plaintiffs. Specifically, this single allegation baselessly and without detail alleges that "Defendants picked up the work, money and opportunities" supposedly held by Plaintiffs. However, Spyscape in no way competes with Plaintiffs, such that it would have any interest or incentive to "pick up" Plaintiffs' work. For the same reason, Spyscape has no incentive to "divest" Plaintiffs of these supposed opportunities.

Further, the Amended Complaint lacks any allegations whatsoever that Spyscape acted with the required malice at all, an essential element for a civil conspiracy claim. For these reasons, Count VIII must be dismissed.

### 9. Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX)

Under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*, CV 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024).

Aside from stray references to the word "fraud," the Amended Complaint is devoid of any specific allegations as to the alleged fraud perpetrated on Plaintiffs, much less Spyscape's knowledge and substantial assistance in committing that tort. All told, at best, the Amended

Complaint simply recites the above-referenced elements without any single particularized allegation that could give rise to liability against Spyscape. Am. Compl. at ¶¶ 145-148. Count IX must be dismissed.

## IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Spyscape Entertainment respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice, as any further amendment would be futile.

Dated:  November 15, 2024
        Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP

<u>/s/ Benjamin R. Wilson</u>
Benjamin R. Wilson, Esq. (Bar No. 327118)
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600
Email: benjamin.wilson@hklaw.com

Richard A. Bixter Jr.
*pro hac vice*
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Phone: (312) 422-9032
Email: richard.bixter@hklaw.com

*Attorneys for Defendant Spyscape*
*Entertainment*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused to be served a true and correct copy of the

foregoing with the Clerk of Court using the CM/ECF system and served upon all parties registered

for the CM/ECF system in this case.

Dated: November 15, 2024
        Philadelphia, Pennsylvania

/s/ Benjamin R. Wilson