# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVERETT STERN,** *et al.* | |
| **Plaintiffs,** | **Civil Action No. 2:24-cv-01222-WB** |
| **vs.** | |
| **WILLIAM RUZICH,** *et al.* | |
| **Defendants.** | |

## PLAINTIFFS RESPONSE IN OPPOSITION OF MARCHANT DEFENDANTS MOTION TO DISMISS THE AMENDED COMPLAINT

### I.    PRELIMINARY STATEMENT

Plaintiffs having filed their Amended Complaint (ECF No. 41) ("Amended Complaint") filed by Plaintiffs Everett Stern and Tactical Rabbit, LLC (together, "Plaintiffs") against, among others, Defendants Spyscape, Inc.("Spyscape, Inc.") and collectively the "Spyscape Defendants" denies that this pleading constitutes a quintessential shotgun pleading of the type that has been rejected time and again by courts sitting in the Third Circuit.

The Amended Complaint, read in its entirety, details a comprehensive account of business relationships between and among the Parties with specific allegations against Defendants that must be deemed true at this stage. The Amended Complaint sets forth cogent and salient facts juxtaposed with legal counts set forth consistent with the requisite particularity requirements, that plainly afford the Spyscape Defendants ample insight into the ten counts raised against them, all of which are valid causes of action under Pennsylvania law. There are a total of five (5) paragraphs (out of 150) in the Amended Complaint that have specific allegations directed at the Spyscape Defendants. Am. Compl. ¶¶ 6, 21, 28-30.

1

Plaintiffs allege that Moving Defendants assisted other Defendants by augmenting or piling on of false allegations against Plaintiffs in order to harm Plaintiffs who contractual subscribed to the Spyscape website, and after the Plaintiffs cancelled their subscription, Plaintiff ran "negative articles" pertaining to Mr. Stern's arrest and court cases. These allegations are salient substantiating the contractual relationship between Plaintiffs and the Spyscape Defendants, the conspiracy to impact the Plaintiffs' business interests, or whether any of these actions occurred in Pennsylvania.

Plaintiffs timely filed the operative Amended Complaint on November 2, 2024. ECF No. 41 setting forth cogent allegations against the Spyscape Defendants. The Plaintiffs deny that the Amended Complaint should be dismissed for numerous reasons:

First, the Plaintiffs deny that the Court need not reach the merits of the Plaintiffs' claims because the Plaintiffs have failed to establish personal jurisdiction over the Spyscape Defendants. Plaintiffs acknowledge, the Spyscape Defendants do not reside in Pennsylvania, are incorporated in the State of New York and maintain no physical presence in this forum. See Am. Compl. ¶¶ 6-7. However, Movants collaborated extensively with Plaintiffs who spent hundreds of thousands of dollars and hundreds of hours dedicated to developing business with Spyscape while from Pennsylvania such that they have substantial availed themselves by actively profiting from their on-going, recurrent and regular business contacts with the Plaintiffs in the Commonwealth of Pennsylvania such that the Spyscape Defendants' overall contacts with Pennsylvania are sufficiently substantial, continuous, and systematic so as to subject them to the general jurisdiction of a Pennsylvania court.

<u>Second</u>, the court has specific personal jurisdiction over the Spyscape Defendants as stated above Plaintiffs allege specific facts that establish a connection between the Spyscape Defendants, Pennsylvania, and the claims at issue in this case.

Plaintiffs and Moving Defendants had a specific business relationship that was not simply a web-based one-time transaction but instead a concerted joint work relationship that specifically supports that Movant's knowingly availed themselves to this jurisdiction. While Spyscape operates a website that is accessible in Pennsylvania, but moreover, the Movants regularly collect subscription service fees from customers in this State while consistently and regularly sending information to their Pennsylvania subscribers. Furthermore, the Spyscape Defendants' conduct of collecting subscription fees in exchange for services provided to their Pennsylvania customer was underscored and made more clear by the targeted publishing an article about Stern that contains only Pennsylvania related subject matter, against their own Pennsylvania based customers (Plaintiffs) is directly and substantially an important element of the claims underlying the case, which appear to concern breach of contract, hacking and unfair competition allegations directed in part with certain other defendants.

<u>In sum</u>, the Movants are frankly being dishonest in claiming falsely that Plaintiffs are the sole connection between this action and Pennsylvania given the above information.

