**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EVERETT STERN, *et ano.*, <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM RUZICH, *et al.*, <br><br> Defendants. | Civil Action No. 2:24-cv-01222-WB |

**<u>DEFENDANT SPYSCAPE ENTERTAINMENT'S REPLY MEMORANDUM OF LAW</u>**
**<u>IN FURTHER SUPPORT OF MOTION TO DISMISS</u>**

Dated:  December 6, 2024
        Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600

*Attorneys for Defendant Spyscape*
*Entertainment*

I.      **PRELIMINARY STATEMENT**

Plaintiffs' Opposition (ECF No. 50) to Spyscape's Motion to Dismiss (ECF No. 46-2) (the "**Motion**") does not change the fact that the Amended Complaint (ECF No. 41) – which admits that it names Spyscape in only 5 of 150 paragraphs (Opposition at p. 1) -- is a shotgun pleading that should be dismissed with prejudice.  Like the Amended Complaint, the Opposition is replete with generalized, repetitive and unsupported assertions about facts irrelevant to Spyscape (*e.g.*, allegations about the "Contracting Defendants" and nonexistent "negative articles" on Spyscape's website concerning Stern) that, even if cognizable, could only blame other Defendants.[1]

First, the Opposition lacks any specific allegations that would warrant the exercise of personal jurisdiction over Spyscape.  As Plaintiffs concede, Spyscape does not "reside in Pennsylvania, [is] incorporated in the State of New York and maintain[s] no physical presence in this forum."  Opposition at p. 2 (citing Am. Compl. ¶¶ 6-7).  Plaintiffs based the supposed general personal jurisdiction over Spyscape on unspecified business development efforts unfolding over an unverifiable and unsupported period.  *Id.*  However, these allegations, even if taken to be true (they should not be) do not render Spyscape – a Delaware incorporated business that maintains a sole place of business in New York and that has not consented to jurisdiction in this Court – at home in Pennsylvania.  The Court does not have general personal jurisdiction over Spyscape.

Second, the Opposition is bereft of allegations that would warrant the exercise of specific personal jurisdiction over Spyscape.  Instead, the Opposition mirrors the deficient Amended Complaint by reiterating vague and boilerplate allegations about a supposed "concerted joint work relationship" between Plaintiffs and Spyscape that involved unspecified services.  Opposition at

---

[1]      The Opposition does not appear to cite any new authorities other than those cited in the Motion, with sections of Spyscape's Motion being lifted verbatim and inserted into the Opposition. *Compare, e.g.,* Motion, ECF No. 46-2 at pp. 11-13 *with* Opposition, ECF No. 50 at pp. 7-9.

p. 3.  Even if such a "relationship" existed that benefitted Spyscape (neither of which occurred), it is unmoored from Plaintiffs' claims that concern breach of contract, conspiracy, hacking, and unfair competition allegations against <u>other</u> Defendants.  Without any evidentiary support whatsoever, the Opposition also claims that Spyscape "publish[ed] an article about Stern" and "collected subscription fees in exchange for services provided to their Pennsylvania customer[s]." *Id.* at p. 3.  Setting aside that these assertions are not true, the Opposition fails to tie the non-existent article and the unexplained "subscription fees" to Plaintiffs' breach of contract, hacking, and unfair competition claims, which Plaintiffs admit are the gravamen of their complaint.  *See id.*

Simply put, the Opposition confirms that <u>Plaintiffs</u> are the only connection to Pennsylvania.  Time and time again, the Supreme Court has rejected this theory of specific personal jurisdiction over a non-resident defendant such as Spyscape.  *See Walden v. Fiore*, 571 U.S. 277, 290 n. 9 (2014).  Dismissal under Fed. R. Civ. 12(b)(2) is necessary.

Third, the Opposition fails to establish that Plaintiff has stated (or can state) claims against Spyscape to separately survive dismissal under Fed. R. Civ. P. 12(b)(6).  Plaintiffs either concede they lack cognizable claims: "[i]t is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL."  Opposition at p. 21.  Or, they regurgitate the allegations from their Amended Complaint and default to generalities without demonstrating <u>how</u> and <u>why</u> these allegations state a cognizable claim.  The core of Plaintiffs' case draws from the supposed misuse of "confidential information" to harm Plaintiffs, and that class of allegations implicates the "Contracting Defendants"—a group to which Spyscape does not belong.  Am. Compl. at ¶¶ 21, 69-79.

