IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVERETT STERN and TACTICAL RABBIT, LLC,** | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 24-1222 |
| **ARACARI PROJECT, DAVID MARCHANT, KYC NEWS, INC. d/b/a OFFSHORE ALERT, KYESON UTLEY, LINDSAY MORAN, SPYSCAPE ENTERTAINMENT, and WILLIAM RUZICH,** | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Everett Stern is the founder and principal of Plaintiff Tactical Rabbit, LLC ("Tactical Rabbit"), a firm that provided intelligence-gathering and analysis services for private and public sector clients. Plaintiffs claim that Defendants David Marchant, KYC News, Inc. d/b/a Offshore Alert ("Offshore Alert"), Kyeson Utley, Lindsay Moran, Spyscape Entertainment ("Spyscape"), and William Ruzich —all former contractors or professional contacts of Stern and Tactical Rabbit—conspired to illegally access and misappropriate the company's proprietary information to poach clients for Defendant Aracari Project, a competitor of Tactical Rabbit. In so doing, Plaintiffs allege that Defendants tarnished their reputation in the intelligence community and caused significant financial harm.

Plaintiffs assert the following claims under Pennsylvania law against all Defendants: breach of contract; intentional interference with prospective economic advantage; tortious interference with contractual rights; negligent interference with prospective economic advantage; unfair competition; trespass to chattels; unjust enrichment and restitution; negligence; civil conspiracy; aiding and abetting fraud; and, unfair and deceptive trade practices.

1

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Marchant and Offshore Alert (together, the "Marchant Defendants"), Moran, and Spyscape each move to dismiss the Amended Complaint for lack of personal jurisdiction. In the alternative, they move for dismissal pursuant to Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, their Rule 12(b)(2) Motions shall be granted. And because jurisdiction is wanting, their Rule 12(b)(6) Motions will not be addressed.

## I.      FACTUAL BACKGROUND[1]

Under Stern's leadership, Tactical Rabbit secured multiple intelligence-related contracts that garnered over $1 million in revenue. In 2022, Stern hired Moran, Ruzich, and Utley to work as independent contractors for the company. As a former officer with the Central Intelligence Agency ("CIA"), Moran was specifically contracted to gather intelligence for private and public sector clients using "CIA style tradecraft . . . and methodologies." Given that Tactical Rabbit's business model relied heavily on proprietary investigative methods and confidential information amassed in its internal database, Moran's contract included a "non-disclosure and confidentiality" provision. In essence, the clause prevented her from ever disclosing any proprietary information that she reviewed or obtained during her employment. Her contract also contained a non-solicitation provision, which, in relevant part, stated that Moran "shall not directly or indirectly . . . . encourage any contractor or consultant to terminate his or [sic] relationship with" Tactical Rabbit for a period of two years following the termination of their agreement.

Moran eventually left the firm to launch a new private intelligence company—the Aracari Project—with Ruzich, Utley, and other contractors who had previously worked with Tactical

---

[1] The following factual recitation is taken from Plaintiffs' Amended Complaint, well-pleaded allegations from which are taken as true at this stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Rabbit.  In starting the new company, Plaintiffs allege that Moran and others: gained unauthorized access to and subsequently misappropriated Tactical Rabbit's confidential client lists; used Tactical Rabbit's proprietary intelligence methods to successfully solicit business from several of its clients; and, spread false statements about Stern to tarnish his reputation in the intelligence community and denigrate the work of Tactical Rabbit.  For instance, Moran informed current and prospective clients that Stern was under investigation by the Federal Bureau of Investigation for wire fraud while Marchant—a journalist who ran the news outlet Offshore Alert—published disparaging articles about him.

    One client that cut ties with Tactical Rabbit following Moran's departure was Spyscape, a company specializing in espionage-themed museums, entertainment, and media services.  At one point, Spyscape had featured a profile of Stern on its website that listed him as a "speaker" available for hire.  Stern further avers that he "spent hundreds of hours and thousands of dollars trying to adopt a co-marketing event with and for" Spyscape for the purpose of "jointly growing and developing branded marketing materials for business collaboration."  Despite this investment, Stern avers that he and Tactical Rabbit were "surreptitiously dismissed from this opportunity" when Spyscape ended their professional relationship after receiving "stated complaints" about him.  Stern speculates that Moran orchestrated a campaign of misinformation against him, as she was previously a partner with Spyscape "for a significant amount of time and had communications with the same individuals" who managed the company's relationship with him.

