**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EVERETT STERN, *et ano.,*<br><br>    Plaintiffs,<br><br>vs.<br><br>WILLIAM RUZICH, *et al.,*<br><br>    Defendants. | Civil Action No. 2:24-cv-01222-WB |

**DEFENDANT SPYSCAPE ENTERTAINMENT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Dated:  December 19, 2025
       Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600

*Attorneys for Defendant Spyscape
Entertainment*

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   RELEVANT BACKGROUND ................................................................................ 4

    A.    Spyscape Operates Exclusively in New York ............................................. 4

    B.    Spyscape's Limited Dealings with Plaintiff Stern ...................................... 5

    C.    The Amended Complaint is Dismissed for Lack of Personal Jurisdiction .............. 5

    D.    Undeterred by the Dismissal Order, Plaintiffs' Brings Baseless Claims
    Against Spyscape in the SAC with Even Less Factual Support .............................. 7

III.  ARGUMENT ........................................................................................................ 8

    A.    the Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(2) For Lack
    of Personal Jurisdiction ..................................................................................... 8

        1.    Legal Standards........................................................................................ 8
        2.    The Court Lacks General Personal Jurisdiction over Spyscape .................. 9
        3.    The Court Lacks Specific Personal Jurisdiction Over Spyscape ................ 10

            i.     Spyscape Has Not Purposefully Directed Its Activities
                Towards Pennsylvania ..................................................................... 11
            ii.    There is No Connection Between Plaintiffs' Claims and
                Spyscape ....................................................................................... 13
            iii.   The Exercise of Jurisdiction Over Spyscape Would be Unfair
                and Unjust ..................................................................................... 14

    B.    The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(6) Because
    it Fails to State any Claims Against Spyscape......................................................... 15

        1.    Legal Standards........................................................................................ 15
        2.    For the Third Time, Plaintiffs Have Filed a "Shotgun Pleading"................ 16
        3.    Plaintiffs Fail to State a Claim for Intentional and Negligent
            Interference with Prospective Economic Advantage and Tortious
            Interference of Contract Rights (Counts II and III) ................................... 18
        4.    Plaintiffs Fail to State a Claim for Unfair Competition (Count IV)
            and the UTPCPL (Count X) ..................................................................... 20
        5.    Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V)............ 21
        6.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VI) ............ 22
        7.    Plaintiffs Fail to State a Claim for Negligence (Count VII) ....................... 23
        8.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII)............. 23
        9.    Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count
            IX)............................................................................................................ 24

IV.   CONCLUSION.................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Acumed, LLC v. Advanced Surgical Servs., Inc.*,
    561 F.3d 199 (3d Cir. 2009) .................................................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................4, 9, 16

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007)..................................................................................................16

*Bartol v. Barrowclough*,
    251 F. Supp. 3d 855 (E.D. Pa. 2017) ...............................................................................16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................4

*Berardi v. USAA Gen. Indem. Co.*,
    606 F. Supp .3d 158, 163 (E.D. Pa. 2022) .............................................................................22

*Binary Semantics Ltd. v. Minitab, Inc.*,
    No. 4:07-CV-1750, 2008 WL 763575 (M.D. Pa. Mar. 20, 2008) ..........................................20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................................................3, 11

*Car Sense, Inc. v. Am. Special Risk, LLC*,
    56 F. Supp. 3d 686 (E.D. Pa. 2014) ......................................................................................21

*Chavez v. Dole Food Co.*,
    836 F.3d 205 (3d Cir. 2016)..................................................................................................10

*ClubCom, Inc. v. Captive Media, Inc.*,
    No. 02:07-cv-1462, 2009 WL 249446 (W.D. Pa. Jan. 31, 2009) ...........................................18

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................................................9, 10

*Dayhoff v. H.J. Heinz Co.*,
    86 F.3d 1287 (3rd Cir. 1996) .................................................................................................9

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009)......................................................................................................9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021)................................................................................................................11

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)..................................................................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..............................................................................................10

*Hanson v. Denckla*,
357 U.S. 235 (1958)..............................................................................................11

*Hepp v. Facebook*,
14 F.4th 204 (3d Cir. 2021) .......................................................................11, 13, 14

*Hian v. Louis Vuitton USA Inc.*,
CIVIL ACTION NO. 22-3742, 2024 WL 3237591 (E.D. Pa. June 28, 2024) ........................20

*Hynson v. City of Chester Legal Dep't*,
864 F.2d 1026 (3d Cir. 1988)...........................................................................16, 17

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)..................................................................................14

*Kovalev v. Lidl US, LLC*,
647 F. Supp. 3d 319 (E.D. Pa. 2022) .......................................................................9

*Loduca v. WellPet LLC*,
549 F. Supp. 3d 391 (E.D. Pa. 2021) .....................................................................24

*Lutz v. Rakuten, Inc.*,
376 F. Supp. 3d 455 (E.D. Pa. 2019) .....................................................................12

*M3 USA Corp. v. Hart*,
516 F. Supp. 476 (E.D. Pa. 2021) ....................................................................10, 20

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
960 F.2d 1217 (3d Cir. 1992)..................................................................................9

*Mills v. Unknown Franchisee*,
Civil Action No. 2:20-cv-566, 2021 WL 5358944 (W.D. Pa. Oct. 13, 2021)...................19, 20

*NVR, Inc. v. Majestic Hills, LLC*,
670 F. Supp. 3d 206 (W.D. Pa. 2023)......................................................................23

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
496 F.3d 312 (3d Cir. 2007).........................................................................8, 9, 10, 11

*Riad v. Porsche Cars N. Am., Inc.*,
657 F. Supp. 3d 695 (E.D. Pa. 2023) .....................................................................8, 9

*Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*,
   327 F. Supp. 3d 803 (E.D. Pa. 2018) ...................................................................................21

*Salvitti v. Lascelles*,
   669 F. Supp. 3d 405 (E.D. Pa. 2023) ...................................................................................22

*Salyers v. A.J. Biosenski, Inc.*,
   731 F. Supp. 3d 670 (E.D. Pa. 2024) ...................................................................................21

