**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EVERETT STERN, *et ano.,* | |
| Plaintiffs, | Civil Action No. 2:24-cv-01222-WB |
| vs. | |
| WILLIAM RUZICH, *et al.,* | |
| Defendants. | |

**DEFENDANTS DAVID MARCHANT AND KYC NEWS, INC. d/b/a OFFSHORE
ALERT'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

Dated: December 19, 2025
      Philadelphia, Pennsylvania

 

HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600

*Attorneys for Defendants David Marchant
and KYC News, Inc. d/b/a Offshore Alert*

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 3

    A.    The Marchant Defendants Operate Exclusively Outside of Pennsylvania .................... 3

    B.    The Marchant Defendants' Limited Dealings with Plaintiffs ......................................... 4

    C.    Plaintiffs' Amended Complaint is Dismissed for Lack of Personal Jurisdiction .......... 5

    D.    Stern Files a Second Action against the Marchant Defendants in Florida ..................... 5

    E.    Plaintiffs' Baseless Claims against the Marchant Defendants in the SAC ..................... 6

III.    ARGUMENT ........................................................................................................ 7

    A.    The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(1) for  Lack of Subject Matter Jurisdiction Because Plaintiffs Lack Standing ..................................... 7

        1.    Plaintiffs Lack Standing, as Any Alleged Injury Resulting from the Marchant Defendants' Actions is not Redressable by this Court ......................... 9

    B.    the Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction .................................................................................................... 10

        1.    The Court Lacks General Personal Jurisdiction .................................................... 11

        2.    The Court Lacks Specific Personal Jurisdiction ................................................... 11

            i.    The Marchant Defendants Have Not Purposefully Directed Their Activities Towards Pennsylvania ...................................... 12

            ii.    The Marchant Defendants' Ownership and Operation of the OA Website Does Not Constitute Purposeful Availment ............ 13

            iii.    There is No Connection Between Plaintiffs' Claims and the Marchant Defendants .................................................................. 15

            iv.    The Exercise of Jurisdiction Over the Marchant Defendants Would be Unfair and Unjust ......................................................... 17

    C.    The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against the Marchant Defendants ....................................... 18

        1.    The SAC is Plaintiffs' Third Impermissible "Shotgun Pleading" ....................... 18

        2.    Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III) ........................................................................ 20

        3.    Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X) ........................................................................................ 21

        4.    Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V) ..................... 22

i

5.      Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI).................... 23

6.      Plaintiffs Fail to State a Claim for Negligence (Count VII) ............................... 24

7.      Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII)..................... 24

8.      Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX) ........ 25

IV.    CONCLUSION..................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Acumed, LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009)..................................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................8, 9, 11

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007)....................................................................................................8

*Bartol v. Barrowclough*,
251 F. Supp. 3d 855 (E.D. Pa. 2017) ....................................................................................18

*Berardi v. USAA Gen. Indem. Co.*,
606 F. Supp .3d 158, 163 (E.D. Pa. 2022) ...........................................................................23

*Britax Child Safety, Inc. v. Nuna Int'l B.V.*,
321 F. Supp. 3d 546 (E.D. Pa. 2018) ..............................................................................13, 15

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..........................................................................................................12, 17

*Car Sense, Inc. v. Am. Special Risk, LLC*,
56 F. Supp. 3d 686 (E.D. Pa. 2014) ......................................................................................22

*ClubCom, Inc. v. Captive Media, Inc.*,
2009 WL 249446 (W.D. Pa. Jan. 31, 2009).........................................................................20

*Const. Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014)....................................................................................................8

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ..................................................................................................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...............................................................................................................11

*Dayhoff v. H.J. Heinz Co.*,
86 F.3d 1287 (3rd Cir. 1996) .................................................................................................11

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009).....................................................................................................11

*Finkelman v. Nat'l Football League*,
877 F.3d 504 (3d Cir. 2017).....................................................................................................8

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)..................................................................................9

*Freeman v. Early Warning Servs., LLC*,
  443 F. Supp. 3d 581 (E.D. Pa. 2020) ....................................................................4

*Goodyear Dunlop Tires Operations, S.A. v. Brown¸*
  564 U.S. 915 (2011)...........................................................................................12

*Hadnagy v. Moss¸*
  No. 22-3060, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023).................................13, 14

*Hanson v. Denckla¸*
  357 U.S. 235 (1958)............................................................................................12

*Hepp v. Facebook¸*
  14 F.4th 204 (3d Cir. 2021) ....................................................................12, 15, 16

*Kelly v. Vertikal Press, Ltd.*,
  No. 20-2315, 2020 WL 6395459, at *2 (E.D. Pa. Nov. 2, 2020) .....................14, 15

*Kimbrough v. Bucks Cnty.*,
  763 F. Supp. 700 (E.D. Pa. 2025) ..........................................................................4

*Loduca v. WellPet LLC*,
  549 F. Supp. 3d 391 (E.D. Pa. 2021) ...................................................................25

*Lutz v. Rakuten, Inc.*,
  376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) ............................................................15

*M3 USA Corp. v. Hart*,
  516 F. Supp. 476 (E.D. Pa. 2021) ...................................................................11, 21

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino¸*
  960 F.2d 1217 (3d Cir. 1992)...............................................................................11

*Mills v. Unknown Franchisee*,
  2:20-cv-566, 2021 WL 5358944 (W.D. Pa. Oct. 13, 2021).....................................21

*Mirfasihi v. Fleet Mortg. Corp.*,
  No. 01 C 722, 2007 WL 2066503 (N.D. Ill. July 17, 2007) ......................................9

*NVR, Inc. v. Majestic Hills, LLC*,
  670 F. Supp. 3d 206 (W.D. Pa. 2023)....................................................................24

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
  496 F.3d 312 (3d Cir. 2007)............................................................................10, 12

iii

*Perry v. Newsom*,
18 F.4th 622 (9th Cir. 2021) ................................................................................................9

*Remick v. Manfredy*,
238 F.3d 248 (3d Cir. 2001)................................................................................................17

*Riad v. Porsche Cars N. Am., Inc.*,
657 F. Supp. 3d 695 (E.D. Pa. 2023) ............................................................................10, 11

*Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*,
327 F. Supp. 3d 803 (E.D. Pa. 2018) ..................................................................................22

*Salvitti v. Lascelles*,
669 F. Supp. 3d 405 (E.D. Pa. 2023) ..................................................................................23

*Salyers v. A.J. Biosenski, Inc.*,
731 F. Supp. 3d 670 (E.D. Pa. 2024) ..................................................................................22

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012)..................................................................................................8