While the Supreme Court has repeatedly held that a plaintiff's link is alone insufficient to find personal jurisdiction the facts in the instant case are different and the actions of Movants in regard to the Plaintiffs Pennsylvania business is vastly more than a mere "link." Dismissal under Fed. R. Civ. P. 12(b)(2) is thus grossly unfair and disparate from the finding in the cited case. <u>See Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone, can automatically establish sufficient minimum contacts

in the party's home forum, we believe the answer clearly is that it cannot."). To be clear, Plaintiffs allege vastly more than is necessary to establish jurisdiction in this forum in the instant case.

Plaintiffs disagree that "Third," even if the Court were to conclude that personal jurisdiction exists (which it does not), the Amended Complaint is substantively deficient for multiple reasons. "Plaintiffs ardently deny the false allegations that somehow as a general matter, the Amended Complaint is devoid of specific, distinct facts necessary to establish the plausible claims to relief it seeks" as the Movants claim when in fact the Amended Complaint read in totality sets forth a specific and distinct facts regarding how Movants helped ruin the Plaintiffs business along with the misconduct of co-Defendants.

Within the entirety of the Amended Complaint, Plaintiffs raise specific allegations towards the Spyscape Defendants, which are sufficient to assert actionable claims. Plaintiffs deny that the remainder of the allegations constitute an impermissible group pleading that lumps the Spyscape Defendants in with other completely unrelated actions and parties, including parties that have contracted with the Plaintiffs (inapplicable to the Spyscape Defendants) and the alleged "hacking" of Plaintiffs (also inapplicable to the Spyscape Defendants).

The allegations directed at the Spyscape Defendants provide a clear basis for relief for willfully posting an article online about Stern and Plaintiff's business with the intent to harm and effectively put them out of business. Furthermore, Movants incorrectly claim that "Plaintiffs often merely recite the elements of various causes of action, without any accompanying plausible facts to support them" since the Complaint read in its entirety explains the juxtaposition of the myriad of facts, in conjunction with the predicated legal elements. Plaintiffs specifically deny that "several of these causes of action are not even cognizable causes of action under Pennsylvania law. All fail to allege facts to support the essential elements of the claims or delineate any allegations between

the numerous Defendants." When in fact the allegations must be read in their entirety along with the legal elements for the causes of action.

<u>In sum</u>, Movants are grossly incorrect, claiming without merit, that the vague, conclusory allegations in Plaintiffs' Amended Complaint utterly fail to meet the pleading standards established by the Supreme Court in <u>*Bell Atl. Corp. v. Twombly*</u>, 550 U.S. 544, 555 (2007) and <u>*Ashcroft v. Iqbal*</u>, 556 U.S. 662, 678–80 (2009), and the Movants should be compelled and order to Answer the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A. The Plaintiffs Deny that the Spyscape Defendants operate exclusively outside of Pennsylvania.

Movants operated with the Plaintiffs who at all time were located in Pennsylvania, within this Federal District.    As the Amended Complaint acknowledges, Spyscape is a corporation incorporated and located in New York. See id. ¶¶

4. Movants admission confirms they're regular, and recurrent and that "Other than being accessible and selling advertisement revenue to persons located in Pennsylvania, Spyscape does sell products target Pennsylvania residents separate and apart from visitors located in other jurisdictions since large population and proximity to Pennsylvania is clear.

B. The Plaintiffs Deny the Spyscape Defendants' Limited Dealings with Plaintiffs

The removal from Stern from Spyscape's panel was not the only actions that Movants took that harmed Plaintiffs in Pennsylvania.    The Movants actively went out of the way to assist other Defendants to publish specific hit-pieces and negative articles to work in conjunction with other Defendants to harm Plaintiffs specifically by singling out the Plaintiffs for falsely claimed abhorrent misbehavior that was untrue and aimed at harming Plaintiffs because of the pejorative

nature of published articles concerning Plaintiffs. Id. ¶¶ 10-13.2 Publicly available court records constitute the sole source of the material on Plaintiffs that has been published on Spyscape.

2. The Amended Complaint that the removal of Stern from Spyscape expert panel harmed him and moreover contributed to the demise of Plaintiffs business. Id. However, the Amended Complaint does not allege a cause of action for defamation because the Movants acted with the Defendants to harm Plaintiff and are liable accordingly. See generally Id.