In sum, the conclusory allegations directed at Spyscape do not state cognizable claim under basic federal pleading standards.

## II.    **ARGUMENT**

### A.    **The Court Does Not have General Personal Jurisdiction over Spyscape**

Plaintiffs fail to carry their burden of establishing that this Court has general personal jurisdiction over Spyscape.  Opposition at pp. 2, 9.  Plaintiffs admit that a corporation is only subject to general personal jurisdiction in the jurisdiction in which it is "at home."  *Id.*  Spyscape is not "at home" in Pennsylvania, as it is a Delaware company that operates exclusively in the United States in New York, New York.  Declaration of Marcelle Devine, dated November 15, 2024, ECF No. 46-3 at ¶¶ 2-8 ("**Devine Decl.**").  Plaintiffs also declare that Spyscape has consented to jurisdiction in Pennsylvania, when it unquestionably has not.  Opposition at pp. 9-10; Reply Declaration of Marcelle Devine, dated December 6, 2024, at ¶¶ 3-4 ("**Devine Reply Decl.**").

### B.    **The Court Does Not Have Specific Personal Jurisdiction Over Spyscape**

In the Opposition, Plaintiffs also fail to carry their burden for specific personal jurisdiction. *Id.* at pp. 2, 9-13.  Plaintiffs do not submit any affidavits or other evidence and cannot satisfy any of the three-part test applicable to the exercise of specific jurisdiction over a non-resident such as Spyscape.  Rather, Plaintiffs' arguments for specific personal jurisdiction consist almost entirely of conclusory statements and recitations of the three part-test copied largely from the Motion.

First, Plaintiffs continue to fail to furnish particularized allegations evidencing Spyscape's (as opposed to Plaintiffs') purposeful availment of this forum, such that Spyscape could be said to have minimum conducts with Pennsylvania.  Plaintiffs only allude to unspecified "purposeful diabolical actions" of Spyscape subsequent to Spyscape allegedly "gaining access to sensitive information." *See* Opposition at p. 11.  Furthermore, the Opposition reiterates, without any explanation, that Spyscape and Plaintiffs maintained a "quasi-contract" for the time period spanning 2017-2021. *Id.*  However, Plaintiffs fail to identify the essential terms of the supposed "quasi-contract," *e.g.*, the term, consideration, and mutuality of obligations, and do not explain the

nature of the "sensitive information", how Spyscape accessed it, and how Spyscape could have deployed this information in a "diabolical" way. Plaintiffs also falsely claim that Spyscape published an "article online about Stern and Plaintiff's [*sic*] business with the intent to harm and effectively put them out of business." *Id.* at p. 4. Spyscape has never published any "article" about Stern, much less with the intent to "put [Plaintiffs] out of business." Devine Reply Decl. at ¶¶ 5-6. Stern's lone connection to Spyscape's website is his speaker profile. *See* Devine Decl. ¶ 14.

Ultimately, these vague and unsupported allegations do not illustrate that Spyscape "took some act by which it purposefully avails itself of the privilege of conducting activities within [Pennsylvania]" required for the Court to exercise personal jurisdiction over Spyscape. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).[2]

The best Plaintiffs can muster is a recitation of their connections to Pennsylvania. *See id.* at p. 11 (stating that "the specific connections to Pennsylvania evident in the Amended Complaint is Stern's residence and operation of Tactical Rabbit"). However, for purposes of a specific personal jurisdiction analysis, the "plaintiff's contacts are not relevant. Only the defendant's contacts are." *Greco v. SubGallagher Inv. Tr.*, Civil Action No. 19-2922, 2020 WL 4371841, at *6 (E.D. Pa. July 29, 2020); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). As Plaintiffs are the only link to Pennsylvania, no personal jurisdiction

---

[2]    Plaintiffs seem to argue that the Court should consider the totality of the allegations in the Amended Complaint when determining personal jurisdiction over Spyscape. *See* Opposition at p. 4. In so doing, Plaintiff is effectively asking the Court to impermissibly lump all Defendants together when considering jurisdiction over Spyscape, no matter the obvious differences between Spyscape and the other Defendants, *i.e.*, that Spyscape isn't named as a "Contracting Defendant" and that it has never provided any services to Plaintiffs.

may be exercised over Spyscape, and dismissal under Fed. R. Civ. P. 12(b)(2) should be granted.