    Stern submits that the collective actions of Spyscape, Moran, Marchant, Ruzich, Utley, the Aracari Project, and Offshore Alert led to the collapse of Tactical Rabbit and caused millions of dollars of financial harm.

## II. LEGAL STANDARD

Rule 12(b)(2) provides that a claim may be dismissed for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction," which is a threshold matter that must be resolved before considering the merits of the pleadings. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013). A plaintiff is required to establish a *prima facie* case by demonstrating with "reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987). While this burden is not a heavy one, a plaintiff may not "rely on the bare pleadings alone" and must "respond with actual proofs, not mere allegations." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). In so doing, a plaintiff is entitled to have all allegations taken as true and factual disputes resolved in their favor. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018). Allegations that "are no more than conclusions," however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### A. The Marchant Defendants

As a threshold matter, the Marchant Defendants argue that their Rule 12(b)(2) Motion should be granted as uncontested with any opposition deemed waived. They submit that Plaintiffs' response brief failed to rebut any of their assertions and instead contained only "threadbare arguments" that were aimed at a different defendant. More specifically, they point out that apart from the heading on the first page—"Response in Opposition of the Marchant Defendants' Motion to Dismiss the Amended Complaint"—Plaintiffs' brief is a word-for-word copy of their brief opposing Spyscape's Motion to Dismiss that does not otherwise address the

4

Marchant Defendants.

Plaintiffs do not directly respond to any of these issues. Rather, in what appears to be a ham-fisted attempt to fix their blunder, Plaintiffs filed an "Amended Response in Opposition" several days later. But that filing raises several issues. First, it fails to comport with this Court's Policies and Procedures and the Local Rules of Civil Procedure of the Eastern District of Pennsylvania. These rules are not procedural peccadillos, as "[i]t is beyond question that [a] District Court has the authority to strike filings that fail to comply with its local rules." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018); *see also Smith v. Oelenschlager*, 845 F.2d 1182, 1184 (3d Cir. 1988) ("Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets. Accordingly, we have held that it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal when a litigant fails to strictly comply with the terms of a local rule. (citation omitted)).

To that end, Section IV of this Court's Policies and Procedures provide, in relevant part, that: (1) "parties have twenty-one (21) days after service of a motion to dismiss under Federal Rule of Civil Procedure 12(b) . . . to file their response"; and, (2) "[s]ur-reply briefs are not permitted absent prior permission of the Court upon good cause shown." Policies and Procedures, Beetlestone, J. at 6-7 (Jan. 2023), https://www.paed.uscourts.gov/documents/ procedures/beepol.pdf. Further, as pertinent here, Local Rule 7.1(c) states that "[i]n the absence of a timely response, [a] motion may be granted as uncontested." E.D. Pa. R. Civ. P. 7.1(c).

Against this backdrop, if Plaintiffs' "Amended Response" is construed as a superseded response in opposition, it is untimely and therefore triggers the mechanism outlined in Local Rule 7.1(c), as they submitted it five days after the deadline prescribed in Section IV of this Court's Policies and Procedures. Perhaps more troubling is that Plaintiffs' "Amended Response"

5

is nearly identical to their initial brief in opposition to Spyscape's Motion to Dismiss in that it again fails to meaningfully engage with the substance of the Marchant Defendants' arguments. To take just one example, Plaintiffs aver that the "Marchant Defendants is [sic] a corporation incorporated and located in New York." But it is Spyscape that claims to be "incorporated and located in New York," not the Marchant Defendants, who, as they note in their Rule 12(b)(2) Motion, are located in Colorado and Florida.

Considering these circumstances, Plaintiffs' "Amended Response" shall be stricken for failure to comply with Section IV of this Court's Policies and Procedure and Local Rule 7.1(c). *See Weitzner*, 909 F.3d at 614; *Smith*, 845 F.2d at 1184. What remains, then, is Plaintiffs' initial response brief, which, as stated, is a complete copy-and-paste of their response to Spyscape's Motion to Dismiss and thus is inadequate in all respects. Accordingly, the Marchant Defendants' Rule 12(b)(2) Motion shall be granted as uncontested. *See Young v. St. Luke's Hosp.*, 2010 WL 1348468, at *6 (E.D. Pa. Mar. 30, 2010) ("Parties who fail to adequately brief their opposition to motions do so at the risk of having those motions granted as uncontested."); *Skold v. Galderma Lab'ys, L.P.*, 99 F. Supp.3d 585, 598 (E.D. Pa. 2015) ("Where an issue of fact or law is raised in an opening brief" but is subsequently "uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue." (citation omitted)).