*Sigel v. Goldstein*,
   657 F. Supp. 3d 646 (E.D. Pa. 2023) ...................................................................................18

*TorcUP, Inc. v. Aztec Bolting Servs., Inc.*,
   386 F. Supp. 3d 520 (E.D. Pa. 2019) ...................................................................................15

*Utz Quality Foods, LLC v. Dirty South BBQ Co.*,
   2020 WL 4334903 (E.D. Pa. July 28, 2020)........................................................................12

*Valley Forge Convention & Visitor's Bureau v. Visitor's Servs., Inc.*,
   28 F. Supp. 2d 947 (E.D. Pa. 1998) .....................................................................................20

*Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*,
   CV 23-1693, 2024 WL 1142872 (E.D. Pa. Mar. 15, 2024)..................................................24

## Statutes and Court Rules

42 Pa. Const. Stat. § 5322(b) ......................................................................................................8

73 Pa. Const. Stat. § 201-3..........................................................................................................21

Fed. R. Civ. P. 4(e) ......................................................................................................................8

Fed. R. Civ. P. 12(b)(2)................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................................. *passim*

Restatement (Third) of Unfair Competition § 1 ........................................................................20

iv

## I.    PRELIMINARY STATEMENT

Given a third bite at the apple, Plaintiffs Everett Stern ("**Stern**") and Tactical Rabbit, LLC (together, "**Plaintiffs**") have filed a Second Amended Complaint (ECF No. 66) (the "**SAC**") that nevertheless manages to include *fewer* comprehensible allegations concerning Defendant "Spyscape Entertainment" ("**Spyscape**") than its facially deficient predecessors.

Instead, the SAC amounts to Plaintiffs' *third* shotgun pleading that is routinely rejected by courts in the Third Circuit.  Rather than complying with the particularity requirements required to state a claim under Federal Rule of Civil Procedure 12, the SAC is laden with undifferentiated, meandering allegations and bare recitations of elements to sustain a claim, that afford Spyscape no insight into the ten counts raised against it, many of which are invalid under Pennsylvania law. In so doing, Plaintiffs have unnecessarily burdened this Court with frivolous claims that result in the waste of judicial resources.

Indeed, the SAC includes only *two references* to Spyscape, one of which acknowledges that Spyscape is not incorporated in Pennsylvania, nor does it maintain a principal place of business in the Commonwealth. *See id.* at ¶¶ 9, 15.  The second allegation appears to blame other defendants – not Spyscape – for their alleged efforts to "solicit Plaintiffs' clients and redirect" business to Spyscape. *Id.* at ¶ 15.  This is a non-sensical allegation for a variety of reasons, and there is not a single allegation in the SAC that Spyscape somehow competes with Plaintiffs, or that Spyscape has ever "used" any of Plaintiffs' confidential information.  The "Declaration of Everett A. Stern Pursuant to 28 U.S.C. § 1746" (the "**Stern Decl.**"; ECF No. 66-1), which purports to be incorporated by reference into the SAC, fares no better.  The lone allegation in the Stern Decl. falsely alleges that Spyscape "deplatformed" Stern in alleged conspiratorial dealings with another defendant. *See id.* at ¶ 5. Even if Mr. Stern's bizarre, conspiratorial ramblings were correct, they do not amount to a claim:  Mr. Stern, with a very public history of baseless litigation, criminal

1

arrests and avoiding payments to contractual counterparties, is not entitled as a matter of law to be promoted by Spyscape on its website or otherwise.  In other words, Spyscape is free to engage and associate with counterparties at its discretion, and Mr. Stern cannot point to any contractual or legal obligation that provides otherwise.

In summary:  this charade needs to come to an end. Plaintiffs' continued efforts to pull facts out of thin air and then package them into the SAC as a means of dragging Spyscape *ad infinitum* into an unfamiliar venue to litigate wholly meritless claims must stop.

The SAC should be dismissed for numerous reasons, including for all of the same reasons that the Court dismissed Plaintiffs' Amended Complaint against Spyscape on March 21, 2025 for lack of personal jurisdiction under Rule 12(b)(2).  ECF No. 60 at pp. 6-14 (the "**Dismissal Order**").

First, Plaintiffs have not, nor can they establish general personal jurisdiction over Spyscape.  As Plaintiffs yet again acknowledge, Spyscape is not incorporated in Pennsylvania, and it maintains a principal place of business outside of Pennsylvania.  *See* SAC ¶ 9.  Rather, Spyscape's sole operational presence in the United States is its museum in New York.  For these reasons, Spyscape's overall contacts with Pennsylvania are not sufficiently substantial, continuous, or systematic so as to subject it to the general jurisdiction of a Pennsylvania court.

Second, no specific jurisdiction may be exercised over Spyscape.  Plaintiffs allege zero specific facts that establish a connection between Spyscape, Pennsylvania, and the claims at issue in this case.  In particular, Spyscape's alleged conduct (to the extent decipherable) – the abrupt "removal" of Stern from Spyscape's website (allegedly at the behest of a different defendant) – is unmoored from the claims underlying the case, which appear to concern breaches of independent contractor agreements, misappropriation of Plaintiffs' alleged "trade secrets, clients, and

2

employees," and unfair competition allegations directed entirely at certain other defendants.

In sum, *at best*, Plaintiffs are the sole connection between this action and Pennsylvania (although Stern now admits he lives in Florida; *see* SAC ¶ 1), and the Supreme Court has held that a plaintiff's link is alone insufficient to find personal jurisdiction over a foreign defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Third, even if the Court were to exercise personal jurisdiction over Spyscape (and it cannot in compliance with Constitutional limitations), the SAC still must be dismissed for multiple reasons. To start, the SAC is the third iteration of Plaintiffs' pleadings that is devoid of specific, distinct facts necessary to establish plausible claims against Spyscape for the relief Plaintiffs seek.