*Sigel v. Goldstein*,
657 F. Supp. 3d 646 (E.D. Pa. 2023) ..................................................................................20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................................................8

*Stern v. Marchant*,
3:25-cv-00755-JEP-MCR (M.D. Fla.) ...............................................................................5, 6

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
980 F.3d 879 (3d Cir. 2020)..................................................................................................8

*TorcUP, Inc. v. Aztec Bolting Servs., Inc.*,
386 F. Supp. 3d 520 (E.D. Pa. 2019) ..................................................................................17

*Toys "R" Us., Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003)................................................................................................14

*TransUnion LLC v. Ramirez*,
504 U.S. 555 (2021)...............................................................................................................9

*Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*,
CV 23-1693, 2024 WL 1142872 (E.D. Pa. Mar. 15, 2024).................................................25

*Yankovich v. Applus Techs., Inc.*,
621 F. Supp. 3d 269 (D. Conn. 2022)....................................................................................9

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997)............................................................................14

**Statutes and Court Rules**

73 Pa. Const. Stat. § 201-1....................................................................................................22

Fed. R. Civ. P. 12(b)(1)........................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................... *passim*

Fed. R. Civ. P. 12(b)(2)........................................................................... *passim*

U.S. Const. art. III..............................................................................................7, 8

## I.    PRELIMINARY STATEMENT

For the third time, Plaintiffs Everet Stern ("**Stern**") and Tactical Rabbit, LLC (together, "**Plaintiffs**") have unnecessarily burdened this Court and squandered judicial resources with a filing that is replete with non-sensical and patently deficient allegations, all directed at defendants with no contacts with this Commonwealth.

The Second Amended Complaint (ECF No. 66) (the "**SAC**"), like its predecessors, provides zero cognizable allegations against Defendants David Marchant ("**Marchant**") and KYC News, Inc. d/b/a Offshore Alert ("**KYC News**," together, "**Marchant Defendants**").

Indeed, Plaintiffs present this Court **yet again** with allegations analogous to those in the First Amended Complaint (ECF No. 41) that the Court has characterized as "bare" and lacking even a "scintilla of evidence." ECF No. 66 at pp. 13-14. The SAC is laden with undifferentiated, meandering allegations and bare recitations of elements that afford the Marchant Defendants no insight into the ten counts raised against them, many of which are invalid under Pennsylvania law. The SAC also targets the Marchant Defendants for engaging in protected journalistic activities, including the publication of court records on its website and social media platforms.

At its core, the SAC is a flailing attempt to fault the Marchant Defendants for <u>Plaintiffs' own problematic actions, which are detailed at length in publicly-available court records and accessible from numerous sources</u>. No matter how embarrassing Plaintiffs' sizable credit card debt, mental instability, or litigiousness may be, the Marchant Defendants cannot be held liable for the mere act of publishing a public record. The SAC nevertheless seeks to do precisely that.

The SAC should be dismissed for three primary reasons.

<u>First</u>, the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiffs' lack standing. Specifically, Plaintiffs cannot have suffered a cognizable injury by virtue of the Marchant Defendants' posting publicly-available information, which is the foundation of

1

the SAC. The information is out there, ergo the "injuries" from publication alleged by Plaintiffs cannot be redressed by this Court. Accordingly, Plaintiffs lack standing to pursue their claims.

Second, Plaintiffs cannot establish personal jurisdiction over the Marchant Defendants, necessitating dismissal under Fed. R. Civ. P. 12(b)(2). As Plaintiffs yet again acknowledge, the Marchant Defendants do not reside in Pennsylvania, are not incorporated in the Commonwealth, and maintain no physical presence here. *See* SAC ¶¶ 6-7. Consequently, the Marchant Defendants' overall contacts with Pennsylvania are not sufficiently substantial, continuous, nor systematic so as to subject them to the general personal jurisdiction of a Pennsylvania court. The Court also lacks specific personal jurisdiction over the Marchant Defendants. In the SAC, Plaintiffs allege zero specific facts that establish a connection between the Marchant Defendants, Pennsylvania, and the claims at issue in this case. While KYC News operates a website that is accessible in Pennsylvania, it has not directly targeted residents of the Commonwealth. Furthermore, the Marchant Defendants' allegedly tortious conduct – publishing articles and social media posts about Plaintiffs that contain publicly available records – is unmoored from this case, which appear to concern Stern's vendetta against a different individual defendant, and breach of contract, hacking, and unfair competition allegations directed wholly at certain other defendants.

*At best*, Plaintiffs are the sole connection to Pennsylvania (although Stern now admits he lives in Florida), which is alone insufficient to find personal jurisdiction over a foreign defendant.

Finally, even if the Court were to exercise personal jurisdiction over the Marchant Defendants, the SAC still must be dismissed for a failure to state a claim upon which relief can be granted under Rule 12(b)(6). First, the gravamen of Plaintiffs' allegations directed at the Marchant Defendants concern their website and social media posts that allegedly "amplified" a "smear campaign" undertaken by certain individual defendants. What's more, the remainder of the

allegations constitute the quintessential form of an impermissible group pleading that lumps the Marchant Defendants in with other completely unrelated actions and parties, including parties that have contracted with the Plaintiffs (inapplicable to the Marchant Defendants), access to Plaintiffs' "trade secrets and confidential information" (which the Marchant Defendants never possessed) and the alleged "hacking" of Plaintiffs (also inapplicable to the Marchant Defendants).

The SAC is facially deficient as well in that parts of it lack any factual allegations whatsoever. Plaintiffs often merely recite the elements of various causes of action, without any accompanying plausible facts to support them. Several of these causes of action are not even recognized under Pennsylvania law, including Count II (intentional interference with prospective economic advantage) and Count III (negligent interference with contractual relations). The remaining claims, even if recognized under Pennsylvania law, fail to allege facts to support the essential elements of the claims or delineate any allegations between the numerous defendants.

The Marchant Defendants respectfully request that the Court grant their motion and dismiss the SAC in its entirety and with prejudice.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Marchant Defendants Operate Exclusively Outside of Pennsylvania

As the SAC acknowledges, Marchant is a resident of Colorado and KYC News is a corporation incorporated and located in Florida. *See id.* ¶¶ 6-7; *see also* Declaration of David Marchant, dated November 14, 2024, ECF No. 45-3 at ¶¶ 3-4 (the "**Marchant Decl.**").[1]

Marchant (through KYC News) is the proprietor and operator of OffshoreAlert.com ("**OA**"), an investigative journalism website that monitors publicly available filings in courts and regulatory agencies around the world and then provides materials (often quoting court filings

---

[1]    The Marchant Defendants filed the Marchant Decl. in support of their motion to dismiss the Amended Complaint. *See* ECF No. 41.