3. Plaintiffs aver and therefore believe that Spyscape has worked with Moran, Ruzich et al Defendants to specifically harm and damage Plaintiffs

### C. Plaintiffs' Claims against the Spyscape Defendants

A simple and cogent nexus between Plaintiffs and the Spyscape Defendants and their collective dealings between the Parties, Plaintiffs have in the Amended Complaint, Plaintiffs have alleged that Plaintiffs "hired" Spyscape, "pursuant to contract agreements that memorialized the terms and conditions of their retention and scope of performing services as set forth in the attached contracts for each member of these 'Contracting Defendants.'" Am. Compl. ¶ 21. The Amended Complaint fails to attach any contract between either of the Spyscape Defendants and either of the Plaintiffs since they worked in a collaborative manner without a contract per se. See generally Id

The Amended Complaint also alleges that the Spyscape Defendants "had access to sensitive information used by Plaintiffs," whereupon the Spyscape Defendants allegedly "made a concerted effort to eliminate Plaintiffs' business." Id. ¶ 28. The Amended Complaint sufficiently makes allegations on the nature of this "concerted effort," since Plaintiffs have averred that Spyscape Defendants collaborated with co-Defendants and efficaciously targeted Plaintiffs "business" harming them and forcing them out of business.

Plaintiffs assert liability against the Spyscape Defendants into all ten of causes of action:

    • Count I: Breach of Contract (in the Spyscape Defendants acted under quasi contractual arrangement thus worked with and in capacity as "Contracting Defendants");

    • Count II: Intentional interference with prospective economic advantage and tortious interference of contract rights;

    • Count III: Negligent interference with prospective economic advantage;

    • Count IV: unfair competition;

    • Count V: trespass to chattels;

    • Count VI: unjust enrichment;

    • Count VII: negligence;

    • Count VIII: civil conspiracy;

    • Count IX: aiding and abetting fraud;

    • Count X: violations of Pennsylvania's unfair trade practices and consumer practices law. See Amended Complaint ¶¶ 69-150.

For all of the foregoing reasons and those briefed below, the Amended Complaint must be Answered by Movants since none of the purported independent bases permits dismissal:

(i) the Court has general or specific personal jurisdiction over the Spyscape Defendants, precluding dismissal under Fed. R. Civ. P. 12(b)(2); and (ii) the Amended Complaint adequately states claims for relief against the Spyscape Defendants precluding. dismissal under Fed. R. Civ. P. 12(b)(6).

## III.    <u>ARGUMENT</u>

A. The Court Should Not Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant.

First, the Amended Complaint concedes that the Spyscape Defendants do not reside or maintain a principal place of business of Pennsylvania. See Am. Compl. ¶¶ 6-7. Throughout the relevant time period, Spyscape is incorporated in New York Spyscape and maintains a principal place of business there.

Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits. See *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(e)).

Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 700 (E.D. Pa. 2023) (quoting 42 Pa. Const. Stat. § 5322(b)).  The Movants have the requisite minimum contacts and have availed themselves to this jurisdiction accordingly.

Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The constitutional requirements for personal jurisdiction very depending on the type of jurisdiction asserted. There are two types of personal jurisdiction: general and specific. See *O'Connor*, 496 F.3d at 317 (citation omitted). In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court takes the allegations of the complaint as true. See Riad, 657 F. Supp. 3d at 700 (citing *Dayhoff v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3rd Cir. 1996)). However, legal conclusions by a plaintiff "are no more than conclusions and are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The burden to establish personal jurisdiction

is on the plaintiff. See *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009).

Plaintiffs have met their burden showing requisite contacts. "[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Dayhoff*, 86 F.3d at 1302; see also *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (noting that, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may not merely rely on the allegations in its complaint") (emphasis in original and citation omitted). The plaintiff must establish those contacts with "reasonable particularity." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Once the plaintiff makes a prima facie case in support of personal jurisdiction, the burden shifts to the defendant to establish that "some other considerations exist which would render the exercise of personal jurisdiction unreasonable." *Riad*, 657 F. Supp. 3d at 700. Plaintiffs show that the exercise of either two of the types of jurisdiction, over the Spyscape Defendants would comport with due process such that the Motion should be dismissed.

## 1. The Court Has General Personal Jurisdiction over the Spyscape Defendants

The exercise of general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state. Id. To exercise general personal jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is "at home" in its place of incorporation and its principal place of business. Id.