Second, Plaintiffs do not draw a connection between Spyscape and their claims. They accuse Spyscape, seemingly through its website, of using "marketing and sales efforts to directly harm the Plaintiffs as residents of Pennsylvania … essential to confer personal jurisdiction." Opposition at p. 13. However, it lacks any specific allegations about the nature or duration of Spyscape's "marketing and sales efforts," much less how these efforts harmed Plaintiffs.

Instead, Plaintiffs focus on the alleged connection between Spyscape's website and Pennsylvania supposedly warranting this Court's exercise of specific personal jurisdiction over Spyscape. This argument is wrong on the facts and the law. First, while Spyscape's website is accessible to users in Pennsylvania, as it is throughout the world, the products and services offered on the website are not targeted specifically at Pennsylvania residents and do not differ based on the user's location. Devine Decl. at ¶¶ 5-6. All inbound requests to Spyscape's website are received and processed solely from Spyscape's office in New York. *Id.* ¶ 5. Spyscape receives and process all sales on its website from the New York location. *Id.* ¶ 6. It is black letter law that that undifferentiated access is insufficient to confer specific personal jurisdiction, and Plaintiffs allege no facts that Spyscape directly and uniquely targeted users in the Commonwealth. *See Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (personal jurisdiction is lacking over website operator absent evidence that the website "specifically target[s] Pennsylvania citizens or derive[s] substantial revenue from Pennsylvania citizens"); *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 557 (E.D. Pa. 2018) (sale of products via website insufficient for personal jurisdiction absent targeting at Pennsylvania residents). Plaintiffs cannot show <u>any connection</u> between Spyscape's conduct and Plaintiffs' injuries, let alone the "strong connection" required to satisfy this factor. *Hepp v. Facebook, Inc.*, 14 F. 4th 204, 208 (3d Cir. 2021).

Third, Plaintiffs fail to credibly show that jurisdiction over Spyscape would not be unfair or unjust. *Burger King*, 471 U.S. at 476. Plaintiffs offer no specific allegation tying Spyscape to Pennsylvania, save for Plaintiffs' alleged presence, such that this forum would have an interest in adjudicating the dispute. *Id.* at 477. Plaintiffs simply recite the factors the Court must consider, without furnishing any application to the facts at hand. Couple this with the burden on Spyscape – a Delaware company that operates exclusively outside of Pennsylvania – to litigate in this unfamiliar forum, the exercise of personal jurisdiction over Spyscape would be unfair and unjust.[3]

### C.    Plaintiffs Have Not Stated Any Valid Claims Against Spyscape

Plaintiffs attempt to rebut Spyscape's showing in the Motion that all claims against it should be dismissed, but they fall far short of the *Iqbal* and *Twombly* pleading standards.

*First*, Plaintiffs claim that the parties agreed to an "alleged quasi-contract" or speculate that some contractual relationship "could have been formed." Opposition at 19. This "quasi-contract" supposedly renders Spyscape liable for: (i) Breach of Contract (Count I); and (ii) Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II-III). Opposition at pp. 18-20. These arguments are unavailing.

Count I applies only to what the Amended Complaint defines as the "Contracting Defendants." *See* Am. Compl. at ¶¶ 21, 69-79. However, Spyscape is not named as a "Contracting Defendant." *See id.* Plaintiffs admit as much in stating Spyscape is "not a party to any of the

---

[3]    Plaintiffs appear to argue that the exercise of jurisdiction over Spyscape in Pennsylvania is suitable because of its geographical proximity to New York. Opposition at p. 14. Any closeness between these fora are largely irrelevant to the personal jurisdiction considerations, as the "issue is not one of convenience*." E. Coast Transp. & Logistics, LLC v. Alfamodess Logistics, LLC*, 07-4568 (RBK), 2008 WL 11509664, at *2 (D.N.J. June 9, 2008) (rejecting geographical proximity theory of personal jurisdiction between Pennsylvania defendants and a New Jersey plaintiff).

contracts delineated as 'Exhibit A-D.'" Opposition at p. 19.[4]  Furthermore, the Opposition, like the Amended Complaint, fails to allege even the most rudimentary elements necessary to sustain a contract claim against Spyscape.  For instance, and contrary to their conclusory assertion, the Opposition and Amended Complaint furnish zero allegations about a contract that could supposedly have been breached, including the term, consideration exchanged, and mutuality of obligations. Any allegation otherwise would be impossible, as Spyscape has never entered into a contract with Plaintiffs.  In sum, Count I must fail because it *per se* does not apply to Spyscape.