### B.    Moran and Spyscape[2]

"Under Federal Rule of Civil Procedure 4(e), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155

---

[2] At the outset, Plaintiffs contend that Moran's arguments as to personal jurisdiction have already been adjudicated and determined to be without merit when her previous Motion to Dismiss was denied. Not so. Moran's previous Motion was indeed denied, but purely on procedural grounds because it sought to dismiss the then-inoperative complaint.

(3d Cir. 2010). This involves a two-part inquiry: "First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state." *Id*. (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). Second, the exercise of personal jurisdiction must be consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id*. Because Pennsylvania's long-arm statute authorizes personal jurisdiction over nonresidents to the "fullest extent allowed under the Constitution of the United States," 42 Pa. C.S. § 5322(b), the two inquiries merge into one. *See Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). With that in mind, the Due Process Clause allows for two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984).

### i.    *General Jurisdiction*

Plaintiffs first argue that Moran and Spyscape are subject to general jurisdiction, the exercise of which requires them to have had "continuous and systematic" contacts with Pennsylvania as the forum state. *O'Connor*, 496 F.3d at 317. For individual defendants, "the paradigmatic forum for the exercise of general jurisdiction" is their domicile. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For corporate defendants, by contrast, a court may assert general jurisdiction to hear any claims against them when their affiliations with the forum state render them essentially "at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear*, 564 U.S. at 919). Although the well-established fora that satisfy this inquiry include "the corporation's place of incorporation and its principal place of business," *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017), general jurisdiction may also exist in the "exceptional case" where "a corporation's operations" in a particular state are "so substantial." *Daimler*, 571 U.S. at 139 n.19; *cf. Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (remarking that it is "incredibly difficult to establish

general jurisdiction in a forum other than the place of incorporation or principal place of business" following *Daimler* (citation omitted)).

Here, the parties concede that Moran lives in Maryland. It is further undisputed that Spyscape is incorporated in Delaware and maintains its principal place of business in New York. Therefore, the company is not "at home" in Pennsylvania, and aside from general allegations that Spyscape has conducted business with Stern in Pennsylvania, Plaintiffs have not proffered any explanation as to why their claims fall into the category of "exceptional case[s]" that ultimately compel the exercise of general jurisdiction. *See Daimler*, 571 U.S. at 139 n.19; *Kurz v. Holiday Hosp. Franchising, LLC*, 2019 WL 5068646, at *5 (E.D. Pa. Oct. 9, 2019) ("Plaintiff's allegations of Defendant Holiday Hospitality's ownership and operation of numerous hotels in Pennsylvania fall short of showing that Defendant Holiday Hospitality is "essentially at home" in Pennsylvania as required under *Goodyear* and *Daimler*. At most, Plaintiff's contentions establish that Defendant Holiday Hospitality has a business presence in Pennsylvania. However, Plaintiff has not provided this Court with any evidence to substantiate that Defendants have amassed sufficient contacts with Pennsylvania as to render Defendants 'essentially at home' in Pennsylvania." (citations omitted)). Accordingly, general jurisdiction cannot be exercised over either Moran or Spyscape.

### ii.      *Specific Jurisdiction*

Specific jurisdiction, meanwhile, "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Three elements guide this jurisdictional analysis: First, "the defendant must have purposefully directed its activities at the forum." *O'Connor*, 496 F.3d at 317. Second, the litigation must "arise out of or relate to at least one of those activities." *Id.*; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021)

("[T]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (citations and internal quotation marks omitted)). And finally, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with "fair play and substantial justice." *Id*.