Plaintiffs plead only a handful of specific allegations mentioning Spyscape, none of which are sufficient to assert an actionable claim. The remainder of the allegations constitute impermissible group pleading that lumps Spyscape in with other completely unrelated actions and parties, including parties that allegedly have contracted with the Plaintiffs (inapplicable to Spyscape), the dissemination of "false information" about Stern (inapplicable to Spyscape), the alleged publication of false articles on a website run entirely by other defendants (whose motion to dismiss the FAC was also granted by this Court), and the alleged "hacking" of Plaintiffs through unauthorized access to their website and the associated purportedly confidential materials (inapplicable to Spyscape). The allegations directed at Spyscape do not provide a basis for relief. Rather, these allegations appear to fault Spyscape for declining to co-market or partner with Plaintiffs when it was under no contractual or other obligation to do so.

Furthermore, Plaintiffs often merely recite the elements of various causes of action, without

any accompanying plausible facts to support them.  Several of these causes of action are not even cognizable causes of action under Pennsylvania law, including Count II (intentional interference with prospective economic advantage) and Count III (negligent interference with contractual relations).  The remaining claims, even if recognized under Pennsylvania law, fail to allege facts to support the essential elements of the claims or delineate any allegations between the numerous defendants.

In sum, the vague, conclusory allegations in the SAC utterly fail to meet the pleading standards established by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009), and the SAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and without leave to replead.

## II.    RELEVANT BACKGROUND

### A.    Spyscape Operates Exclusively in New York

Spyscape is a limited partnership formed under Delaware law.  *See* Reply Declaration of Marcelle Devine, dated December 6, 2024 (ECF No. 52-1), at ¶ 2.  As the SAC acknowledges, Spyscape maintains a principal place of business in New York City.  SAC at ¶ 9; *see also* Declaration of Marcelle Devine, dated November 14, 2024 (ECF No. 46-3), at ¶ 2 (the "**Devine Decl.**").[1]  Specifically, Spyscape operates a publicly accessible spy-themed museum, plus two immersive experiences (SPY HQ and SPYGAMES) in New York.  Devine Decl. at ¶ 3. Spyscape's business and operations are conducted from that same location in New York City.  *Id.* at ¶¶ 3.[2]

Spyscape operates its website, "spyex.com," from New York.  *Id.* ¶ 6.  It receives and

---

[1]    Spyscape filed the Devine Decl. in support of its motion to dismiss Plaintiffs' First Amended Complaint, which was granted in the Dismissal Order.

[2]    The Spyscape brand and related intellectual property is owned by a separate, United Kingdom-based entity named Spyscape Ltd. *Id.* at ¶ 4.

processes user requests via its website from New York.  *Id.*  And it likewise receives, processes, and sources customer purchases of spy-related products from its New York location.  *Id.*

Spyscape's museum and corporate office in New York City constitute its sole presence in the United States.  *Id.* ¶ 8.  It has no physical location or presence anywhere else in the United States, including, in Pennsylvania.  *Id.*  Spyscape does not maintain an office in Pennsylvania.  *Id.* at ¶ 9.  It has no employees here.  *Id.* at ¶ 10.  It maintains no bank accounts within the State.  *Id.* And it holds no property nor maintains any other asset in Pennsylvania.  *Id.* at ¶¶ 10-11.

**B.    Spyscape's Limited Dealings with Plaintiff Stern**

Spyscape operates a podcast network from New York and the United Kingdom.  *Id.* at ¶ 12.  In 2021, Stern appeared as a guest on an episode of a Spyscape podcast called "True Spies." *Id.*  That podcast was conducted remotely and administered by the third-party interviewers and technicians located in the United Kingdom.  *Id.*

Spyscape's website also lists dozens of profiles of individuals (many of whom are former intelligence officers) who may be available for speaking, training, or consulting engagements.  *Id.* at ¶ 13.  Consistent with Stern's podcast appearance, his profile was depicted from April 10, 2021 to March 20, 2023.  *Id.*  But no one ever requested his services, either through Spyscape's website, nor through any other means connected to Spyscape.  *Id.*

**C.    The Amended Complaint is Dismissed for Lack of Personal Jurisdiction**

On November 2, 2024, Plaintiffs filed the then-operative FAC.  ECF No. 41.  Spyscape moved to dismiss the FAC, as it does here, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  *See* ECF Nos. 46-2 (Memorandum of Law); 52 (Reply Memorandum of Law).

On March 21, 2025, the Court issued the Dismissal Order which dismissed the FAC against

Spyscape for lack of personal jurisdiction under Rule 12(b)(2).  ECF No. 60 at pp. 2, 8, 13-14.[3]

First, the Court held in the Dismissal Order that Spyscape was not subject to general personal jurisdiction in Pennsylvania because it is "undisputed that Spyscape is incorporated in Delaware and maintains a principal place of business in New York" and "[t]herefore, the company is not 'at home' in Pennsylvania."  *Id.* at p. 8.  The Court also found that general personal jurisdiction under the Supreme Court's "exceptional case" standard could not be exercised over Spyscape because Plaintiffs "have not proffered any explanation as to why their claims fall into the category of 'exceptional case[s]' that ultimately compel the exercise of general personal jurisdiction."  *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)).