3

directly) via email to its subscribers. *Id.* ¶ 4. OA sponsors multiple conferences around the world every year, although it has never held a conference in Pennsylvania. *Id.* ¶ 16.

Other than being accessible and selling subscriptions to people located in Pennsylvania, OA does not sell products or otherwise target Pennsylvania residents separate and apart from its subscribers located in other jurisdictions across the globe. *Id.* ¶¶ 4-9.

### B.      The Marchant Defendants' Limited Dealings with Plaintiffs

OA has published thousands of articles since its founding in 1996. Marchant Decl. ¶ 10. OA published articles concerning Plaintiffs and has disseminated the articles on social media. *Id.* ¶¶ 10-13. For ease of access for its users, OA permitted searching of its website for Plaintiffs. Stern Decl. Ex. 6.[2] As Plaintiffs' own filings illustrate, publicly available court records – routinely quoted directly by OA – constitute the sole source of the material on Plaintiffs that has been published on OA or on its social media platforms. *Id.* at Exs. 5 and 8-12. For example, OA posted the publicly available docket sheet for an incident in which Stern pled guilty to disorderly conduct in Pennsylvania state court. Marchant Decl. ¶ 14. In August 2024, OA published the publicly available complaint in a lawsuit in state court in Florida brought by American Express against Plaintiffs. *See* Stern Decl. Ex. 10. Neither Marchant nor any other employee of OA appended commentary to this post or any other posts about Plaintiffs. Marchant Decl. ¶ 15.

The connections between Plaintiffs and the Marchant Defendants are remote and sparse. In fact, the primary connection detailed in the SAC is between the Marchant Defendants and a different defendant. Specifically, defendant William Ruzich ("**Ruzich**") – with whom Stern

---

[2]      The exhibits to the Stern Decl. are integral to the SAC and can be considered in deciding the motion under Rule 12(b)(1) and (b)(6). *See Freeman v. Early Warning Servs., LLC*, 443 F. Supp. 3d 581, 583 (E.D. Pa. 2020) (citations omitted). In addition, the court can take judicial notice of the exhibits attached to the Stern Decl. that constitute court pleadings and filings that are readily verifiable. *See Kimbrough v. Bucks Cnty.*, 763 F. Supp. 700, 712 n. 7 (E.D. Pa. 2025).

appears to have some kind of vendetta - has spoken at two Offshore Alert conferences held outside of the United States.  Marchant Decl. ¶ 14.  Ruzich has not spoken at any other conference hosted by, or otherwise affiliated with, Offshore Alert.  *See id.* ¶ 16.  Like tens of thousands of others, the Plaintiffs once subscribed to OA.  Marchant and Stern have also spoken on social media, including a brief conversation appended to the Stern Aff. in which Marchant references a publicly available court filing concerning Stern's guilty plea to disorderly conduct and asks for evidence to support Stern's allegations that Ruzich is a "criminal."  Stern Decl. Ex. 7.

      **C.**      **Plaintiffs' Amended Complaint is Dismissed for Lack of Personal Jurisdiction**

On November 2, 2024, Plaintiffs filed the then-operative Amended Complaint.  ECF No. 41.  The Marchant Defendants moved to dismiss the FAC, as they do here, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  *See* ECF Nos. 45, 53, and 56.  On March 21, 2025, the Court issued the Dismissal Order granting the Marchant Defendants' motion to dismiss as unopposed based on Plaintiffs' failure to comply with the Court's Policies and the Local Rules of Civil Procedure of the Eastern District of Pennsylvania that require timely filings.  ECF No. 60 at pp. 4-6.  Specifically, the Dismissal Order held that Plaintiffs' response constituted "a complete copy and paste of [Plaintiffs'] response to [a different defendant's] Motion to Dismiss" failed to comply with the Court's Policies and Local Rules" and is "thus inadequate in all respects" *Id.* at p. 6.

      **D.**      **Stern Files a Second Action against the Marchant Defendants in Florida**

After the Court issued the Dismissal Order in March 2025, and prior to the granting of leave to file the SAC, Stern filed an additional, related action against the Marchant Defendants in the District Court for the Middle District of Florida.  *See Stern v. Marchant*, 3:25-cv-00755-JEP-MCR (M.D. Fla.) (the "**Florida Action**").  In the Florida Action, Stern echoes many of the allegations about the Marchant Defendants in the SAC, particularly with respect to OA's website and social media posts that supposedly "attack" Stern.  *Compare* Florida Action, FAC ECF No.

26 at ¶ 11 ("Defendants cross-posted and promoted [a page on OA about Stern] on social media with captions attacking Plaintiff's character and linking back to the [OA website]" *with* Stern Decl., ECF No. 66-1 at ¶ 6(d) (arguing that the Marchant Defendants "published numerous pages curated to portray [Stern] as dishonest"). The Florida Action remains pending.

### E.    Plaintiffs' Baseless Claims against the Marchant Defendants in the SAC

Despite the total absence of a nexus between Plaintiffs and the Marchant Defendants, Plaintiffs again try to haul the Marchant Defendants into this forum via numerous baseless claims.

The three allegations in the SAC directly relating to the Marchant Defendants are reminiscent of the allegations in the Amended Complaint that the Court in the Dismissal Order characterized as "bare" and lacking even a "scintilla of evidence." ECF No. 66 at pp. 13-14. First, the SAC acknowledges that Marchant resides in Colorado and that KYC News is incorporated and maintains its principal place of business in Florida. ECF No. 60 at ¶¶ 6-7. Second, the SAC claims that Plaintiffs "contracted" with Marchant for "services" and that Marchant "developed a business relationship with Plaintiffs and other Defendants." *Id.* at ¶ 6. However, the SAC fails to attach any contract between either of the Marchant Defendants and either of the Plaintiffs, nor does it furnish any detailed allegations as to this supposed business relationship. *Id.* Third, the SAC alleges that all of the Defendants "used Plaintiffs' confidential data, client lists, and proprietary information" to "solicit Plaintiffs' clients and redirect business to … Offshore Alert." *Id.* at ¶ 15. Plaintiffs have pulled these allegations against the Marchant Defendants out of thin air, as neither of them ever had access to any of Plaintiffs' confidential information and neither of the Marchant Defendants ever "solicited" Plaintiffs' clients, nor would they have an incentive to do so, as OA does not compete with the Plaintiffs' provision of "private intelligence services." *Id.* at ¶¶ 10, 15.