General jurisdiction is proper over an individual only where he or she is domiciled. See *M3 USA Corp. v. Hart*, 516 F. Supp. 476, 490 (E.D. Pa. 2021). The Spyscape Defendants have consented

to general personal jurisdiction in Pennsylvania such that it is clear that the Spyscape Defendants are subject to general personal jurisdiction in this Court. See, e.g., _M3 USA_, 516 F. Supp. at 490 (refusing to find general personal jurisdiction over a non-resident, individual, and corporation).

**2. The Court Has Specific Personal Jurisdiction Over the Spyscape Defendants**

First, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity, or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." _Goodyear Dunlop Tires Operations, S.A. v. Brown_, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction." Id. Accordingly, the Court has Specific personal jurisdiction over Movants that requires their Motion to be denied.

**3. Specific jurisdiction over non-residents involves a three-part test.**

First, the defendant must have "purposefully directed [its] activities at the forum." _O'Connor_, 496 F.3d at 316 (quoting _Burger King_, 471 U.S. at 472). In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." _Hanson v. Denckla_, 357 U.S. 235, 253 (1958). The contacts must be the "defendant's own choice and not random, isolated, or fortuitous." Id. (citation omitted).  In the instant case, this prong is absolute and without debate.

"Second, the litigation must "arise out of or relate to" at least one of those activities," which were purposefully directed at the forum. _O'Connor_, 496 F.3d at 317 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)); see also _Hepp v. Facebook_, 14 F.4th 204, 208 (3d Cir. 2021) (noting that there must be a "strong connection" between a defendant's actions and the alleged claim). The litigation quite simply only arises out and relates to the Defendants

purposeful activities in this forum.This element binds the Spyscape Defendants into this forum from as a jurisdiction since the purposeful actions were clearly solely as a result of random, fortuitous, or attenuated contacts. *Burger King*, 471 U.S. at 475. See also *Ford Motor Co. v. Mont.* Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (holding that court must determine whether defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there").

Third, since these prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citing *Burger King*, 471 U.S. at 476). As set forth below, all of the required elements to confer personal jurisdiction are present, and thus the Court has personal jurisdiction over the Spyscape Defendants.

### i.    The Spyscape Defendants' Have Purposefully Directed Their Activities Towards Pennsylvania

First, the Amended Complaint is full of salient allegations that the Spyscape Defendants purposely directed their activities towards Pennsylvania. As noted above, Spyscape is incorporated and maintains a principal place of business in New York. The Amended Complaint's assertion that the Spyscape Defendants worked with Plaintiffs during 2017-2021, thereby gaining "access to sensitive information" (which is entirely unspecified) is a quasi-contract supported by the other allegations in the Amended Complaint read in their entirety and deemed at this juncture to be true. See Am. Compl. ¶ 28.  In fact, the specific connections to Pennsylvania evident in the Amended Complaint is Stern's residence and operation of Tactical Rabbit, which is totally relevant to the Spyscape Defendants purposeful diabolical actions directed at Plaintiffs in Pennsylvania.

<u>In sum,</u> Movants fail to adduce support for their bald assertion that "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 290 n. 9 (2014).

Here, the Plaintiffs are not the only link to Pennsylvania, as alleged by Plaintiffs, thus not precluding the exercise of personal jurisdiction in the Commonwealth over the Spyscape Defendants.

### ii. The Spyscape Defendants' Ownership and Operation of the Spyscape's Spy Business and Website Constitutes Purposeful Availment

<u>First</u>, Spyscape is accessible to Pennsylvania residents, and Stern purports to have been a expert panel member on Spyscape solely while a Pennsylvania resident. See Am. Compl. ¶ 30; However, that a Pennsylvania resident can access Spyscape from within the Commonwealth is not insufficient to confer personal jurisdiction over the Spyscape Defendants since the Moving Defendants acted with malicious intent and direct purpose to successfully work with co-Defendants to harm the Plaintiffs.

As a general matter, a "website may form the basis for specific jurisdiction if [the] defendant takes action to maximize usage of [the] website in the forum, markets [the] website in the forum, puts forum-specific content in [the] website[,] or has [a] business plan that targets users within [a] forum." *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 556 (E.D. Pa. 2018) (citations omitted). As this occurred in the instant case, specific jurisdiction exists in this forum.