The allegations of Count I rely on a supposed "quasi-contract" between the parties.  *See* Opposition at pp. 18-19.  "Quasi-contract theories usually involve circumstances where the plaintiff seeks to recover from defendant for a benefit conferred under an unconsummated or void contract." *McMahon v. Chipotle Mexican Grill, Inc.*, --- F. Supp. 3d ---, 2024 WL 1932319, at *10 (W.D. Pa. May 1, 2024) (citation and internal quotations omitted).  Plaintiffs reiterate their boilerplate shibboleth that the Amended Complaint "alleges a factual basis for a quasi-contract However, the Opposition does not include any specific allegations illustrating that Spyscape and Plaintiffs had an "unconsummated or void" contract, or that Spyscape conferred a benefit under said contract, such that a "quasi-contract" existed.  Count I fails for this independent reason.

*Second*, for a variety of reasons, Count II must be dismissed.  As discussed above, Plaintiffs do not allege that it ever had a contractual relationship with Spyscape, nor could they.  Moreover, neither the Opposition nor the Amended Complaint contains specific allegations concerning a prospective contractual relationship between Plaintiffs and any third-party.  Likewise, Plaintiffs fail to allege specific contracts or customers with whom Spyscape could have purportedly

---

[4]    "Exhibits A-D" refers to contracts and an "Intelligence Report" pertaining to other defendants that are attached as Exhibits 5-8 to the Amended Complaint.  *See* Am. Compl. ¶ 21.

interfered, or how they have been damaged by such interference. Instead, the Opposition merely recites the elements of the claim and offers the conclusory, unsupported contention that "Plaintiffs adequately plead the facts underlying the breach of contract of claim." *Id.* at p. 20. As discussed, that assertion is factually false and hardly sufficient to carry Plaintiffs' burden.

To support their argument, Plaintiffs only offer a boilerplate, undifferentiated conclusion that the parties maintained a "special relationship." The "special relationship" exception clearly does not apply here, as the meager allegations in the Amended Complaint provide no basis for any relationship involving confidence, trust, or fiduciary obligations between Plaintiffs and Spyscape.

*Third*, Count III is invalid on its face because "Pennsylvania law does not recognize the tort of negligent interference with contractual relations." *Mills v. Unknown Franchisee*, Civil Action No. 2:20-cv-566, 2021 WL 5358944, at *5 (W.D. Pa. Oct. 13, 2021) (citing *Valley Forge Convention & Visitor's Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998)). The only exception to the rule is where a "special relationship exists between the parties." *Mills*, 2021 WL 5358944, at *5. "A 'special relationship' is one involving confidentiality, the repose of special trust or fiduciary responsibilities." *Valley Forge*, 28 F. Supp. 2d at 952 (citation omitted). For the reasons explained above, Plaintiffs have not shown a special relationship.

*Fourth*, Plaintiffs also fail to state a claim for common law or statutory unfair competition (UTPCPL) (Counts IV and X). Plaintiffs concede they lack a claim for Count X: "[i]t is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL." Opposition at p. 21. Nor is there any factual "support" for these claims in any event. Plaintiffs' allegations are premised on nonexistent "negative articles" posted about Plaintiffs, which have no applicability to Spyscape and implicate other defendants. *Id.* at p. 20. Plaintiffs claim that Spyscape had access to their "trade secrets, protectable intellectual property, or other confidential information." *Id.* But again,

Plaintiffs do not meet their burden on either of the elements required for an unfair competition claim.  There are no allegations that Spyscape has ever maintained access to the Plaintiffs' trade secrets or other confidential information.  This is unsurprising, as Spyscape never had access to such information. As discussed above, there are insufficient allegations that Spyscape tortiously interfered with any (unspecified) contract or "quasi-contract" involving Plaintiffs or that Spyscape otherwise damaged Plaintiffs' "commercial relations."  Counts IV and X should be dismissed.