Starting with the first element, the exercise of specific jurisdiction turns on whether a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *Id*. (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). While a defendant need not have physically entered the forum, there must have been some deliberate targeting to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

Plaintiffs first assert that Moran's active involvement with Tactical Rabbit "abjectly confirms the exercise of personal jurisdiction in the Commonwealth." To support this proposition, Plaintiffs make the bare assertion that she "purposefully directed [her] activities towards Pennsylvania when she agreed to work with" the company as an independent contractor. However, Plaintiffs have not provided any citations for this argument as required by Local Rule 7.1. *See* E.D. Pa. R. Civ. P. 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions *and authorities* relied upon in support of the motion." (emphasis added)). "Courts in this District have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court." *Anthony v. Small Tube Mfg. Corp*.,

9

535 F. Supp.2d 506, 511 n.8 (E.D. Pa. 2007) (citations and quotations omitted).  Because Plaintiffs' argument consists of "no more than a conclusory assertion," it will be "deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997).   And since Plaintiffs have presented no other argument to rebut Moran's assertions regarding her lack of purposeful availment of Pennsylvania, they have waived any opposition thereto.  *See Valentin v. Attorney General of U.S.*, 386 F. App'x 279, 282 (3d Cir. 2010).  Accordingly, the Court does not have specific jurisdiction with respect to Moran.

Moving on to Spyscape, Plaintiffs contend that the company should be subject to specific jurisdiction because Stern resided in and operated Tactical Rabbit in Pennsylvania, connections which they contend are "totally relevant" to the purposeful availment inquiry.  Plaintiffs further claim that Spyscape used "marketing and sales efforts to directly harm [them] as residents of Pennsylvania."  But these connections cannot alone support the exercise of specific jurisdiction, as it is well-settled that "plaintiff[s] cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Rather, it is a defendant's conduct "that must form the necessary connection with the forum State." *Id.*

Next, Plaintiffs argue that Spyscape's online activities are sufficient to confer personal jurisdiction upon the company.  Although a defendant's online activities may be considered in the "purposeful availment" inquiry, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003), the Supreme Court has yet to designate a test to analyze purposeful availment, or personal jurisdiction more generally, in such circumstances.  *See e.g.*, *Ford*, 592 U.S. at 366 n.4 ("[W]e do not here consider internet transactions, which may raise doctrinal questions of their own."); *Walden*, 571 U.S. at 290 n.9 ("We leave questions about virtual contacts for another day.").  As a result, courts within the Third Circuit typically apply the framework first articulated

in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119 (W.D. Pa. 1997), which is regarded as the "seminal authority regarding personal jurisdiction based upon the operation of an Internet website." *Toys "R" Us,* 318 F.3d at 452. Under this framework, websites are placed on a spectrum ranging from passive websites, on which information is merely posted, to interactive websites, which facilitate commercial transactions between the defendant and forum residents:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions. A passive web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.

*Zippo*, 952 F. Supp. at 1124.

The *Zippo* Court clarified that the middle ground on this spectrum is occupied by websites through which business is not transacted directly, but which allow for some exchange of information. *Id*. The jurisdictional sufficiency of websites falling within this space "is determined by examining the level of interactivity and commercial nature of the exchange of information." *Id*. Subsequent cases have clarified that the "mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us*, 318 F.3d at 454.

On the one hand, actual evidence of online sales made to Pennsylvania residents has previously supported the exercise of specific jurisdiction over an out-of-state defendant, as the

11

website was deemed sufficiently interactive under the *Zippo* framework.  *See, e.g.*, *TRE Services, Inc. v. U.S. Bellows, Inc.*, 2012 WL 2872830, *4-5 (W.D. Pa. July 12, 2012) (holding that personal jurisdiction existed based upon the defendant's use of a commercially interactive website to conduct business in Pennsylvania that amounted to 2.1 percent of its annual revenue); *L. Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp.3d 714, 721 (E.D. Pa. 2015) (holding that personal jurisdiction existed where Pennsylvania residents made approximately 250 purchases on the defendant's website, as this "volume of sales" could not be characterized as "fortuitous" or "isolated" contacts but rather direct evidence of a "conscious choice to conduct business with the residents of Pennsylvania").  That said, mere allegations that a defendant's website simply offered or "allow[ed] product sales into Pennsylvania" have not sufficed to show that it "purposefully directed its activities at Pennsylvania." *Utz Quality Foods, LLC v. Dirty South BBQ Co.*, 2020 WL 4334903, at *3 (E.D. Pa. July 28, 2020) (citing *Toys "R" Us*, 318 F.3d at 452); *Lutz v. Rakuten, Inc.*, 376 F. Supp.3d 455, 470 (E.D. Pa. 2019) ("Although these websites are interactive, nothing in the record suggests that these websites specifically target Pennsylvania citizens or derive substantial revenue from Pennsylvania citizens.  Moreover, there is nothing in the record to suggest that these websites are central to [the defendant's] business as a holding company."); *Hershey Co. v. Pagosa Candy Co.*, 2008 WL 1730538 *7 (M.D. Pa. Apr. 10, 2008) ("The fact that [the defendant's] web site lists Pennsylvania as one in a list of general shipping destinations, standing alone, does not demonstrate the purposeful availment of doing business in Pennsylvania.").