Second, the Court held in the Dismissal Order that Spyscape was not subject to specific personal jurisdiction in Pennsylvania.  ECF No. 60 at pp. 10-13.  The Court held that Plaintiffs' supposed connections to Pennsylvania (coupled with the lack of Spyscape's connections) "cannot alone support the exercise of personal jurisdiction, as it is well-settled that 'plaintiff[s] cannot be the only link between the defendant and the forum.'"  *Id.* at p. 10 (quoting *Walden v. Fiore*, 577 U.S. 277, 285)).  Next, the Court held that the availability of Spyscape's website in Pennsylvania, standing alone, "fails to support the exercise of specific jurisdiction[.]"  *Id.* at p. 13.  The Court also held that Plaintiffs "fail to provide a scintilla of evidence" that Spyscape took actions in Pennsylvania via its website that could conceivably confer jurisdiction in Pennsylvania, such as targeted marketing efforts or collection of subscription fees.  *Id.*  In sum, the Court concluded that "there is no factual support for Plaintiffs' bare assertions that Spyscape deliberately targeted Pennsylvania through its alleged marketing and subscription services offered on its website," as is

---

[3]     The Dismissal Order also dismissed the FAC as to other defendants for lack of personal jurisdiction and because the motion to dismiss was uncontested.  *See id.* at p. 15.

necessary to avoid dismissal for lack of specific jurisdiction under Fed. R. Civ. P. 12(b)(2).[4]

**D.     Undeterred by the Dismissal Order, Plaintiffs' Brings Baseless Claims Against Spyscape in the SAC with Even Less Factual Support**

Despite the Dismissal Order's characterization of Plaintiffs' allegations as "bare" and lacking even a "scintilla of evidence," Plaintiffs have now filed a SAC that *has even fewer factual allegations concerning Spyscape* than their previously-dismissed version. In fact, the allegations in the SAC as to Spyscape consist solely of an acknowledgement that Spyscape *maintains its principal place of business in New York* and a wholly inaccurate statement that Spyscape is mentioned in the exhibits to the SAC. *See* SAC at ¶¶ 9 and 15. The accompanying Stern Decl. (purportedly the factual basis for the SAC) likewise references Spyscape in *only two paragraphs*. ECF No. 66-1 at ¶¶ 5 and 9. One paragraph mentions Stern's appearance on the "True Spies" podcast (which originates from the U.K.) and is actually principally directed at the conduct of another defendant. *Id.* at ¶ 5. The other paragraph is a premature and non-sensical request for discovery in order to support Plaintiffs' unfounded allegations that Spyscape (and the other Defendants) are "trained covert operators … and will use plausible deniability." *Id.* at ¶ 9.

Nevertheless, without a whiff of a detailed or cognizable allegation, Plaintiffs repeat the same nine fatally flawed causes of action against Spyscape that they did in the now-dismissed FAC, just with less meat on the bone: tortious interference with prospective economic advantage and tortious interference of contract rights (Count II); negligent interference with prospective economic advantage (Count III); unfair competition (Count IV); trespass to chattels (Count V); unjust enrichment (Count VI); negligence (Count VII); civil conspiracy (VIII); aiding and abetting fraud (Count IX); and violations of Pennsylvania's unfair trade practices and consumer practices

---

[4]     Given the lack of jurisdiction, the Court did not address Spyscape's request for dismissal under Rule 12(b)(6). *Id.* at p. 2.

law (Count X). *See generally* SAC ¶¶ 23-52. None states a viable claim against Spyscape.

For all of the foregoing reasons and those briefed below and set forth by the Court in the Dismissal Order, the SAC must be dismissed against Spyscape on the following independent bases: (i) the Court does not have personal jurisdiction over Spyscape, necessitating dismissal under Fed. R. Civ. P. 12(b)(2); and (ii) the SAC fails to state a single claim for relief against Spyscape, necessitating dismissal under Fed. R. Civ. P. 12(b)(6).

### III.    ARGUMENT

#### A.    The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(2) For Lack of Personal Jurisdiction

##### 1.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant, as in this case here.

Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(e)). Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 700 (E.D. Pa. 2023) (quoting 42 Pa. Const. Stat. § 5322(b)). Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The constitutional requirements for personal jurisdiction vary depending on the type of jurisdiction asserted. There are two types of personal jurisdiction: general and specific. *See*

8

*O'Connor*, 496 F.3d at 317 (citation omitted).

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court takes the allegations of the complaint as true. *See Riad*, 657 F. Supp. 3d at 700 (citing *Dayhoff v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3rd Cir. 1996)). However, legal conclusions by a plaintiff "are no more than conclusions and are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The burden to establish personal jurisdiction is on the plaintiff. *See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

"[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Dayhoff*, 86 F.3d at 1302; *see also Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (noting that, to "survive a Rule 12(b)(2) motion to dismiss, a plaintiff may <u>not</u> merely rely on the allegations in its complaint") (emphasis in original and citation omitted). The plaintiff must establish those contacts with "reasonable particularity." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Once the plaintiff makes a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that "some other considerations exist which would render the exercise of personal jurisdiction unreasonable." *Riad*, 657 F. Supp. 3d at 700.

Plaintiffs cannot show that the exercise of either of the two types of jurisdiction over Spyscape would comport with due process.

### 2.    The Court Lacks General Personal Jurisdiction over Spyscape

The exercise of general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state. *Id.* To exercise general personal jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is "at home"

in its place of incorporation and its principal place of business.  *Id.*   In addition, general personal jurisdiction may exist in an "exceptional case" where a "corporation's operations" in a particular state are "so substantial."  *Id.* at 139 n. 19; *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (holding, in light of *Daimler*, that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

As Plaintiffs concede, Spyscape is incorporated in Delaware and maintains a principal and sole place of business in New York.  *See* Devine Decl. at ¶¶ 2-4.  Spyscape has not consented to general personal jurisdiction.  In the Dismissal Order, the Court held that Plaintiffs had not shown that Spyscape was "at home" in Pennsylvania and therefore Spyscape could not be subject to general personal jurisdiction of this Court.  ECF No. 60 at p. 8.  The Court likewise held that "Plaintiffs have not proffered any explanation as to why their claims fall into the category of 'exceptional case[s],' that ultimately compel the exercise of general jurisdiction."  *Id.*

The deficiencies in Plaintiffs' pleadings highlighted in the Dismissal Order remain present in the SAC.  Accordingly, the Court continues not to have general personal jurisdiction over Spyscape.  *See, e.g., M3 USA Corp. v. Hart*, 516 F. Supp. 476, 490 (E.D. Pa. 2021) (refusing to find general personal jurisdiction over a non-resident corporation).