The accompanying Stern Decl. (purportedly the factual basis for the SAC) includes a fever dream of disparate and generalized allegations against the Marchant Defendants, many of which

hone in on Stern's irrelevant vendetta with a different defendant, and none of which are true. Contrary to Plaintiffs' unfounded musings, the Marchant Defendants have not "denigrated" and "doxed" Plaintiffs (ECF No. 66-1 at ¶ 6(d)), and have instead only engaged in protected acts of journalism by publicizing official court records (which include Stern's address and other identifying information) on OA's website and social media platforms, without substantial accompanying commentary, concerning Plaintiffs' myriad legal troubles, both criminal and civil. *See id.* at Exs. 8-18. Similarly, the Marchant Defendants' promotion of Ruzich's appearance at two OA conferences did not "credential" Ruzich in any nefarious way (*id.* at ¶ 6(e)) but instead amounted to a perfectly legitimate effort by OA to generate interest in two of its conferences.

Undeterred, Plaintiffs regurgitate the same ten fatally flawed causes of action against the Marchant Defendants rejected in the Dismissal Order, including: breach of contract (Count 1); tortious interference with prospective economic advantage and tortious interference of contract rights (Count II); negligent interference with prospective economic advantage (Count III); unfair competition (Count IV); trespass to chattels (Count V); unjust enrichment (Count VI); negligence (Count VII); civil conspiracy (VIII); aiding and abetting fraud (Count IX); and violations of Pennsylvania's unfair trade practices and consumer practices law (Count X). *See* SAC ¶¶ 23-52.

## III.    ARGUMENT

### A.    The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction Because Plaintiffs Lack Standing

First, the Court should dismiss the SAC because it lacks subject-matter jurisdiction given that Plaintiffs cannot conceivably have suffered an injury resulting from the Marchant Defendants' posting already-available, public information, which could not be redressed by this Court.

"Under Article III of the United States Constitution, the power of the federal judiciary 'extends only to Cases and Controversies.'" *Cook v. GameStop, Inc.*, 148 F.4th 153, 157 (3d Cir.

2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)) (quotations omitted).  The Article III standing doctrine ensures that federal courts "do not exceed [their] power by limit[ing] the category of litigants empowered to maintain a lawsuit in federal court."  *Id.* (citation omitted).

To establish standing, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338.  To establish "injury in fact," a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339.[3]

When analyzing a motion to dismiss for lack of standing, courts use the "same standard we apply when assessing a motion to dismiss for failure to state a claim" under Rule 12(b)(6). *Finkelman v. Nat'l Football League*, 877 F.3d 504, 511 (3d Cir. 2017).  At the motion to dismiss stage, a court must accept factual allegations as true, but it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3]     Constitutional standing is "properly tested under Rule 12(b)(1)" and may be challenged "facially or factually."  *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020); *see In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("A motion to dismiss for wanting of standing is … properly brought pursuant to Rule 12(b)(1).").  A facial challenge "argues that the plaintiff's factual allegations cannot meet the elements of standing."  *Id.* (citations omitted).  In reviewing a facial challenge, the court must only consider the "allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.*  In contrast, factual challenges contest standing based on "the facts of the case," which means that the court "may look beyond the pleadings to ascertain the facts."  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

8

misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(1) motion to dismiss. *Id.* "[A] complaint must do more than allege the plaintiff's entitlement to relief," rather, it must "'show' an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). The "plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press." *TransUnion LLC v. Ramirez*, 504 U.S. 555, 560-61 (2021).

**1.    Plaintiffs Lack Standing, as Any Alleged Injury Resulting from the Marchant Defendants' Actions is not Redressable by this Court**

The SAC should be dismissed for lack of standing because Plaintiffs cannot show any injury resulting from the Marchant Defendants' actions. Indeed, the exhibits to the Stern Decl. consist almost entirely of posts on OA or its social media that refer to, and often quote verbatim, court documents or articles prepared by other journalistic outlets.

It is black letter law that "[b]ecause information disclosed was already a matter of public record … defendant's disclosure could not have caused any harm." *Mirfasihi v. Fleet Mortg. Corp.*, No. 01 C 722, 2007 WL 2066503, at *4 (N.D. Ill. July 17, 2007); *see also, e.g., Perry v. Newsom*, 18 F.4th 622, 633-34 (9th Cir. 2021) (release of parts of recordings that "have been available to the general public" failed to establish injury-in-fact); *Yankovich v. Applus Techs., Inc.*, 621 F. Supp. 3d 269, 277 (D. Conn. 2022) (disclosure of information that is "publicly available" did not demonstrate that "injury in fact is 'certainly impending' or that there is a 'substantial risk' that such harm will occur") (citation omitted).

The exhibits to the Stern Decl. primarily refer to publicly available court documents or articles. For example, exhibit 10 is a post from OA that references a complaint in a litigation involving American Express and Stern. *See* ECF No. 66-2 at p. 6. Similarly, exhibit 11 is a post

9

from Marchant's X account that is composed entirely of a direct quote from an article in a local newspaper. *Id.* at p. 8. Exhibit 12 is an OA post that quotes directly a lawsuit filed by Michael Flynn against Stern. *Id.* at p. 10. These are but a few examples in the Stern Decl. The Marchant Defendants' posts about court records could not have caused an injury to Plaintiffs because *the records were already publicly available.* As such, a favorable decision would not render these documents private or inaccessible by the general public. Consequently, the Plaintiffs' alleged injuries are not attributable to the Marchant Defendants. In sum, Plaintiffs effectively seek to muzzle the Marchant Defendants legitimate journalistic activities in a misguided attempt to absolve Plaintiffs of their own legal entanglements and personal embarrassment.

**B.      The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant, as in this case here.

Federal courts exercise personal jurisdiction over non-residents according to the law of the state where the court sits. *See O'Connor v. Sandy Lane Hotel Co., Ltd.¸* 496 F.3d 312, 316 (3d Cir. 2007). Since this Court sits in Pennsylvania, its long-arm statute applies. This statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 700 (E.D. Pa. 2023). Due process considerations mandate that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In ruling on a motion under Rule 12(b)(2), the court takes the allegations of the complaint as true. *See Riad*, 657 F. Supp. 3d at 700. However, legal conclusions by a plaintiff "are no more

10

than conclusions and are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The burden to establish personal jurisdiction is on the plaintiff. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "[O]nce a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction." *Dayhoff*, 86 F.3d at 1302. The plaintiff must establish those contacts with "reasonable particularity." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*¸ 960 F.2d 1217, 1223 (3d Cir. 1992). Once the plaintiff makes a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that "some other considerations exist which would render the exercise of personal jurisdiction unreasonable." *Riad*, 657 F. Supp. 3d at 700.