<u>Third</u>, Courts in the Third Circuit have applied a "sliding scale test," which holds that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet" such that "the exercise of jurisdiction is determined by examining the level of interactivity and commercial

nature of the exchange of information that occurs on the Web site." *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

Under this framework, "websites are placed on a spectrum ranging from passive websites, on which information is merely posted, to interactive websites, which facilitate commercial transactions between the defendant and forum resident." *Kelly v. Vertikal Press, Ltd.*, CIVIL ACTION NO. 20-2315, 2020 WL 6395459, at *2 (E.D. Pa. Nov. 2, 2020).

Unlike the instant case, where the Movants took active steps knowing that they were purposefully harming Plaintiffs in this forum, thus rendering inapplicable the movants allegation that when a website "merely make[s] information available on the Internet[,] the exercise of personal jurisdiction over such 'passive' defendants is improper." *Hadnagy*, 2023 WL 114689, at *5 (quoting *Spuglio v. Cabaret Lounge*, 344 Fed. App'x 724, 726 (3rd Cir. 2009)). "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us,* 318 F.3d at 454. The Movants having purposefully availed themselves to this forum have made specific jurisdiction mandatory in this forum.

Plaintiffs allege specific facts that the Spyscape Defendants used marketing and sales efforts to directly to harm the Plaintiffs as residents of Pennsylvania to show specific targeting at Pennsylvania residents essential to confer personal jurisdiction. *Lutz v. Rakuten, Inc*., 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (a "highly interactive" website that had a "shop" button allowing a user to enter into a quasi-contract subject defendants to personal jurisdiction unless the website "specifically, any "capacity for interactivity" does necessarily categorize a website as demonstrating purposeful availment, given that "there must be something more beyond the mere

13

posting of a passive web site to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Toys "R" Us*, 318 F.3d at 453.

To that end the Plaintiffs were specifically targeted by Movants et al Defendants while in this forums such that, "[t]he mere possibility that someone in Pennsylvania—as opposed to anywhere in the world – might contact the [d]efendant[s] via the website does not alone constitute a purposeful contact with the forum." *Kelly,* 2020 WL 6395459, at *2-3 target[s] Pennsylvania citizens or derive[s] substantial revenue from Pennsylvania citizens"); *Britax,* 321 F. Supp. 3d at 557 (sale of products via website insufficient for personal jurisdiction absent targeting at Pennsylvania residents); *Kelly*, 2020 WL 6395459, at *3 (absent targeting of Pennsylvania residents, offering advertisement revenue insufficient to confer personal jurisdiction); see *Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002) (standing alone, offering advertisement revenue did not confer personal jurisdiction over website operator); *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (concluding that a website selling a "small number of advertisement revenue to Florida residents" was inadequate to find personal jurisdiction in Florida).  These cases are vastly different from the instant case where the New York City based Movants clearly market to Pennsylvania residents who can easily visit the Spycape Museum and Experience is tourist destination and easy day trip for most Pennsylvanians.

In sum, Plaintiffs satisfy the first element of the test for personal jurisdiction.

### iii.    There is Direct Connection Between Plaintiffs' Claims and the Actions of the Spyscape Defendants

First, to establish personal jurisdiction, a plaintiff must also show as they have shown here a "strong connection" between the claims alleged and the defendants' actions. See, e.g., *Hepp*, 14 F.4th at 208. The Amended Complaint provides this connection between Plaintiffs' claims and the Spyscape Defendants, as a strong connection necessary for a court to exercise personal jurisdiction.

Here, Plaintiffs' claims in the Amended Complaint is that the other defendants "gained unauthorized access" and then "misappropriated" purportedly "highly confidential and proprietary setoff information" in order to "steal" Plaintiffs' existing customers and debilitate their access to new customers, supposedly giving rise to various contract and tort-based claims. See Am. Compl, e.g., ¶¶ 71-72, 83, 94, 108, and 126. The purported resulting injury includes the Plaintiffs' "loss" of existing clients and prospective business relationships. Id., e.g., ¶¶ 79, 87, 99, 108, and 136. Since the Plaintiffs suffered an injury and the Spyscape Defendants have specifically aimed significant conduct at Pennsylvania as tortious misconduct, which is required to find personal jurisdiction over the Spyscape Defendants. See, e.g., _IMO Indus_, 155 F.3d at 265-66.