*Fifth*, Plaintiffs fail to state a claim for trespass to chattels (Count V).    There are no allegations, much less "salient allegations" that could form a cognizable basis for this claim against Spyscape.    Opposition at p. 21.    Yet again, Plaintiffs offer mere conclusory references to Spyscape's access to Plaintiffs' "internal databases," which resulted in the "misusing" of their property.  *Id.* at pp. 21-22.    Plaintiffs file to specify what comprises the "internal databases" and how Spyscape accessed it, much less "misused" the supposed property.    Plaintiffs thus fail to satisfy either of the elements necessary to state a claim for trespass to chattels.  Motion at p. 17.

*Sixth*, the Opposition, like the Amended Complaint, does not set forth any allegations, much less particularized allegations, to show that Spyscape is liable for unjust enrichment (Count VI).  Plaintiffs do not furnish any allegations tying Spyscape to "unjustly received benefits in the form of stolen data and customers."  Opposition at p. 22.  Plaintiffs likewise provide no detail into the "collaborative business" with Spyscape.    In reality, Spyscape never collaborated with Plaintiffs.    The supposed benefit Plaintiffs provided to Spyscape, "Stern's appearance on the SPYSCAPE [*sic*] website," (*see id.*) <u>actually benefitted Plaintiffs</u> by providing exposure and an imprimatur of credibility to Stern's supposed "intelligence services," as well as an opportunity for potential remuneration.  Spyscape therefore necessarily did not receive any benefit from Plaintiff.

*Seventh*, the Opposition does not support Plaintiffs' meritless negligence claim (Count

VII).  *Id.* at p. 23.  The Opposition effectively reiterates the boilerplate assertions in the Amended Complaint that Spyscape had a "duty" to Plaintiffs based on an alleged failure to "supervise, train, manage and oversee their employees, subcontractors and assigns who impacted Plaintiffs' business," purportedly by accessing Plaintiffs' "proprietary" data.  *Id.*  Plaintiffs furnish zero specific allegations about this supposed "duty" that conceivably pertain to Spyscape, which did not have access to any of Plaintiffs' "proprietary" data and did not adversely impact their business.

*Eighth*, Plaintiffs still do not state a claim for civil conspiracy (Count VIII).  Plaintiffs claim that Spyscape "artificially enhance[ed] and embellish[ed]" Stern's disorderly conduct charge.  *See* Opposition at p.  24.  But Plaintiffs do not explain where and how Spyscape allegedly "embellished" Stern's disorderly conduct charge, or even how Spyscape was aware of this charge. Plaintiffs proffer no specific allegation that Spyscape agreed to do any unlawful act or an otherwise lawful act by unlawful means—and did so with the intent to injure.  Plaintiffs further allege that Spyscape "directly intricated [*sic*] within the allegations of [Count VII], including Stern's supposed remunerative speaker position at Spyscape[.]"  *Id.*  This is not evidence of a conspiracy to act "unlawfully."  In fact, Spyscape's actions helped Stern.  Count VIII must be dismissed.

Finally, Plaintiffs likewise do not state a claim for aiding and abetting fraud (Count IX) because all they muster is a single conclusory allegation that merely recites the elements of an aiding and abetting fraud claim.  *See* Opposition at p. 24 ("The Amended Complaint is full of specific allegations as to the specific fraud perpetrated on Plaintiffs by Spyscape … along with their specific knowledge and substantial assistance in committing that tort.").

For these reasons, all Counts should be dismissed under Fed. R. Civ. P. 12(b)(6).

## III.  <u>CONCLUSION</u>

For these reasons and those set forth in the Motion, Defendant Spyscape Entertainment requests that the Court dismiss Plaintiffs' Amended Complaint entirely and with prejudice.

Dated:  December 6, 2024
        Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP

/s/ Benjamin R. Wilson
Benjamin R. Wilson, Esq. (Bar No. 327118)
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600
Email: benjamin.wilson@hklaw.com

Richard A. Bixter Jr. (*pro hac vice admitted*)
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Phone: (312) 422-9032
Email: richard.bixter@hklaw.com

*Attorneys for Defendant Spyscape
Entertainment*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused to be served a true and correct copy of the

foregoing with the Clerk of Court using the CM/ECF system and served upon all parties registered

for the CM/ECF system in this case.

Dated: December 6, 2024
        Philadelphia, Pennsylvania

<u>/s/ Benjamin R. Wilson</u>

#513765719_v2