 Here, Plaintiffs assert that Spyscape purposefully targeted their activities towards Pennsylvania by: (1) operating a website and online services that are accessible to Pennsylvania residents; (2) marketing these services "to Pennsylvania residents who can easily visit the

Spyscape Museum"; and, (3) "regularly collect[ing] subscription fees from customers" in Pennsylvania "while consistently and regularly sending information to their Pennsylvania subscribers." These arguments, however, are unavailing.

Initially, the sole fact that Spyscape operated a website accessible to Pennsylvania residents fails to support the exercise of specific jurisdiction, as its existence alone does not amount to purposeful availment. *See Toys "R" Us*, 318 F.3d at 454.

Next, Plaintiffs' argument that Spyscape "clearly market[s] to Pennsylvania residents" is all but clear, as they fail to provide a scintilla of evidence that Spyscape took any such actions in this forum. *See Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, at *4 (E.D. Pa. June 1, 2020) (holding plaintiffs "failed to make even a threshold showing" of specific jurisdiction based only on an alleged possibility that the defendants transacted business in the judicial district). And on a broader level, any arguments regarding Spyscape's alleged "efforts to exploit a national market that necessarily include[s] Pennsylvania are insufficient" to show the "deliberate targeting of the forum" as required to establish purposeful availment. *Shuker*, 885 F.3d at 780.

Finally, assuming without deciding that the ability to subscribe to some undefined paid service or engage with promotional materials moves Spyscape's website from "passive" to "interactive" under the *Zippo* framework, Plaintiffs have adduced no evidence that the website directly targets residents of Pennsylvania or that Spyscape has ever knowingly interacted with, sold any subscription services to, or collected any related fees from residents of Pennsylvania through the platform. *See Toys "R" Us*, 318 F.3d at 454. That is because the "mere possibility" that someone in Pennsylvania—as anywhere in the world—might have engaged with Spyscape through its website does not constitute a purposeful contact with the forum. *See Utz Quality Foods*, 2020 WL 4334903, at *3; *see also Ackourey v. Sonellas Custom Tailors*, 573 F. App'x

208, 212 (3d Cir. 2014) ("Although [d]efendants' website may have informed potential customers in Pennsylvania of the possibility of appointments in the Commonwealth, there is no evidence [d]efendants received any web-based requests for appointments in Pennsylvania or transacted any business whatsoever with Pennsylvania residents via its website."). In the absence of such evidence, this Court cannot exercise specific jurisdiction over Spyscape.

In short, there is no factual support for Plaintiffs' bare assertions that Spyscape deliberately targeted Pennsylvania through its alleged marketing and subscription services offered on its website, as is required at this stage. *See Time Share Vacation Club*, 735 F.2d at 66 n.9 (explaining that plaintiffs may not "rely on the bare pleadings alone" to establish personal jurisdiction, and instead must "respond with actual proofs, not mere allegations"). Thus, Plaintiffs have not met their burden of establishing specific jurisdiction over Spyscape.

### IV.    Conclusion

Because neither specific nor general jurisdiction exists over Moran and Spyscape, their respective Rule 12(b)(2) Motions shall be granted. And in light of Plaintiffs' failure to respond to the arguments raised by the Marchant Defendants in their Rule 12(b)(2) Motion, said Motion shall be granted as uncontested. Accordingly, Plaintiffs' claims against Moran, Spyscape, and the Marchant Defendants shall be dismissed without prejudice. *See Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is without prejudice." (internal quotation marks omitted)).

An appropriate order follows.

BY THE COURT:


   /s/ WENDY BEETLESTONE
WENDY BEETLESTONE, J.