### 3.    The Court Lacks Specific Personal Jurisdiction Over Spyscape

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction."  *Id.*

Specific jurisdiction over non-residents involves a three-part test.  "First, the defendant must have 'purposefully directed [its] activities at the forum.'"  *O'Connor*, 496 F.3d at 316

10

(quoting *Burger King*, 471 U.S. at 472).  In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).[5]  The contacts must be the "defendant's own choice and not random, isolated, or fortuitous."  *Id.* (citation omitted).

"Second, the litigation must 'arise out of or relate to' at least one of those activities'" which were purposefully directed at the forum.  *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (noting there must be a "strong connection" between a defendant's actions and the alleged claim).  This element prevents Spyscape from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."  *Burger King*, 471 U.S. at 475.

"And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice."  *O'Connor*, 496 F.3d at 317 (citing *Burger King*, 471 U.S. at 476).

As set forth below, none of the required elements to confer personal jurisdiction are present, and thus the Court lacks personal jurisdiction over Spyscape.

### i. Spyscape Has Not Purposefully Directed Its Activities Towards Pennsylvania

Like their prior pleadings, the SAC is bereft of any allegations that Spyscape purposely directed its activities towards Pennsylvania.  As noted above, Spyscape is incorporated in Delaware and solely does business in the United States in New York. Devine Decl. ¶ 2. Spyscape operates its business, including its museum, websites and multimedia, exclusively in New York.

---

[5]    *See also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (holding that court must determine whether defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there").

*Id.* ¶¶ 3-6.[6]  Furthermore, the alleged (though inchoate and unsubstantiated) business relationship between Plaintiffs and Spyscape concerns solely a remote podcast conducted by interviewers in the United Kingdom and a brief appearance of Stern's profile on Spyscape's website, which are operated and maintained outside of Pennsylvania.  Devine Decl. ¶¶ 5, 12-14.  Finally, the glib assertion in the Stern Decl. that he "invested time and resources helping Spyscape … develop its Spyscape consultant brand" (*see* ECF No. 66-1 at ¶ 5) is unsupported by anything in the record other the bare allegation itself.

Moreover, Stern admits he is a resident of Florida.  SAC at ¶ 1.  In fact, the only connection to Pennsylvania is that Tactical Rabbit purports to maintain a "principal office" in the Commonwealth, which is irrelevant to whether *Spyscape* directed any actions at Pennsylvania.  *Id.* at ¶ 2.  As the Court observed in the Dismissal Order, Plaintiffs' supposed connections to Pennsylvania "cannot alone support the exercise of specific jurisdiction, as it is well-settled that 'plaintiff[s] cannot be the only link between the defendant and the forum.'"  ECF No. 60 at p. 10 (quoting *Walden*, 571 U.S. at 285).  As has been true throughout this litigation, because Plaintiffs

---

[6]    While Spyscape's websites are accessible to users in Pennsylvania, as they are in numerous other jurisdictions around the world, Devine Decl. ¶¶ 5-6, the products and services offered on the website are not targeted specifically at Pennsylvania-based users and do not differ based on the user's location.  *See id.* As noted by the Court in the Dismissal Order (*see* ECF No. 60 at p. 13), it is black letter law that undifferentiated operation of and access to a website, even if sells products and services to residents of that jurisdiction, is insufficient to confer specific personal jurisdiction, and Plaintiffs provide not a single fact that would show Spyscape directly and uniquely targeted users in the Commonwealth.  *See, e.g., Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (personal jurisdiction is lacking over website operator absent evidence that the website "specifically target[s] Pennsylvania citizens or derive[s] substantial revenue from Pennsylvania citizens"); *Utz Quality Foods, LLC v. Dirty South BBQ Co.*, 2020 WL 4334903, at *3 (E.D. Pa. July 28, 2020) (citing *Toys "R" Us*, 318 F.3d at 452) (remarking that the mere allegation defendant's website "allow[ed] product sales into Pennsylvania" was insufficient to show that defendant "purposefully directed activities at Pennsylvania"); *Hadnagy*, 2023 WL 114689, at *5 (quoting *Spuglio v. Cabaret Lounge*, 344 Fed. App'x 724, 726 (3rd Cir. 2009) (when a website "merely make[s] information available on the Internet[,] the exercise of personal jurisdiction over such 'passive' defendants is improper")).

12

are the only link to Pennsylvania, no personal jurisdiction may be exercised over Spyscape.

### ii.   There is No Connection Between Plaintiffs' Claims and Spyscape

To establish personal jurisdiction, a plaintiff must also show a "strong connection" between the claims alleged and the defendants' actions. *See, e.g., Hepp*, 14 F.4th at 208. The SAC, however, fails to provide any connection between Plaintiffs' claims and Spyscape, much less the robust connection necessary for this Court to exercise specific personal jurisdiction.[7]

Here, to the best of Spyscape's comprehension, the gravamen of most of Plaintiffs' claims in the meager sixteen paragraphs of the SAC is that the other defendants, principally the individual defendants defined as "contractors" (which expressly excludes Spyscape), upon their departure from Tactical Rabbit, "falsely stated that … Stern was under FBI investigation for wire fraud" and "conspired to form various means of harming and denigrating the Plaintiffs" through the formation and operation of "The Aracari Project," which supposedly relied on unauthorized access to Plaintiffs' "confidential data, client lists, and proprietary information" and Plaintiffs' "computer systems and proprietary databases." *See* SAC at, *e.g.*, ¶¶ 12-15, 21-22, 25, 29, 36, and 45-46.[8] The purported resulting injury includes the Plaintiffs' "loss of contracts, clients, goodwill, and business opportunities" that would have amounted to "millions of dollars in fees and sales." *Id.* at ¶ 16.

However, even assuming *arguendo* that Plaintiffs suffered an injury, there are no facts suggesting that Spyscape aimed *any conduct* towards Plaintiffs in Pennsylvania (nor anywhere else), much less *tortious* conduct, which is required to find personal jurisdiction over Spyscape.

---

[7]   In the Dismissal Order, the Court concluded that Plaintiffs could not show purposeful availment, it did not need to analyze the other two elements of the specific jurisdiction test.