### 1.    The Court Lacks General Personal Jurisdiction

The exercise of general personal jurisdiction requires that the corporate defendant have "continuous and systematic" contacts with the forum state and be "at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is "at home" in its place of incorporation and its principal place of business. *Id.* General jurisdiction is proper over an individual only in the place of domicile. *M3 USA Corp. v. Hart*, 516 F. Supp. 476, 490 (E.D. Pa. 2021).

As Plaintiffs concede, Marchant is domiciled in Colorado and KYC News is incorporated and maintains a principal place of business in Florida. *See* SAC ¶¶ 6-7; Marchant Decl. ¶¶ 3-5. Neither of the Marchant Defendants have consented to general personal jurisdiction in Pennsylvania. Consequently, it is clear that the Marchant Defendants are not subject to general personal jurisdiction in Pennsylvania. *See, e.g., M3 USA*, 516 F. Supp. at 490 (refusing to find general personal jurisdiction over a non-resident individual and corporation).

### 2.    The Court Lacks Specific Personal Jurisdiction

This Court also lacks specific personal jurisdiction over the Marchant Defendants. Specific

11

jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*¸ 564 U.S. 915, 919 (2011). For this reason, "specific jurisdiction is confined to adjudication of issues delving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

Specific jurisdiction over non-residents involves a three-part test. "First, the defendant must have 'purposefully directed [its] activities at the forum.'" *O'Connor*, 496 F.3d at 316. In particular, the defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*¸ 357 U.S. 235, 253 (1958). The contacts must be the "defendant's own choice and not random, isolated, or fortuitous." *Id.*

"Second, the litigation must 'arise out of or relate to' at least one of those activities'" which were purposefully directed at the forum. *See O'Connor*, 496 F.3d at 317; *Hepp v. Facebook*¸ 14 F.4th 204, 208 (3d Cir. 2021) (requiring a "strong connection" between a defendant's actions and the alleged claim). This element prevents a defendant from "be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "[I]f the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *See O'Connor*¸ 496 F.3d at 317.

> **i.    The Marchant Defendants Have Not Purposefully Directed Their Activities Towards Pennsylvania**

First, the SAC is bereft of any allegations that the Marchant Defendants purposely directed their activities towards Pennsylvania. Marchant is a resident of Colorado and KYC News is incorporated and maintains a principal place of business in Florida. *See* Marchant Decl. ¶¶ 3-5. OA does not operate from Pennsylvania. *Id.* OA has never held a conference or other event in

Pennsylvania, and the events that appear to be referenced in the SAC that hosted Ruzich occurred in Thailand and the United Kingdom. *Id.* ¶¶ 16-17. None of the exhibits to the Stern Decl. related to the Marchant Defendants, including the OA and social media posts and Marchant's LinkedIn correspondence with Stern, occurred while the Marchant Defendants were present in Pennsylvania. The alleged "business relationship" between the Marchant Defendants and other defendants, even if it existed (and it does not), is not tied in any way to the Commonwealth.

In fact, the only connections to Pennsylvania evident in the SAC are Stern's *former* residence and the unconfirmed current operations of Tactical Rabbit, which is obviously irrelevant to the Marchant Defendants nonexistent actions directed at Pennsylvania. In sum, as the Court noted in the Dismissal Order, "plaintiff[s] cannot be the only link between the defendant and the forum … [r]ather, it is the defendant's conduct that must form the necessary connection with the forum State." ECF No. 60 at p. 10 (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

### ii. The Marchant Defendants' Ownership and Operation of the OA Website Does Not Constitute Purposeful Availment

Offshore Alert is accessible to Pennsylvania residents and Plaintiffs appear to have been subscribers of OA at some point, presumably while residents of Pennsylvania. *See* Stern Decl. at Ex. 14; Marchant Decl. at ¶ 8. However, that a Pennsylvania resident can access OA from within the Commonwealth is insufficient to confer personal jurisdiction over the Marchant Defendants.

A "website may form the basis for specific jurisdiction if defendant takes action to maximize usage of [the] website in the forum, markets [the] website in the forum, puts forum-specific content in [the] website or has [a] business plan that targets users within [a] forum." *Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 556 (E.D. Pa. 2018). The Supreme Court has "yet to designate a test to determine purposeful availment, or personal jurisdiction generally, through the internet." *Hadnagy v. Moss*, No. 22-3060, 2023 WL 114689, at *4 (E.D.

13

Pa. Jan. 5, 2023). Courts apply a "sliding scale test," which holds that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet," such that "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

"[W]ebsites are placed on a spectrum ranging from passive websites, on which information is merely posted, to interactive websites, which facilitate commercial transactions between the defendant and forum resident." *Kelly v. Vertikal Press, Ltd.*¸ No. 20-2315, 2020 WL 6395459, at *2 (E.D. Pa. Nov. 2, 2020). When a website "merely make[s] information available on the Internet[,] the exercise of personal jurisdiction over such 'passive' defendants is improper." *Hadnagy*, 2023 WL 114689, at *5.[4] "[T]here must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

The fact that the OA website is viewable to Pennsylvania residents is insufficient to constitute purposeful availment that could potentially confer specific personal jurisdiction. Plaintiffs allege no facts that the Marchant Defendants targeted the OA website directly at residents of Pennsylvania. On the contrary, the OA website is equally accessible around the world, and, indeed, the substantial majority of its subscriber base is located outside of Pennsylvania. Marchant Decl. ¶ 9. The OA website does not target Pennsylvania residents specifically via marketing

---

[4]    To that end, "[t]he mere possibility that someone in Pennsylvania—as opposed to anywhere in the world – might contact the [d]efendant[s] via the website does not constitute a purposeful contact with the forum." *Kelly*, 2020 WL 6395459, at *2-3.

campaigns or any other form of forum-specific contact, and invoices and invitations to conferences hosted by Offshore Alert are disseminated to all subscribers, irrespective of location. *Id.*

That Offshore Alert offers subscriptions with no discrimination as to the location of the subscriber is likewise insufficient to show specific targeting at Pennsylvania residents essential to confer personal jurisdiction. *See Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (a "highly interactive" website that had a "shop" button allowing a user to enter into a contract nevertheless did not subject defendant to personal jurisdiction unless the website "specifically target[s] Pennsylvania citizens or derive[s] substantial revenue from Pennsylvania citizens"); *Britax*, 321 F. Supp. 3d at 557 (sale of products via website insufficient for personal jurisdiction absent targeting at Pennsylvania residents); *Kelly*, 2020 WL 6395459, at *3 (absent targeting of Pennsylvania residents, offering subscriptions insufficient to confer personal jurisdiction).