Specifically, the Amended Complaint makes specific allegation that the Spyscape Defendants worked collaboratively with the co-defendants who gained access, much less "unauthorized access," to any personal or proprietary information of Plaintiffs. While the Spyscape Defendants are not specifically alleged to have "stolen" anything from Plaintiffs, they worked with co-Defendants to ruin Plaintiffs business.

Plaintiffs can show any connection between the Spyscape Defendants' conduct and Plaintiffs' injuries equal to a "strong connection" required to satisfy this factor. See, e.g., _Hepp,_ 14 F. 4th at 208.

<u>In sum</u>, Plaintiffs can satisfy the second element of the test for personal jurisdiction.

### iv.    The Exercise of Jurisdiction Over the Spyscape Defendants Is Fair and Just

<u>First</u>, Plaintiffs alleged that the Spyscape Defendants had sufficient contacts with Pennsylvania such that the Plaintiffs can establish that this Court's exercise of jurisdiction is in any way fair or just.

Second, the Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing *Burger King,* 471 U.S. at 477).

All of these factors are met since the Spyscape Defendants have operated specifically within the forum in Pennsylvania and engaged in any forum-specific conduct in Pennsylvania.

Third, the Amended Complaint has specific allegations that the Spyscape Defendants interacted with Plaintiffs within the Commonwealth such that the Commonwealth has great purposed and reason for justly adjudicating the dispute between the Plaintiffs and the Spyscape Defendants, since it concerns its "fundamental" social policies because it involves a dispute in which the defendants have targeted, robust and customized connections to Pennsylvania.

In sum, for these reasons, Plaintiffs can satisfy all of the three required elements for this Court to take personal jurisdiction over the Spyscape Defendants, the Amended Complaint should not be dismissed against the Spyscape Defendants under Fed. R. Civ. P. 12(b)(2).

B. The Court Should Not Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(6) Because it States Claims Against the Spyscape Defendants

### 1. Legal Standards

Plaintiffs have established and stated plausible legal claims against the Spyscape Defendants. An action may only be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, a court must accept factual allegations as true, but it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a

legal conclusion couched as a factual allegation." _Baraka v. McGreevey_, 481 F.3d 187, 195 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." _Fowler v. UPMC Shadyside_, 578 F.3d 203, 211 (3d Cir. 2009).  These elements and issues are satisfied by the motion stage attempt to skirt liability by Movants.

### 2. The Amended Complaint is not "Shotgun Pleading"

As a threshold issue, the Amended Complaint complies with Federal Rule of Civil Procedure 8(a)(2) and should not dismissed at the outset. Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that violate this rule, such as the Amended Complaint, "are often disparagingly referred to as 'shotgun pleadings.'" Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted). The Third Circuit has lamented "the all too common shotgun pleading approach" to complaints. _Hynson v. City of Chester Legal Dep't_, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The Amended Complaint is not a shotgun pleading and thus should not be dismissed.

The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early-stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted." Id.

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." _Bartol_, 251 F. Supp. 3d at 859. The Amended Complaint has none of the hallmarks of a "shotgun pleading," as it specifically establishes cogent facts supporting the elements of various causes of action while alleging specifically supporting underlying facts.

In fact, within the ten Counts spanning almost twenty pages (see Am. Compl. pp. 16-35), Plaintiffs raise specific allegations directly against the Spyscape Defendants pertaining to their misconduct with co-defendants.

All of the Ten Counts differentiate between which Defendant took which actions that supposedly form the basis for relief. The Amended Complaint is full of strong assertions and conclusions making it simple for the Spyscape Defendants to understand what allegations are at issue.

For these reasons, the Amended Complaint satisfies Rule 8(a)(2). The Amended Complaint should be not dismissed.

### 3. Plaintiffs State a Claim for Breach of Contract (Count I)

Count I does not fail because, it permissibly connects and associates the Spyscape Defendants into a group of "Contracting Defendants," as a quasi contract. Under Pennsylvania law, breach of contract claim contains three elements: "(1) the existence of a contract, including its essential

terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Udodi v. Stern*,

438 F. Supp. 3d 293, 299 (E.D. Pa. 2020).

Plaintiffs allege these basic elements. The Amended Complaint provides specific information as

to the alleged quasi-contract between the Spyscape Defendants and Plaintiffs, such as the essential

terms, duration, and which terms were breached, and by which defendant. Instead, the Amended

Complaint offers reference to this misconduct. See Amended Complaint ¶ 28.