[8]   The "Aracari Project" is described as a "new outfit" created by the individual defendants (not Spyscape) that "embraced non-lawful 'tradecraft' and 'black hat' capability" in order to conduct "integrated … covert operations." *See* Stern Aff. at ¶ 4.

*See, e.g., IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

The SAC makes no specific allegation that Spyscape gained access, much less "unauthorized access," to any personal, confidential, or proprietary information of Plaintiffs. The SAC makes no specific allegation that Spyscape (nor any of its personnel) contracted with Plaintiffs, such that Spyscape would have access to Plaintiffs' information under any circumstances. Spyscape is not specifically alleged to have "stolen" anything from Plaintiffs. Spyscape is not alleged to have "falsely stated" that Stern is "under FBI investigation for wire fraud." SAC at ¶ 14. Spyscape is not alleged to have been aware of the "Aracari Project," much less involved with it. Spyscape is not alleged to have "competed" with Plaintiffs in the market for "national and international private intelligence services." *Id.* at ¶ 10. Spyscape is not specifically alleged to have damaged Plaintiffs' relationships between existing and/or prospective clients.

Ultimately, all the SAC and the Stern Decl. feebly invoke is Stern's brief presence on one of Spyscape's websites and a singular podcast appearance, each of which are maintained and operated from outside of Pennsylvania (Devine Decl. ¶ 5) and not specifically targeted at Pennsylvania residents. Plaintiffs cannot show *any connection* between Spyscape's conduct and Plaintiffs' injuries, let alone the "strong connection" required to satisfy this factor. *Hepp*, 14 F. 4th at 208.

### iii.    The Exercise of Jurisdiction Over Spyscape Would be Unfair and Unjust

Even if the Court were to find that Plaintiffs alleged that Spyscape had purposefully directed its activities at Pennsylvania (which it plainly did not) and that Plaintiffs' claims were tied to Spyscape's conduct in Pennsylvania (unmoored from reality), Plaintiffs cannot establish that this Court's exercise of jurisdiction is in any way fair or just.

The Supreme Court provides several factors courts should consider in this reasonableness

14

analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing *Burger King,* 471 U.S. at 477).

These factors are not met with respect to Spyscape, a Delaware headquartered company with a museum and personnel in New York that operates exclusively outside of Pennsylvania and did not engage in any forum-specific conduct in Pennsylvania. The SAC is devoid of any specific allegation that Plaintiffs and Spyscape interacted within the Commonwealth. Further, Spyscape faces a burden having to litigate in a forum that is totally foreign to it. Moreover, the Commonwealth has no interest in adjudicating the supposed dispute between Plaintiffs and Spyscape that does not concern any of its "fundamental" social policies, as it involves a dispute with a plaintiff who resides in Florida and in which a defendant has minimal (at best) connections to Pennsylvania.

For these reasons, Plaintiffs cannot satisfy any of the three required elements for this Court to take personal jurisdiction over Spyscape, and the SAC should be dismissed with prejudice against Spyscape under Fed. R. Civ. P. 12(b)(2).

**B.** **The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against Spyscape**

**1.** **Legal Standards**

In addition to lacking a jurisdictional predicate to keep Spyscape in the case, Plaintiffs further fail to state any plausible legal claims against Spyscape.[9]

---

[9]    As noted above, due to the lack of personal jurisdiction over Spyscape, the Dismissal Order does not address Spyscape's request for dismissal under Rule 12(b)(6). ECF No. 60 at p. 2.

15

An action may be dismissed when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While Plaintiffs' allegations are entitled to a presumption of truth at this stage, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* In fact, "a complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

### 2.    For the Third Time, Plaintiffs Have Filed a "Shotgun Pleading"

For the third time, the Plaintiffs' complaint fails to comply with Rule 8(a)(2) and should be dismissed at the outset. Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Complaints that violate this rule, such as the SAC, "are often disparagingly referred to as 'shotgun pleadings.'" *Bartol v. Barrowclough,* 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (citation omitted). The Third Circuit has lamented "the all-too-common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early-stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant

16

with sufficient notice of the claims asserted." *Id.*

Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol*, 251 F. Supp. 3d at 859.

The SAC has all the hallmarks of a "shotgun pleading," as it merely recites the bare elements of various causes of action without even alleging, much less connecting, these causes of action to the most fundamental underlying facts. For example, Count I for breach of contract names "all Defendants" even though only three individual defendants (of which Spyscape is not one) are alleged to have contracted with Tactical Rabbit. SAC at ¶ 20.

Moreover, virtually none of the Counts differentiate between which defendant took which actions that supposedly form the basis for relief. For instance, Count III, which alleges negligent interference with prospective economic advantage, provides zero insight into which defendant committed the underlying actions of "disseminating false information, failing to verify claims, and allowing confidential data to be misused." *Id.* ¶ 29.

Similarly, Count IV, which alleges statutory unfair competition, lacks a single particularized allegation as to which of the defendants engaged "in deceptive, fraudulent, and unfair business practices." *Id.* ¶ 32. These are just a few of many examples illustrating that the SAC amounts to a hodgepodge of generalized allegations that must be dismissed with prejudice.

In fact, within the ten counts of the SAC and the six-page Stern Decl. (*see* SAC, ECF No. 66 at pp. 4-8; Stern Decl., ECF No. 66-1 at pp. 1-6) – which constitutes Plaintiffs' *third Hail Mary effort to drag Spyscape into this Court -- Plaintiffs only raise two allegations against Spyscape*

17

*that could conceivably pertain to its conduct.  See* SAC at ¶ 15 (alleging an unspecified scheme to "redirect business" to Spyscape in which Spyscape did not participate); Stern Decl. at ¶ 5 (vaguely referencing Stern's assistance to "develop" Spyscape's "consultant brand").  As further examples, Count IX (Aiding and Abetting Fraud) includes two paragraphs of boilerplate allegations against all Defendants (*id.* at ¶¶ 48-49), and Count X (violations of Pennsylvania's statutory unfair trade practices law) is simply a recitation of the element and citation to the statute  *Id.* at ¶¶ 51-52.