In the Dismissal Order, the Court rejected a nearly identical argument directed at a different defendant that also operates a website accessible in Pennsylvania that is otherwise undifferentiated, Spyscape Entertainment ("**Spyscape**"). *See* ECF No. 60 at pp. 13-14. Specifically, the Dismissal Order held that "Plaintiffs have adduced no evidence that the directly targets residents of Pennsylvania" and "because the mere possibility that someone in Pennsylvania—as anywhere in the world—might have engaged with Spyscape through its website does not constitute purposeful contact with the forum." *Id.* at p. 13 (citations and internal quotations omitted).

### iii.    There is No Connection Between Plaintiffs' Claims and the Marchant Defendants

To establish personal jurisdiction, a plaintiff must also show a "strong connection" between the claims alleged and the defendants' actions. *See, e.g., Hepp*, 14 F.4th at 208. The SAC utterly fails to provide any connection between Plaintiffs' claims and the Marchant Defendants, much less the robust connection necessary for a court to exercise personal jurisdiction.

15

Here, to the best of the Marchant Defendants' knowledge, the gravamen of most of Plaintiffs' allegations in the SAC is that certain other defendants: (i) "conspired to form various means of harming and denigrating the Plaintiffs through, *inter alia*, the creation of the Aracari Project" and "misappropriated trade secrets, clients, and employees" of Plaintiffs; and (ii) "falsely stated that Plaintiff Stern was under FBI investigation for wire fraud," supposedly giving rise to various contract and tort-based claims. *See* SAC at ¶¶ 13-15. The Stern Decl. claims that the Marchant Defendants served as the "media amplifier" and "public megaphone for this denigration." *Id.* at ¶ 6(d). The purported resulting injury includes the Plaintiffs' "loss of contracts, clients, goodwill, and business opportunities." SAC at ¶ 16. However, even assuming *arguendo* that Plaintiffs suffered an injury, the Marchant Defendants have not aimed <u>any conduct</u> at Pennsylvania, much less <u>tortious conduct</u>, which is required to find personal jurisdiction over the Marchant Defendants. *See, e.g.*, *IMO Indus*, 155 F.3d at 265-66.

The SAC makes no specific allegation that the Marchant Defendants "conspired" to "harm" and "denigrate" Stern. Instead, the SAC posits an amorphous conspiracy, primarily amongst the individual defendants defined as "contractors" (which expressly excludes the Marchant Defendants) to form the "Aracari Project," that omits fundamental aspects of a conspiracy, such as the specific acts in furtherance of the conspiracy and the connection of those unlawful actions to Plaintiffs' alleged injury. Moreover, the Marchant Defendants are not specifically alleged to have "misappropriated" any of Plaintiffs' "trade secrets, clients and employees." To the extent that Plaintiffs take issue with the OA website publishing publicly-available court records, this is not evidence of a conspiracy or any other tortious conduct but instead constitutes garden-variety and entirely proper acts of journalism. As such, Plaintiffs cannot show <u>any connection</u> between the Marchant Defendants' conduct and Plaintiffs' injuries, let alone the "strong connection"

16

required to satisfy this factor.  *See, e.g., Hepp*, 14 F. 4th at 208.

Furthermore, the articles about Plaintiffs on the OA website and social media accounts likewise do not constitute conduct targeted at Pennsylvania.  The tone of the posts about Stern that summarize publicly-available court records is immaterial to the personal jurisdiction analysis because such articles are not directly targeted at Pennsylvania residents.  Furthermore, Plaintiffs provide no allegations that the articles on the OA website concerning Stern were read extensively in Pennsylvania (relative to other forums) and Plaintiffs do not claim that the "intelligence gathering" community is uniquely connected to Pennsylvania.  *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (declining to find personal jurisdiction over non-resident defendant in part because there was no basis that Pennsylvania was the "focal point" of defendant's activity).

**iv.     The Exercise of Jurisdiction Over the Marchant Defendants Would be Unfair and Unjust**

Third, even if the Court were to find that Plaintiffs alleged that the Marchant Defendants had sufficient contacts with Pennsylvania (which they plainly do not), Plaintiffs cannot establish that this Court's exercise of jurisdiction is in any way fair or just.

The Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (citing *Burger King,* 471 U.S. at 477).

None of these factors are met.  The Marchant Defendants have operated exclusively outside of Pennsylvania and did not engage in any forum-specific conduct in Pennsylvania, including any conduct through the OA website and social media.  OA has not held any events in Pennsylvania.

17

Stern no longer lives in Pennsylvania. SAC ¶ 1. As such, the Commonwealth has little, to no interest, in adjudicating the supposed dispute between the Plaintiffs and the Marchant Defendants, which does not concern any of its "fundamental" social policies because it involves a dispute in which the parties have minimal connections to Pennsylvania.

For these reasons, Plaintiffs cannot satisfy any of the three required elements for this Court to take personal jurisdiction over the Marchant Defendants, the SAC should be dismissed with prejudice against the Marchant Defendants under Fed. R. Civ. P. 12(b)(2).

**C.      The Court Should Dismiss the SAC Under Fed. R. Civ. P. 12(b)(6) Because it Fails to State any Claims Against the Marchant Defendants**

In addition to dismissal on subject matter and personal jurisdiction grounds, Plaintiffs have failed to state any plausible legal claims against the Marchant Defendants.[5]

**1.      The SAC is Plaintiffs' Third Impermissible "Shotgun Pleading"**

Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading that states claim for relief" to contain "a short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that violate this rule "are often disparagingly referred to as 'shotgun pleadings.'" *Bartol v. Barrowclough,* 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). The basis for requiring a plaintiff to plead facts with specificity is: "(1) to weed out at an early stage frivolous claims and those that should be heard in state court, and (2) to provide the defendant with sufficient notice of the claims asserted." *Id.* Two telltale signs of a "shotgun pleading" are a complaint "replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action" and a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions,

---

[5]      The standard on a motion to dismiss under Rule 12(b)(6) is the same as Rule 12(b)(1).

or which of the defendants the claim is brought against." *Bartol*, 251 F. Supp. 3d at 859.