Movants correctly state the Amended Complaint describes the contractual basis for the Contracting

Defendants as "Exhibit A-D." Id. ¶ 72. The Spyscape Defendants are not a party to any of the

contracts delineated as "Exhibit A-D.".

The Amended Complaint alleges factual basis for a quasi contract could have been formed between

the Spyscape Defendants and Plaintiffs.

For these reasons, the Amended Complaint includes factual allegation that could support a finding

of a contractual agreement between Plaintiffs and the Spyscape Defendants.

8. For these reasons, Count I should not be dismissed.

### 4. Plaintiffs State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)

First, Plaintiffs' Amended Complaint offers salient allegations with respect to Counts II and III

and sets forth sufficient facts to support these causes of action.

Plaintiffs can prevail under Pennsylvania law for a claim for tortious interference with existing or

prospective contractual relations, since plaintiffs can prove: "(1) the existence of a contractual or

prospective contractual or economic relationship between the plaintiff and a third party; (2)

purposeful action by the defendant, specifically intended to harm an existing relationship or

intended to prevent a prospective relation from occurring; (3) the absence of privilege or

justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the

defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). Because Plaintiffs adequately plead these basic facts underlying the breach of contract claim, the Spyscape Defendants can evaluate numerous legal defenses that could otherwise be asserted in a motion to dismiss for failure to state a claim.

The "special relationship" exception clearly applies here, as the handful of allegations in the Amended Complaint provide a cogent basis for any relationship involving confidence, trust, or fiduciary obligations between Plaintiffs and the Spyscape Defendants. For these reasons, Counts II and III should not be dismissed.

5. Plaintiffs State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X)

First, in Pennsylvania, as exists here, defendant is liable for unfair competition if "(1) he [or she] engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) his [or her] conduct causes harm to the plaintiff's commercial relations." M3 USA, 516 F. Supp. 3d at 504 (citing Restatement (Third) of Unfair Competition § 1).

Second, in Pennsylvania, a claim for unfair competition is recognized "where there is evidence of, among other things ... tortious interference with contract … and unlawful use of confidential information." Id. Applying these principles, Plaintiffs state a claim for unfair competition. The Amended Complaint contains cogent allegations that the Spyscape Defendants engaged in any actions that would satisfy the first element as the "negative articles" alleged by Plaintiffs constitutes marketing of the Spyscape Defendants' products. Further, there are allegations that the Spyscape Defendants had access to the Plaintiffs' trade secrets, protectable intellectual property, or other confidential information, or what such information would be in order to satisfy the second

element of the unfair competition test. As discussed above, there are sufficient allegations that the Spyscape Defendants tortiously interfered with any contract involving the Plaintiffs and allegations that the Spyscape Defendants unlawfully used any of Plaintiffs' confidential information.

**6. Count X Should Not be Dismissed**. See Am. Compl. ¶¶ 149-150.

<u>First</u>, the Count is comprised entirely of: (i) a reincorporation of the prior boilerplate allegations; and (ii) a cut and paste of a Section 876 of the Restatement (Second) of Torts, which is referenced in the immediately preceding Count IX and concerns liability for aiding and abetting fraud. Id. It is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL. For these reasons, Counts IV and X should not be dismissed.

<u>Second</u>, UTPCPL is the abbreviation for Pennsylvania's version of the Unfair Trade Practices and Consumer Protection Law. See 73 Pa. Const. Stat. § 201-1 et seq.; see also <u>*Salyers v. A.J. Biosenski, Inc*</u>., --- F. Supp. 3d ----, 2024 WL 1773368, at *8 (E.D. Pa. Apr. 24, 2024)

**7. Plaintiffs State a Claim for Trespass to Chattels (Count V)**

<u>First</u>, "a trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another." <u>*Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth*</u>., 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018).

Defendants state a claim for trespass to chattels under Pennsylvania law. The crux of this Count VI (to the extent it is intelligible) is that all Defendants "intentionally interfered with Plaintiffs['] use of … Plaintiffs['] related internal databases and systems the Intelligence data and Support Materials housed for licensed access." Amended Complaint at ¶ 118.