For these reasons, the SAC is a quintessential shotgun pleading that does not satisfy Rule 8(a)(2) and should be dismissed with prejudice against Spyscape.

> **3.    Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)**

The SAC offers only vague, conclusory allegations concerning Spyscape with respect to Counts II and III, which does not set forth sufficient facts to support either of these claims.[10]

First., as a matter of law, Pennsylvania does not recognize a tort for "intentional interference with prospective economic advantage." *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 WL 249446, at *7 (W.D. Pa. Jan. 31, 2009).  Consequently, this aspect of Count II is invalid on its face and must be dismissed.

Second, to prevail under Pennsylvania law for a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a

---

[10]    Unlike in the Amended Complaint, the SAC names "All Defendants" in Count I for breach of contract, although the allegations invoke only certain individual defendants.  *See* SAC ¶¶ 19-22.  Under Pennsylvania law, the elements required to state a claim for breach of contract are: (1) existence of a contract; (2) breach of the contract; and (3) resultant damages.  *See Sigel v. Goldstein*, 657 F. Supp. 3d 646, 654 (E.D. Pa. 2023) (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) (quotation omitted)).  Given that Spyscape never executed a contract with either of the Plaintiffs (Plaintiffs never allege otherwise), it becomes axiomatic that Count I is a frivolous claim that cannot conceivably survive the Rule 12(b)(6) standard.

contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

For a variety of reasons, Count II must be dismissed. First, Plaintiffs do not allege that it ever had a contractual relationship with Spyscape, nor could it. Second, the SAC does not contain specific allegations concerning a prospective contractual relationship between Plaintiffs and any third-parties. SAC ¶ 24. Instead, Count II contains only vague, generalized allegations about unnamed clients of Plaintiffs that supposedly operate in the "private intelligence sector." *See id*. Furthermore, the supposed basis for the "interference" alleged in Count II is the "misrepresenting" of Stern's "integrity and falsely asserting criminal investigations, knowing such statements." *Id.* ¶ 25. Plaintiffs offer no allegations that tie Spyscape to these alleged misrepresentations about Stern, nor could they, as Spyscape has never made any misrepresentations about Stern, much less misrepresentations as to Stern's supposed "criminal investigations." If anything, by briefly placing him on Spyscape's website, Spyscape gave Stern an imprimatur of legitimacy and portrayed him in a positive manner. In sum, this style of pleading does not put Spyscape on notice of the essential facts to establish a claim, much less any of the required elements.

Third, Count III is invalid on its face because "Pennsylvania law does not recognize the tort of negligent interference with contractual relations." *Mills v. Unknown Franchisee*, Civil Action No. 2:20-cv-566, 2021 WL 5358944, at *5 (W.D. Pa. Oct. 13, 2021) (citing *Valley Forge*

19

*Convention & Visitor's Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998));

*see also Binary Semantics Ltd. v. Minitab, Inc.*, No. 4:07-CV-1750, 2008 WL 763575, at *7 (M.D.

Pa. Mar. 20, 2008) (same).  The only exception to this rule is where a "special relationship exists

between the parties." *Mills*, 2021 WL 5358944, at *5.  "A 'special relationship' is one involving

confidentiality, the repose of special trust or fiduciary responsibilities." *Valley Forge*, 28 F. Supp.

2d at 952 (citation omitted)

The "special relationship" exception clearly does not apply here, as the handful of

allegations in the Spyscape provide no basis for any relationship involving confidence, trust, or

fiduciary obligations between Plaintiffs and Spyscape.  Rather, at best, the SAC details a brief

business relationship between Stern and Spyscape.

Counts II and III must be dismissed.

### 4.    Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X)

In Pennsylvania, a defendant is liable for unfair competition if "(1) he [or she] engages in

deceptive marketing, infringement of trademark or other protectable intellectual property,

misappropriation of trade secrets, or acts or practices that are actionable under federal or state

statutes; and (2) his [or her] conduct causes harm to the plaintiff's commercial relations." *M3 USA*,

516 F. Supp. 3d at 504 (citing Restatement (Third) of Unfair Competition § 1).[11]  In Pennsylvania,

a claim for unfair competition is recognized "where there is evidence of, among other things ...

tortious interference with contract … and unlawful use of confidential information." *Id.*

Applying these principles, Plaintiffs fail to state a claim for unfair competition.  The SAC

---

[11]    Whether Plaintiffs bring a claim for common law or statutory unfair competition is immaterial, as these causes action "require the exact same elements." *Hian v. Louis Vuitton USA Inc.*, CIVIL ACTION NO. 22-3742, 2024 WL 3237591, at *6 (E.D. Pa. June 28, 2024).

contains no allegation that Spyscape engaged in any actions that would satisfy the first element. Indeed, there are no allegations that Spyscape has ever maintained access to the Plaintiffs' trade secrets, protectable intellectual property, or other confidential information. This is unsurprising, as Spyscape never had access to such information.

Plaintiffs likewise cannot satisfy the second element of the unfair competition test. As discussed above, there are insufficient allegations that Spyscape tortiously interfered with any (unspecified) contract involving Plaintiffs or that Spyscape otherwise damaged Plaintiffs' "commercial relations." There are also no allegations that Spyscape unlawfully used any of Plaintiffs' confidential information, nor could there be.

Count X fails because it is supported by no factual allegations whatsoever, much less participated allegations sufficient to state a claim for violation of UTPCPL.[12] *See* SAC ¶¶ 50-52. Rather, Count X is comprised entirely of: (i) a boilerplate recitation of the statutory language; and (ii) a statement that Plaintiffs are entitled to damages. *Id.* It is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL.

Counts IV and X should be dismissed.

### 5. Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V)

"A trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another." *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018).