The SAC has all the hallmarks of a "shotgun pleading," as it merely recites the bare elements of various causes of action without alleging, much less connecting, the fundamental underlying facts. For example, Count I for breach of contract names "all Defendants" even though only three individual defendants are alleged to have contracted with Tactical Rabbit. SAC at ¶ 20. Virtually none of the Counts differentiate between which defendant took which actions that supposedly form the basis for relief. For instance, Count III, which alleges negligent interference with prospective economic advantage, provides zero insight into which defendant committed the underlying actions of "disseminating false information, failing to verify claims, and allowing confidential data to be misused." *Id.* ¶ 29. Count IV, which alleges statutory unfair competition, lacks a single particularized allegation as to which of the defendants engaged "in deceptive, fraudulent, and unfair business practices." *Id.* ¶ 32. Count IX (Aiding and Abetting Fraud) includes two paragraphs of boilerplate allegations against all Defendants (*id.* at ¶¶ 48-49).

Within the SAC and the Stern Decl. (*see* SAC at pp. 4-8; Stern Decl. at pp. 1-6) – which constitute Plaintiffs' *third Hail Mary effort to drag the Marchant Defendants into this Court* – Plaintiffs raise zero cognizable allegations about the Marchant Defendants relevant to the claims in the SAC. Rather, and emblematic of a shotgun pleading, Plaintiffs' filings are replete with non-sequiturs (that the OA website uses search engine optimization), mischaracterizations (including that the Marchant Defendants "amplified" Stern's myriad legal problems merely by posting factual information about his unfortunate behavior), and misstatements of fact (including a non-existent "financial relationship" between Ruzich and the Marchant Defendants).

For these reasons, the SAC is a quintessential shotgun pleading that does not satisfy Rule 8(a)(2) and should be dismissed with prejudice.

19

**2.    Plaintiffs Fail to State a Claim for Intentional and Negligent Interference with Prospective Economic Advantage and Tortious Interference of Contract Rights (Counts II and III)**

Plaintiffs' SAC offers only vague, conclusory allegations with respect to Counts II and III and does not set forth sufficient facts to support any of these causes of action[.6]

First., Pennsylvania does not recognize a tort for 'intentional interference with prospective economic advantage.'" *ClubCom, Inc. v. Captive Media, Inc.*, 2009 WL 249446, at *7 (W.D. Pa. Jan. 31, 2009).  To state a claim for tortious interference with existing or prospective contractual relations, a plaintiff must prove: "(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonably likelihood that the relationship would have occurred but for the defendant's interference." *Acumed, LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

For a variety of reasons, Count II must be dismissed.  First, Plaintiffs do not allege that they ever had a contractual relationship with the Marchant Defendants, nor could they.  Second, the SAC does not contain specific allegations concerning a prospective contractual relationship between Plaintiffs and any third-parties.  SAC ¶ 24.  Instead, Count II contains only vague, generalized allegations about unnamed clients of Plaintiffs that supposedly operate in the "private

---

[6]    Unlike in the First Amended Complaint, the SAC names "All Defendants" in Count I for breach of contract, although the lone quasi-specific allegations invoke only certain individual defendants.  *See* SAC ¶¶ 19-22.  Under Pennsylvania law, the elements required to state a claim for breach of contract are: (1) existence of a contract; (2) breach of the contract; and (3) resultant damages.  *See Sigel v. Goldstein*, 657 F. Supp. 3d 646, 654 (E.D. Pa. 2023).  Given that the Marchant Defendants never executed a contract with either of the Plaintiffs, it becomes axiomatic that Count I is a frivolous claim that cannot conceivably survive the Rule 12(b)(6) standard.

20

intelligence sector." *See id.* Furthermore, the supposed basis for the "interference" alleged in Count II is the "misrepresenting" of Stern's "integrity and falsely asserting criminal investigations, knowing such statements." *Id.* ¶ 25. Plaintiffs offer no allegations that tie the Marchant Defendants to these alleged misrepresentations about Stern. At most, the Marchant Defendants' representations about Plaintiffs amount to the time-honored journalistic exercise of republishing court-records online. In sum, this pell-mell style of pleading does not put the Marchant Defendants on notice of the facts to establish this claim, much less any of the required elements.

Third, Count III is invalid on its face because "Pennsylvania law does not recognize the tort of negligent interference with contractual relations." *Mills v. Unknown Franchisee*, 2:20-cv-566, 2021 WL 5358944, at *5 (W.D. Pa. Oct. 13, 2021). The only exception to the rule is where a "special relationship exists between the parties." *Id.* at *5. The "special relationship" exception clearly does not apply here, as the handful of allegations in the SAC about the Marchant Defendants provide no basis for any relationship involving confidence, trust, or fiduciary obligations between Plaintiffs and the Marchant Defendants.

### 3.    Plaintiffs Fail to State a Claim for Unfair Competition (Count IV) and the UTPCPL (Count X)

Unfair competition occurs if a defendant "(1) engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) [that] conduct causes harm to the plaintiff's commercial relations." *M3 USA*, 516 F. Supp. 3d at 504. In Pennsylvania, a claim for unfair competition is recognized "where there is evidence of, among other things ... tortious interference with contract … and unlawful use of confidential information." *Id.*

Applying these principles, Plaintiffs fail to state a claim for unfair competition. The SAC contains no allegations that the Marchant Defendants engaged in any actions that would satisfy the

21

first element.  Rather, the truthful posts on OA's website and Marchant's social media accounts about Plaintiffs hardly constitute deceptive marketing, infringement or misappropriation of the Plaintiffs' products or trade secrets.  Further, there are no allegations that the Marchant Defendants have ever maintained access to the Plaintiffs' trade secrets, or other confidential information, or what such information would even consist of.  This is unsurprising, as the Marchant Defendants never had access to such information.  Plaintiffs likewise cannot satisfy the second element of the unfair competition test.  As discussed above, there are insufficient allegations that the Marchant Defendants tortiously interfered with any contract involving the Plaintiffs.  There are also no allegations that the Marchant Defendants unlawfully used any of Plaintiffs' confidential information.  Accordingly, the Marchant Defendants' conduct did not cause harm to Plaintiffs.

Count X fails because it is supported by no factual allegations whatsoever, much less particularized allegations sufficient to state a claim for violation of UTPCPL.[7]  SAC ¶¶ 50-52. Rather, Count X: (i) a boilerplate recitation of the statutory language; and (ii) a statement of damages.  *Id.*  It is thus clear on its face that Plaintiffs fail to state a claim under UTPCPL.

### 4.     Plaintiffs Fail to State a Claim for Trespass to Chattels (Count V)

"A trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another."  *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018).