The Amended Complaint provides specific allegations against the Spyscape Defendants, nor could it. See id. There are salient allegations that the Spyscape Defendants had access to these "internal

databases," misusing property of Plaintiffs. As such, the Spyscape Defendants dispossessed Plaintiffs of this supposed chattel intentionally. For these reasons, Count V must not be dismissed.

### 8. Plaintiffs' State a Claim for Unjust Enrichment (Count VI)

<u>First</u>, In Pennsylvania, unjust enrichment is an equitable remedy, defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Berardi v. USAA Gen. Indem. Co*., 606 F. Supp .3d 158, 163 (E.D. Pa. 2022), aff'd, 2023 WL 4418219 (3d Cir. July 10, 2023). To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must establish that (summarizing elements required to prove a UTPCPL claim: (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." Id.

<u>Second</u>, "an unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023).

Plaintiffs provide allegations of a benefit conferred upon the Spyscape Defendants ie collaborative business with co-Defendants. The Amended Complaint has specific allegations tying the Spyscape Defendants to "unjustly received benefits in the form of stolen data and customers[.]" Id. at ¶ 126. Stern's appearance on the SPYSCAPE website provided a tangible benefit to the Spyscape Defendants. In sum, the Spyscape Defendants thus necessarily appreciated, accepted, and retained such benefits. For these reasons, Count VI must be not dismissed.

### 9. Plaintiffs State a Claim for Negligence (Count VII)

First, under Pennsylvania law, to establish a claim for negligence, a plaintiff must show: "(1) duty; (2) breach; (3) causation; and (4) damages." *NVR, Inc. v. Majestic Hills, LLC*, 670 F. Supp. 3d 206, 227 n. 17 (W.D. Pa. 2023) (citations omitted). To determine the existence of a duty, the Court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution." Id. The Amended Complaint contains specific allegation tying the Spyscape Defendants to reasonable "duty" of care to their customer Plaintiffs.

<u>Second</u>, the Amended Complaint cogently establishes such a "duty" on specific assertions that all Defendants failed to "supervise, train, manage, and oversee their employees, subcontractors, and assigns who impacted Plaintiffs' business." Amended Complaint at ¶ 133. According to the Amended Complaint, the Defendants also failed to "use security to protect and preserve valuable data owned by Plaintiffs as proprietary data." Id. at ¶ 135. These allegations pertain at all to the Spyscape Defendants, establishing the allegations of a duty owed to Plaintiffs.

<u>In sum</u>, the allegation that the Spyscape Defendants interacted directly with Plaintiffs and or through their "employees, subcontractors, or assigns", that the Spyscape Defendants had access to any of the "proprietary" data of Plaintiffs. Since the Spyscape Defendants had access to the data such that the duty was owed and breached proximately and directly damaging Plaintiffs such that Count VII must not be dismissed.

### 10. Plaintiffs State a Claim for Civil Conspiracy (Count VIII)

First, under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e. an intent to injure, is essential in

proof of a conspiracy." *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021). Plaintiffs establish these elements and have thus have sufficiently alleged a viable claim for civil conspiracy. The Amended Complaint alludes to the Spyscape Defendants in a single group pleading allegation: that they acted in concert with the other Defendants by "artificially enhancing and embellishing the simple summary disorderly [sic] charge in [the] Chester County Court of Common Pleas." Amended Complaint at ¶ 139. This allegation is adequate as a pleading required to state a claim for civil conspiracy since specific allegations that the Spyscape Defendants have agreed to do any unlawful act or an otherwise lawful act by unlawful means by their alleged misconduct. The Spyscape Defendants are directly intricated within the allegations of this claim, including Stern's supposed remunerative speaker position at Skyscape Entertainment.

In sum, further, the Amended Complaint has specific allegations confirming that the Spyscape Defendants acted with the required malice.

For these reasons, Count VIII must not be dismissed.

### 11. Plaintiffs Fail State a Claim for Aiding and Abetting Fraud (Count IX)

First, under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co*., CV 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024). The Amended Complaint is full of specific allegations as to the specific fraud perpetrated on Plaintiffs by Spyscape Defendants' along with their specific knowledge and substantial assistance in committing that tort. The claim must fail and Count IX must not be dismissed.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs respectfully request that the Motion to Dismiss of Defendants Spyscape be denied.


Respectfully submitted,

Mark T. Sophocles, Esquire