---

[12]   UTPCPL is the abbreviation for Pennsylvania's version of the Unfair Trade Practices and Consumer Protection Law. *See* 73 Pa. Const. Stat. § 201-1 *et seq.*; *see Salyers v. A.J. Biosenski, Inc.*, 731 F. Supp. 3d 670, 685 (E.D. Pa. 2024) (listing elements required to prove a UTPCPL claim). To maintain a private right of action under the UTPCPL, a claimant must: (1) be a "person"; (2) who made a "purchase"; (3) primarily for personal, family, or household purposes; and (4) suffered an ascertainable loss a result. *See Car Sense, Inc. v. Am. Special Risk, LLC*, 56 F. Supp. 3d 686, 697 & n. 5 (E.D. Pa. 2014) (citing 73 Pa. Const. Stat. § 201-3). Plaintiffs thus do not possess a private right of action under UTPCPL because, at most, they satisfy the first element.

Plaintiffs do not state a claim for trespass to chattels under Pennsylvania law. The crux of this Count V (to the extent it is intelligible) is that all defendants "intentionally interfered with Plaintiffs' computer systems and proprietary databases, diminishing their functionality and value." SAC at ¶ 36.

Emblematic of a shotgun pleading, the SAC does not furnish any specific allegations against Spyscape, nor could it. *See id.* There are no allegations that Spyscape had ever maintained access to these "computer systems and propriety databases," nor any other property of Plaintiffs. As such, Spyscape *per se* could not have dispossessed, used, or intermeddled Plaintiffs of this supposed chattel, much less with the required intentionality. Count V must be dismissed.

### 6.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Count VI)

In Pennsylvania, unjust enrichment is an equitable remedy, defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp .3d 158, 163 (E.D. Pa. 2022).

"To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must establish that (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Id.* "An unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023).

Yet again, the SAC fails to furnish any specific allegations tying Spyscape to the supposed "unjustly received benefits by taking Plaintiffs' clients, data, and intellectual property without authorization." *Id.* at ¶ 39. As described herein, there is simply no allegation that the Plaintiffs

22

have ever conferred any benefit on Spyscape, much less the benefit of Plaintiffs' "clients, data, and intellectual property." *Id.* In truth, an appearance on a popular podcast and briefly holding a spot on Spyscape's website actually *benefits Plaintiffs* by increasing their exposure and potential remuneration. Spyscape thus necessarily could not have appreciated, accepted, nor retained such benefits. Count VI must be dismissed.

### 7.    Plaintiffs Fail to State a Claim for Negligence (Count VII)

To establish a claim for negligence, a plaintiff must show: "(1) duty; (2) breach; (3) causation; and (4) damages." *NVR, Inc. v. Majestic Hills, LLC*, 670 F. Supp. 3d 206, 227 n. 17 (W.D. Pa. 2023). To determine the existence of a duty, the Court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution." *Id.*

The SAC lacks any specific allegation tying Spyscape to any "duty" to the Plaintiffs. Rather, the SAC appears to premise such a fabricated "duty" on the boilerplate assertion that all defendants failed to "act reasonably in the management and supervision of their relationships and business practices." SAC at ¶ 42. These allegations, on their face, have nothing to do with Spyscape, eliminating the possibility of a duty of "ordinary care" owed to Plaintiffs. There is no allegation tying actions of the exercise of this supposed duty to adverse impacts to Plaintiffs' business. Spyscape therefore could not have failed to "exercise ordinary care." *Id.* at ¶ 43. For these reasons, Count VII must be dismissed.

### 8.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII)

Under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, *i.e.* an intent to injure, is essential in

proof of a conspiracy." *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021).

Plaintiffs cannot establish these elements and have thus not alleged a viable claim for civil conspiracy. To wit, the SAC does not provide a single factual allegation explaining how Spyscape participated in a conspiracy. The Stern Decl. vaguely alludes to Stern's removal from the Spyscape website and his podcast, but this allegation ties more to a different defendant and does not explain how the removal was a malicious "unlawful act" or "otherwise lawful act." *See* Stern Decl. ¶ 5.

This single allegation is not within the realm of the pleading required to state a claim for civil conspiracy. Most importantly, there is no specific allegation that Spyscape agreed to do any unlawful act or an otherwise lawful act by unlawful means—and did so with the intent to injure Plaintiffs. Specifically, this single allegation in the SAC baselessly and without detail claims that defendants acted "jointly and in concert with a common purpose" of "denigrating Plaintiffs and ruining their respective businesses." SAC ¶ 45. The SAC does not specify which defendant acted in "common purpose" with Spyscape, nor does it articulate how, when, and why Spyscape was involved in "denigrating" Plaintiffs' businesses. Stern's removal from the SPYEX website and the cessation of his consultant relationship with Spyscape is simply a commercial decision that does not fall into the realm of actionable denigrating or any other form of injury to Plaintiffs.

Further, the SAC lacks any allegations whatsoever that Spyscape acted with the required malice at all, an essential element for a civil conspiracy claim. Count VIII must be dismissed.

### 9. Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX)

Under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*, CV 23-

1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024).

Aside from stray references to the word "fraud," the SAC is devoid of any specific allegations as to the alleged fraud perpetrated on Plaintiffs, much less Spyscape's knowledge and substantial assistance in committing that tort. All told, at best, the SAC simply recites the above-referenced elements without any single particularized allegation that could give rise to liability against Spyscape. SAC at ¶¶ 48-49. Count IX must be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant Spyscape Entertainment respectfully requests that the Court dismiss the SAC in its entirety and with prejudice, as any further amendment would be futile.

Dated:  December 19, 2025
       Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP

/s/ Benjamin R. Wilson
Benjamin R. Wilson, Esq. (Bar No. 327118)
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600
Email: benjamin.wilson@hklaw.com

Richard A. Bixter Jr.
*pro hac vice pending*
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Phone: (312) 422-9032
Email: richard.bixter@hklaw.com

*Attorneys for Defendant Spyscape Entertainment*

25

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused to be served a true and correct copy of the

foregoing with the Clerk of Court using the CM/ECF system and served upon all parties registered

for the CM/ECF system in this case.

Dated:  December 19, 2025
        Philadelphia, Pennsylvania

                             /s/ Benjamin R. Wilson

26

#531252052_v2