Defendants do not state a claim for trespass to chattels under Pennsylvania law.  The crux

---

[7]     UTPCPL is Pennsylvania's version of the Unfair Trade Practices and Consumer Protection Law.  73 Pa. Const. Stat. § 201-1; *Salyers v. A.J. Biosenski, Inc.*, 731 F. Supp. 3d 670, 685 (E.D. Pa. 2024) (listing required elements).  To maintain a private right of action under the UTPCPL, a claimant must: (1) be a "person"; (2) who made a "purchase"; (3) primarily for personal, family, or household purposes; and (4) suffered an ascertainable loss a result.  *Car Sense, Inc. v. Am. Special Risk, LLC*, 56 F. Supp. 3d 686, 697 & n. 5 (E.D. Pa. 2014).  Plaintiffs do not possess a private right of action under UTPCPL because, at most, they satisfy only the first element.

of this Count V (to the extent it is intelligible) is that that all defendants "intentionally interfered with Plaintiffs' computer systems and proprietary databases, diminishing their functionality and value." SAC at ¶ 36. Emblematic of a shotgun pleading, the SAC does not furnish any specific allegations against the Marchant Defendants supposed interference, nor could it. *Id.* To that end, there are no allegations that the Marchant Defendants had ever maintained access to these "internal databases," nor any licensed property of Plaintiffs. The Marchant Defendants *per se* could not have dispossessed Plaintiffs of this supposed chattel, much less with the required intentionality.

### 5. Plaintiffs' Fail to State a Claim for Unjust Enrichment (Count VI)

Unjust enrichment is an equitable remedy, defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp .3d 158, 163 (E.D. Pa. 2022). To state a claim for unjust enrichment, "[A] plaintiff must establish that (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Id.* "An unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023).

Yet again, the SAC fails to furnish any specific allegations tying the Marchant Defendants to the supposed "unjustly received benefits by taking Plaintiffs' clients, data, and intellectual property without authorization." *Id.* at ¶ 39. As described *ad nauseum* herein, there is simply no allegation that the Plaintiffs have ever conferred any benefit on the Marchant Defendants, much less any "stolen data or customers." Stern's appearance on the OA website does not in and of itself provide a benefit to the Marchant Defendants. Furthermore, any "benefit" received by the

23

Marchant Defendants in the form of the OA subscription fee paid by Plaintiffs was more than returned in the form of access to the OA website.  In sum, the Marchant Defendants thus necessarily could not have appreciated, accepted, nor retained such benefits.  Moreover, justice and equity – far from vindicating Plaintiffs' -- require that the Court dismiss this frivolous claim.

### 6.    Plaintiffs Fail to State a Claim for Negligence (Count VII)

To establish a claim for negligence, a plaintiff must show: "(1) duty; (2) breach; (3) causation; and (4) damages." *NVR, Inc. v. Majestic Hills, LLC*, 670 F. Supp. 3d 206, 227 n. 17 (W.D. Pa. 2023).  To determine the existence of a duty, a court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution." *Id.*  The SAC lacks any specific allegation that could conceivably impose a "duty" of the Marchant Defendants to the Plaintiffs.  Rather, the SAC appears to premise such a fabricated "duty" on the boilerplate assertion that all defendants failed to "act reasonably in the management and supervision of their relationships and business practices." SAC at ¶ 42.  Plaintiffs do not specify any relationship with the Marchant Defendants other than a paid subscription to OA.  Stern Decl. at Ex. 14.  The SAC does not articulate any of the Marchant Defendants supposed "business practices" that impose a duty.  These sparse and undifferentiated allegations cannot create any "duty" of "ordinary care" owed by the Marchant Defendants to Plaintiffs.  There is no allegation tying actions of the exercise of this supposed duty to adverse impacts to Plaintiffs' business.  The Marchant Defendants therefore could not have failed to "exercise ordinary care." *Id.* at ¶ 43.

### 7.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII)

Under Pennsylvania law, "in order to state a cause of action for civil conspiracy, a plaintiff must show that two or more persons combined or agreed with intent to do an unlawful act or to do

24

an otherwise lawful act by unlawful means. Proof of malice, *i.e.* an intent to injure, is essential in proof of a conspiracy." *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 407 (E.D. Pa. 2021). Plaintiffs cannot establish these elements and thus have not alleged a viable claim for civil conspiracy. Neither the SAC nor the Stern Decl. allege any participation by the Marchant Defendants in a conspiracy. The SAC inaccurately claims that Marchant "contracted" with Plaintiffs and "developed a business relationship with Plaintiffs and other Defendants." SAC at ¶ 6. This fabricated allegation is not within the realm of the pleading required to state a claim for civil conspiracy. Moreover, there is no specific allegation that the Marchant Defendants have agreed to do any unlawful act or an otherwise lawful act by unlawful means--and did so with the intent to injure Plaintiffs. The SAC baselessly and without detail claims that defendants acted "jointly and in concert with a common purpose" of "denigrating Plaintiffs and ruining their respective businesses." SAC at ¶ 45. The SAC does not specify which defendant(s) acted in "common purpose" with the Marchant Defendants, nor does it articulate how, when, and why the Marchant Defendants were involved in "denigrating" Plaintiffs' businesses.

### 8. Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud (Count IX)

Under Pennsylvania law, "to state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by a third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud." *Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co.*, CV 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024). Aside from the literal use of the word "fraud," the SAC is devoid of any specific allegations concerning the alleged fraud, much less the Marchant Defendants' knowledge and substantial assistance in the underlying fraud. All told, at best, the SAC simply recites the above-referenced elements without any single particularized allegation that could give rise to liability against the Marchant Defendants. *See* SAC at ¶¶ 48-49.

25

IV.    **CONCLUSION**

For the foregoing reasons, Defendants David Marchant and KYC News, Inc. d/b/a Offshore

Alert respectfully request that the Court dismiss Plaintiffs' Second Amended Complaint against

them in its entirety and with prejudice, as any further amendment would be futile.

Dated:  December 19, 2025
        Philadelphia, Pennsylvania

HOLLAND & KNIGHT LLP

/s/ Benjamin R. Wilson

Benjamin R. Wilson, Esq. (Bar No. 327118)
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: (215) 252-9600
Email: benjamin.wilson@hklaw.com

Richard A. Bixter Jr.,
*pro hac vice pending*
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Phone: (312) 422-9032
Email: richard.bixter@hklaw.com

*Attorneys for Defendants David Marchant*
*and KYC News, Inc. d/b/a Offshore Alert*

26

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system and served upon all parties registered for the CM/ECF system in this case.

Dated: December 19, 2025
       Philadelphia, Pennsylvania

/s/ Benjamin R. Wilson

27